# No. 25-841

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆━◆

GIDEON RAPAPORT, an individual,

*Plaintiff-Appellant,*

—against—

AJAY SRINIVASAN IYER, ZACHARY GEORGE

GARRETT, RICHARD ALLEN EPSTEIN, individuals,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
Case No. 1:23-cv-06709-JGLC, Hon. Jessica G. L. Clarke

## BRIEF OF PLAINTIFF-APPELLANT

GIDEON RAPAPORT, *pro se*
#627 1078 Summit Avenue
Jersey City, New Jersey 07307
Telephone: (862) 213-0895

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………7

STATEMENT OF JURISDICTION…………………………..……………..10

STATEMENT OF THE ISSUES……………………………...……….....…11

STATEMENT OF TH CASE………………………………………………..15

     A.    Local Rule 28.1(b) Summary.

     B.    Defendants Iyer and Garrett Form A Civil Conspiracy To Defame Plaintiff After Learning That Defendant Epstein Would Place Plaintiff In A Supreme Court Clerkship

     C.    Defendant Iyer Creates The First Version of Defamatory Forgery And Pseudonymously Publishes It Online Alongside Defamatory  And Otherwise Tortious Statements

     D.    Defendants Iyer and Garrett Defame Plaintiff To Defendant  Epstein And Staff Of The Federalist Society While Defendant Garrett Attends The Student Leadership Conference Of The Federalist Society

     E.    After First Version Of Defamatory Forgery Is Disbelieved Causing Defendant Iyer To Remove The First Version From The Internet Create A Second Version That Was Deployed With Attribution By Defendant Garrett Via Email.

     F.    Firm Disproves The Defamatory Claims And Defendant Epstein Learns Of This Yet Chooses To Join Civil Conspiracy For His  Own  Interest By Fraudulently Covering Up For Co-Conspirators Further Defaming Plaintiff And Tortiously Interfering With His Employment Prospects.

G.     The Plaintiff Diligently Investigates To Discover Who Had Created And Disseminated The Defamatory Forgeries And Statements For Almost One Year But Is Unsuccessful.|

H.     The Plaintiff Meets With Defendant Epstein On July 28, 2023 And Shows Him The Original *Doe* Complaint To Inquire If He Has Any Information To Provide – Defendant Epstein Refuses – Resulting In Plaintiff's Filing Of The Original *Doe* Complaint That Day.

I.     The Plaintiff Obtains Expedited Discovery From The District Court And Learns That Defendants Iyer, Garrett and Epstein Are Culpable Resulting In The Operative Amended Complaint Brought Against Them.

J.     The District Court Dismisses All Claims Against Defendants Iyer And Garrett With Prejudice And All Claims Against Defendant Epstein With Prejudice Except For Tortious Interference And Fraud That Were Dismissed Without Prejudice.

SUMMARY OF ARGUMENT……………………...……………………………23

STANDARD OF REVIEW…… ……….……………………………….…33

ARGUMENT…………………………………………………………………...35

I. Vacatur Is Required Because The District Court Disregarded Settled Rule 12(b)(6) Standards by Ignoring Fundamental And Critical Contents Of The Pleadings, Failing To Assume The Truth Of Plaintiff's Well-Pleaded Facts (And Favorable Inferences Therefrom) And Making Inferences Against The Plaintiff In Dismissing All Of Plaintiff's Claims.

A. The District Court Erred In Finding That Plaintiff's Original Complaint Only Related To "Anonymous Internet Posts" When In Reality It Had A Chapter Detailing Defamatory Oral Statements Titled "Oral Component Of Character Assassination Campaign".

B. The District Court Erred In Finding That The Plaintiff's Original Complaint Did Not Allege The Forwarding Of The Defamatory Materials To The James Kent Academy Program Of The Federalist Society When In Reality It Specifically Alleged The Targeting Of That Program By The

3

"Forwarding" Of The Defamatory Materials.

C. The District Court Erred In Finding That The Amended Complaint Did Not Specifically Identify Whether Defendant Iyer Or Garrett Created the Two Defamatory Forgeries and Published the Pseudonymous Defamatory Internet Posts When In Reality It Specifically Identified Defendant Iyer.

II. The District Court Erred In Making An Inference Against The Plaintiff By Holding That The Snapshot of Internet Posts Included By Defendant Garrett In His August 2 E-mail Reflected The Entirety Of The Internet Or All The Internet Posts Referenced By The Plaintiff – Who Specifically Alleged That By Then The First Version Of The Forgery And Initial Defamatory Posts Were Deleted To Prevent Detection of The Second Forgery By Comparison.

III. The District Court Erred In It's Relation Back Analysis Per FRCP Rule 15 And New York Law By Holding That The Operative Amended Complaint Could Only Relate Back To Defamatory Internet Posts And Not Slander Or The Forwarding Of The Defamatory Internet Posts.

A. These Errors Are Downstream From Errors Identified In Part I And II Where The District Court Ignored or Contradicted The Original And Amended Complaints.

B. The District Court In It's Application Of NY CPLR 203(f) Invoked By FRCP Rule 15 (c)(1)(A)

C. The District Court's Did Not Consider FRCP Rule 15(c)(1)(B) For Applicability To The Claims After It Analyzed Party Substitution Per NY CPLR 1024

IV. The District Court Erred In Failing To Apply New York Law As To Civil Conspiracy Or Other Fundamental Joint Causation Doctrines.

A. These Errors Are Downstream From Errors Identified In Part I And II Where The District Court Ignored or Contradicted The Original And Amended Complaints.

B. Civil Conspiracy And Joint Causation Would Both Have Allowed The Defamation Claims To Continue Against Defendants Iyer, Garrett and

4

Epstein If Applied Correctly Even In Light Of The Factual Allegations The Court Ignored Or Contradicted As Discussed in Subpart A.

V. The District Court Erred In Dismissing With Prejudice The Defamation, Injurious Falsehood, False Light Invasion Of Privacy, Intentional Infliction Of Emotional Distress Claims Brought Against Defendant Epstein By Reason Of The Statute Of Limitations – Who Did Not Even Raise The Issue In His Motion To Dismiss – When As A Matter Of Law The Claims Against Him Relate Back To The Timely Filed Original Complaint And His Fraudulent Concealment Prevents The Statute of Limitations From Applying To Him Regardless.

    A. Defendant Epstein Had Notice Satisfying The Relation Back Analysis That Was Applied To Defendants Iyer And Garrett.

    B. Defendant Epstein Also Qualifies For Relation Back By Reason Of The Plaintiff's Mistake.

    C. Defendant Epstein Cannot Benefit From The Statute Of Limitations As A Defense Because He Fraudulently Concealed.

VI. The District Court Erred In Dismissing With Prejudice Plaintiff's Intentional Infliction Of Emotional Distress Claim Without Analysis Merely For Potentially Being Subsumed By Defamation Even After It Dismissed All Defamation Claims With Prejudice Against These Defendants.

VII. The District Court Erred In Refusing To Apply New York Choice Of Law Rules To Evaluate Claims Brought Under New Jersey Law By The New Jersey Plaintiff.

VIII. The District Court Erred Even In Applying It's Own Erroneous Reasoning By Dismissing All Claims Against Defendants Iyer and Garrett With Prejudice While Purporting To Allow A Return Of A Part Of The Defamation Claims – Though It Is Not Clear Against Who.

IX. The District Court Erred In Encumbering The Plaintiff's Fraud Claim Against Defendant Epstein That Were Dismissed Without Prejudice With Erroneous Legal Rulings

X.  The District Court Erred In Denying The Plaintiff's Motion To Disqualify Schaerr-Jaffe LLP From The Concurrent Representation Of Defendants Iyer And Garrett That Results In Unwaivable Conflicts of Interest And Failed To *Sua Sponte* Disqualify When Schaerr-Jaffe Created Further Unwaivable Conflicts Of Interest By Arguing to Shift Liability To Other Clients In A Related Case.

XI.  The District Court Erred In It's Faulty Application Of The "No Set Of Facts" Standard For Pro Se Litigants – Which This Plaintiff Does Not Require To Prevail On Any Of His Claims – As It Even Ignored Clearly Exhibited Facts And Made Factual Inferences Against The Plaintiff.

XII.  The District Court Decision Violated Due Process, Did Not Fully and Fairly Decide The Claims And Issues Nor Meet Minimal Standards Of Fundamental Fairness.

