# No. 25-841

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

GIDEON RAPAPORT, an individual,

*Plaintiff-Appellant,*

—against—

AJAY SRINIVASAN IYER, ZACHARY GEORGE

GARRETT, RICHARD ALLEN EPSTEIN, individuals,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
Case No. 1:23-cv-06709-JGLC, Hon. Jessica G. L. Clarke

## BRIEF AND SPECIAL APPENDIX OF PLAINTIFF-APPELLANT

GIDEON RAPAPORT, *pro se*
#627 1078 Summit Avenue
Jersey City, New Jersey 07307
Telephone: (862) 213-0895

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………7

STATEMENT OF JURISDICTION……………………………..………………..10

STATEMENT OF THE ISSUES……………………………......……….....…...11

STATEMENT OF TH CASE……………………………………………………..15

    A.     Local Rule 28.1(b) Summary.

    B.     Defendants Iyer and Garrett Form A Civil Conspiracy To Defame Plaintiff After Learning That Defendant Epstein Would Place Plaintiff In A Supreme Court Clerkship

    C.     Defendant Iyer Creates The First Version of Defamatory Forgery And Pseudonymously Publishes It Online Alongside Defamatory And Otherwise Tortious Statements

    D.     Defendants Iyer and Garrett Defame Plaintiff To Defendant Epstein And Staff Of The Federalist Society While Defendant Garrett Attends The Student Leadership Conference Of The Federalist Society

    E.     After First Version Of Defamatory Forgery Is Disbelieved Causing Defendant Iyer To Remove The First Version From The Internet Create A Second Version That Was Deployed With Attribution By Defendant Garrett Via Email.

    F.     Firm Disproves The Defamatory Claims And Defendant Epstein Learns Of This Yet Chooses To Join Civil Conspiracy For His Own Interest By Fraudulently Covering Up For Co-Conspirators Further Defaming Plaintiff And Tortiously Interfering With His Employment Prospects.

G.      The Plaintiff Diligently Investigates To Discover Who Had Created And Disseminated The Defamatory Forgeries And Statements For Almost One Year But Is Unsuccessful.

H.      The Plaintiff Meets With Defendant Epstein On July 28, 2023 And Shows Him The Original *Doe* Complaint To Inquire If He Has Any Information To Provide – Defendant Epstein Refuses – Resulting In Plaintiff's Filing Of The Original *Doe* Complaint That Day.

I.       The Plaintiff Obtains Expedited Discovery From The District Court And Learns That Defendants Iyer, Garrett and Epstein Are Culpable Resulting In The Operative Amended Complaint Brought Against Them.

J.       The District Court Dismisses All Claims Against Defendants Iyer And Garrett With Prejudice And All Claims Against Defendant Epstein With Prejudice Except For Tortious Interference And Fraud That Were Dismissed Without Prejudice.

SUMMARY OF ARGUMENT…………………………...………………………………23

STANDARD OF REVIEW…… ………… …………………………………….………34

ARGUMENT………………………………………………………………………...36

I.  Vacatur Is Required Because The District Court Disregarded Settled Rule 12(b)(6) Standards by Ignoring Fundamental And Critical Contents Of The Pleadings, Failing To Assume The Truth Of Plaintiff's Well-Pleaded Facts (And Favorable Inferences Therefrom) And Making Inferences Against The Plaintiff In Dismissing All Of Plaintiff's Claims.

A. The District Court Erred In Finding That Plaintiff's Original Complaint Only Related To "Anonymous Internet Posts" When In Reality It Had A Chapter Detailing Defamatory Oral Statements Titled "Oral Component Of Character Assassination Campaign".

B. The District Court Erred In Finding That The Plaintiff's Original Complaint Did Not Allege The Forwarding Of The Defamatory Materials To The James Kent Academy Program Of The Federalist Society When In Reality It Specifically Alleged The Targeting Of That Program By The

"Forwarding" Of The Defamatory Materials.

C. The District Court Erred In Finding That The Amended Complaint Did Not Specifically Identify Whether Defendant Iyer Or Garrett Created the Two Defamatory Forgeries and Published the Pseudonymous Defamatory Internet Posts When In Reality It Specifically Identified Defendant Iyer.

II. The District Court Erred In Making An Inference Against The Plaintiff By Holding That The Snapshot of Internet Posts Included By Defendant Garrett In His August 2 E-mail Reflected The Entirety Of The Internet Or All The Internet Posts Referenced By The Plaintiff – Who Specifically Alleged That By Then The First Version Of The Forgery And Initial Defamatory Posts Were Deleted To Prevent Detection of The Second Forgery By Comparison.

III. The District Court Erred In It's Relation Back Analysis Per FRCP Rule 15 And New York Law By Holding That The Operative Amended Complaint Could Only Relate Back To Defamatory Internet Posts And Not Slander Or The Forwarding Of The Defamatory Internet Posts.

A. These Errors Are Downstream From Errors Identified In Part I And II Where The District Court Ignored or Contradicted The Original And Amended Complaints.

B. The District Court In It's Application Of NY CPLR 203(f) Invoked By FRCP Rule 15 (c)(1)(A)

C. The District Court's Did Not Consider FRCP Rule 15(c)(1)(B) For Applicability To The Claims After It Analyzed Party Substitution Per NY CPLR 1024

IV. The District Court Erred In Failing To Apply New York Law As To Civil Conspiracy Or Other Fundamental Joint Causation Doctrines.

A. These Errors Are Downstream From Errors Identified In Part I And II Where The District Court Ignored or Contradicted The Original And Amended Complaints.

B. Civil Conspiracy And Joint Causation Would Both Have Allowed The Defamation Claims To Continue Against Defendants Iyer, Garrett and

4

Epstein If Applied Correctly Even In Light Of The Factual Allegations The Court Ignored Or Contradicted As Discussed in Subpart A.

V.  The District Court Erred In Dismissing With Prejudice The Defamation, Injurious Falsehood, False Light Invasion Of Privacy, Intentional Infliction Of Emotional Distress Claims Brought Against Defendant Epstein By Reason Of The Statute Of Limitations – Who Did Not Even Raise The Issue In His Motion To Dismiss – When As A Matter Of Law The Claims Against Him Relate Back To The Timely Filed Original Complaint And His Fraudulent Concealment Prevents The Statute of Limitations From Applying To Him Regardless.

   A. Defendant Epstein Had Notice Satisfying The Relation Back Analysis That Was Applied To Defendants Iyer And Garrett.

   B. Defendant Epstein Also Qualifies For Relation Back By Reason Of The Plaintiff's Mistake.

   C. Defendant Epstein Cannot Benefit From The Statute Of Limitations As A Defense Because He Fraudulently Concealed.

VI.  The District Court Erred In Dismissing With Prejudice Plaintiff's Intentional Infliction Of Emotional Distress Claim Without Analysis Merely For Potentially Being Subsumed By Defamation Even After It Dismissed All Defamation Claims With Prejudice Against These Defendants.

VII.  The District Court Erred In Refusing To Apply New York Choice Of Law Rules To Evaluate Claims Brought Under New Jersey Law By The New Jersey Plaintiff.

VIII.  The District Court Erred Even In Applying It's Own Erroneous Reasoning By Dismissing All Claims Against Defendants Iyer and Garrett With Prejudice While Purporting To Allow A Return Of A Part Of The Defamation Claims – Though It Is Not Clear Against Who.

IX.  The District Court Erred In Encumbering The Plaintiff's Fraud Claim Against Defendant Epstein That Were Dismissed Without Prejudice With Erroneous Legal Rulings

X.  The District Court Erred In Denying The Plaintiff's Motion To Disqualify Schaerr-Jaffe LLP From The Concurrent Representation Of Defendants Iyer And Garrett That Results In Unwaivable Conflicts of Interest And Failed To *Sua Sponte* Disqualify When Schaerr-Jaffe Created Further Unwaivable Conflicts Of Interest By Arguing to Shift Liability To Other Clients In A Related Case.

XI.  The District Court Erred In It's Faulty Application Of The "No Set Of Facts" Standard For Pro Se Litigants – Which This Plaintiff Does Not Require To Prevail On Any Of His Claims – As It Even Ignored Clearly Exhibited Facts And Made Factual Inferences Against The Plaintiff.

XII.  The District Court Decision Violated Due Process, Did Not Fully and Fairly Decide The Claims And Issues Nor Meet Minimal Standards Of Fundamental Fairness.

CONCLUSION………………………………..…………………………………..62

CERTIFICATE OF COMPLIANCE……………………………………………62

SPECIAL APPENDIX…………………………………………….....................64

## INTRODUCTION

This appeal arises from Defendants-Appellees Iyer and Garrett's knowingly false statements supported by forged evidence that the Plaintiff-Appellant, Gideon Rapaport, was fired from his summer associate position at the law firm Kirkland & Ellis LLP for sexual harassment and barred from those premises in the summer of 2022. These defamations and other tortious actions were motivated by the desire of defendants Iyer and Garrett who at the time were rising 3L students at NYU, to prevent defendant Epstein from placing the plaintiff in a clerkship at the United States Supreme Court instead of one of them, and were timed to prevent the plaintiff's attendance at the James Kent Academy of the Federalist Society, a program attended by a significant number of former or upcoming Supreme Court clerks. Defendants Iyer and Garrett were seriously committed to causing the maximum possible injury to the plaintiff, and when the first version of the digitally manipulated forgery they published pseudonymously was disbelieved, they fabricated a second more technically sophisticated forgery, and sent it to Federalist Society, with attribution this second time. The injury to the plaintiff was exacerbated by the republication, fraud for the purposes of concealment and tortious interference with the career of the Plaintiff in retaliation perpetrated by Defendant-Appellee Epstein. Defendant Epstein was initially deceived by defendants Iyer and Garrett, but he joined their civil conspiracy in order to prevent

the truth from becoming known about their conduct, since he had already successfully placed them in clerkships at the Supreme Court of Alabama and the United States Court of Appeals for the Ninth Circuit, and did not want his own reputation to be injured.

This appeal is necessary due to the district court's multiple legal errors including but not limited to its refusal to consider or acknowledge fundamental and critical allegations of the pleadings, its refusal to accept the truth of the Plaintiff's well-pleaded facts or draw reasonable inferences in his favor, its drawing of inferences against the Plaintiff such as by holding that an August 2, 2022 snapshot of two internet pages recorded by defendant Garrett and reflected in an exhibit necessarily reflect the July 29, 2022 contents and the entirety of the internet in general and its refusal to apply New York choice of law rules that would permit the New Jersey Plaintiff to bring relevant claims under New Jersey law.

The district court's errors begin with the most fundamental errors of ignoring the plaintiff's pleadings as to the basic facts of the case and further cascade into additional errors such as those relating to the application of FRCP 15 relation back analysis to the incorrect impression of the factual content of the case, New York choice of law analysis and the substantive tort claims themselves. These errors may have occurred in part due to the defendants' (particularly Iyer and Garrett) willful ignoring of even the most fundamental aspects of the plaintiff's pleadings and the

law. The plaintiff tried to avert these errors by providing notice at the beginning of his opposition to their motion to dismiss: "Because they cannot contend with the First Amended Complaint ("FAC"), which identified them as two of the Does named by the Original Complaint ("OC"), nor with the damning exhibits which include two of their forgeries AC Exhibits 1 & 2 [A3,A5] and a defamatory email Exhibit 3 [A7-19] that provides immense clarity into the nature of their conspiracy and their prior, manifest and subsequent tortious conduct, **they must respond to a complaint of their own creative invention and hope for the best**. In order to effectuate this deception, **they alternate between gross misrepresentations of the FAC in token references on one hand while making broad sweeping statements that ignore clearly pleaded facts and allegations on the other**. Incredibly, they go so far as to contradict their own memorandum of law on multiple occasions when it addresses the pleaded facts and allegations by boldly stating elsewhere that no such pleading was made at all. Some of these improprieties cannot even be explained by them not properly reading the pleadings, because **this amnesia to inconvenient facts and exhibits is selective and contextual**. In terms of the exhibits so damning of their gambit of evading accountability, they ignore the obvious meaning of there being two different versions of a forgery supposedly depicting a physically printed poster Exhibits 1 & 2, and ludicrously present to this Court that two PDF files generated by defendant

9

Garrett from excerpts of two websites on August 1, 2022, are a true and ultimate testament of everything that is or ever was on the internet, even as these digital files was marked up by defendant Garrett himself in furtherance of this conspiracy and tortious conduct (emphasis added). A259-A261.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. § 1332 because there was (and is) complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. The district court entered a final decision dismissing Plaintiff-Appellant's Amended Complaint on March 31, 2025. Under Federal Rule of Appellate Procedure 4(a)(1)(A), Plaintiff-Appellant timely filed a Notice of Appeal on April 7, 2025. This Court has jurisdiction to hear Plaintiff-Appellant's appeal from that final decision under 28 U.S.C. § 1291.

The district court purported to grant the plaintiff leave to amend, but only in a different docket by amending the pleading of a related case, where the plaintiff was already entitled to amend his original complaint as a matter of course per FRCP Rule 15(a)(1). Such a purported leave to amend contemplating future activity in a different docket does not make the March 31, 2025 decision any less final due to the case-by-case approach required by the Supreme Court in *Hall v.*

*Hall*, 584 US 59 (2018), which contemplates whether all substantive issues have been decided in a particular docket and whether any activity related to substantive issues will occur in that docket. In the case appealed here, all claims were dismissed, all substantive issues decided, and the district instructed that all future filing was to occur in the docket of the "consolidated" case.

In any event, the plaintiff does not intend to amend his dismissed without prejudice claims from this case into the related and purportedly "consolidated" case as they are so encumbered by erroneous legal rulings that this would be wasteful, and the district court cannot properly consolidate a hollow docket from which it dismissed all claims with another case for jurisdictional reasons.

## STATEMENT OF THE ISSUES

1. The district court ignored a substantial amount of the fundamental allegations of the pleadings, directly contradicted the plaintiff's pleadings, drew inferences against the plaintiff, and failed to draw reasonable inferences in favor of the plaintiff. Is a district court required to read the pleadings, accept the plaintiff's well-pleaded factual allegations as true, and draw reasonable inferences in his favor therefrom?

2. The district court assumed that an August 1, 2022 snapshot of the internet created by a defendant and included in an exhibit represented all of the

contents of the internet, and all of the internet defamatory materials that the plaintiff alleged that existed on July 29, 2022. Can a district court properly prevent a plaintiff from alleging that the contents of pages on the internet were different on July 29, 2022 from the contents as they appeared in an exhibited snapshot created by a defendant on August 1, 2022?

3. The district court did not permit the amended complaint's claims to relate back to the Original Complaint despite their arising out of the same conduct, transaction, occurrences or series of transactions or occurrences. Is a district court required to accept the relation back of claims for claims related to events that defendants are provided notice of?

4. The district court did not apply civil conspiracy or the fundamental joint causation doctrines of New York law. As a matter of New York law and federal pleading rules, must factual causation be separately alleged for defendants who are acting in concert and cause the injury jointly?

5. The district court did not permit the amended complaint's claims to relate back to the original complaint with respect to defendant Epstein, who did not argue timeliness, and who fraudulently concealed the true identities of the other defendants while the plaintiff made a mistake in failing to realize that he was a proper defendant. Does fraudulent concealment and mistake prevent the statute of limitations from protecting a defendant from liability?

6. The district court dismissed the plaintiff's intentional infliction of emotional distress claims without analysis because he also brought defamation claims, which were all dismissed with prejudice. Is a district court required to consider whether a plaintiff's intentional infliction of emotional distress claims provide an alternative claim or separate basis for relief after dismissing all defamation claims with prejudice?

