# No. 25-841

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

GIDEON RAPAPORT, an individual,

*Plaintiff-Appellant,*

—against—

AJAY SRINIVASAN IYER, ZACHARY GEORGE

GARRETT, RICHARD ALLEN EPSTEIN, individuals,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
Case No. 1:23-cv-06709-JGLC, Hon. Jessica G. L. Clarke

## APPENDIX OF PLAINTIFF-APPELLANT VOL. 2

GIDEON RAPAPORT, *pro se*
#627 1078 Summit Avenue
Jersey City, New Jersey 07307
Telephone: (862) 213-0895

Because Rapaport fails to satisfy any of Section 1024's requirements, his claims against Iyer and Garrett do not relate back and they are therefore untimely.

### B.    The court should resolve the issue of timeliness now.

In a last-ditch effort to avoid the statute of limitations, Rapaport claims (at 11) that it is premature to address this issue now, as timeliness is an affirmative defense that must await discovery. For this point, Rapport relies on *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144 (2d Cir. 2024), which considered when a copyright infringement claim accrues, *id.* at 154. Rapaport makes no effort to explain why that has any bearing here. Moreover, Rapaport ignores that the Second Circuit has explicitly stated that "a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Clark v. Hanley*, 89 F.4th 78, 94 (2d Cir. 2023) (quoting *Whiteside v. Hover-Davis, Inc.,* 995 F.3d 315, 319 (2d Cir. 2021)). Under that guidance and applying the federal and New York relation-back rules discussed above, courts consistently dismiss complaints as untimely. *See, e.g.*, *Temple*, 933 N.Y.S.2d at 322–23 ("Any failure to exercise due diligence to ascertain the '[John] Does' name subjects the complaint to dismissal as to that party."); *JCG v. Ercole*, No. 11-cv-6844 (CM/JLC), 2014 WL 1630815, at *15 (S.D.N.Y. Apr. 24, 2014) ("For these reasons, Defendants' motion to dismiss on statute of limitations grounds should be granted."), *report and recommendation adopted*, 2014 WL 2769120 (S.D.N.Y. June 18, 2014); *Williams v. United States*, No. 07-cv-3018 (RJS/THK), 2010 WL 963474, at *12 (S.D.N.Y. Feb. 25, 2010) ("The failure to act diligently to ascertain the unidentified defendant's name 'subjects the complaint to dismissal as to that party.'"), *report and recommendation adopted,* 2010 WL 963465 (S.D.N.Y. Mar. 16, 2010). As shown above and in Defendants' motion to dismiss, the untimeliness of Rapaport's claims is clearly evident from the face of the complaint, and dismissal is appropriate.

For these reasons, Rapaport fails to demonstrate that any of his claims are timely, and nothing about his proposed second amended complaint changes that fact.  Additionally, Rapaport fails to identify any reason that this issue needs to await discovery.  Rather, the Court should dismiss all claims against Defendants Iyer and Garrett now as untimely.

## II.    The First Amended Complaint Fails to State a Claim.

Even if Rapaport's claims were timely, they must still be dismissed for failure to state a claim.  *See* MTD at 6–17.  Rapaport largely ignores this fact, focusing instead on the statute of limitations and his belief that other NYU students were out to get him (relying on many allegations that do not appear in his complaint).  When Rapaport finally gets around to addressing the sufficiency of his pleading, he merely retorts that his claims are so "obvious" they should be permitted to proceed.  *See* Opp'n at 1, 17, 20, 21.  Unsurprisingly, Rapaport fails to identify a single case where a plaintiff's characterization of his own claims as "obvious" satisfies the applicable pleading standards.  And for good reason—if a plaintiff's beliefs about his own claims were enough, that would render meaningless the pleading standards the Supreme Court announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Rather, at each turn, Rapaport's claims fail.

### A.    Rapaport's defamation claim fails.

As to Rapaport's defamation claim, Defendants identified a host of reasons why that claim must be dismissed—the complaint's exhibits undermine the allegation that various online posts were defamatory, as *none* of the posts identified Rapaport or included his photograph; Rapaport relies on time-barred allegations; the common interest privilege protects Defendants' discussions; and Rapaport cannot demonstrate malice or even negligence on the part of either Iyer or Garrett.  MTD at 14–21.  In response, Rapaport fails to address most of these points, relying instead on a series of misguided arguments.  Rapaport first states (at 18) that defamation claims are not

disfavored, and he argues that they are not to be disposed of at the pleadings stage.  He then argues (at 17) that his defamation claims are "obvious," pointing generically to his "entire First Amended Complaint."  Finally, he contends (at 15–16) that Defendants' assertion of the common interest privilege is premature and irrelevant because his complaint sufficiently alleges actual malice. Rapaport is incorrect on each point.

1.  To begin, Defendants did not suggest that *defamation* claims are disfavored.  Rather, they stated that intentional infliction of emotional distress claims are disfavored.  *See* MTD at 7 (citing *Sesto v. Slaine*, 171 F. Supp. 3d 194, 201–02 (S.D.N.Y. 2016)).  Rapaport's response about whether defamation claims are favored or disfavored is therefore irrelevant.

Nor is it premature to dispose of the defamation claim.  Indeed, "New York courts encourage the resolution of defamation claims at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Id.* at 14 (quoting *Ganske v. Mensch*, 480 F. Supp. 3d 542, 551 (S.D.N.Y. 2020)).  Rapaport's only response is an unexplained statement (at 18) that *Ganske* "fl[ies] in the face of" *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).  But Rapaport misreads *Palin*, where the Second Circuit held that "the district court erred in relying on facts outside the pleadings to dismiss the complaint."  *Id.* at 807.  That has no bearing here.  Moreover, *Palin* is entirely consistent with *Ganske*: If a defamation claim fails the plausibility test based on the complaint's allegations, it should be dismissed—especially because constitutionally protected freedoms are at stake in defamation claims.  The Court should do so here.

2.  Additionally, when Rapaport responds to the motion to dismiss with a generic reference to the entire first amended complaint, he fails to rebut the various reasons his defamation claim fails.  Indeed, parties "cannot simply dump papers on the court and expect the court to sift through

them to determine if some nugget is buried somewhere in that mountain. Judges are not like pigs, hunting for truffles buried in briefs or the record." *Westcon Grp., Inc. v. CCC Techs., Inc.*, No. 19-cv-02303 (PMH), 2022 WL 4134578, at *3 (S.D.N.Y. Sept. 12, 2022) (cleaned up), *recons. denied*, 2023 WL 2058709 (S.D.N.Y. Feb. 16, 2023). Rapaport has thus failed to address the fact that he cannot connect Iyer to any of the multiple users engaged in the cited conversations on Reddit and Toplawschools.com. Nor does he explain why the Court should assume any photos were posted on these internet threads, when no such photos are included in Rapaport's exhibits. Instead, Rapaport baldly asserts (at 9) that "Defendants Iyer and Garrett ridiculously pretend that no other threads could have existed on the internet." In other words, after filing three complaints, Rapaport still cannot identify any internet post identifying him, but he thinks there must be one out there somewhere that supports his claim. But, of course, he cannot rely on that kind of speculation to cross the plausibility line. *See In re Merrill*, No. 19-cv-6002 (LJL), 2021 WL 827190, at *13 (S.D.N.Y. Mar. 4, 2021) (holding that "sustain[ing] a claim based on rank speculation [is] prohibited by the Supreme Court's decisions in *Twombly* and *Iqbal*"), *aff'd sub nom. Gamma Traders-I LLC v. Merrill Lynch Commodities, Inc.,* 41 F.4th 71 (2d Cir. 2022).

Rapaport also fails to respond to Defendants' showing that several of the defamatory statements are untimely. MTD at 17–18. Rapaport therefore concedes this argument. *See Ventillo*, 2020 WL 7496294, at *12.

3. Finally, Rapaport is mistaken when he argues (at 16) that the first amended complaint shows "actual malice" and that the common interest privilege is therefore irrelevant. For this, Rapaport once again generically points to his entire complaint, and he claims (at 16) that Iyer and Garrett must have communicated with "deciders" within the Federalist Society and therefore acted with actual malice. But Rapaport offers nothing to connect these dots, and a plaintiff "cannot plead

malice simply by conclusorily labeling the statements so." *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 515 (S.D.N.Y. 2017).

Moreover, the allegations Rapaport adds in the proposed second amended complaint undermine any inference of actual malice. In that pleading, Rapaport now claims that several other students were the ones allegedly behind the defamatory statements and the scheme to ruin his career, with Iyer and Garrett merely "subordinates" of those ring leaders. SAC ¶¶ 157, 178. While it is hard to keep track of the evolving allegations and the growing number of people Rapaport now believes were targeting him, one constant is that Rapaport has not, through three complaints, sufficiently pleaded actual malice on the part of either Iyer or Garrett.[6]

For each of these reasons, Rapaport fails to state a claim for defamation, and his proposed second amended complaint does not cure those deficiencies.

### B. Rapaport fails to identify special damages and thus cannot maintain a claim for injurious falsehood.

Defendants also showed (at 12–14) that Rapaport's injurious falsehood claim must be dismissed. For one, courts routinely dismiss such claims when they are duplicative of a defamation claim. *See* MTD at 12–13 (citing cases). Additionally, Rapaport fails to identify the "amount" of "actual losses" caused by the "alleged tortious act." *Id.* at 13. In response, Rapaport states (at 18), without any support, that this tort is "on an evolutionary branch very far from defamation." And he again points generally to his entire complaint to claim that his damages stem from the inability to find a job or seek admission to the bar. Opp'n at 19. None of these statements responds to the motion to dismiss.

---

[6] In fact, as Iyer and Garrett pointed out in their motion to dismiss, Rapaport has not even sufficiently pleaded negligence. *See* MTD at 20–21.

As to the overlap with defamation, Rapaport fails to explain why the authority Defendants identified (at 12–13) is incorrect or inapplicable. Rapaport merely repackaged his defamation claim as an injurious falsehood claim, and that is reason alone to dismiss this claim.

Moreover, even though Rapaport purports to identify monetary damages in his proposed second amended complaint, those new allegations still come up short. For instance, Rapaport claims that the Bradley Fellowship was worth "at least $5,000," and "he had already applied for" it. SAC ¶ 79. But Rapaport does not allege that he *received* the fellowship. Instead, he alleges that someone (unclear who) "informed" him that he would receive the fellowship. *Id.* Even with all appropriate deference to a complaint's allegations, that vague allegation does not satisfy Rapaport's burden to plead special damages. From there, Rapaport adds speculation atop speculation, suggesting that the fellowship he applied for would have eventually led to an undefined summer position where he was perhaps to receive a stipend "between $10,000 and $15,000." SAC ¶ 80. Again, that is rank speculation.

Beyond those vague allegations, the proposed second amended complaint does not identify any specific amounts of damages. When a plaintiff claims special damages based on loss of employment and does not provide a specific amount of compensation lost, a court should dismiss a claim for injurious falsehood. *Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 02-cv-9567 (KNF), 2003 WL 22410623, at *8 (S.D.N.Y. Oct. 21, 2003); *cf. Drug Rsch. Corp. v. Curtis Publ'g Co.*, 7 N.Y.2d 435, 441 (N.Y. 1960) (noting that when special damages must be pleaded, relying on "round figures, with no attempt at itemization, must be deemed to be a representation of general damages.").

## C.    There is no plausible civil conspiracy.

Rapaport also fails to identify any reason to keep his conspiracy claim alive. As Defendants demonstrated, this claim must be dismissed for several reasons: Rapaport fails to plausibly allege

17

any agreement between Defendants, *see* MTD at 10; he fails to identify any acts Defendants took in furtherance of an agreement, *see id.* at 11; and he fails to identify any non-speculative damages, *see id.* at 12. Once again, Rapaport largely fails to address these shortcomings. Instead, Rapaport again claims that the exhibits to the first amended complaint make the conspiracy claim "obvious." Opp'n at 20. Beyond that, Rapaport contends that "[t]he only alternative to the explanation of conspiracy at this stage" is that Iyer "tricked defendant Garrett into doing his dirty work." *Id.* Of course, another alternative is that Garrett passed along information he saw, and neither he nor Iyer had anything to do with the creation of the photos or internet threads. And other possible explanations abound, with Rapaport's inability to settle on a single theory confirming the implausibility of his allegations. Indeed, plausibility demands more than mere possibility, and the existence of reasonable alternatives undermines the plausibility of a plaintiff's allegations. *See Nusantara Found. Inc. v. U.S. Dep't of State*, 486 F. Supp. 3d 737, 742 (S.D.N.Y. 2020). Thus, Rapaport fails to rebut the various reasons Defendants identified as requiring dismissal of Rapaport's conspiracy claim.

Further, the number of additional people Rapaport now claims worked together to tarnish his career also undermines the claim that Epstein conspired with Iyer and Garrett. *See* SAC ¶¶ 118–19 (describing a trio of other students who allegedly sought "damage to be inflicted upon the Plaintiff"), 128 (stating that another student wanted to "humiliate the Plaintiff"), 164 (alleging that yet another student spread defamations about Rapaport), 171 (noting that someone else complained that Rapaport was "creeping" on her). In fact, Rapaport seems now to allege that the members of the "conspiracy" were not even aware of each other or the substance of the alleged agreement. *Id.* ¶ 20 ("Upon information and belief, he was and may still be unaware of the involvement of defendant Pallaki in the conspiracy, as he may have only interacted with defendants

Iyer and Garrett in relation to it.").  Of course, conspirators cannot enter into an agreement if they don't know about each other.  Rapaport's conflicting allegations render his conspiracy claim implausible, and because the second amended complaint does not alter this analysis, the Court should dismiss this claim and deny leave to amend.

### D.      Rapaport's subjective feelings cannot sustain a claim for intentional infliction of emotional distress.

As to the claim of intentional infliction of emotional distress ("IIED"), Defendants demonstrated that Rapaport has not come close to identifying sufficiently extreme and outrageous conduct.  *See* MTD at 6–8.  Defendants also showed that courts dismiss IIED claims where, as here, they are duplicative of defamation claims, *see id.* at 7, and Rapaport has not plausibly alleged that Iyer and Garrett possessed the requisite intent, *see id.* at 9.