CONCLUSION…………………………………..………………………………..59

CERTIFICATE OF COMPLIANCE…………………………………………….60

# INTRODUCTION

This appeal arises from Defendants-Appellees Iyer and Garrett's knowingly false statements supported by forged evidence that the Plaintiff-Appellant, Gideon Rapaport, was fired from his summer associate position at the law firm Kirkland & Ellis LLP for sexual harassment and barred from those premises in the summer of 2022. These defamations and other tortious actions were motivated by the desire of defendants Iyer and Garrett who at the time were rising 3L students at NYU, to prevent defendant Epstein from placing the plaintiff in a clerkship at the United States Supreme Court instead of one of them, and were timed to prevent the plaintiff's attendance at the James Kent Academy of the Federalist Society, a program attended by a significant number of former or upcoming Supreme Court clerks. Defendants Iyer and Garrett were seriously committed to causing the maximum possible injury to the plaintiff, and when the first version of the digitally manipulated forgery they published pseudonymously was disbelieved, they fabricated a second more technically sophisticated forgery, and sent it to Federalist Society, with attribution this second time. The injury to the plaintiff was exacerbated by the republication, fraud for the purposes of concealment and tortious interference with the career of the Plaintiff in retaliation of Defendant-Appellee Epstein. Defendant Epstein was initially deceived by defendants Iyer and Garrett, but he joined their civil conspiracy in order to prevent the truth from

7

becoming known about their conduct, since he had already successfully placed them in clerkships at the Supreme Court of Alabama and the United States Court of Appeals for the Ninth Circuit, and did not want his own reputation to be injured.

This appeal is necessary due to the district court's multiple legal errors including but not limited to its refusal to consider or acknowledge fundamental and critical allegations of the pleadings, its refusal to accept the truth of the Plaintiff's well-pleaded facts or draw reasonable inferences in his favor, its drawing of inferences against the Plaintiff such as by holding that an August 2, 2022 snapshot of two internet pages recorded by defendant Garrett and reflected in an exhibit necessarily reflect the July 29, 2022 contents and the entirety of the internet in general and its refusal to apply New York choice of law rules that would permit the New Jersey Plaintiff to bring relevant claims under New Jersey law.

The district court's errors begin with the most fundamental errors of ignoring the plaintiff's pleadings as to the basic facts of the case and further cascade into additional errors such as those relating to the application of FRCP 15 relation back analysis to the incorrect impression of the factual content of the case, New York choice of law analysis and the substantive tort claims themselves. These errors may have occurred in part due to the defendants' (and particularly so Iyer and Garrett) willful ignoring of even the most fundamental aspects of the plaintiff's pleadings and the law. The plaintiff tried to avert these errors by providing notice at the

8

beginning of his opposition to their motion to dismiss: "Because they cannot contend with the First Amended Complaint ("FAC"), which identified them as two of the Does named by the Original Complaint ("OC"), nor with the damning exhibits which include two of their forgeries AC Exhibits 1 & 2 [A3,A5] and a defamatory email Exhibit 3 that provides immense clarity into the nature of their conspiracy and their prior, manifest and subsequent tortious conduct, **they must respond to a complaint of their own creative invention and hope for the best**. In order to effectuate this deception, **they alternate between gross misrepresentations of the FAC in token references on one hand while making broad sweeping statements that ignore clearly pleaded facts and allegations on the other**. Incredibly, they go so far as to contradict their own memorandum of law on multiple occasions when it addresses the pleaded facts and allegations by boldly stating elsewhere that no such pleading was made at all. Some of these improprieties cannot even be explained by them not properly reading the pleadings, because **this amnesia to inconvenient facts and exhibits is selective and contextual**. In terms of the exhibits so damning of their gambit of evading accountability, they ignore the obvious meaning of there being two different versions of a forgery supposedly depicting a physically printed poster Exhibits 1 & 2, and ludicrously present to this Court that two PDF files generated by defendant Garrett from excerpts of two websites on August 1, 2022, are a true and ultimate

testament of everything that is or ever was on the internet, even as these digital files was marked up by defendant Garrett himself in furtherance of this conspiracy and tortious conduct (emphasis added). A259-A261.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. § 1332 because there was (and is) complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. The district court entered a final decision dismissing Plaintiff-Appellant's Amended Complaint on March 31, 2025. Under Federal Rule of Appellate Procedure 4(a)(1)(A), Plaintiff-Appellant timely filed a Notice of Appeal on April 7, 2025. This Court has jurisdiction to hear Plaintiff-Appellant's appeal from that final decision under 28 U.S.C. § 1291.

The district court purported to grant the plaintiff leave to amend, but only in a different docket by amending the pleading of a related case, where the plaintiff was already entitled to amend his original complaint as a matter of course per FRCP Rule 15(a)(1). Such a purported leave to amend contemplating activity in a different docket does not make the March 31, 2025 decision any less final due to the case-by-case approach required by the Supreme Court in *Hall v. Hall*, 584 US 59 (2018), which contemplates whether all substantive issues have been decided in

a particular docket and whether any activity related to substantive issues will occur in that docket. In the case appealed here, all claims were dismissed, all substantive issues decided, and the district instructed that all future filing was to occur in the docket of the "consolidated" case.

In any event, the plaintiff does not intend to amend his dismissed without prejudice claims from this case into the related and purportedly "consolidated" case as they are so encumbered by erroneous legal rulings that this would be wasteful, and the district court cannot properly consolidate a hollow docket from which it dismissed all claims with another case for jurisdictional reasons.

## STATEMENT OF THE ISSUES

1. The district court ignored a substantial amount of the fundamental allegations of the pleadings, directly contradicted the plaintiff's pleadings, drew inferences against the plaintiff, and failed to draw reasonable inferences in favor of the plaintiff. Is a district court required to read the pleadings, accept the plaintiff's well-pleaded factual allegations as true, and draw reasonable inferences in his favor therefrom?

2. The district court assumed that an August 1, 2022 snapshot of the internet created by a defendant and included in an exhibit represented all of the contents of the internet, and all of the internet defamatory materials that the

11

plaintiff alleged that existed on July 29, 2022. Can a district court prevent a plaintiff from alleging that the contents of pages on the internet were different on July 29, 2022 from the contents as they appeared in an exhibited snapshot created by a defendant on August 1, 2022?

3. The district court did not permit the amended complaint's claims to relate back to the Original Complaint despite their arising out of the same conduct, transaction, occurrences or series of transactions or occurrences. Is a district court required to accept the relation back of claims for claims related to events that defendants are provided notice of?

4. The district court did not apply civil conspiracy or the fundamental joint causation doctrines of New York law. As a matter of New York law and federal pleading rules, must factual causation be separately alleged for defendants who are acting in concert and cause the injury jointly?

5. The district court did not permit the amended complaint's claims to relate back to the original complaint with respect to defendant Epstein, who did not argue timeliness, and who fraudulently concealed the true identities of the other defendants while the plaintiff made a mistake in failing to realize that he was a proper defendant. Does fraudulent concealment and mistake prevent the statute of limitations from protecting a defendant from liability?

6. The district court dismissed the plaintiff's intentional infliction of emotional distress claims without analysis because he brought defamation claims, which were all dismissed with prejudice. Is a district court required to consider whether a plaintiff's intentional infliction of emotional distress claims provide an alternative claim after dismissing all defamation claims with prejudice?

7. The New Jersey Plaintiff was injured by the defendants in his mental tranquility by being portrayed in a false light and by an invasion of his privacy. Does New York choice of allow for a New Jersey plaintiff to bring claims under New Jersey law for injuries sustained there?

8. The district court dismissed all of the plaintiff's defamation claims with prejudice despite indicating that he could cure the purported defects of at least part of his defamation claims. When a plaintiff can cure a defect in a pleading identified by the district court, and such a defect is cured by his proposed amended complaint, is a district court required to allow his proposed amended complaint be allowed to take effect?

9. The district court held that the plaintiff could never recover non pecuniary loss damages under a fraud theory according to New York law, even if he could plead some pecuniary damages. According to New York law, can a

plaintiff recover for damages other than pecuniary loss provided that he can plead at least some pecuniary loss?

10. The district court denied a motion to disqualify attorneys who engaged in concurrent adverse representation between clients. Since then these same attorneys argued to shift liability from one set of clients to another set of clients in related matters. Are such conflicts waivable?

11. The district court purported to apply the "no set of facts standard" even as it ignored and contradicted the factual pleadings of the plaintiff, and made factual inferences against him. According to the "no set of facts" standard this Court instructs district courts to apply to pro se litigants, can a district court ignore factual scenarios pleaded, inferrable or reasonably imaginable that would allow a pro se plaintiff's claims to succeed?

12. The district court ignored the plaintiff's factual allegations, did not give him the opportunity to raise arguments pertaining to issues it raised *sua sponte* prior to dismissing his claims with prejudice, and refused to follow the procedures mandated by law. Does a district court have to apply legally mandated procedures and provide a plaintiff with an opportunity to be heard as part of due process, fully and fairly deciding the issues, and meeting the standards of minimal fairness?