7. The New Jersey Plaintiff was injured by the defendants in his mental tranquility by being portrayed in a false light and by an invasion of his privacy. Do New York choice of law rules allow for a New Jersey plaintiff to bring claims under New Jersey law for injuries sustained there?

8. The district court dismissed all of the plaintiff's defamation claims with prejudice despite indicating that he could cure the purported defects of at least part of his defamation claims. When a plaintiff can cure a defect in a pleading identified by the district court, and such a defect is cured by his proposed amended complaint, can a district court properly dismiss those claims with prejudice and refuse to allow the proposed amended complaint to take effect?

9. The district court held that the plaintiff could never recover non pecuniary loss damages under a fraud theory according to New York law, even if he could plead some pecuniary damages. According to New York law, can a

plaintiff recover for damages other than pecuniary loss provided that he can plead at least some pecuniary loss?

10. The district court denied a motion to disqualify attorneys (Schaerr-Jaffe LLP) who engaged in concurrent adverse representation between clients. Since then these same attorneys argued to shift liability from one set of clients to another set of clients in related matters. Are such conflicts waivable?

11. The district court purported to apply the "no set of facts standard" even as it ignored and contradicted the factual pleadings of the plaintiff, and made factual inferences against him. According to the "no set of facts" standard this Court instructs district courts to apply to pro se litigants, can a district court ignore factual scenarios pleaded, inferrable or reasonably imaginable that would allow a pro se plaintiff's claims to succeed?

12. The district court ignored the plaintiff's factual allegations, did not give him the opportunity to raise arguments pertaining to issues it raised *sua sponte* prior to dismissing his claims with prejudice, and refused to follow the procedures mandated by law. Does a district court have to apply legally mandated procedures (in this case the Federal Rules of Civil Procedure) and provide a plaintiff with an opportunity to be heard as part of due process,

fully and fairly deciding the issues, and meeting the standards of minimal fairness?

## STATEMENT OF THE CASE

### A.     Local Rule 28.1(b) Summary.

On July 28, 2023 Plaintiff-Appellant Gideon Rapaport filed his *pro se* Original Complaint against John Does asserting claims of defamation, defamation per se, false light and invasion of privacy and intentional infliction of emotional distress. On January 2, 2024 he was granted expedited discovery subpoenas that enabled him to identify the Doe defendants. On May 24, 2024 the plaintiff filed his amended complaint, that identified defendants Iyer, Garrett and Epstein as the proper defendants, and added claims of civil conspiracy, injurious falsehood against all and tortious interference and fraud against defendant Epstein. All defendants moved to dismiss with prejudice for failure to state a claim per FRCP Rule 12(b)(6). All of the plaintiff's claims against defendants Iyer and Garrett were dismissed with prejudice and they were terminated from the docket. All of the plaintiff's claims against defendant Epstein were dismissed with prejudice except for tortious interference and fraud, that were dismissed without prejudice. The Honorable Judge Jessica G. L. Clarke presided over all relevant activity in the case. This appeal follows.

**B.** **Defendants Iyer and Garrett Form A Civil Conspiracy To Defame Plaintiff After Learning That Defendant Epstein Would Place Plaintiff In A Supreme Court Clerkship**

In mid-July 2022 defendants Iyer and Garrett, students of NYU Law and presidents of the local chapter of the Federalist Society for academic years 2021/22 and 2022/23 respectively learned that the plaintiff was successfully recommended by defendant Epstein, a law professor and noted clerkship placer, to the James Kent Academy program of the Federalist Society. Because this program is attended primarily by former or future US Supreme Court clerks this caused them to believe that defendant Epstein would recommend and place the plaintiff in such a clerkship instead of one of them.

They subsequently formed a civil conspiracy to prevent the plaintiff from being so placed by defendant Epstein by means of defamation, and divided the workload between themselves each according to their particular advantageous circumstances. Defendant Iyer was an employee of Kirkland & Ellis LLP in New York and so would use his building access to create the defamatory forgery purporting to show a page posted at the security desk of the New York office at 601 Lexington Avenue with an image of the plaintiff and the text:

> Do Not Admit
> Gideon Rapaport
> Kirkland & Ellis

Defendant Garrett on the other hand, as the incoming chapter president of the NYU Federalist Society, was coincidentally scheduled to attend the Student Leadership Conference of the Federalist Society, placing him in proximity to staff and officers of the organization. That conference was scheduled just a few days before the James Kent Academy would begin, and would provide defendant Garrett with the opportunity to directly expose decision makers at the organization to the defamatory statements and forgery posted online by defendant Iyer if they would not become sufficiently viral on their own to have the desired impact.

**C.  Defendant Iyer Creates The First Version of Defamatory Forgery And Pseudonymously Publishes It Online Alongside Defamatory And Otherwise Tortious Statements**

On or about July 29, 2022, defendant Iyer pseudonymously published defamatory statements that the plaintiff had been fired from his summer associate position Kirkland & Ellis LLP for sexual harassment and the first version of a forgery A3 meant to support those contentions online at Reddit.com and Top-Law-Schools.com. The forgeries were digitally manipulated images created in two versions A3-A6 purporting to show a "Do Not Admit" notice at the security desk of 601 Lexington office of Kirkland NY including the plaintiff's name, face and the name of the firm.

17

These defamatory statements and the forged image were accompanied by a significant amount of material about his personality, habits, mannerisms, modes of dress and pastimes, as well as a discussion of the plaintiff's ideological leanings in order to mask the attack as coming from ideological opponents A56. The publication of such information about the plaintiff, who is a private person, invaded his privacy and depicted him in a false light, not just a defamatory one.

**D.     Defendants Iyer and Garrett Defame Plaintiff To Defendant Epstein And Staff Of The Federalist Society While Defendant Garrett Attends The Student Leadership Conference Of The Federalist Society**

On or about July 29, 2022, defendant Garrett capitalized on his attendance of the Federalist Society Student Leadership Conference to fulfill his part of the civil conspiracy. There he had the opportunity to personally raise and deliver the pseudonymously published defamatory materials to Kate Alcantara and Peter Redpath, Director and Deputy Director of the Student Division of the Federalist Society respectively, as he admits to in his email to the Federalist Society "As I mentioned you over the weekend..." A59. The Student Division did not believe these defamatory allegations, in great part due to the first version of the forgery being of limited technical sophistication, as it was clear that though the paper

18

posted at the security desk was thoroughly wrinkled, the plaintiff's image was perfectly smooth because it was digitally superimposed.

Defendant Epstein on the other hand, did act upon the defamations. He republished them to Lee Otis, the director of the Faculty Division of the Federalist Society, as he had admitted in writing, and also to others as he set on his path of destroying the plaintiff's career to fullest extent of his great ability, a path he would choose to continue even after learning that the defamations were supported by forgeries, and had no basis in reality whatsoever.

### E. After First Version Of Defamatory Forgery Is Disbelieved Causing Defendant Iyer To Remove The First Version From The Internet Create A Second Version That Was Deployed With Attribution By Defendant Garrett Via Email.

After the pseudonymous posts and first forgery were not believed due to the latter's unconvincing digital manipulation, defendant Iyer removed the first version he had posted online (to which the initial defamatory and tortious statements were attached) and created a second forgery that was more technically sophisticated, and showed wrinkles on the page including on the portion showing the plaintiff's face unlike before. This second forgery, explicitly attributed to defendant Iyer by defendant Garrett A59 "see attached photo ... taken by Ajay Iyer...", alongside a repetition of the defamatory statements, was emailed to Kate Alcantara and Peter Redpath of the Federalist Society on August 2, 2022.

**F.      Firm Disproves The Defamatory Claims And Defendant Epstein Learns Of This Yet Chooses To Join Civil Conspiracy For His Own Interest By Fraudulently Covering Up For Co-Conspirators Further Defaming Plaintiff And Tortiously Interfering With His Employment Prospects.**

After being informed of the defamatory statements and materials, Lee Otis diligently investigated them. She learned from Steven Goldblatt, the Director of Human Resources of Kirkland & Ellis in New York, that there had been no complaint against the plaintiff, that no such "Do Not Admit" notice had ever been issued or posted to the best of the knowledge of the firm. Defendant Epstein was informed of these findings, yet he chose to continue to destroy the career of the plaintiff, and called him a few days after the conclusion that these defamations were false, declaring to him that he "will not clerk", and canceled his offer to become the Senior Article Editor of the NYU Journal of Law and Liberty. It was in this same call that defendant Epstein defrauded the plaintiff by specifically denying that defendants Iyer and Garrett had sent the materials A62, in order to cover up the identities of the perpetrators and prevent the plaintiff from obtaining justice.

Defendant Epstein chose to join the civil conspiracy of defendants Iyer and Garrett because he had already placed them in clerkships with Justice Jay Mitchell of the Supreme Court of Alabama and Judge Carlos T. Bea of the United States Court of Appeal for the Ninth Circuit respectively. Discovery of defendant

Epstein's punishment of the innocent plaintiff and rewarding of such culpable persons as defendants Iyer and Garrett would limit defendant Epstein's ability to place students in clerkships in the future, and so he protected the culpable parties by fraud, and sought to limit the plaintiff's career to the greatest possible extent such that he would give up on having a professional career or remaining in the United States.

### G. The Plaintiff Diligently Investigates To Discover Who Had Created And Disseminated The Defamatory Forgeries And Statements For Almost One Year But Is Unsuccessful.|

The plaintiff diligently investigated this matter with the goal of identifying who had fabricated and spread the defamations that had so grievously injured him prior to filing the Original John Doe Complaint *pro se*. Over the course of almost one year beginning in August 2022, He inquired of Lee Otis, Peter Redpath and Kate Alcantara of the Federalist Society, defendant Epstein, and numerous attorneys and law students who were aware of the defamations published and circulated by defendants Iyer and Garrett. None disclosed the identities or suspected identities of the perpetrators.

The plaintiff's investigation was stymied by defendant Epstein's fraud, because the plaintiff believed his specific denial that defendants Iyer and Garrett were not involved in the defamations.

**H.    The Plaintiff Meets With Defendant Epstein On July 28, 2023 And Shows Him The Original *Doe* Complaint To Inquire If He Has Any Information To Provide – Defendant Epstein Refuses – Resulting In Plaintiff's Filing Of The Original *Doe* Complaint That Day.**

After almost one year of diligent investigation the plaintiff met with defendant Epstein for lunch on July 28, 2023, and showed him the Original John Doe Complaint A72-A88 that he would file *pro se* later that day. The plaintiff again inquired of defendant Epstein if he had any information to provide and defendant Epstein declined, thereby continuing his prior fraud at the beginning of the plaintiff's investigation where he had specifically denied that defendants Iyer and Garrett were the perpetrators, even when faced with the consequence of the obvious consequence of that fraud, which was that the action would have to initially be brought against Doe defendants.

**I.    The Plaintiff Obtains Expedited Discovery From The District Court And Learns That Defendants Iyer, Garrett and Epstein Are Culpable Resulting In The Operative Amended Complaint Brought Against Them.**

The plaintiff obtained expedited discovery subpoenas from the district court that identified defendants Iyer, Garrett and Epstein. The responsive materials obtained from the Federalist Society are included as Ex. 2 and 3 A5-19.

22

The plaintiff then brought the operative Amended Complaint against defendants Iyer, Garrett and Epstein on May 24, 2024.

### J. The District Court Dismisses All Claims Against Defendants Iyer And Garrett With Prejudice And All Claims Against Defendant Epstein With Prejudice Except For Tortious Interference And Fraud That Were Dismissed Without Prejudice.

The district court dismissed all of the plaintiff's claims without any hearing on March 31, 2025. The plaintiff was denied the opportunity to amend any of his claims in the docket from which this appeal was taken. The district court granted in full defendants Iyer and Garrett's motion to dismiss by dismissing all claims against them with prejudice. All claims except for tortious interference and fraud were dismissed with prejudice against defendant Epstein while those two were dismissed without prejudice. The district court did not consider the plaintiff's proposed second amended complaint whatsoever with regard to defendants Iyer and Garrett, and found that it could only be sufficient in curing supposed defects in the tortious interference and fraud claims brought against defendant Epstein.

## SUMMARY OF ARGUMENT

The district court reversibly erred in multiple ways.

*First*, the district court erred by ignoring fundamental and critical allegations in the pleadings, failing to accept the truth of the well-pleaded facts of the

pleadings and make all reasonable inferences therefrom and by making inferences against the plaintiff. An example of this is the finding by the district court that the original complaint did not reference slander by oral defamatory statements when in fact the original complaint had Chapter F A76 which was titled "**Oral Component Of Character Assassination Campaign**" (emphasis original) and detailed the slander that the plaintiff was injured by. In another instance of ignoring the pleadings, the district court also found that the plaintiff did not specify whether defendants Iyer or Garrett created and published the defamatory statements and forgeries, when the operative Amended Complaint alleged that defendant Iyer did so at A53,57 before dismissing all claims against both of them with prejudice and terminating them from the docket. The district court also found that the original complaint did not reference the forwarding of the defamatory posts and materials to the James Kent Academy, when it specifically did so.

*Second,* the district court erred by making a particularly devastating inference against the plaintiff, which borders on converting the motions to dismiss to motions for summary judgment against the plaintiff without notice, by finding that an August 1, 2022 snapshot of two internet pages made by defendant Garrett and included by him in an email A7-19 represents the totality of all relevant material that is or ever was on the internet, and prevents the plaintiff from pleading that their contents were different on July 29, 2022. The district court also inferred

against the plaintiff, that he was referring only to those internet posts as shown on the August 1, 2022 snapshot made by defendant Garrett in the Amended Complaint. These inferences against the plaintiff were made despite the plaintiff's explicit provision of both versions of the defamatory forgery, with the plaintiff's allegation and explanation that the first version was removed from the internet after being disbelieved by staff of the Federalist Society late on July 29, 2022 or early in July 30, 2022 to prevent comparison with the second forgery A57, also making the district court's inference impossible in light of the allegations. The snapshot taken by defendant Garrett was not offered for its inherent truth, nor as a summary of all internet posts because the originals had been deleted by defendant Iyer by that time, though the defamatory statements originated by defendant Iyer continued being repeated.

*Third,* the district court erred in its relation back analysis required by FRCP 15. Rule 15(c)(1)(A) instructs that claims may relate back when the applicable law allows relation back, while as a matter of pure federal procedure Rule 15(c)(1)(B) allows claims to relate back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading".

Here, the applicable law is New York state law, and NY CPLR 1024 allows relation back against unknown parties: "Unknown parties. A party who is ignorant,

in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly." In terms of the relation of claims themselves, New York law tracks the federal Rule 15(c)(1)(B) with NY CPLR 203(f): "Claim in amended pleading. A claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading."

Though the district court erred in great part due to its ignoring of the original and amended pleadings, correct relation back analysis would have allowed for the plaintiff's claims relating to the oral statements and slander as well as the forwarding of the defamatory statements and materials to relate back even if the original complaint did not specifically have a chapter about the "oral defamation campaign" or specifically describe a "forwarding" of the defamatory materials to the Federalist Society (it had both). Any reasonable person would have taken notice per NY CPLR 203(f), from the original complaint of all the factual matter giving rise to the defamation, false light and invasion of privacy, injurious

falsehood and intentional infliction of emotional distress claims of the operative Amended Complaint. Rule 15(c)(1)(B) would also allow this relation back of claims independently after NY CPLR 1024 allowed the relation back of the party names after they became known. The district court also erred by only evaluating NY CPLR 203(f), and not also Rule 15(c)(1)(B) for claim relation back analysis, after correctly concluding that party name amendments relate back per NY CPLR 1024.

Furthermore, even if Rule 15(c)(1)(A) did not allow relation back of these claims against these parties, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) would require this result per the Rules of Decision Act because these rules pertaining to relation back are outcome determinative. Otherwise the federal courts would have no reason to consider New York's CPLR 215(3) statute of limitations pertaining to defamation actions in the first place.