In response, Rapaport argues (at 21–22) that he suffered "severe" harm and that he "would have preferred to have" other things happen to him, such as being falsely accused of arson or of having an affair with a bookkeeper.[7]  But the standard for IIED's extreme and outrageous conduct "is an objective one."  *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1327 (S.D.N.Y. 1997).  And it "is so rigorous and difficult to satisfy that of the intentional infliction of emotional distress claims considered by this Court, every one has failed."  *Id.* (cleaned up).  Rapaport's allegations are no exception, and his subjective feelings are irrelevant.  Rather, as Defendants showed, Rapaport has not come close to identifying conduct that satisfies this standard.

---

[7] Oddly, Rapaport also tries to diminish the statements addressed in *M+J Savitt, Inc. v. Savitt*, No. 08-cv-8535 (DLC), 2009 WL 691278 (S.D.N.Y. 2009), by suggesting that it was less problematic to be accused of "f*****g the bookkeeper," *id.* at *14, because the bookkeeper "was apparently an outside contractor, or service provider rather than a coworker or employee," Opp'n at 21–22. To Rapaport, that apparently makes the accusation less harmful.  Putting aside the absurdity of the suggestion that the bookkeeper's employment status matters, it remains the case that Rapaport has not come close to alleging any actions that rise anywhere close to those in *M+J*, and even the statements in that case were insufficient to support an IIED claim.

**E.   The fact that Rapaport resides in New Jersey is not enough to save the claim for false light and invasion of privacy.**

Finally, Rapaport tries to save his New Jersey claim for false light by relying on *Catalanello v. Kramer*, 18 F. Supp. 3d 504 (S.D.N.Y. 2014), and invoking the doctrine of depeçage. Opp'n at 23–24. But neither *Catalanello* nor depeçage helps Rapaport. In *Catalanello*, the court noted that the choice-of-law analysis was a "close call" given that there were connections in the case to Missouri, Massachusetts, New York, and New Jersey. 18 F. Supp. 3d at 512–13. Thus, the court defaulted to the plaintiff's home state. *Id.* Further, the court noted that this analysis would apply to the plaintiff's defamation claim as well.

But here, Rapaport is trying to have it both ways—applying New York law to his defamation claim (and all other claims) but New Jersey law only to his false light claim. *Catalanello* does not support that argument, as this case does not involve multiple states. Everything, except Rapaport's home address, is connected to New York. Although Rapaport claims (at 24) that New Jersey is his "local community," his complaints undermine that claim. His alleged damages arise from not being able to join the New York bar, all of the parties have connections to New York, and Rapaport's second amended complaint goes to great lengths to discuss Rapaport's social life in New York. *See* SAC ¶ 167 (describing Rapaport's enjoyment of "the social scene of Manhattan"). Indeed, the second amended complaint mentions New York nearly 30 times, while it only mentions New Jersey twice—once referring to Rapaport's home address and then generically reciting the elements of this claim. SAC ¶¶ 234, 236. *Catalanello* is thus irrelevant, and the connection here to New York is unmistakable.

This case's undeniable connection to New York also makes the doctrine of depeçage irrelevant. "In a legal setting, depeçage is a court's application of different state laws to different issues in a legal dispute; choice of law on an issue-by-issue basis." Christopher G. Stevenson,

*Depecage: Embracing Complexity to Solve Choice-of-Law Issues*, 37 Ind. L. Rev. 303, 304–05 (2003) (cleaned up).  The doctrine is appropriate where "in a single action different states may have different degrees of interests with respect to different operative facts and elements of a claim or defense."  *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 75 (E.D.N.Y. 2000).  A classic example of the proper use of the doctrine was the Eastern District of New York's treatment of the numerous issues of damages and liability in a nationwide class action against the major tobacco companies.  *Id.* at 75–76.

In stark contrast to that example, this case does not involve a nationwide class action where numerous states have an interest in protecting their citizens.  As noted above, everything about this case stems from Rapaport's time at NYU School of Law and his desire to be a licensed lawyer in New York.  New Jersey law, under depeçage or otherwise, does not apply.

## III.    The Court Should Deny Leave to Amend the Complaint Again.

In a final attempt to keep this case alive, Rapaport asks the Court to allow him to amend his complaint yet again.  However, as Defendants demonstrated above, the proposed second amended complaint does not save a single one of Rapaport's claims, and he fails to provide any reason to delay the inevitable dismissal of his claims.  Rather, as shown through his proposed second amended complaint, Rapaport is intent on continuing to file pleadings and motions that are littered with disparaging remarks, and which are becoming increasingly frivolous.[8]

Although under Rule 15(a), a court "should freely give leave to amend when justice so requires," there are numerous reasons a court may deny leave to amend.  *Wood v. Mike Bloomberg*

---

[8] Indeed, Rapaport's filings have already resulted in a sanctions motion in another case pending before this Court. *See* Def.'s Mot. for Rule 11 Sanctions Against Pl. Rapaport & Pl.'s Former Counsel Richard A. Altman & the Law Off. of Richard A. Altman, *Rapaport v. Finkelman,* No. 1:24-cv-05942-JGLC (S.D.N.Y. Oct. 21, 2024) (ECF Nos. 20–22). Rapaport's continued reliance on frivolous and malicious filings in this case may well require a similar motion here.

*2020, Inc.*, 343 F.R.D. 470, 473 (S.D.N.Y. 2023) (cleaned up). The analysis typically involves four factors: (1) undue delay, (2) bad faith, (3) futility of amendment, or (4) undue prejudice. *Id.* All four factors favor Defendants, and Rapaport's brief motion for leave (ECF No. 77) fails to show otherwise.

*First*, Rapaport's untimely claims show undue delay. Rapaport waited nearly nine months to file the first amended complaint, which as explained above, was too late for statute of limitations purposes. Now, five months later, he proposes another complaint that contains different allegations concerning many other students at NYU—all of which were available to him at the time of his original complaint. *See* SAC ¶¶ 118–19, 128, 164, 171. Rapaport provides no reason for waiting to include these new allegations. The only explanation is a lack of diligence.

*Second*, and relatedly, these new allegations demonstrate bad faith. Across 30 new pages of factual allegations, Defendants Iyer and Garrett are barely mentioned. *See generally* SAC at 22–41. Instead, Rapaport uses these extra pages to malign anyone who offended him during law school. Of course, merely being offended by someone during law school does not create a cause of action. And, because these allegations are not connected to his legal claims, they are plainly asserted in bad faith.

*Third*, the added allegations fail for futility. As detailed above, the new allegations do not save any of Rapaport's claims. Most importantly, Rapaport's new complaint clearly shows that all of his claims are time barred. One reason "for denying leave to amend is where the amendment would be futile, and one way an amendment can be futile is by being outside the applicable statute of limitations. *Nkansah v. United States*, No. 18-cv-10230 (PAC/SLC), 2021 WL 5493214, at *2 (S.D.N.Y. Nov. 23, 2021). For the remainder of the claims, Rapaport still fails to state a plausible claim for relief. In fact, some of the added allegations make his previous claims even weaker, such

as the new allegation that the members of the "conspiracy" were unaware of who was involved and about the subject of the purported agreement. *See, e.g.*, SAC ¶ 20. Where, as here, the "proposed amendments would fail to cure prior deficiencies or to state a claim," the motion to amend should be denied as futile. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

*Fourth*, Rapaport's new complaint would prejudice Defendants. Since the outset of this case, Defendants have been litigating a moving target. Rapaport's original complaint included many irrelevant factual allegations and did not name any defendants. His first amended complaint, filed by counsel, was much shorter and targeted. Now, again as a *pro se* litigant, Rapaport proposes to add nearly 30 pages of new allegations, nearly all of which are irrelevant and unrelated to the claims. Allowing Rapaport to continue to change the parties and factual allegations in this case is unfair to Defendants who must continue to expend time and resources pointing out why his claims still fail.

Accordingly, the Court should deny Rapaport's motion for leave.

## CONCLUSION

There are a host of reasons to dismiss Rapaport's claims. As shown above, the claims against Iyer and Garrett are untimely as they do not relate back to the original complaint, and Rapaport fails to show otherwise. Aside from timeliness, Rapaport's claims also fail because they are entirely implausible. Here again, Rapaport offers the Court no answer other than his own *ipse dixit*. Moreover, Rapaport has underscored the implausibility of his claims by proposing a second amended complaint that relies on even less plausible theories of a "cabal" of NYU students out to get him.

For these reasons, the Court should dismiss Rapaport's claims against Iyer and Garrett. Additionally, the Court should deny Rapaport's request to amend his complaint, as Rapaport has

confirmed that he intends to use such filings to levy serious and unsupported accusations against various people.  Because Rapaport has now confirmed that he cannot support such spurious accusations, the Court should deny Rapaport's request for leave.

October 31, 2024

Respectfully submitted,

*/s/ Brian J. Field*
Brian J. Field*
  (D.C. Bar No. 985577)
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
Email: bfield@schaerr-jaffe.com

*Admitted *pro hac vice*

*Counsel for Defendants
Ajay Srinivasan Iyer and
Zachary George Garrett*

**Reply to Consolidated Reply-Opposition of Defendants Iyer and Garrett**

# Table of Contents

PRELIMINARY STATEMENT........................................................................................................1

ARGUMENT…………………………………………………………………………………6

    The Standard for Diligent Efforts in CPLR § 1024 Relating-Back.......................................6

    The Plaintiff Manifestly Exercised Diligent Efforts Far in Excess of the Standard Required.............8

    The Statute of Limitations is Prematurely Asserted to Avoid Even Minimal Discovery...................11

    CONCLUSION..................................................................................................................13

**PRELIMINARY STATEMENT**

Defendants Iyer and Garrett clearly wish to discuss every topic under the sun other than the fact that they were identified, in response to a third-party subpoena served upon the Federalist Society, as the forgers and fabricators of the vicious and career-ending defamations against the plaintiff that are the subject of this action. As they ignored and selectively addressed the pleadings against them previously, they continue to do so now. The allegations of defamation they refer to as "unfounded" in their introduction, are proven by exhibits already in the record, that they have ignored for months and in many filings, and their assertion to the contrary at the head of their reply-opposition demonstrates deny them credibility. They describe the plaintiff as "flippant" for arguing that the exhibits in the record, which they themselves still ignore, and that demonstrate that it is indeed obvious that they are liable for defamation as both the fabricators and disseminators of defamations against the plaintiff.  True to their prior tortious actions, defendants Iyer and Garrett continue to disparage and personally attack the plaintiff, offering non-sequiturs to the Court that border on frivolous chicanery. They begin by asserting that "Rapaport fails to back up those harmful accusations", even as Exhibit 2 and 3 were obtained pursuant to a subpoena from the Federalist Society, and proves the origin of the second version of the forged image to be defendant Iyer, and the transmitter to the Federalist Society to be defendant Garrett. The two even reference an action brought against a republisher of their vile defamations[1],  only to further demonstrate the grave injuries they have caused as the fabricators and forgers of the defamations, rather than mitigate their own culpability.

As far as non-sequiturs, in *Iyer and Garrett Reply-Opposition* at 10 they incredibly claim that the filing of a different lawsuit on September 27, 2024, which includes defendants Iyer and Garrett

---

1   The republication in X, formerly known as Twitter, and other internet sites was carried out by Abigail Finkelman, who is the defendant in *Rapaport v. Finkelman* 24-cv-05942 (SDNY)

among others in part due to the federal criminal ramifications of their malicious tortious actions[2] which are the cause of action of this case, somehow prevented them from appreciating that they were the Does identified as the defamers described on or after July 28, 2023. How this could be possible is just flabbergasting. Defendants Iyer and Garrett also unseriously represent that the plaintiff was "waiting" to name them as defendants as he was actually investigating and obtaining and enforcing subpoenas to identify them while they were hiding, and could have identified themselves as the Doe defendants at any time. Arguably, defendant Iyer had a duty to identify himself as a Doe defendant because in applying for admission to the bar, a standard question asks of status as a defendant in civil litigation is asked by New York, where he is admitted and most licensing jurisdictions. Upon inquiry to all bars of the United States, defendant Garrett is not admitted to any bar despite passing the Uniform Bar Exam.

Due to being unable to defend the allegations actually brought against them, defendants Iyer and Garrett have concocted alternate allegations meant to appear unreasonable, that were never made by the plaintiff, through cherry-picked quotations such as the term "cabal", which was used by other lawyers and law students to describe the notorious mistreatment of the plaintiff by a known group, but was never used by the plaintiff. Exhibits 2 and 3, demonstrate cooperation and coordination among the defendants, evidencing a conspiracy that was manifestly acted upon, and that needs no "theory" to be believed. The plaintiff's claims brought forth in the original *pro se* Doe complaint have proved to be remarkably accurate, and the subpoena to the Federalist Society proved fruitful. In a related case, the

---

2   The plaintiff's complete confidence in the applicability, plausibility and ultimate success of Racketeer Influenced and Corrupt Organization Act civil claims was reinforced by coincidentally coming across a Supreme Court amicus brief written by defendant Iyer and Garrett's counsel, Cristina Martinez Squiers of Scharr-Jaffe LLP. Brief amici curiae of Chamber of Commerce of the United States of America, et al. in *Medical Marijuana, Inc. v. Horn* 23-365. Therein, Schaerr-Jaffe LLP at *Id.* 14 described the state of the law in the Second Circuit is such that "...RICO becomes an all-purpose federal tort statute, available whenever a plaintiff can plead at least two predicate acts that could be characterized as wire fraud—as little as an advertisement and an email. See *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239 (1989); see also 18 U.S.C. §1961(5)…" Notably the claims in the related case that defendants Iyer and Garrett reference are not dependent on the Second Circuit's broad interpretation in *Horn* for personal physical injuries, as injury was directly to business and property. Furthermore, although the broad scope of RICO is accurately described in that amicus brief, the comparison of RICO to tort intended to minimize and criticize RICO merely demonstrates ignorance. The common law of tort originated at a time and in a manner that definitionally constrain it from adequately addressing the needs that necessitated later judicially developed or statutorily enacted bodies of law such as anti-trust, restitution, unjust enrichment, equity and RICO that complement rather than displace or duplicate tort. https://www.supremecourt.gov/DocketPDF/23/23-365/318154/20240716114639044_Horn%20Amici%20Brief%20of%20Chamber%20of%20Comm%20et%20al%207.16.24.pdf

plaintiff also accurately identified Abigail Finkelman as the operator of the anonymous @clapifyoulikeme X account used to defame him, invade his privacy, and also abuse countless others.