## STATEMENT OF THE CASE

### A.      Local Rule 28.1(b) Summary.

On July 28, 2023 Plaintiff-Appellant Gideon Rapaport filed his *pro se* Original Complaint against John Does asserting claims of defamation, defamation per se, false light and invasion of privacy and intentional infliction of emotional distress. On January 2, 2024 he was granted expedited discovery subpoenas that enabled him to identify the Doe defendants. On May 24, 2024 the plaintiff filed his amended complaint, that identified defendants Iyer, Garrett and Epstein as the proper defendants, and added claims of civil conspiracy, injurious falsehood against all and tortious interference and fraud against defendant Epstein. All defendants moved to dismiss with prejudice for failure to state a claim per FRCP Rule 12(b)(6). All of the plaintiff's claims against defendants Iyer and Garrett were dismissed with prejudice and they were terminated from the docket. All of the plaintiff's claims against defendant Epstein were dismissed with prejudice except for tortious interference and fraud, that were dismissed without prejudice. The Honorable Judge Jessica G. L. Clarke presided over all relevant activity in the case.  This appeal follows.

### B.      Defendants Iyer and Garrett Form A Civil Conspiracy To Defame Plaintiff After Learning That Defendant Epstein Would Place Plaintiff In A Supreme Court Clerkship

In mid-July 2022 defendants Iyer and Garrett, students of NYU Law and presidents of the local chapter of the Federalist Society for academic years 21/22 and 22/23 respectively learned that the plaintiff was successfully recommended by defendant Epstein, a law professor and noted clerkship placer, to the James Kent Academy program of the Federalist Society. Because this program is attended primarily by former or future US Supreme Court clerks this caused them to believe that defendant Epstein would recommend and place the plaintiff in such a clerkship instead of one of them.

They subsequently formed a civil conspiracy to prevent the plaintiff from being so placed by defendant Epstein by means of defamation, and divided the workload between themselves each according to their particular advantageous circumstances. Defendant Iyer was an employee of Kirkland & Ellis LLP in New York and so would use his building access to create the defamatory forgery purporting to show a page posted at the security desk of the New York office at 601 Lexington Avenue with an image of the plaintiff and the text:

> Do Not Admit
> Gideon Rapaport
> Kirkland & Ellis

Defendant Garrett on the other hand, as the incoming chapter president of

the NYU Federalist Society, was coincidentally scheduled to attend the Student
Leadership Conference of the Federalist Society, placing him in proximity to staff
and officers of the organization. That conference was scheduled just a few days
before the James Kent Academy would begin, and would provide defendant
Garrett with the opportunity to directly expose decision makers at the organization
to the defamatory statements and forgery posted online by defendant Iyer if they
would not become sufficiently viral on their own to have the desired impact.

### C.    Defendant Iyer Creates The First Version of Defamatory Forgery And Pseudonymously Publishes It Online Alongside Defamatory And Otherwise Tortious Statements

 On or about July 29, 2022, defendant Iyer pseudonymously published defamatory
statements that the plaintiff had been fired from his summer associate position
Kirkland & Ellis LLP for sexual harassment and the first version of a forgery A3
meant to support those contentions online at Reddit.com and Top-Law-
Schools.com. The forgeries were digitally manipulated images created in two
versions A3, A5 purporting to show a "Do Not Admit" notice at the security desk
of 601 Lexington office of Kirkland NY including the plaintiff's name, face and
the name of the firm.
 These defamatory statements and the forged image were accompanied by a
significant amount of material about his personality, habits, mannerisms, modes of

dress and pastimes, as well as a discussion of the plaintiff's ideological leanings in order to mask the attack as coming from ideological opponents A56. The publication of such information about the plaintiff, who is a private person, invaded his privacy and depicted him in a false light, not just a defamatory one.

### D. Defendants Iyer and Garrett Defame Plaintiff To Defendant Epstein And Staff Of The Federalist Society While Defendant Garrett Attends The Student Leadership Conference Of The Federalist Society

On or about July 29, 2022, defendant Garrett capitalized on his attendance of the Federalist Society Student Leadership Conference to fulfill his part of the civil conspiracy. There he had the opportunity to personally raise and deliver the pseudonymously published defamatory materials to Kate Alcantara and Peter Redpath of the Student Division of the Federalist Society as he admits to in his email to the Federalist Society "As I mentioned you over the weekend..." A59. The Student Division did not believe these defamatory allegations, in great part due to the first version of the forgery being of limited technical sophistication, as it was clear that though the paper posted at the security desk was thoroughly wrinkled, the plaintiff's image was perfectly smooth because it was digitally superimposed.

Defendant Epstein on the other hand, did act upon the defamations. He republished them to Lee Otis, the director of the Faculty Division of the Federalist

Society, as he had admitted in writing, and also to others as he set on his path of destroying the plaintiff's career to fullest extent of his great ability, a path he would choose to continue even after learning that the defamations were supported by forgeries, and had no basis in reality whatsoever.

> **E. After First Version Of Defamatory Forgery Is Disbelieved Causing Defendant Iyer To Remove The First Version From The Internet Create A Second Version That Was Deployed With Attribution By Defendant Garrett Via Email.**

After the pseudonymous posts and first forgery were not believed due to the latter's unconvincing digital manipulation, defendant Iyer removed the first version he had posted online (to which the initial defamatory and tortious statements were attached) and created a second forgery that was more technically sophisticated, and showed wrinkles on the page including on the portion showing the plaintiff's face unlike before. This second forgery, explicitly attributed to defendant Iyer by defendant Garrett A59 "see attached photo … taken by Ajay Iyer...", alongside a repetition of the defamatory statements, was emailed to Kate Alcantara and Peter Redpath of the Federalist Society on August 2, 2022.

> **F. Firm Disproves The Defamatory Claims And Defendant Epstein Learns Of This Yet Chooses To Join Civil Conspiracy For His Own Interest By Fraudulently Covering Up For Co-Conspirators Further Defaming Plaintiff And Tortiously Interfering With His Employment Prospects.**

After being informed of the defamatory statements and materials, Lee Otis diligently investigated them. She learned from Steven Goldblatt, the Director of Human Resources of Kirkland & Ellis in New York, that there had been no complaint against the plaintiff, that no such "Do Not Admit" notice had ever been issued or posted to the best of the knowledge of the firm. Defendant Epstein was informed of these findings, yet he chose to continue to destroy the career of the plaintiff, and called him a few days after the conclusion declaring to him that he "will not clerk", and canceled his offer to become the Senior Article Editor of the NYU Journal of Law and Liberty. It was in this same call that defendant Epstein defrauded the plaintiff by specifically denying that defendants Iyer and Garrett had sent the materials as may be seen A61, in order to cover up the identities of the perpetrators and prevent the plaintiff from obtaining justice.

Defendant Epstein chose to join the civil conspiracy of defendants Iyer and Garrett because he had already placed them in clerkships with Justice Jay Mitchell of the Supreme Court of Alabama and Judge Carlos T. Bea of the United States Court of Appeal for the Ninth Circuit respectively. Discovery of defendant Epstein's punishment of the innocent plaintiff and rewarding of such culpable persons as defendants Iyer and Garrett would limit defendant Epstein's ability to place students in clerkships in the future, and so he protected the culpable parties

by fraud, and sought to limit the plaintiff's career to the greatest possible extent such that he would give up on having a professional career or remaining in the United States.

### G. The Plaintiff Diligently Investigates To Discover Who Had Created And Disseminated The Defamatory Forgeries And Statements For Almost One Year But Is Unsuccessful.|

The plaintiff diligently investigated this matter with the goal of identifying who had fabricated and spread the defamations that had so grievously injured him prior to filing the Original John Doe Complaint *pro se*. Over the course of almost one year beginning in August 2022, He inquired of Lee Otis, Peter Redpath and Kate Alcantara of the Federalist Society, defendant Epstein, and numerous attorneys and law students who were aware of the defamations published and circulated by defendants Iyer and Garrett. None disclosed the identities or suspected identities of the perpetrators.

The plaintiff's investigation was stymied by defendant Epstein's fraud, because the plaintiff believed his specific denial that defendants Iyer and Garrett were not involved in the defamations.

### H. The Plaintiff Meets With Defendant Epstein On July 28, 2023 And Shows Him The Original *Doe* Complaint To Inquire If He Has Any Information To Provide – Defendant Epstein Refuses – Resulting In Plaintiff's Filing Of The Original *Doe* Complaint That Day.

After almost one year of diligent investigation the plaintiff met with defendant Epstein for lunch on July 28, 2023, and showed him the Original John Doe Complaint that he would file *pro se* later that day. The plaintiff again inquired of defendant Epstein if he had any information to provide and defendant Epstein declined, thereby continuing his prior fraud at the beginning of the plaintiff's investigation where he had specifically denied that defendants Iyer and Garrett were the perpetrators, even when faced with the consequence of the obvious consequence of that fraud, which was that the action would have to initially be brought against Doe defendants.