***Fourth,*** the district court erred by refusing to apply New York law as it pertains to civil conspiracy or even fundamental principles of joint causation in tort. Even if the plaintiff had not specifically identified defendant Iyer as the creator and publisher of the defamatory forgeries and internet posts in the Amended Complaint A53,57, civil conspiracy or the basic doctrine of joint causation could have allowed the claims to continue in light of the allegation that defendants Iyer and Garrett acted together. While it is true that a civil conspiracy or

joint causation require an underlying tort, they nonetheless serve the vital role of joining in liability defendants who divide among themselves the elements of a tort in committing it together, even if no single defendant commits all factual elements alone. Instead of applying civil conspiracy, joint causation or allowing for some correction (none is actually necessary because the plaintiff *did* identify defendant Iyer as the creator of the forgeries and online posts) the district court dismissed all claims against them with prejudice.

*Fifth,* the district court erred by dismissing the defamation, injurious falsehood, false light and invasion of privacy and civil conspiracy claims brought against defendant Epstein with prejudice by incorrectly holding that they were time barred after raising the issue *sua sponte*. The original complaint was timely filed with respect to these and all other claims, and defendant Epstein did not argue for a dismissal on the basis of the statute of limitations even as he made other premature arguments such as the common interest privilege for which he improperly pleaded new facts in his motion. The plaintiff never had the opportunity to address this issue with respect to defendant Epstein, against which the operative Amended Complaint clearly relates back due to FRCP 15(c)(1)(A) which invokes New York CPLR 1024 unknown party relation back, CPLR 203(f) and FRCP 15(c)(1)(C) mistake. Defendant Epstein perpetrated fraud upon the plaintiff to prevent the identification of the culpable persons from early August of 2022 immediately after

the initial conduct giving rise to this action by phone and email up to and including the time filing of the Original Complaint on July 28, 2023 when the plaintiff provided defendant Epstein with a copy to read and provide information. The district court made this error even as it rejected the statute of limitations based arguments brought by defendants Iyer and Garrett (though it found other reasons to dismiss all claims against them with prejudice).

*Sixth,* the district court erred by dismissing with prejudice the plaintiff's intentional infliction of emotional distress claim on the theory that it is subsumed by defamation claims that were all dismissed with prejudice. While it is correct that when a defamation claim is active it subsumes IIED, but since the district court dismissed the defamation claims against all defendants with prejudice, the IIED claim was never considered in its ability to operate independently of defamation as an alternative claim. IIED has different requirements from defamation, and none of the faults incorrectly found in the defamation claims (such as a purported failures to identify their apportionment of acts resulting in factual causation or mention the oral component of the tortious conduct) would prevent the IIED claim from continuing against defendants Iyer and Garrett, while only the incorrect statute of limitations analysis with respect to defendant Epstein prevents the IIED claim from continuing against him.

**Seventh,** the district court erred by refusing to apply New York choice of law rules to allow the New Jersey plaintiff to be able to bring claims under New Jersey law for injuries he suffered in New Jersey. New York choice of law goes so far so as to adopt a doctrine often referred to as dépeçage, which provides that the same factual transactions and occurrences or issues may give rise to different claims under the laws of different sovereigns. "[T]here is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction" *Babcock v. Jackson*, 191 N.E.2d 279, 12 N.Y.2d 473 (N.Y. 1963). Instead of following this principle, the district court erred by assuming that because the plaintiff brought his defamation and other claims under New York law, and that they arise out of the same facts, that the plaintiff's false light and invasion of privacy claims alleged under New Jersey law must necessarily be considered under New York law as well (and thus fail). The district court failed to appreciate that unlike defamation with its global scope of reputation in general, that New Jersey false light and invasion of privacy protect a person solely in their local community (New Jersey in this case) and their mental tranquility respectively. The district court also did not consider that for this matter, New York and New Jersey laws are so similar as to all other counts such as defamation or tortious interference that specification of jurisdiction was not necessary for those claims because there was no conflict.

*Eighth,* the district court erred even in applying its own erroneous reasoning by dismissing the defamation claims against defendant Iyer and Garrett with prejudice and terminating them from the docket. The district court never held, even as it ignored the pleadings, made inferences against the plaintiff, and erred as to the substantive law, that there was any fault that would justify such a dismissal with prejudice with respect to them. No explanation was provided for the dismissal with prejudice of the defamation claims against them, nor was there any specification as to *who* the plaintiff could refile the portion of his defamation claim that the plaintiff was advised could be refiled (which the district court found to be only the portion relating to the online posts because it did not consider other parts of the original pleading relating to oral statements or the forwarding of the defamatory materials that the amended complaint could also related back to).

*Ninth,* the district court erred by making significant legal errors in limiting the plaintiff's dismissed without prejudice claims. The sole claims that were not dismissed with prejudice are the tortious interference and fraud claims that were brought solely against defendant Epstein.

The district court erred in holding that the plaintiff did not cause the plaintiff pecuniary loss by delaying the plaintiff's identification of the proper defendants necessitating expedited discovery subpoenas, or that only pecuniary losses may be recovered (they must be pleaded but are not all that may be recovered). The

conclusion of the district court that defendant Epstein's fraud that caused the plaintiff to wrongly believe that defendants Iyer and Garrett were not the proper defendants at the outset of his investigation did not hinder his investigation is both erroneous and simply unreasonable. Sending a person on a "wild goose chase" is not the only way to hinder or obstruct an investigation, and directly lying about the culpability of the culpable parties is as or more injurious.

*Tenth,* the district court erred by failing disqualifying Schaerr-Jaffe LLP from the conflicted concurrent representation of defendants Iyer and Garrett that cannot be remedied by waiver. Such an adverse concurrent representation is already evident by the material already in the record, and in their attempt to remedy it by waiver defendants Iyer and Garrett have made perjured statements by declaration as is demonstrated by materials already in the record. It is inevitable that they will have to testify against each other because of how they divided the various roles and actions undertaken in their civil conspiracy. Defendant Garrett specifically identified defendant Iyer as the source of the second defamatory forgery in a writing already in the record. In order to avoid liability, defendant Iyer will have to claim that defendant Garrett was untruthful in his attribution of the second forgery to defendant Iyer, while defendant Garrett will have to identify Iyer as the source of the second forgery or impeach his own writings already exhibited. Notably, by adverse representation with defendant Iyer, defendant Garrett cannot

blame defendant Iyer for deceiving him, thereby hypothetically reducing his liability to arising from negligence as opposed to intentional conduct, which could mean the difference between having the ability to have any judgment debt discharged in bankruptcy or not.

**Eleventh,** the district court erred in its faulty purported application of the "No Set of Facts" standard that this Circuit has implemented for pro se litigants. Although the plaintiff does not require the application of this standard in order to succeed on any of his claims, the district court's failure to meet this standard further emphasizes that it even falls far short of the general standard applied to the actions of parties with representation. Beyond ignoring the facts that would allow the claims to proceed, the district court specifically disobeyed this standard in the clearest possible way by making inferences against the plaintiff, thereby negating viable potential sets of facts that this standard explicitly requires be considered.

**Twelfth,** the district court erred in depriving the plaintiff of due process by failing to follow the basic procedures required by law, such as those guaranteeing him the opportunity to be heard by ignoring fundamental parts of his pleadings or applying a different set of standards than those required by law such as by making inferences against him when as a matter of law all reasonable inferences must be made in his favor. By ignoring fundamental parts of the pleadings as they relate to the factual content, thereby refusing to engage with the actual issues of the case,

the district court also did not fully and fairly decide the issues before it or meet minimal standards of fundamental fairness.

## STANDARD OF REVIEW

This Court "review[s] a district court's grant of a motion to dismiss the complaint on the pleadings de novo and "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. New York Times*, 940 F.3d 804 (2d. Cir. 2019) citing *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). A plaintiff need only state a claim to relief that is plausible, *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012), an "exceedingly low" burden, *Elias*, 872 F.3d at 111 (Lohier, J., concurring and dissenting in part) ("[A]s the majority points out, the plausibility threshold is exceedingly low." (citing *Anderson News*, 680 F.3d at 184-85)). This "exceedingly low" burden "'does *not* impose a *probability* requirement at the pleading stage,'" and "'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely.'" *Anderson News*, 680 F.3d at 184-85 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Notably, "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule

12(b)(6) motion. 'Fact-specific question[s] cannot be resolved on the pleadings.'" *Id.* at 185. Thus, "[a] court ... may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Id.*

This Court generally reviews the refusal to grant leave to amend a complaint for abuse of discretion, but where, as here, a court denies "leave to amend on the ground that the proposed new complaint does not state a claim on which relief can be granted"—i.e., futility—it is "review[ed] *de novo*." *Id.* at 185-86. Futility exists "only where it is beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999).

This Court reviews denials of motion to disqualify counsel under an abuse of discretion standard, but the requirement that counsel not engage in unwaivable concurrent adverse representations is an exacting one that is necessary to protect the integrity of the legal system. In *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir. 1976) this Court held that concurrent representation of clients with adverse interests is "prima facie improper", that "an attorney must avoid not only the fact, but even the appearance of representing conflicting interests.". Any "diminution of vigor" *Id.* or risk thereof is sufficient to disqualify an attorney.

## **ARGUMENT**

I. **Vacatur Is Required Because The District Court Disregarded Settled Rule 12(b)(6) Standards by Ignoring Fundamental And Critical Contents Of The Pleadings, Failing To Assume The Truth Of Plaintiff's Well-Pleaded Facts (And Favorable Inferences Therefrom) And Making Inferences Against The Plaintiff In Dismissing All Of Plaintiff's Claims.**

The district court did not "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. New York Times*, 940 F.3d 804 (2d. Cir. 2019) citing *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). Failure to meet this minimal standard requires vacatur of the opinion below.

A. **The District Court Erred In Finding That Plaintiff's Original Complaint Only Related To "Anonymous Internet Posts" When In Reality It Had A Chapter Detailing Defamatory Oral Statements Titled "Oral Component Of Character Assassination Campaign".**

The decision below incorrectly found that the plaintiff's timely filed original pleading only set out material related to libel through "Anonymous Internet Posts" A36, and so that the operative Amended Complaint could only relate back to to claims relating from the publishing of those posts. The district court held: "Student Defendants could not have been fairly apprised as to the other alleged defamatory statements, because they were not mentioned in the original complaint, which focused only on the 'anonymous internet posts." Id.

This was held to prevent the relation back of defamation relating to slander by making the same defamatory statements orally, such as defendant Garrett admitted to doing in writing "As I mentioned to you over the weekend, my understanding is that Gideon Rapaport was fired from his summer associate position at Kirkland & Ellis NY last week for sexually harassing a practice assistant or an attorney." A8, or forwarding those defamatory materials as defendant Garrett did in A8. The *pro se* Original Complaint featured Chapter F, titled **"Oral Component of Character Assassination Campaign"** (emphasis original) which described the oral defamations. Clearly anyone reading the Original Complaint would be apprised that it also related to oral statements.

> B. **The District Court Erred In Finding That The Plaintiff's Original Complaint Did Not Allege The Forwarding Of The Defamatory Materials To The James Kent Academy Program Of The Federalist Society When In Reality It Specifically Alleged The Targeting Of That Program By The "Forwarding" Of The Defamatory Materials.**

The Original Complaint not only covered oral statements, but it also specifically alleged that the Doe defendants specifically timed their defamatory publications and the "forwarding" of those defamations to the James Kent Academy program of the Federalist Society in order to cause direct and maximum injury to the plaintiff A75, the Original Complaint stated. Clearly anyone reading the Original Complaint would be apprised that it alleged that the Does had forwarded the defamatory materials to the James Kent Academy program of the

Federalist Society as defendant Garrett did first by oral statement and references while he attended the Student Leadership Conference of the Federalist Society and then again when he actually forwarded the defamatory statements and forgery via Email A7-19. Defendant Garrett specifically forwarded this material to Lee Otis, the Director of the Faculty Division of Federalist Society (and thus the James Kent Academy program) writing: "I don't know Lee Otis, though, so I'm sharing with you two Professor Epstein's concerns. If you feel Lee Otis should know, could you please notify her?" A8.

C. **The District Court Erred In Finding That The Amended Complaint Did Not Specifically Identify Whether Defendant Iyer Or Garrett Created the Two Defamatory Forgeries and Published the Pseudonymous Defamatory Internet Posts When In Reality It Specifically Identified Defendant Iyer.**

The decision below held that the remaining part of the defamation claims against defendant Iyer and Garrett had to be dismissed against them because the Amended Complaint did not specify which one of them had published the defamatory internet posts. This dismissal, as for all claims against defendants Iyer and Garrett, was with prejudice.

The district court held: "Plaintiff does not allege which individual Defendant made which statement. Indeed, Plaintiff does not directly allege that Student Defendants made these statements at all … without being able to

ascertain which Defendant made which statement, the Court cannot conduct the remaining analysis: for instance, the "fault" question would need to be analyzed differently as between Defendant Iyer and Defendant Garrett" A40-41.

The Amended Complaint clearly and specifically identified defendant Iyer as the creator and publisher of the defamatory internet posts and forgeries at multiple places: "pseudonymous online posts by defendant Iyer" A54 and "the online materials, created and posted pseudonymously by defendant Iyer" A57. The plaintiff's motion to disqualify Schaerr-Jaffe LLP and reply in support thereof delved deeply into this issue, and argued that precisely because the factual actions were different (with defendant Iyer creating the forgeries and doing the online posts and defendant Garrett responsible for the in-person and forwarding portion of the conspiracy, as alleged in the Amended Complaint) that there existed an unwaivable conflict of interest between the two. A331-A342, A362-A374.

**II.  The District Court Erred In Making An Inference Against The Plaintiff By Holding That The Snapshot of Internet Posts Included By Defendant Garrett In His August 2 E-mail Reflected The Entirety Of The Internet Or All The Internet Posts Referenced By The Plaintiff – Who Specifically Alleged That By Then The First Version Of The Forgery And Initial Defamatory Posts Were Deleted To Prevent Detection of The Second Forgery By Comparison.**

The opinion below directly contradicted the plaintiff's allegations that defendant Iyer, as part of a civil conspiracy with defendant Garrett, posted the first

version of the defamatory forgery and the defamatory and tortious statements online.

According to the district court, the plaintiff cannot contradict the August 1, 2022 snapshot of two pages on Reddit.com and Top-Law-Schools.com that defendant Garrett annotated and forwarded to the Federalist Society on August 2, 2022 by claiming that the contents of those pages were different on July 29, 2022, or that the plaintiff referred to other pages on those websites in addition. The fatal errors in this approach relate to time and scope, by assuming that the contents of the internet are unchanging, that the plaintiff is prevented from alleging that defendant Iyer removed the first version of the forgery so that it would not be compared with the second, more sophisticated forgery that he sent to defendant Garrett, and that defendant Garrett sent in the email A7-19. The district court also errs by assuming the authenticity of defendant Garrett's snapshot, which was not offered as an exhibit for its inherent truth but rather only the material conveyed by him to the Federalist Society, and was at the very least edited by highlighting.

The plaintiff clearly alleged that by August 1, 2022 defendant Iyer had removed the first version of the defamatory forgery "because the image was suspected of being a fake by those who saw it, defendant Iyer apparently determined to make another image, and removed the first image from the internet so as to prevent comparison between the two." A57. Thus the district court's

conclusion that the plaintiff contradicts his allegation that the first version of the forgery had been posted online because it was not visible in a snapshot taken on August 1, 2022, when the second version and been prepared by defendant Iyer and sent to defendant Garrett for attributed deployment "see attached photo … taken by Ajay Iyer..." A8, is clearly incorrect.