Generously provided with many months by waiver and stipulated extensions, and in multiple filings, defendants Iyer and Garrett have failed to respond to the factual allegations against them, as supported by exhibits of their own writings and forgeries, and have particularly ignored Exhibit 3, in which defendant Garrett transmitted the second version of the defamatory image to the Federalist Society, and identified defendant Iyer as the source of that digitally manipulated forged defamatory image. To make matters worse for any credibility they may expect to have, they have filed contradictory sworn affidavits ECF No. 75-1,2 denying all wrongdoing individually or jointly, despite being exposed, by their own tortious writings and forgeries already exhibit, in which defendant Garrett identifying defendant Iyer as the forger.

By effectively abandoning most of their bogus protestations of implausibility contained in their motion to dismiss, where they ludicrously asserted that defendant Garrett's annotated copies of specific web pages saved at a particular moment represent all relevant material that was ever on the internet to the exclusion of any other, they have made their last refuge from liability in the statute of limitations.

As a threshold matter, defendants Iyer and Garrett's arguments as to the statute of limitations should not be accepted by the Court, because whether as a matter of dishonesty or incompetence, they did not address in their reply to the motion to dismiss address, or demonstrate in any way, the applicability of CPLR § 1024 in a way to clearly and convincingly show why the case should be dismissed at the motion to dismiss stage, before which affirmative defenses are normally made. Defendants seeking a 12(b)(6) dismissal on the grounds of an affirmative defense such as the statute of limitations, must meet a heightened standard, and their motion to dismiss was facially defective due to a failure to exhaustively foreclose any merit the case may have as is required of them. Defendant's Iyer and Garrett's statute of limitations analysis was confined to *Frederique v. Cnty. of Nassau*, No. CV 11-1746(WDW), 2014 WL 12841638 (E.D.N.Y. 2014), a case which did not even contemplate CPLR §

1024 at all, which is the correct and obvious manner of relating-back in this jurisdiction under these facts. Their consolidation of their reply to the opposition to their motion to dismiss, and opposition to a motion seeking leave to amend, may have just been a cynical attempt to get a second bite at the apple, while continuing to waste time and resources with their meritless attempts at dismissal, and desperation to avoid discovery.

Even if their arguments, made for the first time in their consolidated filing where to be accepted, statutory provisions CPLR § 203 and 1024 invoked by FRCP 15(c)(1)(A), will prevent defendants Iyer and Garrett from being rewarded for concealing their evil machinations against the innocent plaintiff, who made extraordinarily diligent efforts to uncover their identities far in excess of those which that judicially-crafted standard requires. The plaintiff was not successful until he received subpoenas duces tecum to the Federalist Society and Kirkland & Ellis LLP from this Court, because he was met by fraud, deception, silence and veiled threats of being prevented from being able to graduate law school and sit for the bar exam, which he finished writing on July 26, 2023, two days before filing. Although the diligent efforts standard does not require hypothetical success 'but for' fraud or active concealment, it is true in this case that 'but for' defendant Epstein's fraud, misdirection and chilling threats, and the active concealment of defendant Iyer and Garrett's tortious conduct by all three co-defendants, the plaintiff would have discovered the true names of the defendants.

Defendants Iyer and Garrett offer rank speculation and sophistic extrapolation to confabulate a "diligent effort" standard custom-tailored to defeat this plaintiff that contradicts the law and practices of the Courts of the State of New York. Their confabulation is demonstrably false and incorrect because it relies upon factors that have not been considered by the Courts of New York, such as their assertion that the plaintiff must be held to a much higher standard because he attended law school, ignores many inconvenient precedents, and is further applied by them in ignorance of inconvenient facts that clearly show that the plaintiff's efforts were the paradigm of diligent effort.

In another demonstration of their culpability and lack of credibility, defendants Iyer and Garrett claim that the original John Doe *pro se* complaint would not provide them with notice of their own culpability if they had read it. This is obviously ridiculous because the Federalist Society, in responding to a third-party subpoena and relying upon that complaint to search for responsive materials, was able to identify them as the proper defendants. Defendants Iyer and Garrett must know their own actions of fabricating, disseminating and forwarding the defamations better than the Federalist Society, especially as legally trained graduates of an 'elite' law school[3] that must clearly understand the ramifications of their actions. The Federalist Society selected one email and its attachments to be provided in their subpoena response out of potentially tens of millions of emails possessed by an organization of that size and age.

Rather than allege insufficient notice from the part of the original John Doe complaint that the Federalist Society provided subpoenas in response to, which discussed the act of packaging and forwarding the defamatory materials to the James Kent Academy of the Federalist Society (not specifically Lee Otis in that paragraph) they seize upon the specific mention of Lee Otis (who is the head of the Federalist Society Faculty Division) in a different paragraph. Yet defendants Iyer and Garrett themselves also sought to ensure that the defamatory materials would reach Lee Otis through the Student Division, as defendant Garrett wrote in Exhibit 3, and it actually did reach Lee Otis through co-defendant Epstein, who has already admitted in writing to sending it to her, and who received it himself from defendants Iyer and Garrett.

Defendants Iyer and Garrett, represented by Schaerr-Jaffe LLP who appear keen to litigate the claims of putative defendant Pallaki who is not their client[4], irrelevantly attempt to conflate issues pertaining to his liability with their own. Most egregious of which is their assertion that any civil

---

3 A fact they share in common with the plaintiff, and one that they incorrectly rely upon to demand an impossibly high standard of diligent efforts of him.
4 Further demonstrating their lack of care for minimal ethical standards as are at issue by their inherently and irremediably conflicted concurrent representations of defendant Iyer and defendant Garrett that threatens to undermine the integrity of these proceedings, resulting in a motion to disqualify having been brought.

conspiracy is rendered impossible if one party, working toward the same purpose through unlawful

overt acts in cooperation, does not personally know every other party. Furthermore, they ignore the

obvious possibility that defendants Iyer, Garrett and Epstein may be in a civil conspiracy with each

other, as conclusively demonstrated by Exhibit 3 and defendant Epstein's cover-up operation on their

behalf, while defendants Iyer and Pallaki may be in another, related, civil conspiracy with each other.


## ARGUMENT

### The Standard for Diligent Efforts in CPLR § 1024 Relating-Back

The "diligent effort" requirement is a judicially-crafted standard, not present in the text of

CPLR § 1024, that demands of plaintiffs to allege at the pleading and dismissal stage that they have

diligent efforts to discover the true names of the unknown parties. Defendants Iyer and Garrett

misrepresent this standard beyond recognition through their sophistic extrapolations from many cases

in which the diligent efforts *were* found to be undertaken by plaintiffs far in excess of the actual

requirement, and for that reason did not require a thorough analysis of the minimum required by the

standard. Furthermore, the plaintiff far exceeds the minimum requirement of the standard, and

exercised more due diligence manifest in both persistence, accuracy and sophistication than many

others who were successful in relating-back their claims against John Does who hid from justice.

Diligent effort was approved for a plaintiff that alleged to have utilized internet search engines

to attempt discover the true names of the Doe defendants *DeMarzo v. Cuba Hill Elementary Sch.*, 220

A.D.3d 917, 919-20 (2d Dep't 2023). In *A.S. v. Erie County.*, 219 A.D.3d 1694, 196 N.Y.S.3d 825

(2023) a plaintiff satisfied the diligent efforts requirement by alleging two inquiries for county records

relating to foster care shortly before the statute of limitations. Proper notice has been found when

referring to a landscaping tortfeasor as "John Doe Tree Company" *Tobin v. St. Paul's Lutheran

Evangelical Church*, 1987, 136 Misc.2d 801, 519 N.Y.S.2d 93 (Sup.Ct.N.Y.Co.) or to police officers

engaging in an unlawful and destructive search of a home as "those individuals who accompanied

Detective Sierra into plaintiffs' apartment and participated in the illegal acts hereinafter alleged"
*Henderson-Jones v. City of New York*, 2011, 87 A.D.3d 498, 928 N.Y.S.2d 536 (1st Dep't).

As demonstrated *supra* by *DeMarzo* and *A.S. v. Erie County*, diligent efforts for CPLR § 1024
serve as quite a low bar, and this is in harmony with the purpose of the statute, which is to prevent the
harsh effects of the statutes of limitations upon plaintiffs who are genuinely ignorant as to the identities
of the true names of the defendants, and have made real efforts to learn the true names of the
defendants. Defendants Iyer and Garrett, who concealed their activities through anonymous online
postings, and private communications that were designed and tended to jointly implicate those who
relied upon them, such as defendant Epstein who was initially deceived but later joined as co-
conspirator, and made significant contributions to the cover-up efforts to deceive the plaintiff, which
became in his own interest.

To probe the standard from the other direction, in reviewing cases that courts did allow relating-
back per CPLR § 1024, a court refused to find due diligence when a patient in a medical malpractice
suit only made two "half-hearted" attempts to obtain his medical records *after* the statute of limitations
had taken effect *Dooley v. Columbia Presbyterian Med. Ctr.*, No. 06 CIV. 5644 (JCF), 2009 WL 129941
(S.D.N.Y. Jan. 16, 2009). In contrast, the *A.S. v. Erie County* court allowed relating-back when the
plaintiff only made two attempts, which were not described as particularly forceful or determined
shortly before the statute of limitations had run. The records in *Dooley* clearly identified the Doe
anesthesiologist sought, and the plaintiff could have demanded them at any time per state and federal
law before his claims became time-barred. The plaintiff in the instant case was not entitled as a matter
of right to demand (except through eventual subpoenas issued by the Court) any record or testimony
that would have identified the Doe defendants, and all of his diligent efforts, which far exceeded two
attempts, to discover their identities were met by fraud, avoidance, silence and intimidation.

<u>The Plaintiff Manifestly Exercised Diligent Efforts Far in Excess of the Standard Required</u>

Defendants Iyer and Garrett's dishonest and deceptive arguments demonstrate that they will seize upon and contort beyond recognition anything due to desperation. They simply cannot resist seizing upon descriptive elements of allegations, and waste no opportunity to spin volumes of yarn about trivialities meant to distract the Court from the important issues, and as a means to selectively and inconsistently address the factual allegations of the complaints at issue. This is especially egregious as they have demanded hyper-particularity and opposed obvious inferences that even a small child could make, only to complain about additional allegations being added in the Second Amended Complaint, providing additional background information[5]. They seize upon the plaintiff's last-resort appeals to defendant Epstein's sense of morality or concern about spiritual judgment, which he made by referring to the impressive statute built on a clay foundation which gave way to ruin in the dream of the biblical Daniel, or the lyrical reference of a song describing a foolish man "dragging on feet of clay, never knowing he's astray". Both of these attempts, which followed four attempts, were calculated to encourage defendant Epstein to tell the truth, and dissuade him from risking a potentially tortious cover-up.

In retrospect it is clear that defendant Epstein acted to mitigate not only his own liability, but also to protect his own legacy and ability to recommend in the future in the wake of the defamations and forgeries created by his recommended students, defendants Iyer and Garrett. Such last-resort appeals were not the only attempts to obtain the true names of the Does from defendant Epstein, and followed a phone call, an email (to which defendant Epstein responded in writing with both fraud as to defendants Iyer and Garrett and an incredible admission of his own liability), multiple in person inquiries, and preceded a final presentation of the draft complaint, on July 28, 2023, to defendant Epstein.

---

5    Furthermore, their bad faith opposition to the plaintiff's attempt to amend this case to include claims arising from similar facts under federal law, resulted in an extreme workload of the *pro se* plaintiff to prepare two oppositions, a motion seeking leave to amend, the Second Amended Complaint and an additional complex case whose claims were imminently subject to the statute of limitations.

Rather than a scattering of conversations, the plaintiff diligently and persistently attempted to extract from defendant Epstein, who actually knew the identities of defendants Iyer and Garrett as the tortfeasors, and utilized every means of persuasion such as by appealing to defendant Epstein's self-interest, friendship, loyalty, justice, morality and the possibility of spiritual judgment for covering up and magnifying a malevolent injury inflicted initially by defendants Iyer and Garrett.

Of all of the cases cited relating to diligent efforts, and upon diligent research no other case was found, in which a plaintiff went to such great and diligent efforts so as to draft an entire *pro se* complaint, detailing all of the allegations and background information that may be relevant, and presented such a draft to a person who actually knew the true names of the Doe defendants, and who turned out to be a defendant himself.

Instead of looking to cases where relating-back was denied, defendants Iyer and Garrett desperately look for cases where a very high degree of diligent effort was exercised by the plaintiff under different facts, and pull out those differences simply to find distinctions from the instant case. An example is their example of *Medina v. Seiling* as a case where an admirably persistent *pro se* plaintiff clearly made diligence efforts, to which relating-back per CPLR § 1024 was granted. Relating-back should be granted here, which was cited by this *pro se* plaintiff for the proposition that allegations of written inquiries alone are sufficient, not the question of their volume.

Furthermore *Medina* was a § 1983 claim, to which CPLR § 1024 applies through a policy decision of federal courts to allow more lenient state statutes of limitation to apply to those federal claims absent a federal statute, effectively converting CPLR § 1024 into a reason for federal equitable tolling. Every degree of sympathy and judicial understanding is rightly applied in *Medina* for a wronged prisoner who is limited, due to incarceration, from pursuing or investigating his legal rights, but *Medina* does not establish that others who are not prisoners are subject to a drastically higher standard as defendants suggest. *Medina* was accurately cited for a proposition uncontestable by defendants Iyer and Garrett, that a plaintiff is not required to provide anything more than allegations as

to their own efforts at the current stage, and that allegations of unanswered requests for information are sufficient to show diligence. Although this *pro se* plaintiff's situation is different from that of the pro se plaintiff in *Medina*, this plaintiff was restricted in his freedom of action by a credible fear that he would be summarily removed from law school and prevented from writing the bar exam, as defendant Epstein had chillingly warned him that this could happen to him at any time and that he should keep a very low profile. Furthermore, the plaintiff's inquiries also amount to roughly one per month, which include inquiries and investigations in which the plaintiff utilized his freedom of movement to go to places and gatherings where he could find witnesses who he could ask for information, or who could offer it to him personally if he did not know of any reason to ask them. The plaintiff received some testimony and information but nothing that provided him with the true names of the defendants.

Defendants Iyer and Garrett underhandedly attempt to turn the plaintiff's honesty and transparency with this Court against him. The plaintiff has always had a duty to mitigate injury according to basic tort principles, and a further responsibility to prevent third parties from destroying evidence. The plaintiff exercised diligent efforts, which were occasionally cautious in a manner not contradicting their diligence, in order to prevent the destruction of evidence, such as spoliation of the email and attachments that would eventually be received from the Federalist Society pursuant to subpoenas. The plaintiff also sought to avoid significant retaliation to be taken against him, as defendant Epstein had chillingly warned him that he could be prevented from completing his law degree and writing the bar exam at any time and with no 'due process'.