**I.**      **The Plaintiff Obtains Expedited Discovery From The District Court And Learns That Defendants Iyer, Garrett and Epstein Are Culpable Resulting In The Operative Amended Complaint Brought Against Them.**

The plaintiff obtained expedited discovery subpoenas from the district court that identified defendants Iyer, Garrett and Epstein. The responsive materials obtained from the Federalist Society are included as Ex. 2 and 3 A5-19.

The plaintiff then brought the operative Amended Complaint against defendants Iyer, Garrett and Epstein on May 24, 2024.

**J.**      **The District Court Dismisses All Claims Against Defendants Iyer And Garrett With Prejudice And All Claims Against Defendant**

**Epstein With Prejudice Except For Tortious Interference And
Fraud That Were Dismissed Without Prejudice.**

The district court dismissed all of the plaintiff's claims without any hearing
on March 31, 2025. The plaintiff was denied the opportunity to amend any of his
claims in the docket from which this appeal was taken. The district court granted in
full defendants Iyer and Garrett's motion to dismiss by dismissing all claims
against them with prejudice. All claims except for tortious interference and fraud
were dismissed with prejudice against defendant Epstein while those two were
dismissed without prejudice. The district court did not consider the plaintiff's
proposed second amended complaint whatsoever with regard to defendants Iyer
and Garrett, and found that it could only be sufficient in curing supposed defects in
the tortious interference and fraud claims brought against defendant Epstein.

## SUMMARY OF ARGUMENT

The district court reversibly erred in multiple ways.

***First***, the district court erred by ignoring fundamental and critical allegations
in the pleadings, failing to accept the truth of the well-pleaded facts of the
pleadings and make all reasonable inferences therefrom and by making inferences
against the plaintiff. An example of this is the finding by the district court that the
original complaint did not reference slander by oral defamatory statements when in

fact the original complaint had Chapter F A76 which was titled "**Oral Component Of Character Assassination Campaign**" (emphasis original) and detailed the slander that the plaintiff was injured by. In another instance of ignoring the pleadings, the district court also found that the plaintiff did not specify whether defendants Iyer or Garrett created and published the defamatory statements and forgeries, when the operative Amended Complaint alleged that defendant Iyer did so at A53, 57, before dismissing all claims against both of them with prejudice and terminating them from the docket. The district court also found that the original complaint did not reference the forwarding of the defamatory posts and materials to the James Kent Academy, when it specifically did so.

*Second,* the district court erred by making a particularly devastating inference against the plaintiff, which borders on converting the motions to dismiss to motions for summary judgment against the plaintiff without notice, by finding that an August 2, 2022 snapshot of two internet pages made by defendant Garrett and included by him in an email A7-19 represents the totality of all relevant material that is or ever was on the internet, and prevents the plaintiff from pleading that their contents were different on July 29, 2022. The district court also inferred against the plaintiff, that he was referring only to those internet posts as shown on the August 2, 2022 snapshot made by defendant Garrett in the Amended Complaint. These inferences against the plaintiff were made despite the plaintiff's

explicit provision of both versions of the defamatory forgery, with the plaintiff's allegation and explanation that the first version was removed from the internet after being disbelieved by staff of the Federalist Society late on July 29, 2022 or early in July 30, 2022 to prevent comparison with the second forgery A57, also making the district court's inference impossible in light of the allegations.

**Third,** the district court erred in its relation back analysis required by FRCP 15. Rule 15(c)(1)(A) instructs that claims may relate back when the applicable law allows relation back, while as a matter of pure federal procedure 15(c)(1)(B) allows claims to relate back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading".

Here, the applicable law is New York state law, and NY CPLR 1024 allows relation back against unknown parties: "Unknown parties. A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly." In terms of the relation of claims themselves, New York law tracks the federal Rule 15(c)(1)(B) with NY CPLR 203(f): "Claim in amended pleading. A claim asserted in an

amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading."

Though the district court erred in great part due to its ignoring of the original and amended pleadings, correct relation back analysis would have allowed for the plaintiff's claims relating to the oral statements and slander as well as the forwarding of the defamatory statements and materials to relate back even if the original complaint did not specifically have a chapter about the "oral defamation campaign" or specifically describe a "forwarding" of the defamatory materials to the Federalist Society. Any reasonable person would have taken notice per NY CPLR 203(f), from the original complaint of all the factual matter giving rise to the defamation, false light and invasion of privacy, injurious falsehood and intentional infliction of emotional distress claims of the operative Amended Complaint. Rule 15(c)(1)(B) would also allow this relation back of claims independently after NY CPLR 1024 allowed the relation back of the party names after they became known, and the district court also erred by only evaluating NY CPLR 203(f) after correctly allowing the party name amendments to relate back per NY CPLR 1024.

Furthermore, even if Rule 15(c)(1)(A) did not allow relation back of these claims against these parties, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)

would require this result per the Rules of Decision Act because these rules pertaining to relation back are outcome determinative. Otherwise the federal courts would have no reason to consider New York's CPLR 215(3) statute of limitations pertaining to defamation in the first place.

*Fourth,* the district court erred by refusing to apply New York law as it pertains to civil conspiracy or even fundamental principles of joint causation in tort. Even if the plaintiff had not specifically identified defendant Iyer as the creator and publisher of the defamatory forgeries and internet posts in the Amended Complaint, civil conspiracy or the basic doctrine of joint causation could have allowed the claims to continue in light of the allegation that defendants Iyer and Garrett acted together. While it is true that a civil conspiracy or joint causation require an underlying tort, they nonetheless serve the vital role of joining in liability defendants who divide among themselves the elements of a tort in committing it together, even if no single defendant is responsible for all the elements alone. Instead of applying civil conspiracy, joint causation or allowing for some correction (none is actually required because the plaintiff did identify defendant Iyer as the creator of the forgeries and online posts) the district court dismissed all claims against them with prejudice.

*Fifth,* the district court erred by dismissing the defamation, injurious falsehood, false light and invasion of privacy and civil conspiracy claims brought

against defendant Epstein with prejudice by incorrectly holding that they were time barred after raising the issue *sua sponte*. The original complaint was timely filed with respect to these and all other claims, and defendant Epstein did not argue for a dismissal on the basis of the statute of limitations even as he made other premature arguments such as the common interest privilege for which he improperly pleaded new facts in his motion. The plaintiff never had the opportunity to address this issue with respect to defendant Epstein, against which the operative Amended Complaint clearly relates back due to FRCP 15(c)(1)(A) which invokes New York CPLR 1024 unknown party relation back, CPLR 203(f) and FRCP 15(c)(1)(C) mistake. Defendant Epstein perpetrated fraud upon the plaintiff to prevent the identification of the culpable persons from early August of 2022 immediately after the initial conduct giving rise to this action by phone and email up to and including the time filing of the Original Complaint on July 28, 2023 when the plaintiff provided defendant Epstein with a copy to read and provide information. The district court made this error even as it rejected the statute of limitations based arguments brought by defendants Iyer and Garrett (though it found other reasons to dismiss all claims against them with prejudice).

**Sixth,** the district court erred by dismissing with prejudice the plaintiff's intentional infliction of emotional distress claim on the theory that it is subsumed by defamation claims that were all dismissed with prejudice. While it is correct that

when a defamation claim is active it subsumes IIED, but since the district court dismissed the defamation claims against all defendants with prejudice, the IIED claim was never considered in its ability to operate independently of defamation as an alternative claim. IIED has different requirements from defamation, and none of the faults incorrectly found in the defamation claims would prevent the IIED claim from continuing against defendants Iyer and Garrett, while only the incorrect statute of limitations analysis with respect to defendant Epstein prevents the IIED claim from continuing against him.

*Seventh,* the district court erred by refusing to apply New York choice of law rules to allow the New Jersey plaintiff to be able to bring claims under New Jersey law for injuries he suffered in New Jersey. New York choice of law goes so far so as to adopt a doctrine often referred to as dépeçage, which provides that the same factual transactions and occurrences or issues may give rise to different claims under the laws of different sovereigns. "[T]here is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction" *Babcock v. Jackson*, 191 N.E.2d 279, 12 N.Y.2d 473 (N.Y. 1963). Instead of following this principle, the district court erred by assuming that because the plaintiff brought his defamation and other claims under New York law, and that they arise out of the same facts, that the plaintiff's false light and invasion of privacy claims alleged under New Jersey law must necessarily be considered under

29

New York law as well (and thus fail). The district court failed to appreciate that unlike defamation with its global scope of reputation in general, that New Jersey false light and invasion of privacy protect a person solely in their local community (New Jersey in this case) and their mental tranquility respectively.

*Eighth,* the district court erred even in applying its own erroneous reasoning by dismissing the defamation claims against defendant Iyer and Garrett with prejudice and terminating them from the docket. The district court never held, even as it ignored the pleadings, made inferences against the plaintiff, and erred as to the substantive law, that there was any fault that would justify such a dismissal with prejudice. No explanation was provided for the dismissal with prejudice of the defamation claims against them, nor was there any specification as to who the plaintiff could refile the portion of his defamation claim that the plaintiff was advised could be refiled.