The district court's reliance on other cases[1] is not relevant here because they were not about online materials, which may be edited, deleted or added to at any time. They are also not relevant because defendant Garrett's email and its attachments are not offered for their inherent truth (indeed they are offered for the opposite proposition because this is a defamation case), and determinations as to authenticity or credibility cannot be made at the motion to dismiss stage due to their factual nature.

By the district court's logic, the plaintiff should also not be entitled to claim that the two defamatory forgeries are defamatory as the result of digital image manipulation, because they must be accepted as the perfect manifestation of reality (which would be impossible because they are clearly different forgeries due to how the wrinkles of the page appear on the plaintiff's face in the second but not the

---

1   These cases cited by the district court are *KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 365 (S.D.N.Y. 2014), Kirkendall v. Halliburton, 707 F.3d 173, 175 n. 1 (2d Cir. 2013), Koulkina v. City of New York, 559 F. Supp. 2d 300, 329 (S.D.N.Y. 2008).

first), even as the director of human resources of the office has stated that they were never issued or displayed to the best of the firm's knowledge.

The plaintiff's proposed Second Amended Complaint also clearly addresses these supposed shortcoming in the most clear and specific terms, and should have been allowed to become effective A89-137 instead of resulting a dismissal with prejudice.

**III. The District Court Erred In It's Relation Back Analysis Per FRCP Rule 15 And New York Law By Holding That The Operative Amended Complaint Could Only Relate Back To Defamatory Internet Posts And Not Slander Or The Forwarding Of The Defamatory Internet Posts.**

   **A. These Errors Are Downstream From Errors Identified In Part I And II Where The District Court Ignored or Contradicted The Original And Amended Complaints.**

Even according to the district court's narrow view of relation back, the original complaint contained sufficient material to provide notice of oral defamations as described in it's Chapter F, titled "**Oral Component Of Character Assassination Campaign**" (emphasis original) A76 and because it specifically alleged the "forwarding" of the defamatory materials to the James Kent Academy program of the Federalist Society A75.

   **B. The District Court In It's Application Of NY CPLR 203(f) Invoked By FRCP Rule 15 (c)(1)(A)**

Though this is a largely academic question due to correction of the district court's error being available through the actual consideration of the key passages of the Original Complaint that provide notice even in the narrowest possible reading of the relation back as discussed *supra* in A, the district court did not apply NY CPLR 203(f) correctly.

Here, the applicable law is New York state law, and NY CPLR 1024 allows relation back against unknown parties: "Unknown parties. A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly." In terms of the relation of claims themselves, New York law is quite similar to federal Rule 15(c) (1)(B) with NY CPLR 203(f): "Claim in amended pleading. A claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading."

Any reasonable person would have taken notice per NY CPLR 203(f), from the original complaint of all the factual matter giving rise to the defamation, false

light and invasion of privacy, injurious falsehood and intentional infliction of emotional distress claims of the operative Amended Complaint. For example, in *Jennings-Purnell v. Jennings*, 107 A.D.3d 513, 968 N.Y.S.2d 27 (1st Dep't 2013), an action related to real estate fraud, the plaintiff was allowed to add a claim arising from notarial misconduct though the action had not previously addressed notarial misconduct at all. "[A]lthough the prior amended complaint did not mention notarial misconduct, it clearly gave the defendant notice of the transaction and occurrence in which notarial misconduct took place" *Id.* Defendants Iyer and Garrett knew full well all of the actions they had taken to destroy the career of the plaintiff as they set out in the course of conduct that is a subject of this action.

### C. The District Court's Did Not Consider FRCP Rule 15(c)(1)(B) For Applicability To The Claims After It Analyzed Party Substitution Per NY CPLR 1024

Though this is also a largely academic question due to correction of the district court's error being available through the actual consideration of the key passages of the Original Complaint that provide notice even in the narrowest possible reading of the relation back as discussed *supra* in A, some consideration should also be given to possible relation back according to Rule 15(c)(1)(B). The federal rule provides that: "An amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out

of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading". The "attempted to be set out" language should provide leeway to a plaintiff who though remarkably accurate, does not have perfect information and is stymied by the defendants striking at him from behind the veil of anonymity as defendants Iyer and Garrett did.

The district court did not explicitly discuss or organize the cases it cited according to which procedural path available but the district court's result, both under New York and federal relation back analysis, not only ignores the underlying materials as described *supra* in A, but also holds the original pro se complaint brought against John Doe's to an extremely high standard that contradicts the requirements revolving around notice to the defendant, which is clearly satisfied by the Original Complaint.

## IV. The District Court Erred In Failing To Apply New York Law As To Civil Conspiracy Or Other Fundamental Joint Causation Doctrines.

### A. These Errors Are Downstream From Errors Identified In Part I And II Where The District Court Ignored or Contradicted The Original And Amended Complaints.

The district court operated first by dismissing all of the plaintiffs claims through a variety of errors, including ignoring or contradicting the pleadings, and did not consider whether or not the claim of civil conspiracy or the basic norms of joint causation of New York law could rescue any of those claims. If the errors

identified in Part I and II were not made by the district court, this analysis may be unnecessary.

### B. Civil Conspiracy And Joint Causation Would Both Have Allowed The Defamation Claims To Continue Against Defendants Iyer, Garrett and Epstein If Applied Correctly Even In Light Of The Factual Allegations The Court Ignored Or Contradicted As Discussed in Subpart A.

The district court dismissed with prejudice the defamation claims against defendants Iyer and Garrett because it found that it could not maintain an action against both of them due to the purported failure of the plaintiff to identify which one (the plaintiff did so as shown in Part I Subpart C) preventing the analysis of fault. The district court put the cart before the horse, and concluded that because fault could not be assigned to an individual jointly liable tortfeasor, that no tort claim was properly alleged. "[A] plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort, and establish that those actions were part of a common scheme" *McSpedon v. Levine,* 158 A.D.3d at 621, 72 N.Y.S.3d 97. While it is true that an independent tort must eventually be *proven* to support a civil conspiracy claim, there is no authority that suggests that it need be *alleged* independently as to fault or anything else which may be properly joined through the device of civil conspiracy. Defamation is an actionable tort, and the plaintiff may plead civil conspiracy to connect the necessary actions across different defendants.

The district court's erroneous approach also contradicts the basic norms of joint causation, and joint and several liability. When a plaintiff can properly allege that a group is liable, but cannot point to which individual actually committed the factual action giving rise to fault, joinder is still possible (though this plaintiff can and did allege that it was defendant Iyer who created and posted the defamatory materials online only to be ignored). A classic example of this is in medical malpractice when an unconscious patient is injured during a procedure, and can point to the method and cause of the injury, but not which specific member of the surgical team is at fault. According to the district court's reasoning, recovery would be categorically impossible in all such cases. Going beyond mere joint causation and liability, New York law even allows plaintiffs to recover from defendants who merely produced the similar type of product with no proof that the plaintiff had been injured by their particular product, as in the DES mass tort class action litigation *Hymowitz v. Eli Lilly and Co.*, 73 N.Y.2d at 512, 541 N.Y.S.2d 941, 539 N.E.2d 1069. The New York Court of Appeals held: "It is merely a windfall for a producer to escape liability solely because it manufactured a more identifiable pill, or sold only to certain drugstores." Even manufacturers who could prove that they had not created the injurious pills were joined in liability with those who were.

Likewise, the civil conspiracy of defendants Iyer and Garrett, which defendant Epstein joined, joins him in liability with all of their torts as well arising

from the same facts alleged in the Original Complaint. *Bedard v. La Bier*, 20 Misc.

2d 614, 194 N.Y.S.2d 216 (Sup 1959); *Ballantine v. Ferretti*, 28 N.Y.S.2d 668 (Sup

1941); *National Drama Corporation v. Burns*, 183 N.Y.S. 739 (Sup 1920).

**V.  The District Court Erred In Dismissing With Prejudice The Defamation, Injurious Falsehood, False Light Invasion Of Privacy, Intentional Infliction Of Emotional Distress Claims Brought Against Defendant Epstein By Reason Of The Statute Of Limitations – Who Did Not Even Raise The Issue In His Motion To Dismiss – When As A Matter Of Law The Claims Against Him Relate Back To The Timely Filed Original Complaint And His Fraudulent Concealment Prevents The Statute of Limitations From Applying To Him Regardless.**

**A. Defendant Epstein Had Notice Satisfying The Relation Back Analysis That Was Applied To Defendants Iyer And Garrett.**

Defendant Epstein did not raise any defense relating to the statute of

limitations or timeless despite raising other premature defenses such as the

common interest privilege. It is highly peculiar for a district court to *sua sponte*

raise the timeless of the complaint filed against one party, and dismiss claims

against them with prejudice, after it had denied similar claims actually raised by

other defendants who are similarly situated, especially when the *sua sponte* party

would have additional roadblocks in asserting it such as fraudulent concealment

and mistake.

Defendant Epstein has already admitted in writing to sending the defamatory

materials to Lee Otis who was the administrator in charge of the James Kent

Academy of the Federalist Society A63. This is precisely the conduct covered by

the Original Complaint when it alleged that the Does had engaged in a "forwarding" of the defamatory materials, thus he would have notice that he was a proper defendant. Defendant Epstein was also in communication with the other Does as demonstrated by exhibit A7-19, further providing him notice of his involvement in the culpable conduct.

### B. Defendant Epstein Also Qualifies For Relation Back By Reason Of The Plaintiff's Mistake.

In perpetrating a fraud upon the plaintiff calculated to prevent him from identifying defendants Iyer and Garrett as defendants, defendant Epstein mixed untruths with half-truths. He specifically denied that defendants Iyer and Garrett were involved or had sent the materials, and instead told the plaintiff that he had sent them (and also admitted to doing so in writing A63) without receiving them from anyone else.

Considering that defendant Epstein was almost eighty at the time, and clearly did not have any knowledge of either Reddit.com or Top-Law-Schools.com, nor the inclination to browse those websites in his very limited spare time, the plaintiff did not believe him as to his claim that he had 'warned' the Federalist Society on his own, and instead believed that someone else had been involved. The plaintiff had sufficient information in the form of what may now be understood as an admission, but he made a mistake in not believing the half-truth

portion of defendant Epstein's fraud because it seemed to be a deflection, though he did believe defendant Epstein's specific denial that defendants Iyer and Garrett were the culpable persons.

Because the plaintiff met with defendant Epstein and showed him the Original John Doe Complaint on the day of filing, defendant Epstein had notice of the action and the mistake made by the plaintiff in not naming him, and believing his prior admission (though it was made as deflection among a series of lies) within the amount of time specified by Rule 15(c)(1)(C), and knew that he was a proper defendant.

### C. Defendant Epstein Cannot Benefit From The Statute Of Limitations As A Defense Because He Fraudulently Concealed.

Defendant Epstein perpetrated fraud upon the plaintiff in order to prevent him from advancing his case, as well as retaliating against the plaintiff after he had filed the Original John Doe Complaint *pro se*. Defendant Epstein hoped that by causing the plaintiff to lose the only two jobs he had been able to obtain after graduating law school, that were both part time and JD-advantaged, that the plaintiff would give up on his cause and on remaining in the United States.

Fraudulent concealment provides an additional reason for the federal equitable tolling and state law equitable estoppel of defendant Epstein's protection from the statute of limitations. Defendant Epstein significantly derailed the

investigation of the plaintiff by convincing him, just as he was beginning his investigation, that defendants Iyer and Garrett were not the culpable persons.

The doctrine of equitable estoppel precludes a defendant from using the statute of limitations as a defense when the defendant's affirmative wrongdoing produced the long delay between the accrual of the cause of action and the institution of the legal proceeding. *Dowe v. Leeds Brown Law, P.C.*, 419 F. Supp. 3d 748 (S.D.N.Y. 2019) (construing New York law); *Jacobson Development Group, LLC v. Yews, Inc.*, 174 A.D.3d 868, 106 N.Y.S.3d 119 (2d Dep't 2019); *Huss v. Rucci Oil Company, Inc.*, 58 Misc. 3d 21, 68 N.Y.S.3d 298 (App. Term 2017). Fraud, misrepresentation and deceptions are the most convincing reasons for such an estoppel. *Geiss v. Weinstein Company Holdings LLC*, 383 F. Supp. 3d 156 (S.D. N.Y. 2019); *Ramiro Aviles v. S & P Global, Inc.*, 380 F. Supp. 3d 221 (S.D. N.Y. 2019); *Zumpano v. Quinn*, 6 N.Y.3d 666, 816 N.Y.S.2d 703, 849 N.E.2d 926 (2006); *Simcuski v. Saeli*, 44 N.Y.2d 442, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978).

The plaintiff was also clearly aware of the cause of action but just not the identities of the perpetrators, and exercised due diligence by his many inquiries of persons who had relevant information such as defendant Epstein. *El Basty v. AmGuard Insurance Company*, 412 F. Supp. 3d 267 (E.D. N.Y. 2019)

The plaintiff never had the opportunity to raise this or any timeliness-related arguments with respect to defendant Epstein due to the district court's *sua sponte* dismissal with prejudice on this ground.

**VI. The District Court Erred In Dismissing With Prejudice Plaintiff's Intentional Infliction Of Emotional Distress Claim Without Analysis Merely For Potentially Being Subsumed By Defamation Even After It Dismissed All Defamation Claims With Prejudice Against These Defendants.**

The district court dismissed the plaintiff's intentional infliction of emotional distress claims on the grounds that they were duplicative of and subsumed by the plaintiff's defamation claims. This prevented the plaintiff's IIED claim from operating as an alternative claim and theory after the district court dismissed all of the plaintiff's defamation claims with prejudice against all parties.

All of the short-comings identified by the district court in the plaintiff's defamation claims do not apply to IIED, which although requiring a high bar for the malfeasance of defendants, is a very open ended tort.

Notice as to whether or not oral statements were made or materials were forwarded in the Original Complaint was a vital component of relation back is the primary reason that the district court dismissed the plaintiff's defamation claims with prejudice, alongside the finding of a failure to allege publication of the

defamations (both reasons are faulty as described in Parts I-IV). These are no bar to IIED.

The Original Complaint clearly provided notice to the Doe defendants that they had caused the plaintiff extreme emotional distress by engaging in extreme and outrageous conduct.

By fabricating and virally spreading the defamatory statements and forgeries that the plaintiff was fired for sexual harassment, invading his privacy and portraying in the defamatory forgeries, the defendants caused the plaintiff extreme emotional distress. This is evident throughout the Original John Doe Complaint filed by the plaintiff *pro se*. The defendants had ruined the plaintiff's career, caused him imminent fear of expulsion from his law school by filing false complaints about him, wrongly exposed him to scorn, derision and aversion for being a sex criminal, prevented him from normally participating in society, joining the legal profession, or making any return on the educational path he pursued for his entire adult life. Defendants Iyer and Garrett also spoiled the plaintiff's unique relationship with defendant Epstein, who was the plaintiff's favorite law professor, as well as one of the primary reasons the plaintiff chose to attend the New York University School of Law. The defendants caused this extreme emotional distress by the extreme and outrageous conduct of forging evidence and fabricating false claims of firing for sexual harassment. They also continued to repeat and amplify

these defamatory statements orally months beyond the initial defamation across the United States.