The plaintiff had six total inquiries with defendant Epstein, including one which produced a written and fraudulent denial, another which resulted in defendant Epstein screaming at the plaintiff to leave his office after the plaintiff accused him of betrayal, and the final one in which defendant Epstein read the entire *pro se* complaint and provided no information other than a few excited utterances expressing shock. The plaintiff also asked Lee Otis, who refused to disclose who had sent the Federalist Society or her of the defamations on August 2, 2022.  The plaintiff discussed the matter with Peter

Redpath who provided no information on November 9, 2022, after writing to him about his belief that a member of the NYU Federalist Society was culpable on August 2 receiving no response. The plaintiff also spoke to four different rank and file members of the Federalist Society who had some information about the underlying transactions and occurrences giving rise to this action in Texas, Washington D.C. and New York, in September, November and December respectively.

While providing plenty of criticism, defendants Iyer and Garrett have not demonstrated any other course of action that the plaintiff could have taken to unmask them as the proper defendants. Even if CPLR § 1024 did not clearly apply to the proper and paradigmatically diligent efforts of this *pro se* plaintiff, the plaintiff's lack of knowledge as to the true names of defendants was resultant of active concealment, fraud, intimidation and conspiracy, and for such purposes federal or state equitable tolling, or Rule 15(c)(1)(C) mistake induced by defendant Epstein's fraud, which prevented him from properly investigating or utilizing the clues at his disposal, would be also appropriate.

As far as they claim so as to have not been able to receive notice, even the caption of the original John Doe *pro se* complaint described the three Does as a Top-Law-Schools.com user, a Reddit.com user, and an NYU law student. Defendant Iyer, who forged and disseminated the defamations online with defendant Garrett should have been put on the most direct and obvious notice possible as to the first two, as was defendant Garrett due to the third Doe, described as an NYU law student who packaged and forwarded the defamatory materials to the Federalist Society, as demonstrated by Exhibits 2 and 3 being provided in response to a subpoena.

<u>The Statute of Limitations is Prematurely Asserted to Avoid Even Minimal Discovery</u>

According to the federal pleading practice and procedures, it is premature and improper to dismiss a case in response to an assertion of the statute of limitations unless it can be demonstrated that the statute of limitations *must* bar the action, because the statute of limitations is an affirmative defense. Rather than disproving existence of diligent efforts taken by the *pro se* plaintiff, the first amended

complaint, and the second amended complaint thoroughly and overwhelmingly demonstrate the plaintiff's diligent efforts far in excess of the standard as discussed *supra*.

In *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144 (2d Cir. 2024) the Second Circuit reiterated "[t]he pleading requirements of the Federal Rules of Civil Procedure do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." *Clark v. Hanley*, 89 F.4th 78, 93–94 (2d Cir. 2023) (internal quotation marks and citation omitted). In fact, "[p]laintiffs are under no obligation to plead facts supporting or negating an affirmative defense in the complaint. *In Re: Nine West LBO Sec. Litig.*, 87 F.4th 130, 144 (2d Cir. 2023)" (original emphasis).

Defendants Iyer and Garrett prematurely assert the statute of limitations in a desperate plea to avoid discovery, during which even pinpoint compulsory inquiries will easily demonstrate their culpability. Due to the exhibits already in the record as a result of the subpoena required to identify them as the John Does, and the manifest fabrication, falsehood and forgery of the defamations conveyed by them, it is highly foreseeable that a summary judgment could be obtained against them for defamation, if such a summary judgment against them is not already possible.

Although liability and damages are closely linked, a case may begin with knowledge and allegation of a single instance of defamation being pleaded thus providing a cause of action, yet other defamations may be discovered revealing factual transactions and occurrences both relevant to the analysis of the exercise of due diligence during the relevant period, and the extent of concealment and deception undertaken to prevent identification. The latter cannot be known at the outset, prior to discovery, and demonstrate why the full amount of due diligence cannot be ascertained in the face of a premature assertion of the statute of limitations.

## CONCLUSION

The meritorious claims most currently and accurately stated in the proposed Second Amended Complaint brought by the plaintiff against defendants Iyer and Garrett, who were identified by the Federalist Society in response to subpoenas that unmasked them as the John Does who perpetrated a vile and malevolent defamation, including through forgery, must continue to discovery and trial on the merits.

/s/ Gideon Rapaport pro se
GideonRapaportLaw@outlook.com
(862) 213-0895
#627 1078 Summit Avenue
Jersey City, New Jersey, 07307

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

Gideon Rapaport
_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

Ajay Srinivasan Iyer, Zachary George Garrett,
_____

Richard Allen Eptein
_____

(List the full name(s) of the defendant(s)/respondent(s).)

___23__ CV _06709___ (JGLC)(      )

## AMENDED
## NOTICE OF APPEAL

Notice is hereby given that the following parties:    Gideon Rapaport
_____

(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the    ☐ judgment    ☒ order    entered on:    March 31, 2025

(date that judgment or order was entered on docket)

that:    Granted defendants Iyer and Garrett's Docket No. 53 Motion to Dismiss.

Dismissed all claims against defendant Epstein. Denied Motion to Disqualify Schaerr-Jaffe LLP.

(If the appeal is from an order, provide a brief description above of the decision in the order.)

April 19, 2025
_____
Dated

/s/ Gideon Rapaport
_____
Signature[*]

Rapaport, Gideon
_____
Name (Last, First, MI)

#627 1078 Summit Avenue    Jersey City    NJ    07307
_____
Address    City    State    Zip Code

(862) 213-0895
_____
Telephone Number

gideonrapaportlaw@outlook.com
_____
E-mail Address (if available)

_____

[*] Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case. Fed. R. App. P. 3(c)(2). Attach additional sheets of paper as necessary.

Rev. 12/23/13

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Gideon Rapaport
_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

Ajay Srinivasan Iyer, Zachary George Garrett,
_____

Richard Allen Eptein
_____
(List the full name(s) of the defendant(s)/respondent(s).)

__23_ CV _06709__ (JGLC)(    )

**NOTICE OF APPEAL**

Notice is hereby given that the following parties:   Gideon Rapaport
_____

_____

(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the    ☐ judgment    ☒ order    entered on:   March 31, 2025

(date that judgment or order was entered on docket)

that:   Granted defendants Iyer and Garrett's Docket No. 53 Motion to Dismiss.

_____

(If the appeal is from an order, provide a brief description above of the decision in the order.)

April 7, 2025
_____
Dated

/s/ Gideon Rapaport
_____
Signature[*]

Rapaport, Gideon
_____
Name (Last, First, MI)

#627 1078 Summit Avenue   Jersey City    NJ    07307
Address    City    State    Zip Code

(862) 213-0895
_____
Telephone Number

gideonrapaportlaw@outlook.com
_____
E-mail Address (if available)

---

[*] Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case. Fed. R. App. P. 3(c)(2). Attach additional sheets of paper as necessary.

Rev. 12/23/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

GIDEON RAPAPORT

                        Plaintiff, *pro se*

                        -against-


AJAY SRINIVASAN IYER, ZACHARY GEORGE
GARRETT, RICHARD ALLEN EPSTEIN

                        Defendants.
-----------------------------------------------------------------x

Case No. 1:23-cv-06709

**ORAL ARGUMENT
REQUESTED**


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO
DISQUALIFY DEFENDANT'S COUNSEL, SCHAERR-JAFFE LLP**


**GIDEON RAPAPORT, *PRO SE***
GideonRapaportLaw@outlook.com
(862) 213-0895
#627 1078 Summit Avenue
Jersey City, New Jersey, 07310

## PRELIMINARY STATEMENT

Plaintiff Gideon Rapaport moves for the disqualification of the law firm Schaerr-Jaffe LLP, concurrent counsel to defendants Ajay Srinivasan Iyer and Zachary George Garrett. To ensure the integrity of the proceedings, disqualification is required as a result of the firms' multiple conflicts of interest created by these concurrent representations, in violation of Rule 1.7 of the New York Rules of Professional Conduct[1]. This Motion does not contemplate an adjudication on the merits of anything other than the disqualification of opposing counsel, which is the purpose of this motion, and engages in legal argument construing facts in different ways to demonstrate how the adversarial and ethical matters *could* be argued or determined in various hypothetical scenarios, and their legal significance in general.

---

[1] The New York Rules of Professional Conduct, 22 N.Y.C.R.R. 1200 (2022) (hereinafter, "RPC") apply to the conduct of attorneys appearing before the United States District Court for the Southern District of New York. *See* Rule 1.5(b)(5) of the Local Rules of the Southern and Eastern District Courts of New York.

1

## PROCEDURAL HISTORY

On July 28, 2023, Plaintiff Gideon Rapaport, proceeding *pro se*, filed an action for defamation, defamation per se, false light invasion of privacy and intentional infliction of emotional distress. This case initially numbered three John Does, and described them by their tortious actions.

After investigation and the enforcement of subpoenas against Kirkland & Ellis LLP, the Federalist Society of Law and Public Policy, Plaintiff Rapaport discovered the true names of the Does and retained counsel to continue the case on April 24, 2024.

On May 24, 2024, Plaintiff Rapaport, represented by former counsel, filed a First Amended Complaint, that named the former-Doe defendants.

On September 9, 2024 Plaintiff Rapaport resumed proceeding *pro se*, and upon a thorough review of the docket for changes, combined with his insight into the case, and knowledge of the persons and circumstances involved, he realized that the concurrent representation by Schaerr-Jaffe LLP of defendants Iyer and Garrett could not be ethical and undermined the validity of proceedings.

2

## FACTS

Resolving a disqualification motion requires a "painstaking analysis of the facts" of a case. *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 (2d Cir. 1977). Plaintiff hereby incorporates by reference the facts set forth in his First Amended Complaint, which itself incorporates by reference some facts from the Original Complaint, and addresses herein only those facts necessary to resolve the instant motion.

The exhibits in the record, which are referenced in the First Amended Complaint provide a significant insight into intentions, communications and actions of defendants Iyer and Garrett, and will also be used to demonstrate the disparate interests, settlement incentives, and degrees of culpability that any reasonable attorney would easily become aware of. The disparate interests include contradictory arguments as to liability, because although accused of the same tort liability and of conspiracy as a legal, the tortious actions alleged against either defendant as a factual matter are very different.

In addition to the First Amended Complaint and exhibits, the record establishes that attorneys of Schaerr-Jaffe LLP were admitted *pro hac vice*, and that they do not maintain an address or physical presence in New York.  Rather it is a Washington D.C. based boutique law firm, with a secondary office in San Francisco, California.

3

## LEGAL STANDARD

### Disqualification of Counsel

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)) and from their responsibility to supervise members of the bar. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975). The Second Circuit has consistently held that concurrent representation of clients with concurrent adverse interests is "prima facie improper." *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976) and has gone so far as to to demand that "an attorney must avoid not only the fact, but even the appearance of representing conflicting interests." *Id.*

Sacrificing the interests of one client to protect the other, and denying to both the opportunity to make their best arguments, including when they come at the expense of each other is precisely the mischief that Rule 1.7 of the RPC is set out to prevent[2].

---

2 Rule 1.7: (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

4

It is the burden of the counsel engaging in concurrent representation of clients with adverse interests to demonstrate that these adverse interests could have no "actual or apparent" effect on their representation. *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384. Opposing Counsel must "show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation." *Id.* This burden was later reflected upon by the Second Circuit as being "so heavy that it will rarely be met." *GSI Commerce Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010).

Silence on the factual or legal issues upon which there is a conflict is not a solution, as a "diminution of vigor" *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 is enough to disqualify conflicted counsel.

When waiver is not secured prior to taking the engagement, disqualification is appropriate, because waiver after a motion to disqualify cannot obtain effective consent. *Discotrade Ltd. v. Wyeth-Ayerst Int'l, Inc.*, 200 F. Supp. 2d 355, 359 (S.D.N.Y. 2002).

<u>Bankruptcy</u>

The Bankruptcy Code of the United States provides that some debts are incapable of being discharged under bankruptcy. A debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is one such debt. 11 U. S. C. § 523(6). In *Kawaauhau v. Geiger*, 523 U.S. 57, the Court affirmed the basic rule that

5

debts arising from judgments in tort for negligence are dischargeable in bankruptcy, and even went further to exclude reckless conduct, exceeding of negligence, from 11 U. S. C. § 523 exception to discharge, because this conduct was not intentional.

## Professional Ethics re Forgery

According to the professional ethics rules regulating attorneys of every state and jurisdiction in the United States, there exists some form of a good character requirement for becoming barred, and expectations of good conduct required to avoid attorney discipline which may include disbarment. Forgery is a universally condemned form of malfeasance that due to its simultaneously fraudulent nature and undermining of public trust represents the antithesis of integrity.

Rule 8.4(c) of the New York Rules of Professional Conduct, 22 N.Y.C.R.R. 1200, prohibits lawyers from engaging in conduct involving "dishonest, fraud, deceit or misrepresentation". Forgery directly involves deceit and misrepresentation, because it entails creating something inherently fake, and passing it off as real in order to deceive others. This rule is a general prohibition, and does not only apply to the lawyer when they are actually practicing law.

6

## Argument

### Culpability

Iyer and Garrett are accused of the same legal culpability, including through the legal mechanism of conspiracy, and would be expected to be jointly and severally liable for all damages of the instant case. However, this overlap is only surface-level, because even a cursory look at the facts that Iyer and Garrett could be seen as accused of each doing roughly one half of their joined operation. When Iyer forged, Garrett distributed. When Iyer posted anonymously online, Garrett send the email contained in Exhibit 3 under his own name. When Iyer testified as a witness who was actually employed at Kirkland & Ellis LLP, Garrett "investigated" as an outsider doing internet sleuthing. When Iyer was in New York and took credit for taking the picture shown in Exhibit 2 in the lobby of the firm, which he actually forged, Garrett was at the Student Leadership Conference hosted for incoming Federalist Society Chapter Presidents far away.

It would be to their benefit to attempt to disprove a conspiracy, and in doing so each could only be liable for their own actions. The next logical step would be to blame the other for having deceived them. Iyer would claim that he had never taken or sent the picture Exhibit 2, and that Garrett was lying in his email by pinning the forgery on him Exhibit 3. On the other hand, Garrett would claim that as an outsider, Iyer tricked him with a forgery and false testimony to having seen the "Do Not Admit" poster, and could not be malicious, reckless or perhaps even negligent. Iyer could also claim that Garrett

7

invented the sexual harassment defamation, and just took a picture of something he saw as piece of evidence.