*Ninth,* the district court erred by making significant legal errors in limiting the plaintiff's dismissed without prejudice claims. The sole claims that were not dismissed with prejudice are the tortious interference and fraud claims that were brought solely against defendant Epstein.

The district court erred in holding that the plaintiff did not cause the plaintiff pecuniary loss by delaying the plaintiff's identification of the proper defendants

necessitating expedited discovery subpoenas, or that only pecuniary losses may be recovered (they must be pleaded as a matter of state pleading rules but are not all that may be recovered.) The conclusion of the district court that defendant Epstein's fraud that caused the plaintiff to wrongly believe that defendants Iyer and Garrett were not the proper defendants at the outset of his investigation did not hinder his investigation is both erroneous and simply unreasonable.

*Tenth,* the district court erred by failing disqualifying Schaerr-Jaffe LLP from the conflicted concurrent representation of defendants Iyer and Garrett that cannot be remedied by waiver. Such an adverse concurrent representation is already evident by the material already in the record, and in their attempt to remedy it by waiver defendants Iyer and Garrett have made perjured statements by declaration as is demonstrated by materials already in the record. It is inevitable that they will have to testify against each other because of how they divided the various roles and actions undertaken in their civil conspiracy. Defendant Garrett specifically identified defendant Iyer as the source of the second defamatory forgery in a writing already in the record. In order to avoid liability, defendant Iyer will have to claim that defendant Garrett was untruthful in his attribution of the second forgery to defendant Iyer, while defendant Garrett will have to identify Iyer as the source of the second forgery or impeach his own writings already exhibited. Notably, by adverse representation with defendant Iyer, defendant Garrett cannot

blame defendant Iyer for deceiving him, thereby hypothetically reducing his liability to arising from negligence as opposed to intentional conduct, which could mean the difference between having the ability to have any judgment debt discharged in bankruptcy or not.

*Eleventh,* the district court erred in its faulty purported application of the "No Set of Facts" standard that this Circuit has implemented for pro se litigants. Although the plaintiff does not require the application of this standard in order to succeed on any of his claims, the district court's failure to meet this standard further emphasizes that it even falls far short of the general standard applied to the actions of parties with representation. Beyond ignoring the facts that would allow the claims to proceed, the district court specifically disobeyed this standard in the clearest possible way by making inferences against the plaintiff, thereby negating viable potential sets of facts that this standard explicitly requires be considered.

*Twelfth,* the district court erred in depriving the plaintiff of due process by failing to follow the basic procedures required by law, such as those guaranteeing him the opportunity to be heard by ignoring fundamental parts of his pleadings or applying a different set of standards than those required by law such as by making inferences against him when as a matter of law all reasonable inferences must be made in his favor. By ignoring fundamental parts of the pleadings as they relate to the factual content, thereby refusing to engage with the actual issues of the case,

the district court also did not fully and fairly decide the issues before it or meet minimal standards of fundamental fairness.

## STANDARD OF REVIEW

This Court "review[s] a district court's grant of a motion to dismiss the complaint on the pleadings de novo and "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. New York Times*, 940 F.3d 804 (2d. Cir. 2019) citing *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). A plaintiff need only state a claim to relief that is plausible, *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012), an "exceedingly low" burden, *Elias*, 872 F.3d at 111 (Lohier, J., concurring and dissenting in part) ("[A]s the majority points out, the plausibility threshold is exceedingly low." (citing *Anderson News*, 680 F.3d at 184-85)). This "exceedingly low" burden "'does *not* impose a *probability* requirement at the pleading stage,'" and "'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely.'" *Anderson News*, 680 F.3d at 184-85 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Notably, "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule

12(b)(6) motion. 'Fact-specific question[s] cannot be resolved on the pleadings.'" *Id.* at 185. Thus, ***"[a] court ... may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible."*** *Id.*

This Court generally reviews the refusal to grant leave to amend a complaint for abuse of discretion, but where, as here, a court denies "leave to amend on the ground that the proposed new complaint does not state a claim on which relief can be granted"—i.e., futility—it is "review[ed] *de novo.*" *Id.* at 185-86. Futility exists "only where it is beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999).

This Court reviews denials of motion to disqualify counsel under an abuse of discretion standard, but the requirement that counsel not engage in unwaivable concurrent adverse representations is an exacting one that is necessary to protect the integrity of the legal system. In *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir. 1976) this Court held that concurrent representation of clients with adverse interests is "prima facie improper", that "an attorney must avoid not only the fact, but even the appearance of representing conflicting interests.". Any "diminution of vigor" *Id.* or risk thereof is sufficient to disqualify an attorney.

# ARGUMENT

I. **Vacatur Is Required Because The District Court Disregarded Settled Rule 12(b)(6) Standards by Ignoring Fundamental And Critical Contents Of The Pleadings, Failing To Assume The Truth Of Plaintiff's Well-Pleaded Facts (And Favorable Inferences Therefrom) And Making Inferences Against The Plaintiff In Dismissing All Of Plaintiff's Claims.**

The district court did not "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. New York Times*, 940 F.3d 804 (2d. Cir. 2019) citing *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). Failure to meet this minimal standard requires vacatur of the opinion below.

A. **The District Court Erred In Finding That Plaintiff's Original Complaint Only Related To "Anonymous Internet Posts" When In Reality It Had A Chapter Detailing Defamatory Oral Statements Titled "Oral Component Of Character Assassination Campaign".**

The decision below incorrectly found that the plaintiff's timely filed original pleading only set out material related to libel through "Anonymous Internet Posts" A36, and so that the operative Amended Complaint could only relate back to to claims relating from the publishing of those posts. The district court held: "Student Defendants could not have been fairly apprised as to the other alleged defamatory statements, because they were not mentioned in the original complaint, which focused only on the 'anonymous internet posts." Id.

This was held to prevent the relation back of defamation relating to slander by making the same defamatory statements orally, such as defendant Garrett admitted to doing in writing "As I mentioned to you over the weekend, my understanding is that Gideon Rapaport was fired from his summer associate position at Kirkland & Ellis NY last week for sexually harassing a practice assistant or an attorney." A8, or forwarding those defamatory materials as defendant Garrett did in A8. The *pro se* Original Complaint featured Chapter F, titled **"Oral Component of Character Assassination Campaign"** (emphasis original) which described the oral defamations. Clearly anyone reading the Original Complaint would be apprised that it also related to oral statements.

> **B. The District Court Erred In Finding That The Plaintiff's Original Complaint Did Not Allege The Forwarding Of The Defamatory Materials To The James Kent Academy Program Of The Federalist Society When In Reality It Specifically Alleged The Targeting Of That Program By The "Forwarding" Of The Defamatory Materials.**

The Original Complaint not only covered oral statements, but it also specifically alleged that the Doe defendants specifically timed their defamatory publications and the "forwarding" of those defamations to the James Kent Academy program of the Federalist Society in order to cause direct and maximum injury to the plaintiff A75, the Original Complaint stated. Clearly anyone reading the Original Complaint would be apprised that it alleged that the Does had forwarded the defamatory materials to the James Kent Academy program of the

Federalist Society as defendant Garrett did first by oral statement and references

while he attended the Student Leadership Conference of the Federalist Society and

then again when he actually forwarded the defamatory statements and forgery via

Email A7-19.

C. **The District Court Erred In Finding That The Amended Complaint Did Not Specifically Identify Whether Defendant Iyer Or Garrett Created the Two Defamatory Forgeries and Published the Pseudonymous Defamatory Internet Posts When In Reality It Specifically Identified Defendant Iyer.**

The decision below held that the remaining part of the defamation claims

against defendant Iyer and Garrett had to be dismissed against them because the

Amended Complaint did not specify which one of them had published the

defamatory internet posts. This dismissal, as for all claims against defendants

Iyer and Garrett, was with prejudice.

The district court held: "Plaintiff does not allege which individual

Defendant made which statement. Indeed, Plaintiff does not directly allege that

Student Defendants made these statements at all … without being able to

ascertain which Defendant made which statement, the Court cannot conduct the

remaining analysis: for instance, the "fault" question would need to be analyzed

differently as between Defendant Iyer and Defendant Garrett" A40-41.

The Amended Complaint clearly and specifically identified defendant

Iyer as the creator and publisher of the defamatory internet posts and forgeries

37

at multiple places: "pseudonymous online posts by defendant Iyer" A54 and "the online materials, created and posted pseudonymously by defendant Iyer" A57.

## II. The District Court Erred In Making An Inference Against The Plaintiff By Holding That The Snapshot of Internet Posts Included By Defendant Garrett In His August 2 E-mail Reflected The Entirety Of The Internet Or All The Internet Posts Referenced By The Plaintiff – Who Specifically Alleged That By Then The First Version Of The Forgery And Initial Defamatory Posts Were Deleted To Prevent Detection of The Second Forgery By Comparison.