**VII.  The District Court Erred In Refusing To Apply New York Choice Of Law Rules To Evaluate Claims Brought Under New Jersey Law By The New Jersey Plaintiff.**

The Court erred in its choice of law analysis by not applying New Jersey law to the false light and invasion of privacy claim as endorsed in the Second Circuit's citation of *Catalanello v. Kramer*, 18 F. Supp. 3d 504, 512 (S.D.N.Y. 2014) in *Kinsey v. New York Times Co.*, 991 F.3d 171, 175 (2d. Cir. 2021) n. 21. The Court took the plaintiff's arguments relating to his "local community" as merely arguments based on domicile when they referred to the location of the injury, which is also New Jersey, and together with domicile should be dispositive. New York choice of law analysis is done by issue as legally defined, rather than being generally attached to shared facts or parties as the Court reasoned in reference to the plaintiff's bringing of other claims under New York law. For example, in determining that New York law would apply to a car accident that occurred (exclusively) in Ontario, Canada involving New York residents the New York Court of Appeals concluded "There is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction" *Babcock v. Jackson*, 12 NY2d 473 at 484. Instead of following this principle, the district court

erred by assuming that because the plaintiff brought his defamation and other claims under New York law, and that they arise out of the same facts, that the plaintiff's false light and invasion of privacy claims alleged under New Jersey law must necessarily be considered under New York law as well (and thus fail). The district court failed to appreciate that unlike defamation with its global scope of reputation in general, that New Jersey false light and invasion of privacy protect a person solely in their local community (New Jersey in this case) and their mental tranquility respectively.

Unlike defamation, which has a global and reputational scope, New Jersey false light and invasion of privacy claims have a purely local scope protecting only the mental tranquility and privacy of individuals in their local community, and not their reputation. In *Romaine v. Kallinger*, 537 A.2d 284 (NJ 1988), the New Jersey Supreme Court distinguished that: "The interest protected by the duty not to place another in a false light is that of the individual's peace of mind …. 'The action for defamation,' on the other hand, 'is to protect a person's interest in a good reputation…' *Prosser and Keeton on the Law of Torts*, supra § 117, at 864". According to its own choice of law rules, New York has little to no interest in such an injury that is limited entirely to the territorial boundary of New Jersey.

The Court erred in relying upon the plaintiff's New York school and work reputational injuries as they relate to defamation because they are legally unrelated

to the false light and invasion of privacy suffered by the plaintiff in his local community in New Jersey. An invader of privacy is "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another" *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81 609 A.2d 11 (NJ 1992). Prior to these defendants' publications, which included the image of the plaintiff on a digitally fabricated "Do Not Admit" poster purported to have been displayed at his workplace, the New Jersey plaintiff enjoyed perfect solitude and seclusion, had "peace of mind" as identified by Romaine, and was not publicly displayed or discussed anywhere on the internet to the best of his knowledge.

The district court also did not consider that with respect to the other claims, there was no conflict of law between New Jersey and New York, and so it did not matter under which jurisdictions laws those claims were alleged. Instead significant inferences, including as to the sincerity with which the New Jersey plaintiff claims the protection of the laws of New Jersey.

**VIII. The District Court Erred Even In Applying It's Own Erroneous Reasoning By Dismissing All Claims Against Defendants Iyer and Garrett With Prejudice While Purporting To Allow A Return Of A Part Of The Defamation Claims – Though It Is Not Clear Against Who.**

The district court erred even in applying its own erroneous reasoning by dismissing the defamation claims against defendant Iyer and Garrett with prejudice

and terminating them from the docket. The district court never held, even as it ignored the pleadings, made inferences against the plaintiff, and erred as to the substantive law, that there was any fault that would justify such a dismissal with prejudice. No explanation was provided for the dismissal with prejudice of the defamation claims against them, nor was there any specification as to who the plaintiff could refile the portion of his defamation claim that the plaintiff was advised could be refiled.

The plaintiff's proposed Second Amended Complaint, does not have any of the faults that the district court found with the defamation claims brought against defendants Iyer and Garrett, and yet it was not allowed to take effect, and defendants Iyer and Garrett's motion to dismiss all claims against them with prejudice was fully granted, as further evidenced by their termination from the docket.

IX. **The District Court Erred In Encumbering The Plaintiff's Fraud Claim Against Defendant Epstein That Were Dismissed Without Prejudice With Erroneous Legal Rulings**

The district court erred by making significant legal errors in limiting the plaintiff's dismissed without prejudice claims. The sole claims that were not dismissed with prejudice are the tortious interference and fraud claims that were

brought solely against defendant Epstein.

The district court erred in holding that the plaintiff did not cause the plaintiff pecuniary loss by delaying the plaintiff's identification of the proper defendants necessitating expedited discovery subpoenas, or that only pecuniary losses may be recovered (they must be pleaded as a matter of state pleading rules but are not all that may be recovered.)  The conclusion of the district court that defendant Epstein's fraud that caused the plaintiff to wrongly believe that defendants Iyer and Garrett were not the proper defendants at the outset of his investigation did not hinder his investigation is both erroneous and simply unreasonable. Sending a person on a "wild goose chase" is not the only way to hinder or obstruct an investigation, and directly lying about the culpability of the culpable parties is as or more effective an injurious means.

**X.  The District Court Erred In Denying The Plaintiff's Motion To Disqualify Schaerr-Jaffe LLP From The Concurrent Representation Of Defendants Iyer And Garrett That Results In Unwaivable Conflicts of Interest And Failed To *Sua Sponte* Disqualify When Schaerr-Jaffe Created Further Unwaivable Conflicts Of Interest By Arguing to Shift Liability To Other Clients In A Related Case.**

The district court erred by failing disqualifying Schaerr-Jaffe LLP from the

conflicted concurrent representation of defendants Iyer and Garrett that cannot be remedied by waiver. Such an adverse concurrent representation is already evident by the material already in the record, and in their attempt to remedy it by waiver defendants Iyer and Garrett have made perjured statements by declaration as is demonstrated by materials already in the record. It is inevitable that they will have to testify against each other because of how they divided the various roles and actions undertaken in their civil conspiracy. Defendant Garrett specifically identified defendant Iyer as the source of the second defamatory forgery in a writing already in the record A7-19. In order to avoid liability, defendant Iyer will have to claim that defendant Garrett was untruthful in his attribution of the second forgery to defendant Iyer, while defendant Garrett will have to identify Iyer as the source of the second forgery or impeach his own writings already exhibited A7-19. Notably, by adverse representation with defendant Iyer, defendant Garrett cannot blame defendant Iyer for deceiving him, thereby hypothetically reducing his liability to arising from negligence as opposed to intentional conduct, which could mean the difference between having the ability to have any judgment debt discharged in bankruptcy or not.

Of greatest concern is the failure of the district court to *sua sponte* disqualify Schaerr-Jaffe LLP after the conclusion of the briefing of the motion due to new facts that arose. Schaerr-Jaffe took on the representation of additional defendants

Nelms and Weinberg in the related case of Rapaport v. Epstein et al. 23-cv-07439 after it had argued in this case being appealed, that those new clients of Rapaport v. Epstein were the culpable Does and not their initial clients, defendants Iyer and Garrett. This argument was successful, as defendants Iyer and Garrett's motion to dismiss with prejudice was fully granted, and Schaerr-Jaffe argued to shift liability from one concurrent set of clients to another. The perverse result is that in theory, as supported by the arguments of Schaerr-Jaffe LLP, the plaintiff could refile part of his defamation claims against their second set of clients, who were not parties to the original action and did not obtain a dismissal with prejudice.

## XI. The District Court Erred In It's Faulty Application Of The "No Set Of Facts" Standard For Pro Se Litigants – Which This Plaintiff Does Not Require To Prevail On Any Of His Claims – As It Even Ignored Clearly Exhibited Facts And Made Factual Inferences Against The Plaintiff.

The district court purported to apply the "no set of facts" standard generously afforded to *pro se* plaintiffs, even as it ignored the pleadings, contradicted them, and drew inferences against the plaintiff. The clearest possible example of a contradiction, is the district court's dismissal of the plaintiff's defamation claims against all defendants with prejudice, though the dismissal with respect to defendants Iyer and Garrett was predicated on concluding that the defamatory forgery and statements, which are referenced (though they themselves were deleted by then) by the August 1, 2022 internet snapshot created by defendant

60

Garrett. It would be very easy to imagine a set of facts under which the first forgery, which was provided as an exhibit, was posted online alongside the defamatory statements repeated by defendant Garrett in his email to the Federalist Society, and this would allow the plaintiff's defamation claims to continue to discovery.

The plaintiff explicitly disclaims that any of his claims require special treatment as a pro se litigant in order to survive dismissal for failure to state a claim or any other reason.

## XII. The District Court Decision Violated Due Process, Did Not Fully and Fairly Decide The Claims And Issues Nor Meet Minimal Standards Of Fundamental Fairness.

The district court erred in depriving the plaintiff of due process by failing to follow the basic procedures required by law such as those guaranteeing him the opportunity to be heard by ignoring fundamental parts of his pleadings or applying a different set of standards than those required by law such as by making inferences against him when as a matter of law all reasonable inferences must be made in his favor. By ignoring fundamental parts of the pleadings as they relate to the factual content, thereby refusing to engage with the actual issues of the case, the district court did not afford the plaintiff with the opportunity to be heard, did

not fully and fairly decide the issues before it or meet minimal standards of fundamental fairness.

## **CONCLUSION**

For the foregoing reasons, Plaintiff-Appellant respectfully requests that the Court reverse the district court's decision dismissing his defamation, injurious falsehood, intentional infliction of emotional distress, false light and invasion of privacy and civil conspiracy claims brought against all defendants and the fraud and tortious interference with economic advantage claims brought solely against defendant Epstein, remand this case to the district court with such instructions to reinstate these claims and ensure that the parties continue to full discovery.

## **CERTIFICATE OF COMPLIANCE**

This brief or other document complies with type-volume limits of Fed. R. App. P. R. 32 and Local Rule 32.1 because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments) this brief contains 12,998 words.

This brief or other document complies with the typeface and type style requirements because: this brief or other document has been prepared in a

proportionally spaced typeface using LibreOffice Writer in 14-point Times New Roman font.

/s/ Gideon Rapaport, *pro se*

Dated: May 30, 2025

# Special Appendix

March 31 2025, Order and Opinion Below

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GIDEON RAPAPORT, | |
| Plaintiff, | |
| -against- | 23-CV-6709 (JGLC) |
| AJAY SRINIVASAN IYER, et al., | **OPINION AND ORDER** |
| Defendants. | |

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Gideon Rapaport, now proceeding *pro se*, is a former summer associate at the law firm of Kirkland & Ellis LLP, and a recent graduate of New York University School of Law ("NYU Law"). Plaintiff filed this action on July 28, 2023 against three John Does—a Reddit.com user, a Top-Law-Schools.com user, and a current or former NYU Law student. The original complaint alleged that the John Does engaged in a conspiracy to defame his character and ruin his professional reputation by spreading rumors on law school website forums. After conducting discovery to ascertain the identity of these individuals, Plaintiff, with the assistance of counsel, filed an Amended Complaint on May 24, 2024 amending the case caption to list the names of the John Doe defendants, and asserting similar causes of action premised on the same alleged defamatory statements and conspiracy.

Defendants now move to dismiss this action, asserting, among other things, that Plaintiff has failed to state any claims against them, and that his claims are barred by applicable statutes of limitation and legal immunities. Plaintiff subsequently filed a motion for leave to amend his complaint to survive dismissal to which he attached a proposed seconded amended complaint. For the reasons set forth below, Defendants' motions to dismiss are GRANTED in part and DENIED in part, and Plaintiff's motion for leave to amend is partially GRANTED. The Court

provides further directives to Plaintiff regarding amending his complaint in this case and a related case in the Conclusion Section. In addition, Plaintiff's application to disqualify counsel is DENIED because any potential conflict has been waived.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the Amended Complaint and presumed to be true for the purposes of this Order. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

During the summer of 2022, Plaintiff was a summer associate at the law firm Kirkland & Ellis, LLP ("K&E"). ECF No. 38 ("Amended Complaint" or "AC") ¶ 1. On July 15, 2022, Plaintiff attended a get together for members of the NYU Law Federalist Society. ¶ 31. Defendants Ajay Iyer and Zach Garrett (collectively, "Student Defendants") also attended. *Id.* At the get together, Plaintiff alleges he told Student Defendants that he would be attending the James Kent Academy in early August. *Id.* The James Kent Academy is a fellowship sponsored by the Federalist Society's faculty division. *Id.* ¶ 21. Defendant Richard Epstein wrote a recommendation letter for Plaintiff in support of his candidacy for the fellowship. *Id.* ¶ 60.

A few weeks later, on July 28, 2022, Defendant Iyer photographed a guard desk at the lobby of 601 Lexington Avenue (where Kirkland & Ellis is located). *Id.* ¶ 35. Defendant Iyer then digitally altered the photograph to replace it with a picture of Plaintiff's face and the following text:

DO NOT ADMIT
GIDEON RAPAPORT
KIRKLAND AND ELLIS

*Id.; see* ECF No. 38-1. Plaintiff alleges that Iyer then posted the altered image online on two internet sites: Reddit.com and Top-Law-Schools.com. *Id.* ¶ 37. These postings included

assertions, from anonymous users, that Plaintiff had been fired for sexual harassment and banned from the K&E building. *Id.* ¶ 38. Anonymous users on both websites also made assertions about Plaintiff's "personality, habits, mannerisms, modes of dress and pastimes"—namely, that he "celebrat[ed]" the *Dobbs* ruling (the 2022 Supreme Court decision overturning *Roe v. Wade*) and that he is a "racist." *Id.* ¶ 38; ECF No. 38-3 at RAPAPORT0004–05. On July 29, 2022, Defendant Garrett "presented" the online materials to Peter Redpath and Kate Alcantara, Directors of the Student Division at the Federalist Society. *Id.* ¶¶ 42–43. Garrett also presented the materials to Defendant Epstein around the same time. *Id.* ¶ 45. Neither Mr. Redpath nor Ms. Alcantara took any further action. *Id.* ¶ 44.

On July 29, 2022, Defendant Iyer returned to the guard desk at 601 Lexington Avenue to take another photograph, which he used to make a second image that was "more technically sophisticated." *Id.* ¶ 48; ECF No. 38-2. Iyer sent the second image to Garrett and Professor Epstein. *Id.* ¶ 50. On August 2, 2022, Defendant Garrett again contacted Mr. Redpath and Ms. Alcantara, writing "[a]s I mentioned to you over the weekend, my understanding is that Gideon Rapaport was fired from his summer associate position at Kirkland & Ellis NY last week for sexually harassing a practice assistant or an attorney." *Id.* ¶¶ 54, 55. Garrett also wrote Plaintiff had been "banned from entering the building" and included the manipulated photo Defendant Iyer had created in his correspondence. *Id.* ¶ 56. Again, neither Mr. Redpath nor Ms. Alcantara took any further action. *Id.* ¶ 61. Defendant Epstein, however, forwarded the email containing these statements to Lee Otis.[1] *Id.* ¶ 63.

---

[1] The Amended Complaint does not specify Lee Otis's occupation or position, but Otis appears to be Senior Vice President and Faculty Director of The Federalist Society for Law and Public Policy Studies. ECF No. 11 at 1.

That same day, Ms. Otis had a call with Defendant Iyer in which he repeated the statements from Garrett's August 2 email. *Id.* ¶ 64. On the evening of August 2, 2022, Otis had a telephone conversation with Plaintiff, in which Plaintiff came to learn about the photographs, online posts, and email statements for the first time. *Id.* ¶¶ 65–66. But, Plaintiff was unaware of who made the photographs, online posts and email statements. Plaintiff subsequently authorized K&E's Director of Human Resources, Steven Goldblatt, to disclose any information about his prior employment. Goldblatt informed Ms. Otis that Plaintiff had not been fired for sexual harassment or banned from the K&E building. *Id.* ¶¶ 67–69. On August 9, 2022, after Plaintiff completed the James Kent fellowship, Defendant Epstein called Plaintiff and told him, among other things, his career "was destroyed," that he would be removed from his forthcoming journal editorial position, and that Epstein would no longer associate with him in order to protect his reputation. *Id.* ¶ 71. Defendant Epstein also admitted to Plaintiff that he had forwarded the materials to Lee Otis, but warned Plaintiff not to pursue the matter further and that he would "not get a second chance" from anyone. *Id.* ¶ 84. Epstein subsequently told unnamed "others" that Plaintiff was "frequently absent from his classes." *Id.* ¶ 88. Plaintiff also contends, because of "disparagement" by Epstein, that he lost a paid contractor position and a position at the Manhattan Institute. *Id.* ¶¶ 140, 141.