It is hard to imagine more diametrically opposed arguments, yet somehow the attorneys at Schaerr-Jaffe LLP do not find this to be a conflict. This concurrently shared counsel would never be able to make these arguments, and thus Garrett and Iyer will be deprived, although this likely benefits one at the expense of the other.

### Damages, Settlement Incentives and Bankruptcy Dischargeability

Iyer and Garrett do not have the same financial exposure to damages. Iyer stands to lose significant amounts of money, while Garrett is close to judgment-proof. This Court could in a closed setting absent Plaintiff, determine if Iyer is footing the entire bill for the high-end representation engaged as a threshold matter.

Considering the effects of bankruptcy law on "willful and malicious injury" versus negligent injury, Garrett would not be meaningfully affected by a negligent verdict no matter how large, and so he has no incentive to engage in stratagems that gamble for a full acquittal but risk "willful and malicious injury" status that would impose upon him financial liability for life. On the other hand, Iyer would stand to lose significantly in bankruptcy.

As far as settlement, Garrett would have less to lose by having less to offer, and more to gain from avoiding the risk of a nondischargeable debt. Iyer on the other hand, faces a fat tail risk, that is not very far out considering that he has been identified in one

document, and by multiple witnesses as the source of the second forgery (Exhibit 2), that he claimed to have "taken" himself less than a day after the less sophisticated, first forgery disappeared from the internet.

Attorney Discipline and Character and Fitness Consequences

Iyer is already a member of the New York bar, while upon information and belief, Garrett is not a member of any bar. Iyer is fully committed, and cannot afford to be found by a jury to have forged a "Do Not Admit" notice as having come from a law firm, in a malicious act of career-ending defamation. This finding of fact, on a matter of such moral turpitude could very easily result in disbarment, which is an even worse outcome, as a greater fall, than not having the opportunity to join. Having not joined, if Garrett were to be found culpable by a jury of trafficking in a forged image (but not forging it himself) as demonstrated in Exhibit 3, whether maliciously, negligently or somewhere in between, he could do good deeds for a few years and present himself to a character and fitness committee as a young man who made a mistake.

The Conflicted Schaerr-Jaffe LLP Has Already Introduced Prejudice and Affected Proceedings

Schaerr-Jaffe LLP cannot resolve these immense conflicts of interest that touch every aspect of the case with silence. In their Motion to Dismiss of August 16th, Docket No. 54, they made arguments on behalf of both of these clients, and cunningly avoided central aspects of the case against their two clients. They talked about the statute of limitations and a qualified privilege to "warn", the first of these is simple and purely

9

legal matter that will be resolved in other proceedings, but the qualified privilege could only apply to Garrett as the recipient of a forged "'Security Desk Photo' taken" by Iyer. Iyer could never claim a qualified privilege to warn others of something that he himself knew to be false because he had fabricated it himself.

While practically ignoring, and certainly refusing to engage with the accusation that Iyer was accused of actual forging the images twice (Exhibits 1 & 2), and that co-defendant Garrett effectively identified him as the culprit of that in Exhibit 3, Schaerr-Jaffe LLP spun the case into a different direction. They chose to emphasize the defamation relating to sexual harassment, not being barred from the premises, which Iyer is also accused of, but is not caught by an exhibit at this stage in the way that Garrett who wrote "my understanding is that Gideon Rapaport was fired from his summer associate position at Kirkland & Ellis NY last week for sexually harassing a practice assistant or an attorney."

## **Conclusion**

### <u>The Conflicted Schaerr-Jaffe LLP Should be Disqualified Now to Ensure the Integrity of the Proceedings, Prevent Delay, and Promote Efficiency</u>

Everyone is entitled to due process and loyal counsel. A conflict of this magnitude undermines the integrity of these proceedings, the administration of justice, and the interest of the Plaintiff of not becoming a party to unethical treatment of a defendant.

The Plaintiff's motion to disqualify Schaerr-Jaffe LLP should be granted.

Dated: Vancouver, British Columbia (Canada)
September 13, 2024

Respectfully submitted,

/s/ Gideon Rapaport, *pro se*
GideonRapaportLaw@Outlook.com
(862) 213-0895
#627 1078 Summit Avenue
Jersey City, New Jersey, 07310

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GIDEON RAPAPORT,

                     Plaintiff,                     Case No.: 1:23-cv-06709 (JGLC)

        -against-

AJAY SRINIVASAN IYER,
ZACHARY GEORGE GARRETT, and
RICHARD ALLEN EPSTEIN,

                    Defendants.
----------------------------------------------------------X

**DEFENDANTS AJAY SRINIVASAN IYER AND
ZACHARY GEORGE GARRETT'S OPPOSITION TO PLAINTIFF'S MOTION TO
DIQUALIFY DEFENDANTS' COUNSEL, SCHAERR JAFFE, LLP**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT .................................................................................................................... 1

    I.     Mr. Rapaport Cannot Meet His Heavy Burden Because He Relies On
          Speculation Alone. ........................................................................................ 2

    II.    Even If A Conflict Existed, Defendants Iyer And Garrett Expressly Waived It. ......... 7

CONCLUSION .................................................................................................................. 8

## TABLE OF AUTHORITIES

**Cases**

*Akagi v. Turin Hous. Dev. Fund Co.*,
   No. 13-cv-5258-KPF, 2017 WL 1076345 (S.D.N.Y. Mar. 22, 2017) ................................ 3, 7, 8

*Campolongo v. Campolongo*,
   2 A.D.3d 476 (N.Y. App. Div. 2003) ........................................................................... 3

*Cinema 5, Ltd. v. Cinerama, Inc.*,
   528 F.2d 1384 (2d Cir. 1976) ................................................................................... 2, 5

*Evans v. Artek Sys. Corp.*,
   715 F.2d 788 (2d Cir. 1983) ........................................................................................ 3

*H&H Acquisition Corp. v. Fin. Intranet Holdings*,
   No. 98-cv-5269-BSJ, 2000 WL 502869 (S.D.N.Y. Apr. 27, 2000) ................................... 6

*Kleeberg v. Eber*,
   No. 16-cv-9517-LAK-KHP, 2019 WL 2284724 (S.D.N.Y. May 29, 2019) ........................... 5

*Merck Eprova AG v. ProThera, Inc.*,
   670 F. Supp. 2d 201 (S.D.N.Y. 2009) ...................................................................... 1, 3

*Murray v. Metro. Life Ins. Co.*,
   583 F.3d 173 (2d Cir. 2009) ........................................................................................ 4

*Patterson v. Balsamico*,
   440 F.3d 104 (2d Cir. 2006) ........................................................................................ 4

*Razzoli v. City of New York*,
   No. 16-cv-7136-LGS-JLC, 2021 WL 162029 (S.D.N.Y. Jan. 19, 2021) .............................. 6

*S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*,
   508 N.E.2d 647 (N.Y. 1987) ....................................................................................... 3

*Scantek Med., Inc. v. Sabella*,
   693 F. Supp. 2d 235 (S.D.N.Y. 2008) .......................................................................... 3

*Total Asset Recovery Servs., LLC v. Huddleston Cap. Partners VIII LLC*,
   No. 1:21-cv-2466-ALC, 2022 WL 1125924 (S.D.N.Y. Apr. 15, 2022)........................ 3, 5, 6, 8

*Williams v. Meachum*,
   948 F.2d 863 (2d Cir. 1991).................................................................................................. 8

*Zhang v. Weseley*,
   No. 23-cv-00014-ALC, 2024 WL 1134596 (S.D.N.Y. Mar. 15, 2024) ........................ 3, 6, 7, 8

345

## INTRODUCTION

Motions to disqualify counsel are disfavored in this Circuit, and they conflict with the right of a party to choose his or her counsel. That is why they are subject to a "high standard of proof," and why courts must be wary of parties attempting to use disqualification motions for tactical advantage. *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 207 (S.D.N.Y. 2009).

Here, *pro se* Plaintiff Gideon Rapaport ignores this authority and instead concocts a theory that a conflict exists between Defendants Iyer and Garrett such that they cannot both be represented by their attorneys of choice at Schaerr | Jaffe, LLP (the "Firm"). As demonstrated below, Mr. Rapaport's motion fails at every turn, and it should be swiftly denied. In fact, Mr. Rapaport appears to be the only person who perceives a conflict here. Defendants Iyer and Garrett disagree, as do their attorneys at the Firm. Apparently, Mr. Rapaport's previous counsel also disagreed, as he never pursued the relief Mr. Rapaport now seeks *pro se*. This is all unsurprising given that Mr. Rapaport's motion does not contain a single proven fact. Rather, the motion is based on rank speculation, including such far-fetched events as Iyer and Garrett turning on each other to disprove Mr. Rapaport's conspiracy claim and to avoid further liability and an adverse jury verdict that results in bankruptcy. This type of conjecture cannot meet the heavy burden required to disqualify opposing counsel.

Nevertheless, even assuming that Mr. Rapaport's parade of horribles were reasonable and that a conflict existed, Defendants Iyer and Garrett signed a waiver before the Firm began representing them in this case. The Court should therefore reject Mr. Rapaport's tactical efforts to deprive Defendants Iyer and Garrett of their counsel of choice.

## ARGUMENT

Mr. Rapaport's disqualification motion comes nowhere close to meeting the required "high standard of proof" for at least two reasons. First, he has not identified any facts that suggest—let

alone prove—a conflict in the Firm's representation of both Iyer and Garrett. The only basis for his objection to the joint representation is his assumption that the complaint's allegations are entirely true, and that Iyer and Garrett will engage in a series of decisions and arguments that might *possibly* lead to a conflict. Second, even if this potential conflict occurred, Iyer and Garret have provided informed consent to be jointly represented. The Court should therefore deny Mr. Rapaport's motion.

## I.    Mr. Rapaport Cannot Meet His Heavy Burden Because He Relies On Speculation Alone.

Mr. Rapaport's motion relies on a misunderstanding of the law and a mischaracterization of the facts. For these reasons, Mr. Rapaport fails to show any basis for disqualifying the Firm.

1. As to the law, Mr. Rapaport suggests that the Firm's representation of Defendants Iyer and Garrett is "prima facie improper" due to "concurrent adverse interests." Mem. of Law in Support of Mot. to Disqualify at 4 ("Mot.") (ECF No. 69) (quoting *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976)). As demonstrated below, there are no such "adverse interests," but Mr. Rapaport also misstates the law. In *Cinema 5*, the Second Circuit addressed the "somewhat unusual" circumstance where a partner at a law firm representing the plaintiff was also a partner at another law firm representing the defendant "in other litigation of a somewhat similar nature." 528 F.2d at 1385. By representing adverse parties, there existed a risk to "confidential communications," *id.*, and the Second Circuit held that it "would be questionable conduct for an attorney to participate in any lawsuit against his own client without the knowledge and consent of all concerned," *id.* at 1386.

Mr. Rapaport provides none of this context when he quotes *Cinema 5* and similar cases to suggest that the Firm's concurrent representation of Defendants Iyer and Garrett is *per se* improper. Those cases are inapposite, and Mr. Rapaport does not even try to show any similarities here.

Rather than following Mr. Rapaport's misdirection, the Court should start from the venerable principle that a party's right to choose counsel "is a valued right and any restrictions" on that right "must be carefully scrutinized." *S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 508 N.E.2d 647, 650 (N.Y. 1987).  That is why the burden is on the moving party—here, Mr. Rapaport—to make a "clear showing" that disqualification is warranted.  *Total Asset Recovery Servs., LLC v. Huddleston Cap. Partners VIII LLC*, No. 1:21-cv-2466-ALC, 2022 WL 1125924, at *1 (S.D.N.Y. Apr. 15, 2022); *accord Campolongo v. Campolongo*, 2 A.D.3d 476, 476 (N.Y. App. Div. 2003) (same).  Moreover, that is why the moving party faces "a high standard of proof," as disqualification motions could otherwise "be used as a litigation tactic."  *Merck*, 670 F. Supp. 2d at 207 (citing *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791–92 (2d Cir. 1983)).  Given this "potential for abuse," a "motion[] to disqualify opposing counsel [is] subject to particularly strict scrutiny."  *Scantek Med., Inc. v. Sabella*, 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008).

Under these standards, motions like Mr. Rapaport's are viewed "with disfavor."  *Merck*, 670 F. Supp. 2d at 207; *see also Akagi v. Turin Hous. Dev. Fund Co.*, No. 13-cv-5258-KPF, 2017 WL 1076345, at *9 (S.D.N.Y. Mar. 22, 2017) ("Second Circuit precedent is clear that courts should be reluctant to disqualify attorneys.").  A party meets this high standard *only* by proving that an "attorney's conduct tends to taint the underlying proceedings."  *Merck*, 670 F. Supp. 2d at 208.

Mr. Rapaport has not come close to satisfying these standards.  Instead, he ignores them.  Noticeably missing from his motion is any recognition of the "high standard" he faces.  *Merck*, 670 F. Supp. 2d at 207.  Mr. Rapaport also ignores that, in "civil cases, a conflict arises only where 'counsel actively represented conflicting interests and an actual conflict of interest adversely affected counsel's performance.'"  *Zhang v. Weseley*, No. 23-cv-00014-ALC, 2024 WL 1134596, at *1 (S.D.N.Y. Mar. 15, 2024) (internal alterations omitted) (quoting *Patterson v. Balsamico,* 440

3

F.3d 104, 115 (2d Cir. 2006)).  Mr. Rapaport further ignores that *he* "'bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur, and that the likelihood of prejudice occurring is substantial.'"  *Id.* (internal alterations omitted) (quoting *Murray v. Metro. Life Ins. Co.,* 583 F.3d 173, 178 (2d Cir. 2009)).

Ignoring the law does not make it go away, and Mr. Rapaport cannot shift his burden to Defendants without first showing an actual conflict of interests—i.e., that Defendants Iyer and Garrett have adverse interests, and that joint representation is adversely affecting them.  Because Mr. Rapaport has not done so, his motion fails.