The opinion below directly contradicted the plaintiff's allegations that defendant Iyer, as part of a civil conspiracy with defendant Garrett, posted the first version of the defamatory forgery and the defamatory and tortious statements online.

According to the district court, the plaintiff cannot contradict the August 1, 2022 snapshot of two pages on Reddit.com and Top-Law-Schools.com that defendant Garrett annotated and forwarded to the Federalist Society on August 2, 2022 by claiming that the contents of those pages were different on July 29, 2022, or that the plaintiff referred to other pages on those websites in addition. The fatal errors in this approach relate to time and scope, by assuming that the contents of the internet are unchanging, that the plaintiff is prevented from alleging that defendant Iyer removed the first version of the forgery so that it would not be compared with the second, more sophisticated forgery that he sent to defendant

Garrett, and that defendant Garrett sent in the Ex 3 email A7-19. The district court also errs by assuming the authenticity of defendant Garrett's snapshot, which was not offered as an exhibit for its inherent truth but rather only the material conveyed by him to the Federalist Society, and was at the very least edited by highlighting.

The plaintiff clearly alleged that by August 1, 2022 defendant Iyer had removed the first version of the defamatory forgery "because the image was suspected of being a fake by those who saw it, defendant Iyer apparently determined to make another image, and removed the first image from the internet so as to prevent comparison between the two." A57. Thus the district court's conclusion that the plaintiff contradicts his allegation that the first version of the forgery had been posted online because it was not visible in a snapshot taken on August 1, 2022, when the second version and been prepared by defendant Iyer and sent to defendant Garrett for attributed deployment "see attached photo … taken by Ajay Iyer..." A8, is clearly incorrect.

The district court's reliance on other cases[1] is not relevant here because they were not about online materials, which may be edited, deleted or added to at any time. They are also not relevant because defendant Garrett's email and its attachments are not offered for their inherent truth (indeed they are offered for the

---

[1] These cases cited by the district court are *KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 365 (S.D.N.Y. 2014), Kirkendall v. Halliburton, 707 F.3d 173, 175 n. 1 (2d Cir. 2013), Koulkina v. City of New York, 559 F. Supp. 2d 300, 329 (S.D.N.Y. 2008).

opposite proposition because this is a defamation case), and determinations as to authenticity or credibility cannot be made at the motion to dismiss stage due to their factual nature.

By the district court's logic, the plaintiff should also not be entitled to claim that the two defamatory forgeries are defamatory as the result of digital image manipulation, because they must be accepted as the perfect manifestation of reality (which would be impossible because they are clearly different forgeries due to how the wrinkles of the page appear on the plaintiff's face in the second but not the first), even as the director of human resources of the office has stated that they were never issued or displayed to the best of the firm's knowledge.

The plaintiff's proposed Second Amended Complaint also clearly addresses these supposed shortcoming in the most clear and specific terms, and should have been allowed to become effective A89-137.

### III. The District Court Erred In It's Relation Back Analysis Per FRCP Rule 15 And New York Law By Holding That The Operative Amended Complaint Could Only Relate Back To Defamatory Internet Posts And Not Slander Or The Forwarding Of The Defamatory Internet Posts.

#### A. These Errors Are Downstream From Errors Identified In Part I And II Where The District Court Ignored or Contradicted The Original And Amended Complaints.

Even according to the district court's narrow view of relation back, the original complaint contained sufficient material to provide notice of oral

defamations as described in it's Chapter F, titled "**Oral Component Of Character Assassination Campaign**" (emphasis original) A76 and because it specifically alleged the "forwarding" of the defamatory materials to the James Kent Academy program of the Federalist Society A75.

### B. The District Court In It's Application Of NY CPLR 203(f) Invoked By FRCP Rule 15 (c)(1)(A)

Though this is a largely academic question due to correction of the district court's error being available through the actual consideration of the key passages of the Original Complaint that provide notice even in the narrowest possible reading of the relation back as discussed *supra* in A, the district court did not apply NY CPLR 203(f) correctly.

Here, the applicable law is New York state law, and NY CPLR 1024 allows relation back against unknown parties: "Unknown parties. A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly." In terms of the relation of claims themselves, New York law is quite similar to federal Rule 15(c)(1)(B) with NY CPLR 203(f): "Claim in amended pleading. A claim asserted in an

amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading."

Any reasonable person would have taken notice per NY CPLR 203(f), from the original complaint of all the factual matter giving rise to the defamation, false light and invasion of privacy, injurious falsehood and intentional infliction of emotional distress claims of the operative Amended Complaint. For example, in *Jennings-Purnell v. Jennings*, 107 A.D.3d 513, 968 N.Y.S.2d 27 (1st Dep't 2013), an action related to real estate fraud, the plaintiff was allowed to add a claim arising from notarial misconduct though the action had not previously addressed notarial misconduct at all. "[A]lthough the prior amended complaint did not mention notarial misconduct, it clearly gave the defendant notice of the transaction and occurrence in which notarial misconduct took place" *Id.* Defendants Iyer and Garrett knew full well all of the actions they had taken to destroy the career of the plaintiff as they set out in the course of conduct that is a subject of this action.

### C. The District Court's Did Not Consider FRCP Rule 15(c)(1)(B) For Applicability To The Claims After It Analyzed Party Substitution Per NY CPLR 1024

Though this is also a largely academic question due to correction of the

district court's error being available through the actual consideration of the key passages of the Original Complaint that provide notice even in the narrowest possible reading of the relation back as discussed *supra* in A, some consideration should also be given to possible relation back according to Rule 15(c)(1)(B). The federal rule provides that: "An amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading". The "attempted to be set out" language should provide leeway to a plaintiff who though remarkably accurate, does not have perfect information and is stymied by the defendants striking at him from behind the veil of anonymity as defendants Iyer and Garrett did.

The district court did not explicitly discuss or organize the cases it cited according to which procedural path available but the district court's result, both under New York and federal relation back analysis, not only ignores the underlying materials as described *supra* in A, but also holds the original pro se complaint brought against John Doe's to an extremely high standard that contradicts the requirements revolving around notice to the defendant, which is clearly satisfied by the Original Complaint.

## IV. The District Court Erred In Failing To Apply New York Law As To Civil Conspiracy Or Other Fundamental Joint Causation Doctrines.

43

### A. These Errors Are Downstream From Errors Identified In Part I And II Where The District Court Ignored or Contradicted The Original And Amended Complaints.

The district court operated first by dismissing all of the plaintiffs claims through a variety of errors, including ignoring or contradicting the pleadings, and did not consider whether or not the claim of civil conspiracy or the basic norms of joint causation of New York law could rescue any of those claims. If the errors identified in Part I and II were not made by the district court, this analysis may be unnecessary.

### B. Civil Conspiracy And Joint Causation Would Both Have Allowed The Defamation Claims To Continue Against Defendants Iyer, Garrett and Epstein If Applied Correctly Even In Light Of The Factual Allegations The Court Ignored Or Contradicted As Discussed in Subpart A.

The district court dismissed with prejudice the defamation claims against defendants Iyer and Garrett because it found that it could not maintain an action against both of them due to the purported failure of the plaintiff to identify which one (the plaintiff did so as shown in Part I Subpart C) preventing the analysis of fault. The district court put the cart before the horse, and concluded that because fault could not be assigned to an individual jointly liable tortfeasor, that no tort claim was properly alleged. "[A] plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable,

underlying tort, and establish that those actions were part of a common scheme" *McSpedon v. Levine,* 158 A.D.3d at 621, 72 N.Y.S.3d 97. While it is true that an independent tort must eventually be *proven* independently of civil conspiracy, there is no authority that suggests that it need be *alleged* independently as to fault or anything else. Defamation is an actionable tort, and the plaintiff may plead civil conspiracy to connect the necessary actions across different defendants.

The district court's erroneous approach also contradicts the basic norms of joint causation, and joint and several liability. When a plaintiff can properly allege that a group is liable, but cannot point to which individual actually committed the factual action giving rise to fault, joinder is still possible (though this plaintiff can and did allege that it was defendant Iyer who created and posted the defamatory materials online only to be ignored). A classic example of this is in medical malpractice when an unconscious patient is injured during a procedure, and can point to the method and cause of the injury, but not which specific member of the surgical team is at fault. According to the district court's reasoning, recovery would be categorically impossible in all such cases. Going beyond mere joint causation and liability, New York law even allows plaintiffs to recover from defendants who merely produced the similar type of product with no proof that the plaintiff had been injured by their particular product, as in the DES mass tort class action litigation *Hymowitz v. Eli Lilly and Co.*, 73 N.Y.2d at 512, 541 N.Y.S.2d 941, 539

N.E.2d 1069. The New York Court of Appeals held: "It is merely a windfall for a producer to escape liability solely because it manufactured a more identifiable pill, or sold only to certain drugstores."