On July 28, 2023, shortly before filing this suit, Plaintiff met with Defendant Epstein. He asked Defendant Epstein to review the complaint later filed in this case, and asked if Epstein had any corrections or changes to the proposed draft. *Id.* ¶¶ 80–82. Epstein maintained he did not want to be involved. *Id.* ¶ 83.

Plaintiff filed this action *pro se* on July 28, 2023 against three John Does—the people he alleges created the fake photographs and wrote the online posts—asserting claims for defamation

4

and other similar state law claims. ECF No. 1. On September 28, 2023, Plaintiff moved for a 90-day extension of time to effectuate service. ECF No. 7. On October 2, 2023, the Court granted this request and extended the service deadline to January 24, 2024. ECF No. 8.

On November 22, 2023, Plaintiff sought leave to conduct expedited discovery for the limited purpose of identifying and effectuating service on the John Doe defendants. ECF Nos. 10, 11. On January 2, 2024, the Court approved limited document subpoenas tailored to that purpose. ECF No. 21. In that same order, the Court also extended Plaintiff's deadline to serve the summons and complaint on Defendants to 45 days after Plaintiff received information from the third-party subpoenas. *Id.* On April 29, 2024, Plaintiff, who was then represented by counsel, informed the Court that he received responses to the subpoenas on March 15, 2024, stated his intention to file an amended complaint, and sought an extension to effectuate service of the amended complaint, which the Court granted. ECF Nos. 34, 35, 37. Plaintiff filed the Amended Complaint on May 24, 2024, and asserted claims for defamation, intentional infliction of emotional distress ("IIED"), injurious falsehood, false light and invasion of privacy, and civil conspiracy against all defendants (the "Omnibus Claims"). AC ¶¶ 90–127. Plaintiff also asserted claims for fraud and tortious interference with economic advantage against Defendant Epstein only. *Id.* ¶¶ 128–142. On May 27, 2024, and June 11, 2024, Plaintiff sent waivers of service to Student Defendants and Defendant Epstein, respectively. ECF Nos. 39, 42, 43. On June 17, 2024, Defendant Epstein executed a waiver of service of the Amended Complaint. ECF No. 39. Student Defendants also executed a waiver of service of the Amended Complaint on June 25, 2024. ECF Nos. 42, 43.

Defendant Epstein and Student Defendants filed the instant motions to dismiss on August 12 and August 16, respectively. ECF Nos. 50, 51 ("Epstein Mem."), 53, 54 ("Students Mem.").

On September 13, 2024, Plaintiff filed a motion to disqualify counsel for Student Defendants, arguing, among other things, that they would have differing interests and affirmative defenses in the litigation. ECF No. 66. On September 27, 2024, Plaintiff sought leave to file a second amended complaint, ECF No. 77, which the parties briefed jointly with Defendants' motions to dismiss. All these motions are ripe for the Court's consideration and will be resolved by this Order.

The Court notes that Plaintiff Rapaport has also commenced two related actions involving similar assertions and alleged tortious conduct, both of which remain pending. On August 5, 2024, Plaintiff filed an action against Abigail Finkelman as sole defendant, alleging claims for defamation and false light and invasion of privacy based on Finkelman allegedly retweeting and resharing the faked photographs at issue in this case. *See* Complaint, *Rapaport v. Finkelman*, No. 24-CV-5942 (S.D.N.Y. Aug. 5, 2024), ECF No. 1. And on September 27, 2024, Plaintiff filed an action against multiple individuals, including all of the Defendants in this case, alleging civil RICO violations and attempted monopolization in violation of the Sherman Act, arising out of substantially the same conduct asserted in this case. *See* Complaint, *Rapaport v. Epstein, et al.,* No. 24-CV-7439 (S.D.N.Y. Sept. 27, 2024), ECF No. 1.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads

6

factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

*Pro se* complaints "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal citation omitted). "Such a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (internal citation omitted); *see also Boykin v. KeyCorp.*, 521 F.3d 202, 216 (2d Cir. 2008) ("[D]ismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Because Plaintiff is proceeding *pro se*, the Court must liberally construe his Amended Complaint[2] and interpret it "to raise the strongest claims that it suggests." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (internal quotation marks omitted).

## DISCUSSION

The Court first considers whether New York or New Jersey law applies to Plaintiff's claims, concluding that choice of law rules require the Court to apply the former. Second, the

---

[2] While Plaintiff filed the Amended Complaint with the assistance of counsel, he has proceeded *pro se* for the vast majority of this action, including in filing the original complaint and opposing the Defendants' motions to dismiss. Accordingly, the Court finds it appropriate to apply this more lenient standard.

Court assesses whether Plaintiff's claims against Student Defendants are timely, and concludes that his claims are not time-barred and "relate back" to the original complaint within the meaning of Federal Rule of Civil Procedure 15, but only to the extent they rely on the online internet posts (the fake photograph and website statements). Third, the Court concludes that Plaintiff has failed to state a claim for defamation because his allegations are contradicted by exhibits to the Amended Complaint, and because he does not plead, with specificity, whether and which Student Defendant made which statements on the online forums. Fourth, the Court dismisses Plaintiff's IIED, civil conspiracy, and injurious falsehood claims as duplicative. Fifth, the Court finds that neither Section 230 of the Communications Decency Act ("CDA") nor the common interest privilege, immunizes Defendant Epstein from liability for Plaintiff's remaining fraud and tortious interference claims against him. Sixth, the Court considers Plaintiff's independent claims against Epstein for fraud and tortious interference, concluding that neither has been adequately pled. Finally, the Court denies Plaintiff's motion to disqualify Student Defendants' counsel, and also *sua sponte* consolidates this action with a related action (*Rapaport v. Epstein, et al.,* No. 24-CV-7439) in the interest of judicial economy and efficiency.

Notwithstanding the Court's dismissal of the claims, the Court will allow Plaintiff, in accordance with the Second Circuit's broad and liberal reading of Rule 15 (especially as to *pro se* litigants), to file an amended complaint to address the deficiencies with certain of his claims.

## I.    New York Law Applies to This Action and Plaintiff's False Light and Invasion of Privacy Claim Is Dismissed with Prejudice

Plaintiff purports to rely on New York law for the majority of his claims. However, he attempts to invoke New Jersey law solely with respect to his false light and invasion of privacy claim. AC ¶¶ 115–116. According to Plaintiff, New Jersey "redresses the violation of a right of privacy which is not afforded by the State of New York to its citizens, but which pertains to

protecting private figures from intrusion into their lives by publicity that places them in a false light." *Id.* ¶ 116. Plaintiff therefore argues New Jersey law applies to this specific claim and asks this Court to apply the doctrine of dépeçage—the practice of applying different states' substantive law to different issues in the same action. ECF No. 79 ("Students MTD Opp.") at 23–25. As set forth below, the Court disagrees and will only apply New York law.

"When a federal court sits in diversity, it applies the choice of law rules of the forum state . . . ." *Chau v. Lewis,* 771 F.3d 118, 126 (2d Cir. 2014). In New York, a choice of law analysis is only required "[w]here the applicable law from each jurisdiction provides different substantive rules." *Curley v. AMR Corp.,* 153 F.3d 5, 12 (2d Cir. 1998). "In the absence of substantive difference . . . a New York court will dispense with choice of law analysis; and if New York is among the relevant choices, New York courts are free to apply it." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.,* 363 F.3d 137, 143 (2d Cir. 2004). Here, a conflict plainly exists with respect to the false light and invasion of privacy claim, because New York does not recognize this claim as cognizable. *Satz v. Org. for Resol. of Agunot Inc.*, No. 23-CV-36 (MKV), 2024 WL 1330011, at *10 (S.D.N.Y. Mar. 28, 2024) (collecting cases). The Court must therefore conduct a choice of law analysis.

"In general, under New York choice of law principles 'the law of the place of the tort governs.'" *Fisher v. APP Pharms*., *LLC*, 783 F. Supp. 2d 424, 428 (S.D.N.Y. 2011) (quoting *Padula v. Lilarn Prop. Corp.,* 84 N.Y.2d 519, 522 (1994)). A court must endeavor to apply the law of the jurisdiction having the "most significant" relationship to the transaction and parties *Press v. Primavera*, 685 F. Supp. 3d 216, 226–27 (S.D.N.Y. 2023). In short, a court should give effect to the "law of the jurisdiction with the strongest interest in the resolution of the particular

issue presented." *Fed. Hous. Fin. Agency v. Ally Fin. Inc.,* No. 11-CV-7010 (DLC), 2012 WL 6616061, at *5 (S.D.N.Y. Dec. 19, 2012) (internal citation omitted).

Here, New York has the "strongest interest" in the resolution of this matter. According to the Amended Complaint, Student Defendants (NYU Law students) and Defendant Epstein (a resident of New York and a professor at NYU Law) conspired to ruin Plaintiff's reputation with allegedly defamatory statements regarding his employment at K&E's New York office, which were purportedly distributed to members of the NYU Law Federalist Society, and disseminated online more broadly. Moreover, Plaintiff concedes New York law should apply to all but one of his claims (false light). Students MTD Opp. at 24.

Still, Plaintiff claims that New Jersey law should apply to the false light and invasion of privacy claim because it is his "local community." *Id.* To be sure, courts have generally instructed that in a defamation action, the choice of law analysis can be resolved by reference to the plaintiff's domicile. *See*, *e.g., Catalanello v. Kramer,* 18 F. Supp. 3d 504, 512 (S.D.N.Y. 2014). However, this "presumptive rule" does not apply where "some other state has a more significant relationship to the issue or the parties." *Id.* (cleaned up). Here, Plaintiff has conceded that New York law should apply to his defamation claim and brings a slew of other claims also under New York law. It is clear that Plaintiff views New York as having the most significant relationship to the issues and parties in this case.

Plaintiff's position thus makes clear that he merely wishes to avail himself of a cause of action that New York does not recognize. Indeed, if Plaintiff truly believed New Jersey had the greatest interest in the allegations from the Amended Complaint, he would advocate that it should apply across the board because the same conduct underlies all his claims. The Court therefore concludes that New York law applies. *See Satz*, 2024 WL 1330011, at *10 (S.D.N.Y.

10

Mar. 28, 2024) (dismissing false light claim, even though Plaintiff resided in New Jersey, because the parties were deemed to have consented to New York law); *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 98 (2d Cir. 2000) (applying New York law where parties "clearly" and "tacitly" agreed it governed).

For substantially similar reasons, the Court declines to invoke the doctrine of dépeçage, which allows a Court to apply the law of different states to distinct issues. *See Seidel v. Houston Cas. Co.*, 375 F. Supp. 2d 211, 219 n.13. (S.D.N.Y. 2005). "The [d]epacage doctrine recognizes that in a single action different states may have different degrees of interests with respect to different operative facts and elements of a claim or defense." *2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 200 (S.D.N.Y. 2015) (quoting *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 75 (E.D.N.Y. 2000)). This case, however, does not involve, for instance, multiple overlapping issues and parties from multiple jurisdictions. As discussed above, the conduct at issue almost exclusively occurred in New York. *Cf. Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 75 (E.D.N.Y. 2000) (applying dépeçage in nationwide class action on numerous overlapping issues of damages and liability). Accordingly, and because Plaintiff does not cite any authority requiring a different result, the Court will apply New York law, and therefore dismisses Plaintiff's claim for false light and invasion of privacy with prejudice. *See Satz*, 2024 WL 1330011, at *10.

## II. Plaintiff's Omnibus Claims Are Timely with Respect to Certain Defamatory Statements

Student Defendants argue that Plaintiff's claims for defamation, injurious falsehood, IIED, and civil conspiracy (the Omnibus Claims) are time-barred because he did not file the Amended Complaint until May 24, 2024, far outside the applicable one-year statute of limitations which ended by September 1, 2023 at the latest. Students Mem. at 3–6. Plaintiff

disagrees, arguing that statute of limitations is an affirmative defense, and so a complaint need not affirmatively negate or challenge such defenses. Students MTD Opp. at 11–12. Plaintiff also asserts that the Amended Complaint "relates back" to the original complaint pursuant to Federal Rule of Civil Procedure 15 and New York Civil Practices Law and Rules §§ 203(f) and 1024. *Id.* at 13–14. The Court considers these issues below.

### A.  Affirmative Defenses at Motion to Dismiss Stage

As an initial matter, the Court rejects Plaintiff's argument concerning affirmative defenses. He argues that Defendants' invocation of the applicable statute of limitations constitutes an affirmative defense, and a complaint need not anticipate and affirmatively plead facts in avoidance of such defenses. Students MTD Opp. at 11 (citing *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 149–50 (2d Cir. 2024)). This argument misconstrues applicable law. To be sure, "[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove." *Staehr v. Hartford Fin. Servs. Grp*., 547 F.3d 406, 425 (2d Cir. 2008) (citing Fed. R. Civ. P. 8(c)(1)). "However, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Id*. Here, it is clear from the face of the Amended Complaint that Plaintiff filed it outside the applicable statute of limitations for the Omnibus Claims, and the Court therefore must conduct a relation back analysis to ascertain whether they ought to be dismissed as to all Defendants.[3]

---

[3] While Defendant Epstein did not specifically raise timeliness in his motion to dismiss, the Court may nonetheless consider, and if applicable, dismiss the claims as untimely as against all Defendants. *See Narayanan v. Garland*, No. 22-CV-5661 (EK), 2023 WL 6307872, at *4 (E.D.N.Y. Sept. 28, 2023) (dismissing untimely claims even where the defense was not raised by certain defendants); V.*E.C. Corp. of Delaware v. Hilliard*, No. 10-CV-2542 (VB) 2011 WL 7101236, at *11 (S.D.N.Y. Dec. 13, 2011) (sua sponte dismissing untimely conversion claim) (collecting Second Circuit cases).

### B. "Relation Back" Analysis

In New York, a one-year statute of limitations period applies to claims for defamation, IIED, and injurious falsehood. *See Conte v. Cnty. of Nassau*, 596 F. App'x 1, 4–5 (2d Cir. 2014) (summary order). New York does not recognize an independent tort of civil conspiracy, and so this claim adopts the statute of limitations applicable to the underlying tort, meaning it would also be one year. *See Deans v. Bank of Am.*, No. 10-CV-9582 (RJH), 2011 WL 5103343, at *3 (S.D.N.Y. Oct. 27, 2011) (internal citation omitted). Because Plaintiff alleges the relevant conduct occurred in July and August of 2022, *see generally* AC ¶¶ 31–71, the limitations period expired by September 1, 2023 at the latest.

Even though Plaintiff arguably filed the *original* complaint within the limitations period, the Amended Complaint requires its own timeliness analysis because it adds new claims and parties. The Amended Complaint updated the caption with the actual identities of the John Does, and courts have observed that replacing a "John Doe" with a named party in effect constitutes a change in the party sued. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). As this Circuit has made clear, "John Doe" pleadings "cannot be used to circumvent statutes of limitations." *Chinese Am. Citizens All. Greater New York v. New York City Dep't of Educ.*, No. 20-CV-8964 (LAK), 2024 WL 1795390, at *3 (S.D.N.Y. Apr. 25, 2024) (citing *Hogan*, 738 F.3d at 517).