2. As to the facts, Mr. Rapaport does not attempt to make a clear showing of a conflict that would meet the "high standard" he faces.  Instead, Mr. Rapaport relies on a series of hypotheticals, none of which is grounded in fact or reason.  For instance, Mr. Rapaport claims that, even though he has accused these Defendants of engaging in a conspiracy, Iyer and Garrett have adverse interests because they might sometime "blame the other for having deceived them."  Mot. at 7. From there, Mr. Rapaport speculates "Iyer would claim that he had never taken or sent the" photo attached to the complaint, and "Garrett would claim that as an outsider, Iyer tricked him with a forgery and false testimony[.]"  *Id.*  But Mr. Rapaport doesn't stop there, next surmising "Iyer could also claim that Garrett invented the sexual harassment defamation[.]"  *Id.* at 7–8.  Based on this series of hypothetical arguments Iyer and Garrett might raise, Mr. Rapaport concludes that "[i]t is hard to imagine more diametrically opposed arguments[.]"  *Id.* at 8.  Yet Mr. Rapaport's imagination is the only thing holding his motion together.

In fact, Mr. Rapaport goes on to speculate that his claims are so strong that Iyer is facing bankruptcy, while Garrett is apparently "close to judgment-proof."  *Id.*  Mr. Rapaport also speculates that Garrett is not a member of any state bar and that he may be able to do some "good

deeds" to convince a bar that the hypothetical verdict here finding him liable should not prevent his admission. *Id*. at 9. On the other hand, Mr. Rapaport believes that Iyer "could very easily" be disbarred due to a hypothetical adverse jury finding on the defamation claims. *Id.* Here again, Mr. Rapaport is "leaning on a slender reed indeed." *Cinema 5*, 528 F.2d at 1386.

Finally, Mr. Rapaport claims that this purported conflict has already prejudiced Iyer and Garrett because the motion to dismiss raised a statute of limitations defense, as well as a qualified privilege for defamation claims, and these issues (to Mr. Rapaport's mind) could only apply to Garrett, as Iyer knew, Mr. Rapaport says, that he forged the photo attached to the complaint. Mot. at 9–10. Mr. Rapaport thus argues that the Firm refused "to engage with the accusation that Iyer was accused of actual forging" and "spun the case into a different direction. *Id.* at 10. Of course, even a cursory review of Defendants' motion to dismiss confirms that they thoroughly engaged the issues, as they provided the Court with numerous reasons why the Amended Complaint should be dismissed as to both Iyer and Garrett. And Mr. Rapaport's speculation cannot change that fact.

3. Mr. Rapaport is also not entitled to this Court's assumption that such allegations are true. This is not a motion to dismiss where his allegations must be accepted as true. Mr. Rapaport levies a serious accusation against the Firm, not on his behalf but supposedly on behalf of the parties he sued, alleging that the Firm is violating professional rules of conduct and should be disqualified. This type of motion is disfavored and requires Mr. Rapaport to make a "clear showing" that the Firm should be disqualified. *Total Asset Recovery Servs.*, 2022 WL 1125924, at *1. When a party "merely articulates a suspicion of or future potential for conflict rather than a real risk that the trial will be tainted," that party "will fail to meet its burden" for disqualification. *Kleeberg v. Eber*, No. 16-cv-9517-LAK-KHP, 2019 WL 2284724, at *6 (S.D.N.Y. May 29, 2019) (quotation marks omitted).

Indeed, courts in this district routinely deny motions for disqualification that are based on mere conjecture. In *Total Asset Recovery Services*, for instance, the court denied a motion for disqualification because the defendants offered no proof as to why joint representation by the plaintiffs' counsel was improper. 2022 WL 1125924, at *5. While the complaint in that case suggested that the plaintiffs had shared interests, the defendants insisted that there was a conflict because of "the *potential* for crossclaims among the plaintiffs." *Id.* (emphasis added). But no plaintiff had filed a cross claim, and thus the court found that the "hypothetical narrative" about a conflict was a "nonissue" under the governing rules of professional conduct. *Id.* Thus, where, as here, "the grounds for disqualification are built on guesswork," the motion for disqualification should be denied. *Id.; see also H&H Acquisition Corp. v. Fin. Intranet Holdings*, No. 98-cv-5269-BSJ, 2000 WL 502869, at *2 (S.D.N.Y. Apr. 27, 2000) (denying motion to disqualify where "the conflict is merely potential"); *Razzoli v. City of New York*, No. 16-cv-7136-LGS-JLC, 2021 WL 162029, at *2 (S.D.N.Y. Jan. 19, 2021) (denying motion for disqualification because the "plaintiff's claims of a conflict of interest amount to premature speculation, which falls far short of the evidence necessary to meet the high burden[.]"); *Zhang*, 2024 WL 1134596, at *2 (denying motion for disqualification because "Plaintiff begins with the unsupported assumption that joint counsel is conflicted and then alleges she herself has been prejudiced as a result," and "[t]his is plainly insufficient.").

But there's more. Mr. Rapaport not only relies on rank speculation, but his complaint also undermines his own arguments. Mr. Rapaport's complaint alleges that Defendants Iyer and Garrett were working together to destroy Mr. Rapaport's career. First Am. Compl. ¶ 18 (ECF No. 38). Mr. Rapaport even alleges that both Iyer and Garrett created the images he attached to the complaint. *Id.* ¶ 15. In fact, the entire complaint is built on allegations that Iyer and Garrett were

working together.  *See id.* ¶ 21 ("Defendants Iyer and Garrett then continued their campaign to destroy plaintiff's reputation and status"); ¶ 32 ("It was shortly after this time that these defendants began their plan to destroy the life and end the career of the plaintiff by defamation and forgery"). In other words, Mr. Rapaport's complaint alleges that Iyer and Garrett were working together and even forming a conspiracy, and now he claims that Iyer and Garrett face such contrasting allegations and potential legal consequences that joint representation is a conflict of interest.  Such an inconsistent argument based on speculation is insufficient to meet the "high standard" for a motion for disqualification.[1]

Thus, Mr. Rapaport has clearly failed to come close to satisfying—or even articulating— the applicable standard for disqualifying counsel.  This is reason alone to deny the motion so that Defendants Iyer and Garrett may proceed with their counsel of choice.

## II.    Even If A Conflict Existed, Defendants Iyer And Garrett Expressly Waived It.

Mr. Rapaport's assumptions do not stop at the imagined conflict.  Mr. Rapaport also states that when "waiver is not secured prior to taking the engagement, disqualification is appropriate, because waiver after a motion to disqualify cannot obtain effective consent." Mot. at 5 (citation omitted).  Mr. Rapaport says nothing further concerning a waiver but appears to presume that no such waiver exists.  Once again, Mr. Rapaport's speculation dooms his argument.

"[I]n many instances, clients can waive or cure their attorney's concurrent-representation conflicts by giving informed written consent."  *Akagi*, 2017 WL 1076345, at *15.  Further, "[a] waiver is knowing and intelligent when a defendant shows that he is aware of and understands the various risks and pitfalls of proceeding despite counsel's potential conflict."  *Zhang*, 2024 WL

---

[1] This is not the only inconsistency in Mr. Rapaport's filings.  *Compare* Pl.'s Ltr. re Mot. at 1 (Mr. Rapaport stating that he could not confer with undersigned counsel because "of this ethical conflict") (ECF No. 66), *with* Pl.'s Ltr. re Extension of Time (stating that he had attempted to confer with undersigned counsel) (ECF No. 70).

1134596, at *2–3 (cleaned up) (quoting *Williams v. Meachum,* 948 F.2d 863, 866 (2d Cir. 1991)). When such a waiver exists, the court will accept it as a cure for the conflict. *Id.*[2]

At the outset of this representation, Defendants Iyer and Garrett executed a waiver of conflicts. *See* Decl. of A. Iyer ¶ 6 (attached as Ex. A); Decl. of Z. Garrett ¶ 6 (attached as Ex. B). In that waiver, they each acknowledged the joint representation, and they expressly waived any objection or possible conflict that may be presented by the joint representation. *Id.* Therefore, even if a conflict existed (it doesn't), that waiver has cured the conflict. *See Total Asset Recovery*, 2022 WL 1125924, at *5 ("Even if this Court determined that there were concurrent conflicts of interest warranting disqualification, Plaintiffs' counsel represented that" the parties "have considered the potential conflicts of interest and determined that it is in their best interest to engage the [firm] to represent their interest in this action collectively." (cleaned up)); *Zhang*, 2024 WL 1134596, at *2–3 (stating that even if the plaintiff had met her burden of showing a conflict of interest existed, the co-defendants had waived that conflict).

Accordingly, even if the Court were to put aside the other shortcomings in Mr. Rapaport's motion, the express waiver of conflicts is an independent basis for denying his motion.

## CONCLUSION

Mr. Rapaport's motion relies on a series of assumptions that lack grounding in fact or logic. Such speculation is insufficient to meet his heavy burden to disqualify opposing counsel. However, even if Mr. Rapaport could show some sort of conflict, Defendants Iyer and Garrett have agreed to joint representation and waived the potential risks that come with that representation. The Court should therefore reject Mr. Rapaport's baseless motion.

---

[2] Some conflicts are unwaivable, such as when parties have claims against each other. *See Akagi v. Turin Hous. Dev. Fund Co.*, No. 13-cv-5258-KPF, 2017 WL 1076345, at *15–16 (S.D.N.Y. Mar. 22, 2017). This is not such a case.

September 27, 2024                    Respectfully submitted,

                                      /s/ Brian J. Field
                                      Brian J. Field*
                                        (D.C. Bar No. 985577)
                                      Cristina Martinez Squiers*
                                        (Texas Bar No. 24093764)
                                      SCHAERR | JAFFE LLP
                                      1717 K Street NW, Suite 900
                                      Washington, DC 20006
                                      Telephone: (202) 787-1060
                                      Facsimile: (202) 776-0136
                                      Email: bfield@schaerr-jaffe.com
                                      Email: csquiers@schaerr-jaffe.com

                                      *Admitted *pro hac vice*

                                      *Counsel for Defendants*
                                      *Ajay Srinivasan Iyer and*
                                      *Zachary George Garrett*

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2024, I sent a copy of the foregoing by email to *pro se* Plaintiff at GideonRapaportLaw@outlook.com, which is the address Plaintiff has used to correspond with undersigned.  Additionally, pursuant to Local Civil Rule 7.2, I certify that I also provided Plaintiff with copies of all unpublished decisions cited in the foregoing opposition.

I further certify that, on September 27, 2024, I filed the foregoing document with the Clerk of Court for the Southern District of New York, which will accomplish service on counsel of record for Defendant Epstein.

*/s/ Brian J. Field*
Brian J. Field

10

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GIDEON RAPAPORT,

              Plaintiff,             Case No.: 1:23-cv-06709 (JGLC)

     -against-

AJAY SRINIVASAN IYER,
ZACHARY GEORGE GARRETT, and
RICHARD ALLEN EPSTEIN,

              Defendants.
------------------------------------------------------------X

### DECLARATION OF AJAY SRINIVASAN IYER IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DIQUALIFY DEFENDANT'S COUNSEL, SCHAERR JAFFE, LLP

     My name is Ajay Iyer. I am over the age of 18 and fully competent in all respects to make this declaration. All of these facts are true and correct.

    1. In July 2024, I retained the law firm, Schaerr | Jaffe LLP ("Firm"), to represent me in this case.

    2. At the time I retained the Firm, I was fully aware that the Firm would represent both myself and Zachary George Garrett as co-defendants in this case.

    3. I have spoken with the Firm about the risks and advantages of joint representation.

    4. At the time I retained the Firm, I also understood that joint representation can carry risks, one of which is a possible conflict of interest among co-defendants.

    5. Because my interests in this case align with Mr. Garrett's in that we both vehemently deny the allegations that accuse us of any wrongdoing—either jointly or separately—I viewed the benefits of joint representation to outweigh any risks.

6.  As a result of those benefits, I signed a waiver at the time I retained the Firm, acknowledging the risks of joint representation when it comes to confidential information and conflicts of interest.

7.  I understand that a conflict could potentially arise in the future, but I do not see any current conflict between my interest and Mr. Garrett's interests in this case.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Dated: September 25, 2024                    Ajay S. Iyer

2

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
GIDEON RAPAPORT,

                  Plaintiff,               Case No.: 1:23-cv-06709 (JGLC)

    -against-

AJAY SRINIVASAN IYER,
ZACHARY GEORGE GARRETT, and
RICHARD ALLEN EPSTEIN,

                  Defendants.
--------------------------------------------------------X

### DECLARATION OF ZACHARY GEORGE GARRETT IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DIQUALIFY DEFENDANT'S COUNSEL, SCHAERR JAFFE, LLP

My name is Zachary Garrett. I am over the age of 18 and fully competent in all respects to make this declaration. All of these facts are true and correct.

1. In July 2024, I retained the law firm, Schaerr | Jaffe LLP ("Firm"), to represent me in this case.

2. At the time I retained the Firm, I was fully aware that the Firm would represent both myself and Ajay Srinivasan Iyer as co-defendants in this case.

3. I have spoken with the Firm about the risks and advantages of joint representation.

4. At the time I retained the Firm, I also understood that joint representation can carry risks, one of which is a possible conflict of interest among co-defendants.

5. Because my interests in this case align with Mr. Iyer's in that we both vehemently deny the allegations that accuse us of any wrongdoing—either jointly or separately—I viewed the benefits of joint representation to outweigh any risks.

6.  As a result of those benefits, I signed a waiver at the time I retained the Firm, acknowledging the risks of joint representation when it comes to confidential information and conflicts of interest.

7.  I understand that a conflict could potentially arise in the future, but I do not see any current conflict between my interest and Mr. Iyer's interests in this case.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Dated: September 25, 2024                    Zachary G. Garrett

**REPLY TO OPPOSITION OF MOTION TO DISQUALIFY SCHAERR-JAFFE LLP**

# Table of Contents

Introduction.................................................................................................................1

Argument....................................................................................................................2

Schaerr-Jaffe LLP Improperly Attempt to Shift Their Burden to the Plaintiff......................2

Schaerr-Jaffe LLP Has Not Even Attempted to Meet Their Heavy Burden Because the Conflict of Interest Here is Impossible to Justify and Instead Cherry-Picks a Different Standard.........................2

Schaerr-Jaffe LLP Self-Contradicts by Claiming it is Obvious that There Could be No Possible Conflict While Also Presenting Affidavits and Alleging a Waiver........................................4

Rather Than "Mere Conjecture" There Are Exhibits of the Defendants' Own Writings and Forgeries Indicating Different Positions and Interests............................................................5

Schaerr-Jaffe LLP Has Not Shown the Waiver by their Clients as Required Because it Does Not Exist or Cannot Comply with New York Law.......................................................6

The Affidavits Proffered by Schaerr-Jaffe LLP Are Perjured as Demonstrated by Defendants' Own Writings and Materials Already Exhibited in the Record..................................................7

The Affidavits Only Serve to Protect Schaerr-Jaffe LLP From Liability from Their Clients and Revealingly Testify as to "Future" Conflicts Which Are Inevitable.....................................8

In the Absence of Viable Arguments Pertaining to Either Fact or Law Schaerr-Jaffe LLP Demean the Plaintiff as a Pro Se Litigant and Attempt to Support Their Argument With Sheer Speculation That His Former Counsel Agrees With Their Position..................................................9

Disqualification of Schaerr-Jaffe LLP is the Proper and Only Possible Remedy to Prevent Further Damage to the Integrity of These Proceedings.....................................................10

## Introduction

Schaerr-Jaffe LLP have grossly misstated the applicable law beginning with an improper attempt to shift their burden of proving the irremediable primae facie conflict they have between their clients to the plaintiff instead of having to justify it themselves. They then proceed to present a standard not applicable to cases such as this one where there is a conflict of interest between concurrent clients in the same live case, as opposed to former clients in tangentially related matters.