Likewise, the civil conspiracy of defendants Iyer and Garrett, which defendant Epstein joined, joins him in liability with all of their torts as well arising from the same facts alleged in the Original Complaint. *Bedard v. La Bier*, 20 Misc. 2d 614, 194 N.Y.S.2d 216 (Sup 1959); *Ballantine v. Ferretti*, 28 N.Y.S.2d 668 (Sup 1941); *National Drama Corporation v. Burns*, 183 N.Y.S. 739 (Sup 1920).

**V.  The District Court Erred In Dismissing With Prejudice The Defamation, Injurious Falsehood, False Light Invasion Of Privacy, Intentional Infliction Of Emotional Distress Claims Brought Against Defendant Epstein By Reason Of The Statute of Limitations – Who Did Not Even Raise The Issue In His Motion To Dismiss – When As A Matter Of Law The Claims Against Him Relate Back To The Timely Filed Original Complaint And His Fraudulent Concealment Prevents The Statute of Limitations From Applying To Him Regardless.**

**A. Defendant Epstein Had Notice Satisfying The Relation Back Analysis That Was Applied To Defendants Iyer And Garrett.**

Defendant Epstein did not raise any defense relating to the statute of limitations or timeless despite raising other premature defenses such as the common interest privilege. It is highly peculiar for a district court to *sua sponte* raise the timeless of the complaint filed against one party, and dismiss claims against them with prejudice, after it had denied similar claims actually raised by other defendants who are similarly situated, especially when the *sua sponte* party

would have additional roadblocks in asserting it such as fraudulent concealment and mistake.

Defendant Epstein has already admitted in writing to sending the defamatory materials to Lee Otis who was the administrator in charge of the James Kent Academy of the Federalist Society. This is precisely the conduct covered by the Original Complaint when it alleged that the Does had engaged in a "forwarding" of the defamatory materials, thus he would have notice that he was a proper defendant. Defendant Epstein was also in communication with the other Does as demonstrated by Ex. 3 A7-19, further providing him notice of his involvement in the culpable conduct.

### B. Defendant Epstein Also Qualifies For Relation Back By Reason Of The Plaintiff's Mistake.

In perpetrating a fraud upon the plaintiff calculated to prevent him from identifying defendants Iyer and Garrett as defendants, defendant Epstein mixed untruths with half-truths. He specifically denied that defendants Iyer and Garrett were involved or had sent the materials, and instead told the plaintiff that he had sent them (and also admitted to doing so in writing) without receiving them from anyone else.

Considering that defendant Epstein was almost eighty at the time, and clearly did not have any knowledge of either Reddit.com or Top-Law-Schools.com, nor the inclination to browse those websites in his very limited spare time, the plaintiff did not believe him as to his claim that he had 'warned' the Federalist Society on his own, and instead believed that someone else had been involved. The plaintiff had sufficient information in the form of what may now be understood as an admission, but he made a mistake in not believing the half-truth portion of defendant Epstein's fraud because it seemed to be a deflection, though he did believe defendant Epstein's specific denial that defendants Iyer and Garrett were the culpable persons.

Because the plaintiff met with defendant Epstein and showed him the Original John Doe Complaint on the day of filing, defendant Epstein had notice of the action and the mistake within the amount of time specified by Rule 15(c)(1)(C), and knew that he was a proper defendant.

### C. Defendant Epstein Cannot Benefit From The Statute Of Limitations As A Defense Because He Fraudulently Concealed.

Defendant Epstein perpetrated fraud upon the plaintiff in order to prevent him from advancing his case, as well as retaliating against the plaintiff after he had filed the Original John Doe Complaint *pro se*. Defendant Epstein hoped that by causing the plaintiff to lose the only two jobs he had been able to obtain after

48

graduating law school, that were both part time and JD-advantaged, that the plaintiff would give up on his cause and on remaining in the United States.

Fraudulent concealment provides an additional reason for the federal equitable tolling and state law equitable estoppel of defendant Epstein's protection from the statute of limitations. Defendant Epstein significantly derailed the investigation of the plaintiff by convincing him, just as he was beginning his investigation, that defendants Iyer and Garrett were not the culpable persons.

The doctrine of equitable estoppel precludes a defendant from using the statute of limitations as a defense when the defendant's affirmative wrongdoing produced the long delay between the accrual of the cause of action and the institution of the legal proceeding. *Dowe v. Leeds Brown Law, P.C.*, 419 F. Supp. 3d 748 (S.D.N.Y. 2019) (construing New York law); *Jacobson Development Group, LLC v. Yews, Inc.*, 174 A.D.3d 868, 106 N.Y.S.3d 119 (2d Dep't 2019); *Huss v. Rucci Oil Company, Inc.*, 58 Misc. 3d 21, 68 N.Y.S.3d 298 (App. Term 2017). Fraud, misrepresentation and deceptions are the most convincing reasons for such an estoppel. *Geiss v. Weinstein Company Holdings LLC*, 383 F. Supp. 3d 156 (S.D. N.Y. 2019); *Ramiro Aviles v. S & P Global, Inc.*, 380 F. Supp. 3d 221 (S.D. N.Y. 2019); *Zumpano v. Quinn*, 6 N.Y.3d 666, 816 N.Y.S.2d 703, 849 N.E.2d 926 (2006); *Simcuski v. Saeli*, 44 N.Y.2d 442, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978).

The plaintiff was also clearly aware of the cause of action but just not the identities of the perpetrators, and exercised due diligence by his many inquiries of persons who had relevant information such as defendant Epstein. *El Basty v. AmGuard Insurance Company*, 412 F. Supp. 3d 267 (E.D. N.Y. 2019)

The plaintiff never had the opportunity to raise this or any timeliness-related arguments with respect to defendant Epstein due to the district court's sua sponte dismissal with prejudice on this ground.

## VI. The District Court Erred In Dismissing With Prejudice Plaintiff's Intentional Infliction Of Emotional Distress Claim Without Analysis Merely For Potentially Being Subsumed By Defamation Even After It Dismissed All Defamation Claims With Prejudice Against These Defendants.

The district court dismissed the plaintiff's intentional infliction of emotional distress claims on the grounds that they were duplicative of and subsumed by the plaintiff's defamation claims. This prevented the plaintiff's IIED claim from operating as an alternative claim and theory after the district court dismissed all of the plaintiff's defamation claims with prejudice against all parties.

All of the short-comings identified by the district court in the plaintiff's defamation claims do not apply to IIED, which although requiring a high bar for the malfeasance of defendants, is a very open ended tort.

Notice as to whether or not oral statements were made or materials were forwarded in the Original Complaint was a vital component of relation back is the primary reason that the district court dismissed the plaintiff's defamation claims with prejudice, alongside the finding of a failure to allege publication of the defamations (both reasons are faulty as described in Parts I-IV). These are no bar to IIED.

The Original Complaint clearly provided notice to the Doe defendants that they had caused the plaintiff extreme emotional distress by engaging in extreme and outrageous conduct.

By fabricating and virally spreading the defamatory statements and forgeries that the plaintiff was fired for sexual harassment, invading his privacy and portraying in the defamatory forgeries, the defendants caused the plaintiff extreme emotional distress. This is evident throughout the Original John Doe Complaint filed by the plaintiff *pro se*. The defendants had ruined the plaintiff's career, caused him imminent fear of expulsion from his law school by filing false complaints about him, wrongly exposed him to scorn, derision and aversion for being a sex criminal, prevented him from normally participating in society, joining the legal profession, or making any return on the educational path he pursued for his entire adult life. Defendants Iyer and Garrett also spoiled the plaintiff's unique relationship with defendant Epstein, who was the plaintiff's favorite law professor,

as well as one of the primary reasons the plaintiff chose to attend the New York University School of Law. The defendants caused this extreme emotional distress by the extreme and outrageous conduct of forging evidence and fabricating false claims of firing for sexual harassment. They also continued to repeat and amplify these defamatory statements orally months beyond the initial defamation across the United States.