Instead, "John Doe" substitutions may only be accomplished when all the specifications for "relation back" under Rule 15 are met. *Id.* A plaintiff can demonstrate "relation back" under Rule 15 in at least two ways. *Id.* First, under Rule 15(c)(1)(C), relation back requires that the basic claim arose out of the conduct set forth in the original pleading, and, "within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment (i) received such notice of the action that it will not be prejudiced in defending on

the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the party's proper identity." FED. R. CIV. P. 15(c)(1)(C). Second, Rule 15(c)(1)(A), permits "relation back" when the "law that provides the applicable statute of limitations allows" it—which would be New York law in this case. FED. R. CIV. P. 15(c)(1)(A). The Court analyzes both portions of Rule 15 below.

### i. Rule 15(c)(1)(C)

With respect to Rule 15(c)(1)(C), this Circuit has interpreted Rule 15 to "preclude relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities." *Hogan*, 738 F.3d at 517. This is because lack of knowledge of a John Doe defendant's name does not constitute a "mistake of identity." *Id.* at 518 (citing *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 470 (2d Cir. 1995)). As a result, courts have routinely held where, as here, an amended complaint identifies a John Doe defendant *after* the applicable statute of limitations, it does not relate back to the original complaint under Rule 15(c)(1)(C). *See Chinese Am. Citizens All.*, 2024 WL 1795390, at *5 (collecting cases). Accordingly, relation back under Rule 15(c)(1)(C) is not available to Plaintiff here.

### ii. Rule 15(c)(1)(A)

Plaintiff can, however, establish the necessary requirements under Rule 15(c)(1)(A), which permits "relation back" when the law providing the applicable statute of limitations (here, New York law) allows it. *See Hogan*, 738 F.3d at 518. Plaintiff has pointed to Sections 203(f) and 1024 of the New York Civil Practice Law and Rules. Under CPLR § 1024, a party may seek relation back for a newly added defendant when the party originally lacked knowledge of their identity. N.Y. C.P.L.R. § 1024 (McKinney 2024). Relatedly, pursuant to CPLR § 203(f), "[a]

14

claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." N.Y. C.P.L.R. § 203(f) (McKinney 2024).

Section 203 can be summarily rejected because the Court has already concluded the requirements for Rule 15(c)(1)(C) have not been meet. CPLR Section 203 "closely tracks" Rule 15 (c)(1)(C) of the Federal Rules of Civil Procedure, and a plaintiff may only add a new defendant under Section 203 if "the new party knew or should have known that, but for an *excusable mistake* by plaintiff as to the identity of the proper parties, the action would have been brought against him as well." *Cooper v. City of New York*, No. 17-CV-1517 (NGG), 2019 WL 3642996, at *19 (E.D.N.Y. Aug. 5, 2019) (internal citation omitted and emphasis added). As explained above, Plaintiff's failure to identify the John Does by name cannot be characterized as a mistake, and thus Section 203 similarly does not apply. *Vasconcellos v. City of New York*, No. 12-CV-8445 (CM), 2014 WL 4961441, at *8 (S.D.N.Y. Oct. 2, 2014) (concluding that plaintiff failed to satisfy Rule 15(c)(1)(C) and therefore "fail[ed] to satisfy the state's corollary [Section 203]" as well).

The Court next considers CPLR § 1024. To take advantage of this section, a party must (1) exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name; and (2) describe the John Doe party in such form as will fairly apprise the party that she is the intended defendant. *Jones v. City of New York*, 571 F. Supp. 3d 118, 130 (S.D.N.Y. 2021) (citing *Bumpus v. New York City Transit Auth.*, 66 A.D.3d 26, 29–30 (2d Dep't 2009)). In addition, because of the interaction between CPLR § 1024 and CPLR § 306-b, as a third requirement, a party must ascertain the identity of the unknown John Doe parties and

15

effectuate process upon them within 120 days from filing the action. *Bumpus*, 66 A.D.3d at 31. However, the deadline may be extended, upon motion, for good cause or in the interest of justice. *Id.*; *see* N.Y. C.P.L.R. § 306-b (McKinney 2024).

With respect to the first element, a plaintiff must exercise due diligence before designating a defendant as "John Doe" by showing that he made diligent efforts to ascertain the identity of the unknown defendant *prior* to commencement of the action and up to and including the expiration of the applicable statute of limitations. *See Bumpus*, 66 A.D.3d at 29. As Plaintiff conceded in his original complaint, he had no idea who the John Does were at the time he filed the original complaint. AC ¶ 81. And in the Amended Complaint, Plaintiff does not allege sufficient steps he took prior to filing the original complaint in order to ascertain the identities of the John Does, aside from a single conversation with Defendant Epstein in August 2022 (*id.* ¶ 84) and a lunch meeting with Epstein (*id.* ¶¶ 80–83) the day he filed the original complaint on July 28, 2023. Students MTD Opp. at 12–13. Indeed, even after filing the original complaint, Plaintiff waited nearly four months before seeking leave of this Court to serve subpoenas to identify the John Does to effectuate service. *See* ECF Nos. 10, 11.

Plaintiff now asserts—for the first time in his motion for leave to amend reply brief—that he made "six total inquiries" to Defendant Epstein and also spoke with Lee Otis and other "rank and file members" of the Federalist Society. ECF No. 96. at 12–13. While the Court is not *required* to consider these new allegations, it nonetheless opts to do so given the importance of these additions to the potential survival of the Omnibus Claims. *See Atadzhanov v. City of New York*, No. 21-CV-5098, 2022 WL 4331304, at *1 (S.D.N.Y. Sept. 19, 2022) (exercising discretion to consider new factual allegations brought by the *pro se* plaintiff in his opposition brief and sur-reply). These new allegations, while not extensive, are sufficient to demonstrate adequate

16

diligence prior to expiration of the limitations period. *See DeMarzo v. Cuba Hill Elementary Sch.*, 198 N.Y.S.3d 570, 572 (2d Dep't 2023) (finding adequate diligence where plaintiff conducted online searches).

Construing the allegations in the light most favorable to Plaintiff, who filed this action *pro se*, the original complaint can be read so as to satisfy the second element as well, but only with respect to defamation as it related to the faked photographs and online posts. The original complaint alleged that around July 30, 2022, John Does 1-3 conspired to perpetrate an "internet hoax," which included the forged document allegedly placed in the lobby of Kirkland and Ellis. ECF No. 1 ¶¶ 6–9. The original complaint described the forged document and internet posts with particularity, and therefore could be read to have fairly apprised Student Defendants they were the intended parties. *See Kennedy v. City of New York*, No. 12-CV-4166 (KPF), 2015 WL 6442237, at *5 (S.D.N.Y. Oct. 23, 2015) ("Courts have found that where a plaintiff provides specific contextual information, that may satisfy the description requirement of [CPLR] 1024.").

However, Student Defendants could not have been fairly apprised as to the other alleged defamatory statements, because they were not mentioned in the original complaint, which focused only on the "anonymous internet posts." *See, e.g.,* AC ¶¶ 13, 14, 16. "The main inquiry under Rule 15(c) is whether adequate notice has been given to the opposing party 'by the general fact situation alleged in the original pleading.'" *Pruiss v. Bosse*, 912 F. Supp. 104, 106 (S.D.N.Y. 1996) (quoting *Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir. 1973)). And so where, as here, a Plaintiff sets forth "new instances of defamation," it will not relate back for the purposed of Rule 15(c), because it would essentially allow a plaintiff to circumvent the statute of limitations. *Id.* Indeed, the original complaint contains a myriad of allegations about the John Doe defendants (for instance, that they filed a false Title IX report and solicited false sexual harassment reports

from other K&E summer associates) that were removed from the Amended Complaint which also calls into question whether Student Defendants could have been reasonably apprised they were the intended targets. ECF No. 1 at ¶¶ 20–24. Accordingly, only the alleged defamatory statements posted on the internet (and any conduct relating to it) "relate back" under Rule 15. *See Cojocaru v. City Univ. of New York*, No. 19-CV-5428 (AKH), 2020 WL 5768723, at *4 (S.D.N.Y. Sept. 28, 2020) (collecting cases, and concluding no relation back, even though text messages concerned same general subject matter, because they were, among other things, a "separate publication [and] directed toward a different recipient.").

Finally, regarding the third element, Plaintiff consistently sought, and received, extensions to effectuate service. To satisfy the 120-day requirement, Plaintiff initially had to effectuate service of the original complaint by November 25, 2023. However, Plaintiff first sought, and received, in September 2023, an extension from this Court to effectuate service of the original complaint on or before January 24, 2024. *See* ECF Nos. 7, 8. Then, on January 2, 2024, the Court again extended Plaintiff's deadline to serve the summons and complaint on Defendants to until 45 days after Plaintiff received information from the third-party subpoenas. ECF No. 21. On April 29, 2024, Plaintiff, who was then represented by counsel, informed the Court that he received responses to the subpoenas on March 15, 2024, stated his intention to file an amended complaint, and sought an extension to effectuate service of the amended complaint. ECF No. 35. Plaintiff filed the Amended Complaint on May 24, 2024, and all Defendants effectuated waivers of service as to the Amended Complaint. Plaintiff thus satisfies the 120-day requirement in light of the Court's continued grant of extensions to effectuate serve in this action. ECF Nos. 38, 39, 42, 43.

18

Accordingly, Plaintiff has complied with the requirements under CPLR Section 1024, and his claims are not untimely, but only to the extent they arise from, or relate to, the faked photographs published online and any related online statements regarding Plaintiff being fired for sexual harassment. The other alleged defamatory statements are time-barred.

**III.    Plaintiff Fails to State a Claim for Defamation**

As an initial matter, and as mentioned above, the Court will only consider Plaintiff's defamation claim based on the alleged fake photographs and internet posts. Because only Student Defendants are alleged to have engaged in this conduct, the defamation claim is dismissed as against Defendant Epstein with prejudice.

Proceeding to the merits, Plaintiff asserts that the fake photograph published online, and the related statements purportedly made by Student Defendants on those online posts, are defamatory *per se*, and that he has suffered "special damages" by loss of economic opportunities and reputation. AC ¶¶ 90–100. Student Defendants argue that a review of Exhibit 3 to the Amended Complaint makes clear that the online posts did not actually contain the faked photograph, and that the Amended Complaint otherwise fails to allege the requisite factual specificity as to the other online statements. Student Defs. MTD at 14–20. The Court agrees.

"Defamation is 'the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of plaintiff in the minds of right-thinking persons, and to deprive plaintiff of their friendly intercourse in society." *3P-733, LLC v. Tawan Davis*, 135 N.Y.S.3d 27, 29–30 (1st Dep't 2020) (cleaned up). "There are two categories of defamation under New York law: libel, for written statements, and slander, for spoken statements." *Carroll v. Trump*, 650 F. Supp. 3d 213, 225 (S.D.N.Y. 2023). The Amended Complaint does not specify whether the alleged defamation is libel or slander, but does specify the following allegedly defamatory statements which the Court has not dismissed: (1) the faked

photograph from June 2022 purportedly published on the internet; and (2) statements made accompanying the online posts regarding the circumstances of Plaintiff's termination and certain of his alleged beliefs and political ideologies. AC ¶¶ 37–41. The Court thus understands that Plaintiff intended to assert a libel *per se* claim with respect to these statements.

Under New York law, a claim for libel requires a plaintiff to allege (1) a written defamatory statement of fact concerning the plaintiff, (2) publication to a third-party, (3) the applicable level of fault, (4) falsity, and (5) special damages or a showing of libel *per se*. *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 176 (2d Cir. 2000). A plaintiff can make a showing of "libel per se" if "it tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or to induce an evil opinion of him in the minds of right-thinking persons." *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379 (1977); *see also Nolan v. State,* 158 A.D.3d 186, 195, 69 N.Y.S.3d 277 (2018) ("A defamation plaintiff must plead special damages unless the defamation falls into any one of four per se categories: (1) statements charging the plaintiff with a serious crime; (2) statements that tend to injure the plaintiff in her trade, business or profession; (3) statements that impute to the plaintiff a 'loathsome disease'; and (4) statements that impute unchastity to a woman.").

The Court first considers the July 29, 2022 faked photograph attached as Exhibit 1 to the Amended Complaint. Plaintiff contends this fake photograph was posted online by Defendant Iyer on Reddit and Top-Law-Schools.com. AC ¶ 37; ECF No. 38-3. But while the Amended Complaint alleges Defendant Iyer posted the fake photograph to these websites, Exhibit 3 of the Amended Complaint—which Plaintiff refers to as the relevant internet posts for his claims— does not reflect that the fake photograph was actually ever posted. ECF No. 38-3 at RAPAPORT0002–13. Further, the email attached to the Amended Complaint (which is similarly

included in Exhibit 3) from Defendant Garrett to members of the Federalist Society links to the same Top-Law-Schools.com and Reddit.com threads. ECF No. 38-3 at RAPAPORT0001. The fact that the email attached to the Amended Complaint links to the same webpages further indicates that the "internet posts" Rapaport complains of are solely those contained in Exhibit 3.

"Allegations in the complaint that are 'contradicted by more specific allegations or documentary evidence' are not entitled to a presumption of truthfulness." *KatiRoll Co. v. Kati Junction, Inc.*, 33 F. Supp. 3d 359, 365 (S.D.N.Y. 2014) (quoting *Kirkendall v. Halliburton*, 707 F.3d 173, 175 n. 1 (2d Cir. 2013)). Accordingly, because the Amended Complaint's exhibits contradict Plaintiff's allegations that the fake photograph was posted to the two websites, Plaintiff has not adequately alleged the photographs were published to a third party, and therefore fails to state a claim for defamation with respect to the faked photograph. *See Koulkina v. City of New York*, 559 F. Supp. 2d 300, 329 (S.D.N.Y. 2008) (where allegations were contradicted by documents attached to complaint, they were insufficient to defeat a motion to dismiss); *see also Richards v. Sec. Res.*, 133 N.Y.S.3d 12, 14 (1st Dep't 2020) (dismissing defamation claim where plaintiff failed to allege that the statements were made to a third party). To the extent Plaintiff alleges that other posts exist beyond those identified in Exhibit 3, as discussed later in this Order, he will be given leave to amend so as to cure this deficiency.

Considering next the statements by anonymous users on the internet posts, Plaintiff alleges the "postings were accompanied by false and defamatory statements that the plaintiff was fired for sexual harassment, was banned from the building and was accompanied by a significant amount of material about his personality, habits, mannerisms, modes of dress and pastimes." AC ¶ 38. The text of the posts also allegedly mentioned "plaintiff's political, ideological and jurisprudential beliefs." *Id.* ¶ 39. But Plaintiff does not allege which individual Defendant made

which statement. Indeed, Plaintiff does not directly allege that Student Defendants made these statements *at all*. Plaintiff states that the postings "were accompanied" by false and defamatory statements, yet only alleges the Student Defendants "produce[ed] two fake photographs" and "twice present[ed] them as genuine." AC ¶¶ 38, 94. This failure is fatal to Plaintiff's claim: to succeed on a claim for defamation, "[a] plaintiff must plead the defamatory statements with some particularity," which requires "a plaintiff to identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Unlimited Cellular, Inc. v. Red Points Sols. SL*, 677 F. Supp. 3d 186, 197 (S.D.N.Y. 2023) (cleaned up). At most, the Amended Complaint, read in the light most favorable to Plaintiff, could raise an inference that the Student Defendants anonymously authored the statements. But without being able to ascertain which Defendant made which statement, the Court cannot conduct the remaining analysis: for instance, the "fault" question would need to be analyzed differently as between Defendant Iyer and Defendant Garrett, and the Court is prevented from doing so given the inadequacy of Plaintiff's allegations.