In terms of the facts, Schaerr-Jaffe LLP have totally ignored exhibits in the record, particularly Exhibits 2 and 3, and arguments made in support of the motion pursuant to those exhibits. Instead, they boldly claim both throughout their brief opposition that no factual support was offered for this motion, as is also reflected by their incredulous first heading "Mr. Rapaport … Relies on Speculation Alone". This can only be so if they willfully ignore the facts presented as supported by exhibits in the record.

In their argument, Schaerr-Jaffe LLP continue to contradict themselves. After dramatically presenting that no possible conflict could exist in their concurrent representation to any reasonable person, and repeatedly demeaning the plaintiff as a *pro se* litigant, they present affidavits to attempt to defend their unethical concurrent representations referencing unseen waivers. Although these affidavits are threadbare and formulaic, they do swear to the considerations and deliberations made relating to precisely such conflict of interest that they deny, and revealingly include discussion of "future" conflicts Affidavits A and B at ¶ 5, because Schaerr-Jaffe LLP already knows they are inevitable.

Furthermore, the affidavits proffered are perjured as provable by exhibits of the defendants' writings and forgeries already in the record, and serve no purpose but to protect Schaerr-Jaffe LLP from future liability to their own clients, particularly defendant Garrett, who has already been prejudiced.

Schaerr-Jaffe LLP have not actually shown the required waivers to the Court for evaluation, either because they do not exist, or because they reflect the incompatible District of Columbia approach in which only prohibits *positions* actually taken and not *interests* represented in contrast to New York.

## **Argument**

### Schaerr-Jaffe LLP Improperly Attempt to Shift Their Burden to the Plaintiff

Once a primae facie conflict of interest between current clients has been raised by any party or the Court *sua sponte*, the attorneys thus implicated bear a very high burden of justifying why their representation should continue. The Second Circuit has found that "Where the relationship is a continuing one, adverse representation is prima facie improper, *Matter of Kelly*, supra, 23 N.Y.2d at 376, and the attorney must be prepared to show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation. We think that appellants have failed to meet this heavy burden…" *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976) (emphasis original). Schaerr-Jaffe LLP improperly attempt to shift the burden which now rests on them as a result of the primae facie adversity between defendants Iyer and Garrett both as to culpability and consequences. Most succinctly and as shall be further elaborated on *infra*, the primae facie conflict arises from, and is obviously irremediable for the dispositive reason that it denies both defendants the opportunity to seek indemnification from each other as demonstrated by their different roles as forger and distributor in Exhibit 3. Schaerr-Jaffe LLP simply ignore arguments made relating to Exhibit 3 wherein defendant Garrett identifies Defendant Iyer as his source for the forged image Exhibit 2, that he offers as support for his own defamatory statements.

### Schaerr-Jaffe LLP Has Not Even Attempted to Meet Their Heavy Burden Because the Conflict of Interest Here is Impossible to Justify and Instead Cherry-Picks a Different Standard

The correct standard, which places a heavy burden upon the attorneys who have the primae facie conflict should not be confused with other standards applicable to cases such as where a former client intervenes to prevent former counsel from representing a new client in a tangentially related matter (such as the matter relating to the same sector of the economy), or matters that are tangentially related and do not actually affect the adversarial representation in anyway.

Schaerr-Jaffe LLP deceptively cite to cases that *describe* an inapplicable standard as demonstrated by their best and opening precedent, a magistrate judge order from *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201 (S.D.N.Y. 2009), which provides them with their "high standard of proof" cherry-picked quote. Although this case *described* the alternative standard, it ended up selecting the correct one, which was appropriate in that matter and is for this one as well. This order arose from representations by the same firm in different, arguably unrelated cases from which counsel had withdrawn at the time of the motion, and still resulted in disqualification despite some discouraging remarks made in passing early on about disqualification motions. The "high standard of proof" cited from *Merck Eprova AG* as a cherry-pick was outweighed by a deciding "on the other hand" specifically targeted towards cases about concurrent conflicts such as this one:

> "Where a conflict is alleged, "[t]he standard for disqualification varies depending on whether the representation is concurrent or successive." *Hempstead Video*, 409 F.3d at 133. If the representation is concurrent, it is "`prima facie improper' for an attorney to simultaneously represent a client and another party with interests directly adverse to that client." Id. (quoting *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976)). In such instances, the "per se" standard applies and the attorney must be disqualified unless he can demonstrate "`at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation.'" Id. (quoting *Cinema 5*, 528 F.2d at 1387)." *Merck Eprova AG* at 208

Even Schaerr-Jaffe LLP's star precedent excerpted above rejects their contentions and leads back to *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976), a case that they tried to present as irrelevant because it had the quirk of being about an attorney who was a partner of two law firms. This quirk did not prevent hundreds of favorable citations as a landmark statement of this area of the law, including the citation above, but for obvious reasons Schaerr-Jaffe LLP must desperately avoid its clear command, which places upon them a "per se" heavy burden they cannot overcome.

This misrepresentation of the law by Schaerr-Jaffe LLP is especially egregious, because they themselves chastised the plaintiff and demeaned him as a *pro se* litigant for not explaining the full context of *Cinema 5*, which they incorrectly claim make it inapplicable, and did not actually provide to

the Court themselves. Even their own cited precedents favorably relied upon *Cinema 5* to disqualify counsel in cases where an attorney was not a partner of two law firms, and reach the opposite conclusion that they seek. Disqualification should be granted here as well considering there is a far more direct and prejudicial conflict of interest than either their chosen *Merck Eprova AG* or *Cinema 5*.

In their desperate attempt to avoid *Cinema 5*, Schaerr-Jaffe LLP also selectively presented that case as being only about "confidential communications", which they claim are not an issue at all in this case, when in actuality the *Cinema 5* court dedicated significant amount of discussion to the issue of "conflicting interests". Because the partner with one foot in each firm representing adverse parties was not actually involved in that litigation in any meaningful way, the district judge found no actual harm (which would be a far cry from the situation in this concurrent representation conflict) and instead ruled on the mere *appearance* of impropriety and the *possibility* of affecting confidential communications. The Second Circuit reinforced this reasoning in the first footnote of that opinion "we are confident that he would make every effort to disassociate himself from both lawsuits and would not divulge any information that came to him concerning either. However, we cannot impart this same confidence to the public by court order." *Cinema 5* which demonstrates that the integrity of the adversarial system is at stake and that even a less substantively impactful conflict compared to this one is irremediable.

As far as other cited precedents, Schaerr-Jaffe LLP is pulling up irrelevant dregs such as *Total Asset Recovery Servs.*, 2022 WL 1125924, about the witness-advocate rule applied to attorneys, or *Kleeberg v. Eber*, 2019 WL 2284724 which is totally irrelevant as well because it applied the exemption for companies and officers.

<u>Schaerr-Jaffe LLP Self-Contradicts by Claiming it is Obvious that There Could be No Possible Conflict While Also Presenting Affidavits and Alleging a Waiver</u>

After engaging in a personally derogatory performance attempting to show that no reasonable person could ever find any conflict of interest between defendants Iyer and Garrett (although not

broaching the issue of how a reasonable person could ignore exhibits of these defendants own writings and materials), Schaerr-Jaffe LLP does an 180 degree turn, and then tries to prove how they thoroughly and credibly they prepared waivers for their clients, and advised them about such conflicts.

If any conflict in this case were really a figment of a single person's imagination, rather than being obvious as evidenced by the amended complaint and the exhibits, particularly Exhibits 2 and 3, Schaerr-Jaffe LLP would not have done the thorough work relating to the waivers, which it has not shown as would be required for this Court to consider their sufficiency, an issue further discussed *infra*.

### Rather Than "Mere Conjecture" There Are Exhibits of the Defendants' Own Writings and Forgeries Indicating Different Positions and Interests

Because the conflicts of interest between defendants Iyer and Garrett are obvious in this case, Schaerr-Jaffe LLP has not even attempted to engage with the facts and exhibits that clearly establish a primae facie conflict and instead adopts an ostrich strategy of simply pretending they do not exist. This is simply the best they can do, and it is not nearly good enough.

They did not refer to Exhibit 3 a single time in their opposition, or any other exhibit for that matter. As identified in the supporting memorandum for this motion, and on a purely factual level that does not consider conspiracy liability, defendants Iyer and Garrett committed different actions to result in the defamatory harm, among other forms of harm. Defendant Garrett specifically identified defendant Iyer as the source of the second version of the forgery "Please see the attached photo ("Security Desk Photo" [Exhibit 2]) taken by Ajay Iyer at Kirkland & Ellis's New York location at 601 Lexington Avenue on Thursday, June 28th [sic, it was Thursday, July 28th], where Ajay worked with Gideon this summer." Exhibit 3. Why should defendant Garrett be prevented from claiming indemnity for forwarding something that he could argue defendant Iyer forged and tricked him with?

Simply dismissing the factual allegations and by unstated implication the exhibits (which are not mentioned at all) as a fanciful "parade of horribles" is not responsive at all. Furthermore, to suggest that the written testimony of defendant Garrett identifying defendant Iyer as the source of the second forgery (and thus by easy inference of the first forgery as well) does not give defendant Garrett an opportunity for indemnification or the lowering of the standard of liability to recklessness is obvious to all but the willfully ignorant Schaerr-Jaffe LLP.

As a matter of substantive law, Schaerr-Jaffe LLP fail to appreciate that it is possible for defendants Iyer and Garrett to have conspired with differing levels or types of intent. For example defendant Iyer could have known his forgeries to be false and thus satisfy both common law malice and actual malice, while defendant Garrett could have been reckless as to the truth or falsehood of defendant Iyer's forgeries and spread them with actual malice through reckless disregard. This additional willful ignorance, clearly demonstrates their preference and bias towards the forger himself, defendant Iyer, who upon information and belief is their sole real (and paying) client. Ironically, Schaerr-Jaffe LLP's joint representation, and arguments against any conflict resulting from different levels of liability, tends to confirm that both of their clients are liable at the highest level of conspiracy.

The guiding principle is not exactly what is alleged in the complaint accepted as true, but rather what arguments *could* hypothetically be made by the defendants, such as indemnification which is dispositive for this motion, and they are deprived of it due to the conflict of interest of their counsel.

### Schaerr-Jaffe LLP Has Not Shown the Waiver by their Clients as Required Because it Does Not Exist or Cannot Comply with New York Law

Schaerr-Jaffe LLP has not submitted the waivers that the proffered affidavits sparsely mention. If these waivers actually exist, they would have to be examined by the Court as being adequate according to the standards of New York State and the Second Circuit.

If real, the only possible explanation for Schaerr-Jaffe LLP's joint representation in this matter other than willful ethical violation, would be that the waiver was executed according to the standards set forth in the District of Columbia, which are far more flexible and permissive of waivers for conflicts. In the District of Columbia, counsel may take a case even if they are certain there is or will be an irremediable conflict as long as they get a waiver for it and reasonably believe they will be able to provide "competent and diligent representation" DC Rule 1.7(b) and (c). It is critical to note that in the District of Columbia under the single-line DC Rule 1.7(a), only the representation of "adverse *positions*" (emphasis added) is prohibited referring to positions themselves as opposed to adverse *interests* of clients that do not result in positions being taken. This is further elaborated on by DC Rule 1.7 Comment 4, which specifically discusses that it is permissible to carve up the litigation into stages, meaning it could be ethical to represent adverse defendants as to liability but not damages, which may be what Schaerr-Jaffe LLP thought they could do in this case, in ignorance of New York law. This is drastically different from New York, and leaves counsel and clients with the freedom to simply not present those adverse positions, as opposed to the required fiduciary and undividedly loyal representation undertaken with vigor required in New York *Cinema 5,* NY Rule 1.7 Comments 1-2.

<u>The Affidavits Proffered by Schaerr-Jaffe LLP Are Perjured as Demonstrated by Defendants' Own Writings and Materials Already Exhibited in the Record</u>

Schaerr-Jaffe LLP have done another disservice to their clients, beyond their unethical joint representation, by advising their clients to give up on all of the critical protections offered to them in the course of civil litigation relating to answers, denials and responses to interrogatories through swearing to false general denials themselves in the proffered affidavits.

Ordinarily, the Federal Rules of Civil Procedure contemplate a narrowing of issues factually contested through answers, denials and interrogatories which must be specific and truthful, in a departure from the pre-1938 code pleading norm of general denials by defendants. Such responses are

supported by the signatures of their attorneys as being in good-faith and arguable, but still, defendants are not required to risk perjury by submitting affidavits in support of those denials.

In their identical affidavits at ¶ 5 defendants Iyer and Garrett swore under penalty of perjury to general denials "we both vehemently deny the allegations that accuse us of any wrongdoing – either jointly or separately". This sworn statement imputes perjury to both defendants Iyer and Garrett as evidenced by the exhibits in the record, particularly Exhibits 2 and 3. In Exhibit 3, defendant Garrett identified (and thus accused) defendant Iyer of being the source of Exhibit 2, the forged and defamatory image. This would make it impossible for them to truthfully swear to their affidavits, especially because the forgery defendant Garrett has identified defendant Iyer of engaging in (whether separately or jointly) is a *malum in se* by any standard, that defendant Iyer commits perjury by denying.

### The Affidavits Only Serve to Protect Schaerr-Jaffe LLP From Liability from Their Clients and Revealingly Testify as to "Future" Conflicts Which Are Inevitable

The perjured affidavits sworn to by Schaerr-Jaffe LLP's clients defendants Iyer and Garrett, unaccompanied by the actual waivers they hint at with no real detail, serve no useful purpose to defendant Iyer and Garrett, and rather exist only protect Schaerr-Jaffe LLP from professional responsibility for undertaking this unethical joint representation.

Schaerr-Jaffe LLP undertook this representation knowing that their clients had adverse interests, and now that they have been called out, the utilized the predicament of their clients to obtain affidavits which although minimal, provide them with the cover they need to avoid liability, particularly from Defendant Garrett, who has already been prejudiced by their representation.

### Schaerr-Jaffe LLP Fails to Appreciate Differences Between Conferring for Scheduling and Conferring for Substantive Changes to Pleadings With Disparate Impacts on Their Adverse Clients

In the absence of precedent supporting such a conflicted representation, and while needing to ignore the actual facts of the case as supported by exhibits in the record, Schaerr-Jaffe LLP instead try to have a "gotcha" moment in their Footnote 1 with the plaintiff by attempting to find a contradiction in

his conferral with them. Schaerr-Jaffe LLP present that the plaintiff contradicted himself by conferring with them for the purposes of scheduling and requesting a one-week extension, but refusing to confer with them for the purposes of obtaining their approval to substantive changes in the pleadings.

Schaerr-Jaffe LLP fail to appreciate that a scheduling extension does not create a disparate impact upon both of their clients, each with interests adverse to the other relating to the merits of the case. Specifically, the amended complaint contemplated adding a party and additional factual background, which would have tended to impart a greater degree of support for a finding of common law malice by one party, while potentially providing greater support for a finding of actual malice by recklessness, which would result in a liability dischargeable in bankruptcy, upon the other. Schaerr-Jaffe LLP could not ethically confer on such a matter, considering the adverse interests of their clients and as a result this neither could the plaintiff because he would then become part of their wrongdoing.

<u>In the Absence of Viable Arguments Pertaining to Either Fact or Law Schaerr-Jaffe LLP Demean the Plaintiff as a Pro Se Litigant and Attempt to Support Their Argument With Sheer Speculation That His Former Counsel Agrees With Their Position</u>

In an undignified digression from the issues relevant to this motion, Schaerr-Jaffe LLP chose to begin their opposition to their own disqualification by demonstrating their contempt for both the adversarial process itself and the guardrails that maintain its integrity, among which is attorney-client privilege. This Court knows that the plaintiff is a *pro se* litigant, who began this case as a John Doe case before uncovering the identities of these defendants through a subpoena response from the Federalist Society, yet Schaerr-Jaffe LLP repeatedly demean the plaintiff with this label and attempt to create prejudice against the consideration of his arguments on their legal and factual merits, even as they themselves perpetrate every error and deception relating to precedent they accuse him of, as seen by their false accusations and deceptive presentation of *Cinema 5* and *Merck Eprova AG supra*.

Schaerr-Jaffe LLP began their opposition with rank speculation, and present to this court that because the plaintiff's former counsel, whose only substantive filing was the amended complaint, did

not make such a motion, the plaintiff's former counsel believed it to be meritless, and would agree with Schaerr-Jaffe LLP. Obviously, they do not actually apply such confidence to the plaintiff's former counsel's filings to themselves, or else they would not have filed motions to dismiss his complaint.

Nevertheless, this ugly attempt would seem to leave the plaintiff, who is a *pro se* litigant, with no choice but to waive his attorney-client privilege in order to disclose that his former counsel did not agree with Schaerr-Jaffe LLP that their concurrent representation of conflicted clients is ethical, or accept their sheer speculation to that effect.

Instead, the plaintiff will speculate a little bit more reasonably than Schaerr-Jaffe LLP, that perhaps the plaintiff got the idea to submit this motion from his former counsel before resuming to represent himself *pro se*, or that the plaintiff's former counsel was in fact working on such a motion, or that the plaintiff's former counsel was waiting to file such a motion a tactically advantageous time much later on in the course of litigation. Evidently, Schaerr-Jaffe LLP speculates as selectively as they present precedent or recall the facts and exhibits relevant to this case.

While the plaintiff cannot disclose the strategy or mental impressions of his former counsel, insofar as consideration of tactics he may identify that presently he only sees a moral necessity, rather than any tactical benefit to his cause resulting from the proposed disqualification of Schaerr-Jaffe LLP, because victory in a proceeding tainted by denial of loyal counsel to a defendant would be less restorative of his reputation for integrity and his commitment to the ideals of the law.

<u>Disqualification of Schaerr-Jaffe LLP is the Proper and Only Possible Remedy to Prevent Further Damage to the Integrity of These Proceedings</u>

For the foregoing reasons, Schaerr-Jaffe LLP must be disqualified from representing defendants Iyer and Garrett immediately, before further damage is done to the integrity of these proceedings. Even the mere appearance of such a conflict cannot be tolerated, and all doubts must be resolved in favor of disqualification.

Dated: Vancouver, British Columbia (Canada)
October 7, 2024

                                         Respectfully submitted,

                                               /s/ Gideon Rapaport, *pro se*
GideonRapaportLaw@Outlook.com
(862) 213-0895
#627 1078 Summit Avenue
Jersey City, New Jersey, 07310

374

The Honorable Jessica G. L. Clarke
United States District Court Judge
Southern District of New York
500 Pearl Street
New York NY, 10007

Re:    Rapaport v. Epstein et al., 24-cv-07439

**Letter Motion to Stay Proceedings Pending Appeal**

Your Honor:

I am respectfully writing to request a stay all consolidated proceedings pending the appeal from the now consolidated *Rapaport v. Iyer et al.* 23-cv-06709.

Such a stay would be in the interest of judicial economy because it will allow both consolidated cases to advance together and be considered by the Court uniformly, thus serving the aims of the consolidation. A stay will avoid the duplicative work arising from the appealed *Rapaport v. Iyer et al.* which is to be consolidated into a single pleading in this docket per the Court's current order.

There will be no harm to the defendants resulting from a stay pending the resolution of the appeal and all parties may benefit from the increased efficiency and consistency. I respectfully remind the Court that I sought to join all of these claims together in the interest of efficiency but was prevented from doing so because defendants Epstein, Iyer and Garrett represented to the Court that any amendment of my pleading would be futile, and the briefing schedule for my request for leave to amend would have caused the statute of limitations to limit some of my new claims.

I respectfully submit that the appeal from *Rapaport v. Iyer et al.* has a substantial likelihood to succeed and raises serious legal questions. The Court erred in its choice of law analysis by not applying New Jersey law to the false light and invasion of privacy claim as endorsed in the Second Circuit's citation of *Catalanello v. Kramer*, 18 F. Supp. 3d 504, 512 (S.D.N.Y. 2014) in *Kinsey v. New York Times Co.*, 991 F.3d 171, 175 (2d. Cir. 2021) n.21. The Court took the plaintiff's arguments relating to his "local community" as merely arguments based on domicile when they referred to the location of the injury, which is also New Jersey, and together with domicile should be dispositive. New York choice of law analysis is done by issue as legally defined, rather than being generally attached to shared facts or parties as the Court reasoned in reference to the plaintiff's bringing of other claims under New York law. For example, in determining that New York law would apply to a car accident that occurred (exclusively) in Ontario, Canada involving New York residents the New York Court of Appeals concluded "There is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction" *Babcock v. Jackson*, 12 NY2d 473 at 484.

Unlike defamation, which has a global and reputational scope, New Jersey false light and invasion of privacy claims have a purely local scope protecting only the mental tranquility and privacy of individuals in their local community, and not their reputation. In *Romaine v. Kallinger*, 537 A.2d 284 (NJ 1988), the New Jersey Supreme Court distinguished that: "The interest protected by the duty not to place another in a false light is that of the individual's peace of mind …. 'The action for defamation,' on the other hand, 'is to protect a person's interest in a good reputation…' *Prosser and Keeton on the*

*Law of Torts*, supra § 117, at 864". According to its own choice of law rules, New York has little to no interest in such an injury that is limited entirely to the territorial boundary of New Jersey.

The Court erred in relying upon the plaintiff's New York school and work reputational injuries as they relate to defamation because they are legally unrelated to the false light and invasion of privacy suffered by the plaintiff in his local community in New Jersey. An invader of privacy is "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another" *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81 609 A.2d 11 (NJ 1992). Prior to these defendants' publications, which included the image of the plaintiff on a digitally fabricated "Do Not Admit" poster purported to have been displayed at his workplace, the New Jersey plaintiff enjoyed perfect solitude and seclusion, had "peace of mind" as identified by *Romaine,* and was not publicly displayed or discussed anywhere on the internet to the best of his knowledge.

The Court erred by not disqualifying Schaerr-Jaffe LLP from this matter due to the conflicts of interest between its clients, which are of the sort that is incapable of remedy by waiver. Defendant Garrett identified defendant Iyer as the source of the second defamatory forgery in writing *Exhibit 3*, and then signed a waiver under penalty of perjury that he and defendant Iyer have engaged in no wrongdoing either together or separately *Rapaport v. Iyer et al.* Docket No. 75-2. The result is an unwaivable conflict of interest that will require defendant Garrett to take an adverse position against himself by representing, through lawyers shared with defendant Iyer, that defendant Iyer was not the source of the second defamatory forgery he sent as he has previously put in writing, or to admit to perjury in his waiver. No attorney maintaining the duty of loyalty to defendant Garrett could have placed him in such a position, as Schaerr-Jaffe does for the benefit of defendant Iyer.

As a result of the conflicted representation, defendant Garrett is prejudiced by material limitation upon representation of a belief in the authenticity of the defamatory material sent to him by defendant Iyer (in affirmation of his previous writings in *Exhibit 3*) in order to protect himself from liability *See United States v. Schwarz*, 283 F.3d 76 (2d Cir. 2002) (Conviction overturned due to inability to pursue the defense of blaming a jointly represented co-defendant). The mere potential for adverse positions which have not yet materialized may also establish a conflict *See GSI Commerce Solutions, Inc. v. BabyCenter LLC*, 644 F.3d 141 (2d Cir. 2011) finding an unwaivable "actual or apparent conflict in loyalties" citing *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir. 1976).

The Court erred by concluding that the defamatory internet posts referred to by the plaintiff in his Amended Complaint were solely those converted to PDF format, marked up and forwarded to the James Kent Academy program of the Federalist Society by defendant Garrett *Exhibit 3* on August 1, 2023. There was no basis in the Amended Complaint for such a conclusion by implication, and such a conclusion contradicts the Court's assertion that the standard it applies requires that "Such a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Decision* at 7 citing *Hughes v. Rowe*, 449 U.S. 5, 10 (1980). The allegations were never limited to specific web *pages* by link but rather web *sites* that can and do contain many pages. The contents of the email sent by defendant Garrett were exhibited to demonstrate that he had made defamatory statements orally "as I mentioned to you over the weekend…" *Exhibit 3* at 1, and forwarded the second defamatory forgery and defamatory statements. Furthermore, even if taken as the entirety of the internet posts which are the subject of the action, an August 1, 2023 snapshot cannot be an absolute bar to the plaintiff from

alleging that those particular threads of posts had different contents on or about July 29, 2023 because such online posts can be edited or deleted at any time.

      The Court erred in denying the relation back of claims involving slander (which include among many also oral statements made to defendant Epstein and the staff of the Federalist Society) by finding that "Student Defendants could not have been fairly apprised as to the other alleged defamatory statements, because they were not mentioned in the original complaint, which focused only on the 'anonymous internet posts.'" *Decision* at 17. The Court did not consider Part F of the Original Complaint titled "**Oral Component Of Character Assassination Campaign**" (emphasis original). This part described with great accuracy the oral slanders alleged in the Amended Complaint and referenced in *Exhibit 3* "as I told you..." Such a title and the following detailed paragraphs OC ¶¶ 29-30 would certainly apprise the defendants that their specific oral slanders were also part of the action. Hence the oral slander allegations are not "new instances of defamation" *Decision* at 17. Similarly, the Court also erred in denying the relating back of the email forwarding the published tortious materials and allegations to the James Kent Academy because the Original Complaint specifically alleged that defendants had forwarded the materials to the James Kent Academy, which is a program of the Federalist Society, "Defendants timed the publication and **forwarding** of the anonymous internet posts very closely to the start of the James Kent Summer Academy" OC ¶ 21 (emphasis added).

      The Court erred in its finding that the Amended Complaint did not specifically identify which of the student defendants made the online posts *Decision* at 22, because defendant Iyer was specifically identified per AC ¶ 42 "On or about July 29, 2022, defendant Garrett presented the online materials, **created and posted pseudonymously by defendant Iyer**, to Peter Redpath and Kate Alcantara, the Director and Deputy Directors of the Student Division respectively." (emphasis added).

      The Court erred by dismissing with prejudice and without analysis all other claims referred to as "omnibus" claims which were either valid in addition to the aforementioned claims, or would have served as alternatives as in the case of intentional infliction of emotional distress. The Court dismissed with prejudice the intentional infliction of emotional distress claim because it would be "duplicative" of defamation, but the Court did not follow up on evaluating its applicability after dismissing with prejudice the defamation claims against student defendants, especially considering that the lack of communication to a third party and relating back notice faults found by the Court with respect to defamation are not respectively elements of or applicable to intentional infliction of emotional distress.

      The Court erred in the *sua sponte* dismissal with prejudice of claims against defendant Epstein due to the statute of limitations. The Court cited to *V.E.C. Corp. of Delaware v. Hilliard*, No. 10-CV-2542 (VB) 2011 WL 7101236, at *11 (S.D.N.Y. Dec. 13, 2011), but that court itself stated: "Courts should be reluctant to dismiss a claim *sua sponte* based on the statute of limitations because it is an affirmative defense which is waived if not raised in the first responsive pleading. *See Salahuddin v. Jones,* 992 F.2d 447, 449 (2d Cir.1993)." By describing the defamation committed by defendant Epstein in "forwarding" of the defamatory materials to the James Kent Academy OC ¶ 21, he could be apprised that he was a defendant by the Original Complaint, thus satisfying CPLR 1024 with respect to him as well.

      The above mentioned matters are not an exhaustive list of all issues expected to be raised on appeal, but are respectfully submitted to demonstrate a clear likelihood of success and the raising of serious legal questions that is sufficient to warrant a stay pending appeal.

Thank you for considering my request in this matter.

Respectfully submitted,

/s/ Gideon Rapaport *pro se*
GideonRapaportLaw@outlook.com
(862) 213-0895
#627 1078 Summit Avenue
Jersey City, New Jersey, 07307