**VII.  The District Court Erred In Refusing To Apply New York Choice Of Law Rules To Evaluate Claims Brought Under New Jersey Law By The New Jersey Plaintiff.**

The Court erred in its choice of law analysis by not applying New Jersey law to the false light and invasion of privacy claim as endorsed in the Second Circuit's citation of *Catalanello v. Kramer*, 18 F. Supp. 3d 504, 512 (S.D.N.Y. 2014) in *Kinsey v. New York Times Co.*, 991 F.3d 171, 175 (2d. Cir. 2021) n.21. The Court took the plaintiff's arguments relating to his "local community" as merely arguments based on domicile when they referred to the location of the injury, which is also New Jersey, and together with domicile should be dispositive. New York choice of law analysis is done by issue as legally defined, rather than being generally attached to shared facts or parties as the Court reasoned in reference to the plaintiff's bringing of other claims under New York law. For example, in determining that New York law would apply to a car accident that occurred

(exclusively) in Ontario, Canada involving New York residents the New York Court of Appeals concluded "There is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction" *Babcock v. Jackson*, 12 NY2d 473 at 484. Instead of following this principle, the district court erred by assuming that because the plaintiff brought his defamation and other claims under New York law, and that they arise out of the same facts, that the plaintiff's false light and invasion of privacy claims alleged under New Jersey law must necessarily be considered under New York law as well (and thus fail). The district court failed to appreciate that unlike defamation with its global scope of reputation in general, that New Jersey false light and invasion of privacy protect a person solely in their local community (New Jersey in this case) and their mental tranquility respectively.

Unlike defamation, which has a global and reputational scope, New Jersey false light and invasion of privacy claims have a purely local scope protecting only the mental tranquility and privacy of individuals in their local community, and not their reputation. In *Romaine v. Kallinger*, 537 A.2d 284 (NJ 1988), the New Jersey Supreme Court distinguished that: "The interest protected by the duty not to place another in a false light is that of the individual's peace of mind …. 'The action for defamation,' on the other hand, 'is to protect a person's interest in a good reputation…' *Prosser and Keeton on the Law of Torts*, supra § 117, at 864".

According to its own choice of law rules, New York has little to no interest in such an injury that is limited entirely to the territorial boundary of New Jersey.

The Court erred in relying upon the plaintiff's New York school and work reputational injuries as they relate to defamation because they are legally unrelated to the false light and invasion of privacy suffered by the plaintiff in his local community in New Jersey. An invader of privacy is "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another" *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81 609 A.2d 11 (NJ 1992). Prior to these defendants' publications, which included the image of the plaintiff on a digitally fabricated "Do Not Admit" poster purported to have been displayed at his workplace, the New Jersey plaintiff enjoyed perfect solitude and seclusion, had "peace of mind" as identified by Romaine, and was not publicly displayed or discussed anywhere on the internet to the best of his knowledge.

**VIII.  The District Court Erred Even In Applying It's Own Erroneous Reasoning By Dismissing All Claims Against Defendants Iyer and Garrett With Prejudice While Purporting To Allow A Return Of A Part Of The Defamation Claims – Though It Is Not Clear Against Who.**

The district court erred even in applying its own erroneous reasoning by dismissing the defamation claims against defendant Iyer and Garrett with prejudice and terminating them from the docket. The district court never held, even as it

ignored the pleadings, made inferences against the plaintiff, and erred as to the substantive law, that there was any fault that would justify such a dismissal with prejudice. No explanation was provided for the dismissal with prejudice of the defamation claims against them, nor was there any specification as to who the plaintiff could refile the portion of his defamation claim that the plaintiff was advised could be refiled.

The plaintiff's proposed Second Amended Complaint, does not have any of the faults that the district court found with the defamation claims brought against defendants Iyer and Garrett, and yet it was not allowed to take effect, and defendants Iyer and Garrett's motion to dismiss all claims against them with prejudice was fully granted, as further evidenced by their termination from the docket.

## IX. The District Court Erred In Encumbering The Plaintiff's Fraud Claim Against Defendant Epstein That Were Dismissed Without Prejudice With Erroneous Legal Rulings

The district court erred by making significant legal errors in limiting the plaintiff's dismissed without prejudice claims. The sole claims that were not dismissed with prejudice are the tortious interference and fraud claims that were

brought solely against defendant Epstein.

The district court erred in holding that the plaintiff did not cause the plaintiff pecuniary loss by delaying the plaintiff's identification of the proper defendants necessitating expedited discovery subpoenas, or that only pecuniary losses may be recovered (they must be pleaded as a matter of state pleading rules but are not all that may be recovered.) The conclusion of the district court that defendant Epstein's fraud that caused the plaintiff to wrongly believe that defendants Iyer and Garrett were not the proper defendants at the outset of his investigation did not hinder his investigation is both erroneous and simply unreasonable.

**X. The District Court Erred In Denying The Plaintiff's Motion To Disqualify Schaerr-Jaffe LLP From The Concurrent Representation Of Defendants Iyer And Garrett That Results In Unwaivable Conflicts of Interest And Failed To *Sua Sponte* Disqualify When Schaerr-Jaffe Created Further Unwaivable Conflicts Of Interest By Arguing to Shift Liability To Other Clients In A Related Case.**

The district court erred by failing disqualifying Schaerr-Jaffe LLP from the conflicted concurrent representation of defendants Iyer and Garrett that cannot be remedied by waiver. Such an adverse concurrent representation is already evident by the material already in the record, and in their attempt to remedy it by waiver

defendants Iyer and Garrett have made perjured statements by declaration as is demonstrated by materials already in the record. It is inevitable that they will have to testify against each other because of how they divided the various roles and actions undertaken in their civil conspiracy. Defendant Garrett specifically identified defendant Iyer as the source of the second defamatory forgery in a writing already in the record A7-19. In order to avoid liability, defendant Iyer will have to claim that defendant Garrett was untruthful in his attribution of the second forgery to defendant Iyer, while defendant Garrett will have to identify Iyer as the source of the second forgery or impeach his own writings already exhibited A7-19. Notably, by adverse representation with defendant Iyer, defendant Garrett cannot blame defendant Iyer for deceiving him, thereby hypothetically reducing his liability to arising from negligence as opposed to intentional conduct, which could mean the difference between having the ability to have any judgment debt discharged in bankruptcy or not.

Of greatest concern is the failure of the district court to *sua sponte* disqualify Schaerr-Jaffe LLP after the conclusion of the briefing of the motion due to new facts that arose. Schaerr-Jaffe took on the representation of additional defendants Nelms and Weinberg in the related case of Rapaport v. Epstein et al. 23-cv-07439 after it had argued in this case being appealed, that those new clients of Rapaport v. Epstein were the culpable Does and not their initial clients, defendants Iyer and

Garrett. This argument was successful, as defendants Iyer and Garrett's motion to dismiss with prejudice was fully granted, and Schaerr-Jaffe argued to shift liability from one concurrent set of clients to another.

### XI. The District Court Erred In It's Faulty Application Of The "No Set Of Facts" Standard For Pro Se Litigants – Which This Plaintiff Does Not Require To Prevail On Any Of His Claims – As It Even Ignored Clearly Exhibited Facts And Made Factual Inferences Against The Plaintiff.

The district court purported to apply the "no set of facts" standard generously afforded to *pro se* plaintiffs, even as it ignored the pleadings, contradicted them, and drew inferences against the plaintiff. The clearest possible example of a contradiction, is the district court's dismissal of the plaintiff's defamation claims against all defendants with prejudice, though the dismissal with respect to defendants Iyer and Garrett was predicated on concluding that the defamatory forgery and statements, which are referenced (though they themselves were deleted by then) by the August 1, 2022 internet snapshot created by defendant Garrett. It would be very easy to imagine a set of facts under which the first forgery, which was provided as an exhibit, was posted online alongside the defamatory statements repeated by defendant Garrett in his email to the Federalist Society, and this would allow the plaintiff's defamation claims to continue to discovery.

The plaintiff explicitly disclaims that any of his claims require special treatment as a pro se litigant in order to survive dismissal.

## XII. The District Court Decision Violated Due Process, Did Not Fully and Fairly Decide The Claims And Issues Nor Meet Minimal Standards Of Fundamental Fairness.

The district court erred in depriving the plaintiff of due process by failing to follow the basic procedures required by law such as those guaranteeing him the opportunity to be heard by ignoring fundamental parts of his pleadings or applying a different set of standards than those required by law such as by making inferences against him when as a matter of law all reasonable inferences must be made in his favor. By ignoring fundamental parts of the pleadings as they relate to the factual content, thereby refusing to engage with the actual issues of the case, the district court did not afford the plaintiff with the opportunity to be heard, did not fully and fairly decide the issues before it or meet minimal standards of fundamental fairness.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant respectfully requests that the Court reverse the district court's decision dismissing his defamation, injurious falsehood, intentional infliction of emotional distress, false light and invasion of

privacy and civil conspiracy claims brought against all defendants and the fraud and tortious interference with economic advantage claims brought solely against defendant Epstein, remand this case to the district court with such instructions to reinstate these claims and ensure that the parties continue to full discovery.

## CERTIFICATE OF COMPLIANCE

This brief or other document complies with type-volume limits of Fed. R. App. P. R. 32 and Local Rule 32.1 because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments) this brief contains 12,418 words.

This brief or other document complies with the typeface and type style requirements because: this brief or other document has been prepared in a proportionally spaced typeface using LibreOffice Writer in 14-point Times New Roman font.

/s/ Gideon Rapaport, *pro se*

Dated: May 30, 2025