In light of the foregoing, Plaintiff's defamation claim must therefore be dismissed. *See BCRE 230 Riverside LLC v. Fuchs*, 874 N.Y.S.2d 34, 36 (1st Dep't 2009) (dismissing defamation counterclaim where party failed to allege what false statements were and who made them).

## IV.    Plaintiff's Remaining Omnibus Claims Are Dismissed

Plaintiff's remaining Omnibus Claims can be summarily dismissed. Plaintiff's claim for civil conspiracy fails because he has failed to plead any defamation, and without an underlying tort, there can be no conspiracy claim. *See Williams v. Williams*, 53 N.Y.S.3d 152 (2d Dep't 2017) (concluding where plaintiff could not maintain underlying causes of action for fraud, unjust enrichment, or negligent and intentional infliction of emotional distress, plaintiff could similarly not maintain cause of action alleging civil conspiracy); *Arvanitakis v. Lester*, 44

N.Y.S.3d 71, 73 (2d Dep't 2016) ("A cause of action alleging conspiracy to commit a tort stands or falls with the underlying tort.").

In addition, Plaintiff's claims for IIED and injurious falsehood are dismissed as duplicative, given that they rely on the same allegations and conduct as the defamation claim. For example, with respect to Plaintiff's claim for injurious falsehood, he claims the "fake photographs and statements" caused him damages, which is the exact same conduct underlying his defamation claim. AC ¶ 102. And while Plaintiff tries to assert the IIED claim "is not duplicative" because "the faked photographs and false statements were only part of the defendants' campaign of destruction," he then goes on to state they are "evidence of their malicious intentions and sheer malevolence." AC ¶¶ 112. This allegation, too, makes clear the alleged tortious conduct underlying the IIED claim is identical to the defamation claim. Both claims are therefore dismissed as duplicative. *See Perez v. Violence Intervention Program*, 984 N.Y.S.2d 348, 349 (1st Dep't 2014) ("The remaining claims of injurious falsehood, tortious interference with prospective contractual/business relations, and intentional infliction of emotional distress should have been dismissed as duplicative of the defamation claim, as they allege no new facts and seek no distinct damages from the defamation claim."); *LoanStreet, Inc. v. Troia*, No. 21-CV-6166 (NRB), 2022 WL 3544170, at *8 (S.D.N.Y. Aug. 17, 2022) (dismissing injurious falsehood claim as duplicative where it related to same set of statements and alleged harm giving rise to the defamation claims).

## V.    Plaintiff's Remaining Claims Against Defendant Epstein Are Not Barred by Section 230 or the Common Interest Privilege

Defendant Epstein argues he is immune, under Section 230 of the Communications Decency Act, from liability for "defamation, false light, IIED, injurious falsehood, and any other claim premised on him having allegedly forwarded emails received from others." Epstein Mem.

at 7. Second, Epstein argues that he is immune from suit for the defamation claim by invoking the common interest privilege and New York's Anti-SLAPP law, both of which require a finding of actual malice. *Id.* at 5–14. As an initial matter, the Court need not address Epstein's argument regarding the common interest privilege because Epstein only intended this argument as a defense to defamation, and Plaintiff's defamation claim has now been dismissed with prejudice as untimely as against Epstein.

The Court also need not address whether Section 230 immunity applies, because any conferred immunity would not bar Plaintiff's claim for fraud and tortious interference, which are the only remaining claims against Epstein. Section 230 of the Communications Decency Act provides that "[n]o . . . user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C § 230(c)(1). Section 230 further provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent" with it. *Id.* § 230(e)(3). Plaintiff alleges Epstein engaged in defamation by "further circulating" an email from Student Defendants (which contained allegedly defamatory statements) to other members of the Federalist Society which Epstein "knew to be false." AC ¶ 95. But while Epstein's forwarding of the relevant emails may have been relevant to Plaintiff's defamation claim, this conduct does not form the basis for Plaintiff's fraud and tortious interference claims. Rather, Plaintiff alleges Epstein "knowingly lied" about the identities of Student Defendants when asked, and that he "repeated his disparagement at every possible opportunity to anyone who would listen." AC ¶¶ 130–131, 139.

Because these allegations embrace and depend on conduct beyond just Epstein's emails, Section 230 would not prevent liability, because doing so would not be "inconsistent" with the

statute. The Court therefore must consider Plaintiff's remaining claims against Defendant Epstein on the merits.

## VI.     Plaintiff Fails to State a Claim for Tortious Interference

To state a claim for tortious interference with economic advantage under New York law, a plaintiff must prove that (1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured. *See Dardashtian v. Gitman*, No. 17-CV-4327 (LLS), 2017 WL 6398718, at *8 (S.D.N.Y. Nov. 28, 2017) (citing *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)).

Plaintiff does not plead sufficient facts to support this claim. Plaintiff merely alleges, in conclusory fashion, that Epstein "repeated his disparagement at every possible opportunity to anyone who would listen." AC ¶ 139. But the Complaint does not identify the substance of any "disparagement" aside from an assertion that Epstein told unnamed and unspecified "others" that Plaintiff was "frequently absent from his classes." *Id.* ¶ 88. Nor does Plaintiff allege Epstein had any awareness of Plaintiff's "contractor position" or his position with the Manhattan Institute, *id.* ¶¶ 140– 141, let alone that Epstein intentionally sought to interfere with those relationships. Plaintiff also provides no information about these positions, mentioning them only in two sentences in the Amended Complaint.

Even assuming Epstein spoke to any entities or individuals associated with these positions—a fact which the Amended Complaint does not allege—Plaintiff does not allege what Epstein communicated to them. *See Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, 2020 WL 7774377, at *2 (S.D.N.Y. Dec. 30, 2020) (dismissing tortious interference claim because, among

other things, plaintiff failed to allege what defendant stated to third parties). Accordingly,

because the Amended Complaint contains little more than "unadorned, the defendant-unlawfully-

harmed-me accusations," Plaintiff has failed to state a claim for tortious interference, and the

claim is dismissed. *Id.* at *2 (cleaned up) (citing *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104,

110–11, 115 (2d Cir. 2010)).

## VII.   Plaintiff Fails to State a Claim for Fraud

Plaintiff has also failed to state a plausible fraud claim against Defendant Epstein. Under

New York law, Plaintiff must allege: (1) a material misrepresentation or omission of fact; (2)

made by defendant with knowledge of its falsity; (3) intent to defraud; (4) reasonable reliance on

the part of the plaintiff; and (5) resulting damage to the plaintiff. *Skyline Risk Management, Inc.

v. Legakis*, 733 F. Supp. 3d 316, 329–30 (S.D.N.Y. 2024) (citing *Structured Cap. Sols., LLC v.

Commerzbank AG*, 177 F. Supp. 3d 816, 836 (S.D.N.Y. 2016)). "A plaintiff may bring a fraud

claim based on an omission rather than an affirmative misrepresentation only 'if the non-

disclosing party has a duty to disclose.'" *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 241

(S.D.N.Y. 2022) (quoting *Remington Rand Corp. v. Amsterdam-Rotterdam Bank*, N.V., 68 F.3d

1478, 1483 (2d Cir. 1995)). In addition, Federal Rule of Civil Procedure 9(b) provides that "[i]n

alleging fraud or mistake, a party must state with particularity the circumstances constituting

fraud or mistake." FED. R. CIV. P. 9(b).

Plaintiff has not pleaded sufficient facts to satisfy these elements. Here, the gravamen of

Plaintiff's fraud claim is that Epstein failed to disclose something to him and thereby omitted a

material fact: the identities of Student Defendants. As a result, Plaintiff must allege some duty to

disclose by Defendant Epstein, which the Amended Complaint fails to do. Instead, Plaintiff

merely insists no "fiduciary duty" is necessary to substantiate his claim. ECF No. 76 ("Epstein

MTD Opp.") at 27–28. Moreover, the Amended Complaint also does not allege, beyond

conclusory assertions, that Epstein had any intent to defraud Plaintiff or harm him (or hinder his

ability to file suit).

The fraud claim also fails because Plaintiff does not allege compensable damages as a

result of the fraud. To sustain a fraud claim, Plaintiff must allege he sustained some pecuniary

loss as a result. *Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d

358, 369 (S.D.N.Y. 2020) (internal citation omitted). Indeed, a plaintiff can only recover the

actual pecuniary loss sustained as a direct result of the alleged fraud. *Joseph v. Mobileye, N.V.*,

225 F. Supp. 3d 210, 218 (S.D.N.Y. 2016) (internal citations omitted). Here, Plaintiff only alleges

Defendant Epstein "knowingly lied" about the identities of Student Defendants, which

"delay[ed]" his investigation "to determine and identify the true and proper defendants . . . ." AC

¶¶ 130, 133. But Plaintiff did not suffer any actionable injury: Defendant Epstein's failure to

disclose the identities of Student Defendants left Plaintiff in the exact same situation as he began,

and similarly left him free to exhaust other options to identify Student Defendants. Epstein's

non-disclosure did not inhibit or otherwise prevent Plaintiff from proceeding as he eventually did

by filing subpoenas. The Amended Complaint does not allege, for example, that Epstein sent

Plaintiff on a wild-goose chase by giving him incorrect names or that he falsely promised, in an

effort to string Plaintiff along, that he would eventually inform Plaintiff the identities of Student

Defendants and failed to do so.

Nonetheless, Plaintiff argues a delay in exercising legal rights is cognizable for a fraud

claim, citing *Lawrence v. Houston,* 172 A.D.2d 923 (3d Dep't 1991). Epstein MTD Opp. at 28.

But *Lawrence* is plainly distinguishable: there, the defendant advised plaintiff he should not

retain a lawyer because he would settle with plaintiff directly when the plaintiff (who was then

then 15) turned 21. 172 A.D. 2d at 923. Plaintiff rejected the eventual settlement offer as too low, and ended up filing a lawsuit, alleging that the delay caused him damages because evidence was not preserved in the interim which impacted his ability to prevail at trial. *Id.* Here, in contrast, Plaintiff could have filed this action and sought expedited discovery (as he eventually did) at any point. Plaintiff has thus failed to adequately plead a fraud claim against Defendant Epstein, and it therefore must be dismissed.

## VIII. Plaintiff's Motion to Disqualify Student Defendants' Counsel Is Denied

The Court denies Plaintiff's request to disqualify Schaerr Jaffe LLP, counsel for Student Defendants, based on the potential for any adverse and conflicting interests. ECF No. 68. The Court need not address the underlying substance of Plaintiff's assertions because any conflict that may exist between Defendants Garrett and Iyer are waived, given both have consented to be represented by Schaerr Jaffe. Indeed, Student Defendants each filed sworn declarations to this effect. ECF Nos. 75-1, 75-2. Accordingly, Plaintiff's motion for disqualification is denied.

## IX. Plaintiff's Motion for Leave to Amend Is Granted in Part and Denied in Part

Plaintiff's motion for leave to amend is partially granted. "Leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [he] has a valid claim." *Atherley v. N.Y.C. Dep't of Educ.*, No. 23-CV-383 (JGLC), 2024 WL 1345741, at *13 (S.D.N.Y. Mar. 29, 2024) (internal citation omitted). The Second Circuit interprets Rule 15 of the Federal Rules of Civil Procedure liberally "consistent with [its] strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotation marks and citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded

an opportunity to test his claim on the merits."). However, "[l]eave may be denied 'for good

reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'"

*TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun*

*& Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

 The Court finds that permitting Plaintiff to amend the complaint would not be futile,

overly prejudicial, or cause undue delay. *Loc. 3599, N.Y.C. Dep't of Env't Prot. Tech. Pro. Emps.*

*v. City of New York*, No. 23-CV-1035 (JGLC), 2024 WL 966077, at \*16 (S.D.N.Y. Mar. 6, 2024).

Although Plaintiff amended his complaint once, he has not previously had an opportunity to cure

the deficiencies of which he is now on notice. And based on a cursory review of his proposed

SAC, some pleading deficiencies have already been addressed, including, for example, more

allegations relevant to his tortious interference claim against Defendant Epstein. *See* ECF No. 78

¶¶ 101–104. Accordingly, the Court will permit Plaintiff to file a second amended complaint with

respect to the defamation (based on the internet postings), civil conspiracy, fraud, and tortious

interference claims only. Further directives with respect to this amended complaint are in the

Conclusion Section.

## X. The Court *Sua Sponte* Consolidates This Action with its Related Action

 Finally, the Court *sua sponte* consolidates this action with *Rapaport v. Epstein, et al.,* No.

24-cv-7439 (the "Related Action") for all purposes. By order dated March 5, 2025 in the Related

Action (ECF No. 54), the Court noted that it was inclined to consolidate these two matters given

the overlapping parties, issues, and claims, and stated that it would provide further instructions

with respect to consolidation in this Order. The Court now does so.

 Rule 42 of the Federal Rules of Civil Procedure permits a court to consolidate cases that

"involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2). "In assessing whether

consolidation is appropriate in given circumstances," a court "should consider both equity and

judicial economy." *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999).

District courts enjoy substantial discretion in deciding whether and to what extent to consolidate

cases and may even consolidate cases *sua sponte. See Johnson v. Celotex Corp*., 899 F.2d 1281,

1284 (2d Cir. 1990). Here, the Court sees no concern regarding, potential confusion, prejudice, or

risks to impartiality of a trial, and as noted, consolidation would promote efficiency. *Id.* Because

the Court has granted Plaintiff leave to amend certain claims in this action, and Plaintiff has been

given an opportunity to elect to file another complaint in the Related Action, in the interest of

efficiency and economy, the Court determines consolidation is appropriate. *See Stauffer v.

Trump*, No. 24-CV-5698 (LTS), 2024 WL 3876307, at *3 (S.D.N.Y. Aug. 19, 2024).

 While the Court finds consolidation of this matter with the Related Action promotes

judicial efficiency and economy, the Court does not, at this time, consolidate this action with the

*Finkelman* action. However, the Court may consider consolidation as to that action at a later

time.

## CONCLUSION

 For the reasons stated above, the Court GRANTS Student Defendants' motion to dismiss,

and GRANTS in part and DENIES in part Defendant Epstein's motion to dismiss. Plaintiff's

false light and invasion of privacy, injurious falsehood, and IIED claims are DISMISSED with

prejudice, and the other claims are DISMISSED without prejudice as set forth in this Order.

Plaintiff's motion to disqualify Student Defendants' counsel is also DENIED.

 The Clerk of Court is respectfully directed to consolidate this action with the Related

Action (*Rapaport v. Epstein, et al.,* No. 24-CV-7439) and to designate that action as the lead case

given all the parties have been named therein. Plaintiff is directed to file a single, amended

complaint (which Plaintiff shall title the "First Consolidated Amended Complaint") that may (1)

address any deficiencies with respect to his defamation claim based on the internet posts, his

claim for civil conspiracy, and his tortious interference and fraud claims against Defendant

Epstein as set forth herein; and (2) amend or otherwise correct the claims raised in the Related

Action. Defendants in both actions will then have an opportunity to renew any motions to

dismiss they intend to file thereafter. For the avoidance of doubt, the Court emphasizes this First

Consolidated Amended Complaint must include all allegations and claims that Plaintiff seeks to

raise related to the conduct at issue against the Defendants in both actions (including, for

instance, his civil RICO and antitrust claims, even if Plaintiff does not intend to amend those

claims or allegations). Plaintiff shall file the First Consolidated Amended Complaint, consistent

with this Order, on or before **May 2, 2025**. In light of the motions to dismiss in both actions, the

Court warns Plaintiff that further amendments are unlikely to be granted.

The Clerk of Court is further, and respectfully, directed to terminate ECF Nos. 50, 53, and

77.

Dated:  March 31, 2025
        New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge