# 25-841

# United States Court of Appeals

*for the*

# Second Circuit

GIDEON RAPAPORT,

*Plaintiff-Appellant,*

— v. —

AJAY SRINIVASAN IYER, ZACHARY GEORGE GARRETT,
RICHARD ALLEN EPSTEIN,

*Defendants-Appellees,*

JOHN DOE #1, a Reddit.com user, JOHN DOE #2, a Top-Law-Schools.com
user, JOHN DOE #3, a current or former NYU Law student, Individually,
MITCHELL KEVALLA PALLAKI,

*Defendants.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE
## RICHARD ALLEN EPSTEIN

JEREMY CHASE
DAVIS WRIGHT TREMAINE LLP
*Attorneys for Defendant-Appellee*
*Richard Allen Epstein*
1251 Avenue of the Americas,
21st Floor
New York, New York 10020
(212) 489-8230
jeremychase@dwt.com

CP COUNSEL PRESS     (800) 4-APPEAL • (384008)

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................... 1

JURISDICTIONAL STATEMENT .......................................................... 4

COUNTERSTATEMENT OF THE ISSUES ......................................... 4

COUNTERSTATEMENT OF THE CASE .......................................... 6

    A.   Factual Background ............................................................... 6

    B.   The Procedural History of the Case and the Associated
        Actions ............................................................................... 10

        1.   Rapaport Commences This Litigation ........................ 10

        2.   Rapaport Files Two Additional Lawsuits ................... 12

        3.   The District Court Dismisses the FAC ....................... 13

        4.   Rapaport Files a Premature Notice of Appeal............ 17

SUMMARY OF THE ARGUMENT ...................................................... 17

STANDARD OF REVIEW ...................................................................... 21

ARGUMENT .............................................................................................. 23

I.    The District Court Correctly Applied the Relevant Legal
      Standards in Dismissing The Complaint ................................. 23

    A.   The District Court's Dismissal under Rule 12(b)(6) Was
        Proper ................................................................................. 23

    B.   Rapaport Received All Solicitude Due to a *Pro Se*
        Plaintiff ............................................................................... 25

II.   The District Court Properly Dismissed The Defamation,
      IIED, and Injurious FAlsehood Claims Against Professor
      Epstein As Untimely ................................................................. 28

    A.   The District Court Properly Applied the Statute of
        Limitations *Sua Sponte* to the Claims Against
        Professor Epstein ............................................................. 28

    B.   The District Court Properly Found the Defamation,
        IIED, and Injurious Falsehood Claims against
        Professor Epstein Did Not "Relate Back" to the
        Original Complaint ............................................................ 30

1. The District Court Correctly Concluded that the FAC's Claims Against Professor Epstein Do Not Relate Back to the Original Complaint under Rule 15(c)(1)(C) ............................................. 32

2. The FAC's Claims Against Professor Epstein Do Not Relate Back to the Original Complaint under Rule 15(c)(1)(A) ............................................. 34

III. Section 230 Bars Rapaport's Defamation, False Light, IIED, and Injurious Falsehood Claims.................................. 37

IV. Rapaport Has Not Stated A Defamation Claim Against Professor Epstein.......................................................... 40

A. Rapaport Has Not Pled Any Allegedly Defamatory Statements Made by Professor Epstein .................. 41

B. The FAC Failed to Plead Professor Epstein Acted with Actual Malice................................................... 44

1. The Actual Malice Standard of Fault Applies to the Defamation Claim Against Professor Epstein ...... 45

2. Rapaport Has Failed to Plausibly Plead Actual Malice .................................................... 48

V. Rapaport's IIED Claim Was Properly Dismissed ............. 52

A. The District Court Properly Dismissed Rapaport's IIED Claim as Duplicative of His Defamation Claim ......... 52

B. Rapaport Failed to Plead His IIED Claim............ 54

VI. New York Law Applies to Rapaport's Defective False Light Claim.............................................................. 58

VII. The District Court Properly Dismissed The Fraud Claim against Professor Epstein ....................................... 62

VIII. Rapaport Cannot Use "Civil Conspiracy" to Salvage His Meritless Defamation Claim...................................... 65

IX. The Proceedings Below Satsified All Due Proces Requirements ......................................................... 68

CONCLUSION .................................................................. 69

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADYB Engineered for Life, Inc. v. Edan Admin. Servs. Ltd.*,
  19-cv-7800-MKV, 2021 WL 1177532
  (S.D.N.Y. Mar. 29, 2021) ................................................................ 42, 43

*AJ Energy LLC v. Woori Bank*,
  829 F. App'x 533 (2d Cir. 2020) ........................................................ 23

*Almeida v. Amazon.com, Inc.*,
  456 F.3d 1316 (11th Cir. 2006) .......................................................... 37

*Anas v. Brown*,
  269 A.D.2d 761 (4th Dep't 2000) ....................................................... 46

*Anyanwu v. Columbia Broad. Sys., Inc.*,
  887 F. Supp. 690 (S.D.N.Y. 1995) ..................................................... 52

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................ 22, 23, 26

*Aurelius Cap. Master, Ltd. v. Republic of Argentina*,
  2025 WL 1949968 (2d Cir. July 16, 2025) ......................................... 29

*AVC Nederland B.V. v. Atrium Inv. P'ship*,
  740 F.2d 148 (2d Cir. 1984) .............................................................. 21

*Azzarmi v. Neubauer*,
  2024 WL 4275589 (S.D.N.Y. Sept. 24, 2024) .................................... 47

*Baiqiao Tang v. Wengui Guo*,
  2019 WL 6169940 (S.D.N.Y. Nov. 20, 2019) ..................................... 58

*Banaian v. Bascom*,
  175 N.H. 151 (2022) ......................................................................... 39

*Barrett v. Rosenthal*,
  40 Cal. 4th 33 (2006) ........................................................................ 39

*Bd. of Managers of Chelsea 19 Condo. v. Chelsea 19 Assocs.*,
  73 A.D.3d 581 (1st Dep't 2010) ............................................................ 62

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................... 24, 26

*Bendit v. Canva, Inc.*,
  2023 WL 5391413 (S.D.N.Y. Aug. 22, 2023) ...................................... 52

*Berwick v. New World Network Int'l, Ltd.*,
  2007 WL 949767 (S.D.N.Y. Mar. 28, 2007) ............................ 41, 58, 60

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015) ................................................................ 48

*Bobal v. Rensselaer Polytechnic Inst.*,
  916 F.2d 759 (2d Cir. 1990) ................................................................ 42

*Bondalapati v. Columbia University*,
  170 A.D.3d 489 (1st Dep't 2019) ......................................................... 47

*BYD Co. v. VICE Media LLC*,
  2022 WL 598973 (2d Cir. Mar. 1, 2022) ....................................... 48, 50

*Carlson v. Geneva City Sch. Dist.*,
  679 F. Supp. 2d 355 (W.D.N.Y. 2010) ................................................ 55

*Chen Gang v. Zhao Zhizhen*,
  799 F. App'x 16 (2d Cir. 2020) ........................................................... 66

*Chinese Am. Citizens All. Greater New York v. New York City
  Dep't of Educ.*, 2024 WL 1795390 (S.D.N.Y. Apr. 25, 2024) ............. 32

*Chinnery v. New York State Off. of Child. & Fam. Servs.*,
  2012 WL 5431004 (S.D.N.Y. Nov. 5, 2012) ......................................... 26

*Cole v. John Wiley & Sons, Inc.*,
  2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012) ........................................ 62

*Coleman v. Grand*,
  523 F. Supp. 3d 244 (E.D.N.Y. 2021) ................................................. 45

*Colson v. Haber*,
   2016 WL 236220 (E.D.N.Y. Jan. 20, 2016) ........................................ 34

*Conboy v. AT&T Corp.*,
   241 F.3d 242 (2d Cir. 2001) ............................................................... 53

*Conte v. Cnty. of Nassau*,
   596 F. App'x 1 (2d Cir. 2014) ............................................................ 30

*Cruz v. HSBC Bank USA*,
   N.A., 586 F. App'x 723 (2d Cir. 2014) .............................................. 55

*Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*,
   2003 WL 22410623 (S.D.N.Y. Oct. 21, 2003) .................................... 28

*Dayter v. Ploof*,
   2022 WL 18399473 (N.D.N.Y. Dec. 19, 2022) ................................... 42

*DeIuliis v. Engel*,
   2021 WL 4443145 (S.D.N.Y. Sept. 27, 2021) ............................... 58, 59

*Dejesus v. HF Mgmt. Servs., LLC*,
   726 F.3d 85 (2d Cir. 2013) ................................................................. 22

*Diario El Pais, S.L. v. Nielsen Co. (U.S.), LLC*,
   2008 WL 4833012 (S.D.N.Y. Nov. 6, 2008) ....................................... 28

*DiNapoli v. DiNapoli*,
   1995 WL 604607 (S.D.N.Y. Sept. 22, 1995) ...................................... 68

*Editor's Pick Luxury LLC v. Red Points Solutions SL*,
   2023 WL 6385993 (S.D.N.Y. Sept. 29, 2023) .................................... 47

*G.D. v. Kenny*,
   205 N.J. 275 (2011) ........................................................................... 61

*Gallop v. Cheney*,
   642 F.3d 364 (2d Cir. 2011) ............................................................... 23

*Garrison v. Louisiana*,
   379 U.S. 64 (1964) ............................................................................. 48

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ........................................................ 50

*Gibson v. Craigslist, Inc.*,
    2009 WL 1704355 (S.D.N.Y. June 15, 2009) ................................ 37, 38

*Gizewski v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
    2016 WL 3661434 (N.D.N.Y. July 5, 2016) ...................................... 35

*Goldman v. Reddington*,
    2021 WL 4099462 (E.D.N.Y. Sept. 9, 2021) ...................................... 45

*Greene v. WCI Holdings Corp.*,
    136 F.3d 313 (2d Cir. 1998) ............................................... 67, 68

*Haque v. Bush*,
    2017 WL 8780797 (E.D.N.Y. Nov. 16, 2017) ...................................... 26

*Harbulak v. Suffolk Cnty.*,
    654 F.2d 194 (2d Cir. 1981) ................................................... 26

*Harlow v. Heard*,
    2019 WL 6073445 (N.D.N.Y. Nov. 15, 2019) ..................................... 34

*Hengjun Chao v. Mount Sinai Hosp.*,
    476 F. App'x 892 (2d Cir. 2012) .............................................. 52

*Hennessey v. Coastal Eagle Point Oil Co.*,
    129 N.J. 81(1992) ............................................................ 59

*Hodges v. Lutwin*,
    2023 WL 3362836 (2d Cir. May 11, 2023) ....................................... 46

*Hogan v. Fischer*,
    738 F.3d 509 (2d Cir. 2013) ............................................... 31, 32

*Hoyt v. Kaplan*,
    263 A.D.2d 918 (3d Dep't 1999) ............................................ 46, 47

*Idema v. Wager*,
    120 F. Supp. 2d 361 (S.D.N.Y. 2000),
    *aff'd*, 29 F. App'x 676 (2d Cir. 2002) ....................................... 65

vi

*In re Houbigant, Inc.*,
   182 B.R. 958 (Bankr. S.D.N.Y. 1995)................................................. 65

*Jacob v. Lorenz*,
   2023 WL 4106298 (S.D.N.Y. June 21, 2023)...................................... 52

*James v. DeGrandis*,
   138 F. Supp. 2d 402 (W.D.N.Y. 2001) ........................................55, 56

*James v. Westchester Cnty.*, No. 13-CV-0019 NSR,
   2014 WL 4097635 (S.D.N.Y. Aug. 19, 2014) .................................... 26

*Jimenez v. Bisram*,
   2024 WL 3360340 (E.D.N.Y. July 10, 2024) ..................................... 26

*Johnson El. v. Chambers*,
   2021 WL 4484929 (2d Cir. Oct. 1, 2021) ........................................... 56

*Kesner v. Dow Jones & Co.*,
   515 F. Supp. 3d 149 (S.D.N.Y. 2021).........................................40, 65

*Kinsey v. N.Y. Times Co.*,
   991 F.3d 171 (2d Cir. 2021) ............................................................... 58

*Knelman v. Middlebury Coll.*,
   570 F. App'x 66 (2d Cir. 2014) .......................................................... 62

*Kregos v. Associated Press*,
   3 F.3d 656 (2d Cir.1993) ................................................................... 62

*Leon v. Murphy*,
   988 F.2d 303 (2d Cir. 1993) .............................................................. 21

*Leung v. New York Univ.*,
   2010 WL 1372541 (S.D.N.Y. Mar. 29, 2010),
   *aff'd in part on relevant grounds*, 580 F. App'x 38 (2d Cir. 2014) ..... 41

*Loeb v. New Times Commc'ns Corp.*,
   497 F. Supp. 85 (S.D.N.Y. 1980)....................................................... 50

*Luce v. Edelstein*,
   802 F.2d 49 (2d Cir. 1986) ................................................................ 62

*Marino v. Westfield Bd. of Educ.*,
2017 WL 216691 (D.N.J. Jan. 18, 2017) ............................................. 61

*McCollum v. Baldwin*,
688 F. Supp. 3d 117 (S.D.N.Y. 2023)............................................. 49, 52

*McDougal v. Fox News Network, LLC*,
489 F. Supp. 3d 174 (S.D.N.Y. 2020).................................................. 48

*McGill v. Parker*,
179 A.D.2d 98 (1st Dep't 1992)........................................................ 64

*McLaughlin v. Chong*,
2016 WL 1276470 (S.D.N.Y. Mar. 29, 2016)................................ 30, 32

*McSpedon v. Levine*,
158 A.D.3d 618 ( 2d Dep't 2018)...................................................... 66

*Milan v. Wertheimer*,
808 F.3d 961 (2d Cir. 2015) ............................................................. 29

*Mitan v. A. Neumann & Assocs.*,
2010 WL 4782771 (D.N.J. Nov. 17, 2010)......................................... 39

*Monge v. Univ. of Pa.*,
2023 WL 2471181 (E.D. Pa. Mar. 10, 2023) ...................................... 38

*Morin v. Fordham Univ.*,
2022 WL 4586042 (S.D.N.Y. Sept. 28, 2022) .................................... 56

*Morse/Diesel, Inc. v. Fid. & Deposit Co. of Maryland*,
763 F. Supp. 28 (S.D.N.Y.), *opinion modified on reargument,*
768 F. Supp. 115 (S.D.N.Y. 1991).......................................... 63

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964).................................................................. 44, 47

*Neal v. Asta Funding, Inc.*,
2014 WL 3887760 (S.D.N.Y. June 17, 2014)...................................... 43

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009)............................................................. 37

*Nova v. Smith,*
    2019 WL 2636817 (N.D.N.Y. June 27, 2019) ...................................... 56

*Novins v. Cannon,*
    2010 WL 1688695 (D.N.J. Apr. 27, 2010) ........................................... 38

*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.,*
    830 F.3d 152 (2d Cir. 2016) ................................................................. 21

*Ortiz v. Ardolino,*
    2021 WL 2075714 (E.D.N.Y. May 21, 2021) ...................................... 56

*Palin v. N.Y. Times Co.,*
    510 F. Supp. 3d 21 (S.D.N.Y. 2020)..................................................... 45

*Pedraglio Loli v. Citibank, Inc.,*
    173 F.3d 845 (2d Cir. 1999) ................................................................. 58

*Peters v. LifeLock Inc.,*
    2014 WL 12544495 (D. Ariz. Sept. 19, 2014) .................................... 39

*Phan v. Pham,*
    182 Cal. App. 4th 323 (2010) .............................................................. 39

*Pino v. Ryan,*
    49 F.3d 51 (2d Cir. 1995) ..................................................................... 29

*Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP,*
    27 Misc. 3d 1238(A) (Sup. Ct. N.Y. Cnty. May 28, 2010) .................. 28

*Pravda v. Cnty. of Saratoga,*
    224 A.D.2d 764 (3d Dep't 1996)........................................................... 64

*Printers II, Inc. v. Pros. Publ'g, Inc.,*
    784 F.2d 141 (2d Cir. 1986) ................................................................. 43

*Rapaport v. Finkelman,*
    No. 24-CV-5942 (S.D.N.Y. Aug. 5, 2024)............................................ 57

*Reches v. Morgan Stanley & Co. Inc.,*
    687 F. App'x 49 (2d Cir. 2017) ............................................................ 28

ix

*Rochester v. Cnty. of Nassau,*
   2019 WL 955032 (E.D.N.Y. Feb. 27, 2019) ........................................ 28

*Sander v. Enerco Grp., Inc.,*
   2023 WL 1779691 (S.D.N.Y. Feb. 6, 2023) ........................................ 27

*Sawyer v. Musumeci,*
   1997 WL 381798 (S.D.N.Y. July 9, 1997),
   *aff'd*, 165 F.3d 14 (2d Cir. 1998) ........................................ 41

*Shipp v. Frontier Commc'ns,*
   669 F. App'x 15 (2d Cir. 2016) ........................................ 22

*Shuman v. N.Y. Mag.,*
   211 A.D.3d 558 (1st Dep't 2022) ........................................ 45

*Simmons v. Mason,*
   2019 WL 4525613 (S.D.N.Y. Sept. 18, 2019) ........................................ 30

*Snyder v. Phelps,*
   562 U.S. 443 (2011) ........................................ 54

*St. Amant v. Thompson,*
   390 U.S. 727 (1968) ........................................ 48, 50

*Strujan v. Teachers Coll. Columbia Univ.,*
   2010 WL 3466251 (S.D.N.Y. Sept. 3, 2010) ........................................ 67

*Sutton v. Hafner Valuation Grp., Inc.,*
   115 A.D.3d 1039 (3d Dep't 2014) ........................................ 62

*Tannerite Sports, LLC v. NBCUniversal News Grp.,*
   864 F.3d 236 (2d Cir. 2017) ........................................ 41

*Time, Inc. v. Hill,*
   385 U.S. 374 (1967) ........................................ 61

*Travis v. Daily Mail,*
   78 Misc. 3d 1218(A) (Civ. Ct. N.Y. Cty. 2023) ........................................ 45

*United States v. Pelt,*
   567 F. App'x 64 (2d Cir. 2014) ........................................ 4

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
   478 F.3d 413 (1st Cir. 2007) ...................................................... 37

*Vasconcellos v. City of New York*,
   2014 WL 4961441 (S.D.N.Y. Oct. 2, 2014) ............................... 32

*Walters v. Indus. & Com. Bank of China, Ltd.*,
   651 F.3d 280 (2d Cir. 2011) ...................................................... 28

*Williams v. MLB Network, Inc.*,
   2019 WL 1222954
   (N.J. Super. Ct. App. Div. Mar. 14, 2019) ............................... 61

*Y.D. v. New York City Dep't of Educ.*,
   2016 WL 698139 (S.D.N.Y. Feb. 19, 2016) .............................. 53

*Zeran v. Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) ..................................................... 37

## Statutes

28 U.S.C. § 1291 ............................................................................ 4

28 U.S.C. § 1332 ............................................................................ 4

47 U.S.C. §§ 230 *et seq* ................................................. 5, 36, 38, 39

N.Y. Civ. Rights Law §§ 76-a *et seq* ..................................... 44, 45

## PRELIMINARY STATEMENT

Plaintiff-Appellant Gideon Rapaport ("Rapaport"), an unemployed graduate of New York University School of Law ("NYU Law"), is not one to take no for an answer. He has now propelled to this Court his ceaseless quest for reprisal against those he believes deprived him of his entitlement to a U.S. Supreme Court clerkship. At its heart, this frivolous appeal takes aim at the District Court for failing to stretch the bounds of logic and common sense to conjure a well-pled and plausible complaint out of Rapaport's petty gripes and convoluted insinuations.

To advance his lofty career ambitions, Rapaport cultivated Defendant-Appellee Richard Epstein ("Professor Epstein"), a professor at NYU Law. His plan began to bear fruit when Professor Epstein recommended Rapaport for the 2022 James Kent Academy, a prestigious Federalist Society summer program for law students. But Rapaport's aspirations were derailed when Kirkland & Ellis LLP ("K&E") made the unusual move of terminating him mid-employment as a summer associate. Rumors began circulating, including online, that Rapaport had been fired for sexual harassment and banned from entering K&E's New York offices.

Following his firing, Rapaport claims that his NYU Law peer and fellow member of its Federalist Society chapter, Defendant-Appellee Ajay Iyer ("Iyer") digitally manipulated a photograph of the K&E lobby guard desk to suggest a poster had been hung barring Rapaport from entry. Iyer allegedly published this photograph on Reddit.com and Top-Law-Schools.com. Defendant-Appellee Zachary Garrett ("Garrett" and with Iyer, the "Student Appellees") allegedly passed unspecified materials to Federalist Society officials as well as Professor Epstein, informing them that K&E had fired Rapaport for sexual harassment. Concerned by these reports, Professor Epstein is alleged to have "believ[ed] the authenticity of the faked images and veracity of the defamatory claims" and separately forwarded these unspecified materials to the Federalist Society.

Despite the rumors, Rapaport still attended the James Kent Academy, graduated from law school, and passed the New York bar exam. Rapaport, however, never applied for bar admission nor found new employment. Instead, he has filed case after case—including this one claiming defamation, injurious falsehood, intentional infliction of emotional distress ("IIED"), false light, tortious interference, fraud, and

civil conspiracy—frivolously contending that the only reason he does not sit at the upper echelons of the legal profession was a network of conspirators machinating against him.

These claims are fantastical and were properly dismissed by the District Court. Rapaport's arguments—in the District Court and on appeal—rely on conclusory allegations and fallacious legal propositions. The District Court, however, was correct to hold *sua sponte* that Rapaport's defamation, IIED, and injurious falsehood claims against Professor Epstein contained in his First Amended Complaint ("FAC") did not relate back to the original complaint and were therefore untimely. The District Court also properly concluded that the IIED claim impermissibly duplicated his defamation claim. The District Court rightfully rejected Rapaport's New Jersey law false light claim, deeming New York law, which does not recognize false light, to apply. Consistent with settled law, the District Court further found that Rapaport had failed to plead the requisite elements of fraud, including pecuniary damages. Finally, the District Court properly held that because Rapaport had failed to allege the underlying tort of defamation, his civil conspiracy claim likewise failed.

The District Court's well-reasoned decision should be affirmed in its entirety.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction below pursuant to 28 U.S.C. § 1332. Plaintiff-Appellant prematurely filed his notice of appeal on April 7, 2025, and then an amended notice of appeal on April 21, 2025. The District Court entered judgment dismissing the action on June 11, 2025. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291, because the premature notice of appeal ripened into a valid notice of appeal after the district court entered final judgment. *See United States v. Pelt*, 567 F. App'x 64, 65 (2d Cir. 2014) (summary order).

## COUNTERSTATEMENT OF THE ISSUES[1]

1.      Whether the District Court correctly applied the standards of review under Fed. R. Civ. P. 12(b)(6) and for pleadings by *pro se* plaintiffs in concluding that Rapaport failed to state his claims.

---

[1] Rapaport's Statement of the Issues lists twelve separate Issues for Review, many of which do not pertain to Professor Epstein. Accordingly, Professor Epstein's Counterstatement of the Issues contains only questions pertaining to the allegations against him.

2.     Whether the District Court properly dismissed Rapaport's defamation, IIED, and injurious falsehood claims against Professor Epstein as untimely under Fed. R. Civ. P. 15(c)(1).

3.     Whether the dismissal of the defamation, false light, injurious falsehood, and IIED claims can be sustained on the alternative ground raised but not reached below that the claims—as they relate to forwarding an email sent by others—are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230").

4.     Whether the dismissal of the defamation claim can be affirmed on the additional alternative grounds raised but not reached below that Rapaport failed to plead the defamatory statements complained of or facts that could establish actual malice.

5.     Whether the District Court properly dismissed Rapaport's IIED claims as duplicative of his infirm defamation claims or, in the alternative, for failure to plead the essential elements of the claim.

6.     Whether the District Court properly applied New York law to dismiss Rapaport's false light claim where all pled events and reputational damage occurred in New York.

7.    Whether the District Court properly dismissed Rapaport's fraud claim for failure to plead a duty to disclose, intent to defraud, or pecuniary damages.

8.    Whether Rapaport can use improperly pled "civil conspiracy to defame" to cure the defects in his defamation claim where he has not even adequately pled that Professor Epstein participated in a conspiracy.

9.    Whether by ruling against Rapaport the District Court denied him due process.

## COUNTERSTATEMENT OF THE CASE

### A.    Factual Background

Professor Richard Epstein is an NYU Law professor and faculty advisor to NYU Law's Federalist Society chapter. A52. In that role, he has built a reputation as a respected recommender of law students for judicial clerkships. A54. Seeking such a recommendation for himself, Rapaport, while a student at NYU Law, strove to cultivate a relationship with Professor Epstein and get Professor Epstein to "take[] a positive interest in assisting plaintiff with his career." A61, A54. Rapaport believed he was entitled to a "promised—and definite—appellate clerkship, and possibly one with the U.S. Supreme Court." A53. Rapaport

6

successfully made inroads with Professor Epstein when, in summer 2022, Professor Epstein recommended Rapaport for the James Kent Academy, a Federalist Society law student summer program. A54.

Also in summer 2022, Rapaport was a summer associate at K&E, but he was terminated for reasons not specified in the FAC. A59. After his termination from K&E, Rapaport claims his fellow NYU Law student and member of NYU Law's Federalist Society, Defendant-Appellee Iyer, digitally manipulated a photograph of the guard desk in K&E's lobby to suggest a sign was hung barring Rapaport from entering the building. A56. Iyer allegedly published this altered photograph on Reddit.com and Top-Law-Schools.com, where anonymous users speculated Rapaport had been fired for sexually harassing other K&E employees and/or making racist remarks in the office. A9-13, A53, A56. Rapaport alleges Defendant-Appellee Garrett, another NYU Law student and Federalist Society member at NYU Law, "presented" unspecified "online materials" to Peter Redpath and Kate Alcantara of the Federalist Society on or about July 29, 2022. A57.

Rapaport alleges Garrett presented Professor Epstein with "the fake image and defamatory statements" "[a]t about this time." *Id.*

7

Rapaport pleads that Professor Epstein "believ[ed] the authenticity of the faked images and veracity of the defamatory claims" and allegedly became concerned about the impact of Rapaport's firing on his own credibility as his recommender. A57, A53.

Rapaport then alleges that around July 29, 2022, or July 30, 2022, Iyer faked a second photograph of the K&E guard desk depicting the poster with Plaintiff's name and photograph and sent it to Professor Epstein. A57, A58. Iyer and Garrett then attempted to persuade Professor Epstein—who, per the FAC, believed this photograph to be authentic, A53—to become "an unwitting instrument of their civil conspiracy." A58. Believing the claims, Professor Epstein allegedly "forwarded the [unspecified] defamatory statements based upon the fake photographs and in the email" to Lee Otis of the Federalist Society around August 2022. A60.

On August 2, 2022, Garrett also allegedly emailed Redpath and Alcantara, this time to inform them that he believed that Rapaport was "fired and banned from entering the building" for "sexually harassing a practice assistant or an attorney." A59. Garrett claimed he had "spoke[n] with Richard Epstein about this situation," and Professor Epstein was

"understandably very upset by the news and feels that Lee Otis should be made aware, since Gideon is going to be participating in the James Kent Fellowship, for which Professor Epstein wrote Gideon a (complicated) letter of recommendation." A59, A8. Otis investigated the claims against Rapaport and permitted him to participate in the Fellowship. A60-A61.

After he completed the Fellowship, Rapaport alleges Professor Epstein informed him via a telephone call that he could no longer recommend Rapaport for a clerkship, he would be removed as a Senior Articles Editor from an NYU law journal, and "he will not associate with the plaintiff anymore, in order to protect his own reputation and his ability to recommend and place students in the future." A61. Rapaport claims Professor Epstein did not disclose during this telephone call that Garrett and Iyer told him of Rapaport's purported termination and sexual misconduct allegations nor that Professor Epstein sent "materials" to the Federalist Society. A62.

A year later, on July 28, 2023, Professor Epstein invited Rapaport to lunch. *Id.* Rapaport capitalized on this opportunity to demand Professor Epstein "correct" and "add" to his draft *pro se* complaint in this

action on the day of filing. *Id*. Professor Epstein declined and informed Rapaport he did not want to be involved. A63. In response, Rapaport threatened Professor Epstein that "it was too late" to disclaim involvement. *Id*. Rapaport does not allege that he asked Professor Epstein who sent the allegedly defamatory materials to the Federalist Society.

Not accepting Professor Epstein's refusal, Rapaport "pressed" him again via email on August 9, 202[3]. A63. In response, Professor Epstein allegedly informed Rapaport that he had sent "compiled materials to Otis." *Id*. Professor Epstein again allegedly advised Rapaport that pursuing this action further would deleteriously impact his career. *Id*.

Rapaport has since graduated from NYU Law and passed the New York State Bar Exam, but has neglected to seek admission to the New York State Bar. A53.

### B.     The Procedural History of the Case and the Associated Actions

#### 1.     Rapaport Commences This Litigation

Rapaport filed the original complaint in this action *pro se* on July 28, 2023, in the Southern District of New York against three John Doe defendants, identified as a Reddit.com user, a Top-Law-Schools.com

10

user, and a current or former NYU Law student. A72. The original complaint also alleged that *all* defendants were NYU Law students. A75. The original complaint brought claims for defamation, defamation by implication, defamation *per se*, false light invasion of privacy, and IIED based on the publication of anonymous internet posts and unnamed defendants informing law firm staff of the alleged sexual harassment claim against him. A84-A87. Nearly five months after filing his original complaint, Rapaport requested the issuance of subpoenas to determine the identities of the Doe Defendants. SA11-SA170.

Three months after the subpoenas were issued, Rapaport retained counsel. SA171. Then, over four months after the subpoenas had been issued and 10 months after filing his original complaint, Rapaport filed the amended and operative complaint on May 24, 2024, with counsel's assistance, adding Professor Epstein as a new defendant along with Iyer and Garrett. A51. Against Professor Epstein, Rapaport brought claims for defamation, injurious falsehood, IIED, false light invasion of privacy (under New Jersey law), civil conspiracy, fraud, and tortious interference. A64-A70.

On August 12 and 16, Professor Epstein, and Garrett and Iyer, filed

their respective motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). A138, A224. On September 8, 2024, Rapaport informed the District Court he had terminated his counsel and again would be proceeding *pro se*. SA172-173. The parties fully briefed both sets of motions. A175-A223; A252-A328.

On September 27, 2024, Rapaport sought leave to file his Second Amended Complaint, *pro se*. SA175-SA175.

### 2.    Rapaport Files Two Additional Lawsuits

In addition to this action, Rapaport has commenced and maintained two additional litigations, both in the Southern District of New York.

On August 5, 2024, Plaintiff sued Abigail Finkelman for defamation and false light based on Finkelman allegedly retweeting and resharing the allegedly faked photographs at issue in this action. A25 (citing *Rapaport v. Finkelman*, No. 24-CV-5942 (S.D.N.Y. Aug. 5, 2024), ECF No. 1). A motion to dismiss is currently pending in that matter.

On September 27, 2024, Rapaport filed a separate action against all defendants in this action and other former classmates for civil RICO and antitrust violations arising out of an alleged conspiracy to prevent Rapaport from receiving a U.S. Supreme Court clerkship and to

12

monopolize the U.S. clerkship market at NYU Law. A25 (citing *Rapaport v. Epstein, et al.*, No. 24-CV-7439 (S.D.N.Y. Sept. 27, 2024), ECF No. 1.). Rapaport claims Professor Epstein personally controls various federal judicial clerkship placements as his "private property," *id.* ¶¶ 36, 44, including "up to four slots in the Supreme Court of the United States … and approximately one hundred slots in the federal trial and appellate courts." *Id.* ¶ 37. The parties moved to dismiss those claims.

### 3.    The District Court Dismisses the FAC

On March 31, 2025, the District Court granted defendants' motions to dismiss the FAC. A20. At the outset, the District Court noted it was "liberally constru[ing] [Rapaport's] Amended Complaint" because he was "proceeding *pro se*." A20-A21. As relevant to the claims against Professor Epstein, the District Court found as follows:

*First*, the lower court found that New York law, which does not recognize false light, applied to Rapaport's false light invasion of privacy claim and thus dismissed that claim with prejudice. A27-A30. The court found that under New York choice of law principles, New York had the "strongest interest" in the resolution of that claim, which Rapaport conceded by bringing the remainder of his claims under New York law.

13

A29-A30. It accordingly declined to exercise dépeçage. A30.

*Second*, based on arguments briefed by the Student Appellees (and adopted by Professor Epstein in his reply brief, A213), and Rapaport, A224-A313, the court analyzed whether the FAC related back to the original complaint. A30-A38. Analyzing relation-back under Rule 15(c)(1)(C), the court determined that because lack of knowledge of John Doe defendants' names is not a "mistake of identity," the original complaint could not relate-back thereunder. A33. Next, analyzing Rule 15(c)(1)(A), it first rejected CPLR 203(f) as a basis for relation-back because it is analyzed identically to Rule 15(c)(1)(C). A33-A34. However, in applying CPLR 1024, it concluded that Rapaport had exercised sufficient due diligence in discovering the identities of the Doe Defendants and that his original complaint described the defamation, IIED, and injurious falsehood claims arising from the anonymous internet posts in a manner sufficient to provide notice. A34-A35. The court accordingly held that "his claims are not untimely, but only to the extent they arise from, or relate to, the faked photographs published online and any related online statements regarding Rapaport being fired for sexual harassment." A38. It found the other alleged defamatory

statements, including all statements allegedly made by Professor Epstein, time-barred. *Id.*

*Third*, the court dismissed the defamation claim against Professor Epstein with prejudice. *Id.* As to the Student Appellees, the court held Rapaport had not stated his defamation claim based on posting the fake photograph because that allegation was contradicted by an exhibit to the FAC. A39-A40. The court further concluded that Rapaport failed to adequately plead which defendant made the anonymous internet postings. A40-A41. Based on these failures, the court ruled Rapaport failed to plead defamation as to the Student Defendants. A41.

*Fourth*, the court dismissed Rapaport's civil conspiracy claim for failure to plead the underlying tort of defamation. A41. It also dismissed his IIED and injurious falsehood claims as duplicative because they were predicated on the same conduct as the defamation claim. A42.

*Fifth*, while the court did not reach whether Section 230 applied to the defamation, injurious falsehood, false light, or IIED claims against Professor Epstein based on his "forwarding" allegedly defamatory material to Otis, it found that the fraud and tortious interference claims against Professor Epstein "embrace and depend on conduct beyond just

15

Epstein's emails" and, therefore, Section 230 did not apply to those claims. A43.

*Sixth,* the court held Rapaport had not pled facts to support his tortious interference claim against Professor Epstein. A44.

*Seventh*, the court held Rapaport failed to plead fraud based on Professor Epstein's alleged omission of the identity of the Student Appellees because he had not alleged Professor Epstein owed him any fiduciary duty or that Professor Epstein intended to defraud him. A45-A46. The court also held Rapaport failed to plead compensable, pecuniary loss because Professor Epstein's "failure to disclose the identities of Student Appellees left Plaintiff in the exact same situation as he began, and similarly left him free to exhaust other options to identify Student Appellees," and Rapaport could not show he otherwise suffered any loss caused by litigation delay. A46-A47.

*Eighth*, the court granted Rapaport leave to amend his complaint "with respect to the defamation (based on the internet postings), civil conspiracy, fraud, and tortious interference claims only." A48. It dismissed the remaining claims with prejudice. A49. The District Court consolidated this case *sua sponte* with his RICO action and ordered

Rapaport to file a consolidated amended complaint encompassing the surviving claims in both actions. A48.

### 4. Rapaport Files a Premature Notice of Appeal

The lower court's opinion dismissed only some claims with prejudice and gave Rapaport leave to amend other claims. A49. The opinion, therefore, was not a final appealable order. Nevertheless, on April 7, 2025, Rapaport prematurely filed a Notice of Appeal and then an amended notice of appeal on April 21, 2025. A329, A330. On April 23, 2025, the lower court informed Rapaport that his appeal was premature. SA176-SA178. It denied his motion to stay the consolidated proceedings, informing Rapaport that if he chose not to file a consolidated amended complaint, it would direct final judgment in Defendants' favor. *Id.* On June 11, 2025, the lower court so-ordered final judgment for Defendant-Appellees in the action. SA180-SA181.

## SUMMARY OF THE ARGUMENT

The District Court correctly dismissed the FAC in its entirety for failure to state a claim.

I.    The court correctly dismissed the FAC under Fed. R. Civ. P. 12(b)(6). The Rule 12(b)(6) standard does not require a court to entertain factually frivolous claims nor suspend common sense. The court properly

17

determined Rapaport failed to plead sufficient facts supporting his claims. The court afforded Rapaport all appropriate leniency due to a *pro se* litigant (which he disclaims he requires). Nevertheless, the court was not obliged to "invent" unpled facts that would allow Rapaport's *pro se* action to survive. As the Opinion makes clear, the court repeatedly read the FAC in the most favorable light, took into account unpled facts raised solely in Rapaport's briefing, and extended him partial leave to amend for a second time in recognition of his *pro se* status. The court accordingly correctly applied all relevant standards in dismissing the action.

II.    The court properly *sua sponte* applied the relation-back principle to the FAC's defamation, IIED, and injurious falsehood claims against Professor Epstein (as first raised in Student Appellees' briefing) to dismiss them as untimely. The original John Doe complaint did not name Professor Epstein, and failure to identify John Doe defendants is not a mistake under Rule 15(c)(1)(C) that would permit the FAC to relate back to the original complaint. Nor can Rapaport satisfy Rule 15(c)(1)(A) as to Professor Epstein where the original complaint's description of events did not adequately describe his alleged involvement, and Rapaport cannot demonstrate that he exercised due diligence to uncover

18

Professor Epstein's identity where he delayed months in amending his complaint after Professor Epstein allegedly informed him of his involvement.

III.   In the alternative, the defamation, false light, IIED, and injurious falsehood claims can be dismissed because, as argued below, they are based on forwarded emails, which is conduct immunized from liability by Section 230. Dismissal of the defamation claim may also be affirmed based on the FAC's failure to plead the defamatory statements allegedly made by Professor Epstein and failure to plausibly plead actual malice.

IV.   Rapaport's IIED claim was properly dismissed because, as his Opening Brief here admits, it was predicated on the same facts as his defamation claim. The IIED claim can be alternatively dismissed because, as argued below, (1) the First Amendment applies as a defense; (2) the expression of allegedly defamatory statements is not "extreme and outrageous" conduct as a matter of law; and (3) Rapaport failed both to plead that Professor Epstein was motivated by an intention to injure him or that he even suffered an injury.

19

V.    The court correctly concluded Rapaport's false light claim was subject to dismissal under New York—not New Jersey—law, because New York had the most significant interest in the claim but does not recognize the tort of false light. As alleged in the FAC, the relevant events and Rapaport's alleged injury occurred in New York, where Rapaport attended school and worked, and Defendant-Appellees all resided. Rapaport's threadbare allegation of a "New Jersey community" cannot outweigh this action's New York center. Further, as argued below, even if New Jersey law applied, the claim fails because Rapaport does not plead actual malice, an essential element under New Jersey law.

VI.    The court properly dismissed the fraud claim against Professor Epstein, because Rapaport was required to—but did not—allege that he suffered pecuniary loss as a result of the "fraud." His allegations of litigation costs and delay, which were entirely of his own doing, do not satisfy fraud's high pleading bar. The fraud claim also fails because, as the District Court held and as Rapaport now fails to challenge, the FAC did not plead that Professor Epstein owed him a duty to disclose nor that he intended to defraud Rapaport.

VII. Rapaport cannot salvage his defamation claim by relying on an unpled civil conspiracy claim. New York does not recognize the independent tort of "conspiracy to defame," and the FAC itself undermines any claim that Professor Epstein participated in a conspiracy, because the FAC makes clear that there was no "meeting of the minds" between Professor Epstein and his alleged co-conspirators.

VIII. The court did not deny Rapaport due process by dismissing his FAC with partial leave to amend after Rapaport had the opportunity to submit multiple briefs opposing dismissal.

## STANDARD OF REVIEW

This Court "review[s] de novo a District Court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6)" for failure to state a claim. *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (citing *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232 (2d Cir. 2014)). The District Court's ruling for an appellee may be sustained "on the basis of any argument that is supported by the record, whether it was ignored by the court below or flatly rejected." *AVC Nederland B.V. v. Atrium Inv. P'ship*, 740 F.2d 148, 152 (2d Cir. 1984) (cleaned up); *see also Leon v.*

*Murphy*, 988 F.2d 303, 308 (2d Cir. 1993) ("We may affirm … on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely.").

Only a complaint that states a plausible claim for relief supported by sufficient factual matter may survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Pleadings that contain no more than conclusions…are not entitled to the assumption of truth" that is otherwise applicable on a motion to dismiss. *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013).

Additionally, *sua sponte* dismissals of a complaint "as untimely under the applicable statute of limitations" are reviewed *de novo*. *Shipp v. Frontier Commc'ns*, 669 F. App'x 15 (Mem) (2d Cir. 2016) (summary order).

## ARGUMENT[2]

## I. THE DISTRICT COURT CORRECTLY APPLIED THE RELEVANT LEGAL STANDARDS IN DISMISSING THE COMPLAINT

The District Court correctly applied the standards under Rule 12(b)(6) and for evaluating *pro se* pleadings in dismissing the FAC, and Rapaport's claims to the contrary are meritless.

### A. The District Court's Dismissal under Rule 12(b)(6) Was Proper

The District Court correctly applied the Rule 12(b)(6) standard in dismissing the FAC. On a Rule 12(b)(6) motion, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, but it need not "suspend common sense when analyzing the complaint." *AJ Energy LLC v. Woori Bank*, 829 F. App'x 533, 534 (2d Cir. 2020) (summary order). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Furthermore, "a court may dismiss a claim as 'factually

---

[2] Professor Epstein adopts by reference all applicable arguments made in Appellees Iyer and Garrett's briefing submitted before this Court.

frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic.' or 'delusional.'" *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011).

Although Rapaport does not directly contend the Court failed to apply this standard to any of his allegations concerning Professor Epstein, his argument on the legal standard seemingly takes the District Court to task for not "suspend[ing] common sense" when reviewing the FAC. The only point potentially relevant to Professor Epstein that Rapaport raises is that the District Court should have construed his original complaint's vague reference to "forwarding of the anonymous internet posts" by unpled parties to unpled parties via unpled means at unpled times as encompassing several wholly distinct communications by Defendants Garrett and Epstein to the James Kent Academy. Appellant's Brief of Gideon Rapaport ("Br.") at 37 (citing A75).[3] But such unadorned allegations cannot provide fair notice under Rule 8 nor are they entitled to the assumption of truth. *Twombly,* 550 U.S. at 545. Even

---

[3] While Rapaport relies on this argument to dispute whether the District Court properly evaluated the dismissal motions under Rule 12(b)(6), this argument appears to challenge the District Court's relation-back analysis.

if this far-fetched proposition sufficed, Rapaport's Brief concedes that this oblique reference was to Defendant Garrett—not Professor Epstein. *See* Br. at 38 (not mentioning Professor Epstein but stating "[Garrett] actually forwarded the defamatory statements and forgery via Email."). Accordingly and as discussed more fully in Section II, *infra*, the District Court properly determined the defamation claims against Professor Epstein, which were premised on the alleged forwarding of materials to the James Kent Academy, did not "relate back" to the original complaint. A38.[4]

## B.     Rapaport Received All Solicitude Due to a *Pro Se* Plaintiff

Rapaport's argument that the District Court misapplied the standard for *pro se* litigants when dismissing his FAC is likewise without merit. Br. at 60-61. Although Rapaport filed his initial complaint *pro se* and is now again proceeding *pro se*, the operative complaint was drafted and filed by his now-terminated counsel. *See* A71. Thus, the usual solicitude afforded *pro se* plaintiffs on Rule 12(b)(6) motions is

---

[4] Nor was there anything improper about the court denying Rapaport leave to file his proposed second amended complaint, consolidating this matter with the RICO case, and ordering him to file a consolidated amended complaint.

unnecessary. Further, this argument is moot because Rapaport "explicitly disclaims that any of his claims require special treatment as a *pro se* litigant in order to survive dismissal." Br. at 61. And, indeed, Rapaport is a graduate of a prestigious law school, passed the New York bar exam, and considers himself sufficiently qualified to merit a Supreme Court clerkship. He "is a lawyer and, therefore, he cannot claim the special consideration which courts customarily grant to pro se parties." *Harbulak v. Suffolk Cnty.,* 654 F.2d 194, 198 (2d Cir. 1981). No reason exists to not take Rapaport at his word.

And while *pro se* plaintiffs receive a degree of solicitousness from courts, they still "cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *James v. Westchester Cnty.*, 2014 WL 4097635, at *2 (S.D.N.Y. Aug. 19, 2014). "The 'plausibility' standard articulated in *Twombly* and *Iqbal* applies to the pleadings of *pro se* plaintiffs as well as to those of represented litigants." *Chinnery v. New York State Off. of Child. & Fam. Servs.*, 2012 WL 5431004, at *4 (S.D.N.Y. Nov. 5, 2012). In other words, "the liberal pleading standard accorded to pro se litigants is not without limits, and all normal rules of

26

pleading are not absolutely suspended." *Jimenez v. Bisram*, 2024 WL 3360340, at *2 (E.D.N.Y. July 10, 2024). Accordingly, dismissal is warranted where, as here, the complaint is "factually frivolous" with facts rising to the "level of the irrational or the wholly incredible." *Haque v. Bush*, 2017 WL 8780797, at *2 (E.D.N.Y. Nov. 16, 2017).

Rapaport cannot show that the *pro se* standard was misapplied here. Indeed, he misstates the standard itself, claiming that the District Court erred in failing to "imagine" a "set of facts" under which his claims could survive. Br. at 61. But a district court "cannot invent factual allegations plaintiff has not pleaded" to salvage a *pro se* plaintiff's infirm claims. *Sander v. Enerco Grp., Inc.*, 2023 WL 1779691, at *2 (S.D.N.Y. Feb. 6, 2023). Here, the District Court repeatedly extended Rapaport every courtesy to which a *pro se* plaintiff may be entitled, including interpreting his complaint to raise the strongest claims, exercising its discretion to take into account facts raised for the first time in reply, and giving him leave to amend certain claims even after dismissal. A26, A35, A47. Notwithstanding this liberal construction, the court correctly concluded, Rapaport failed to state a claim that could entitle him to relief. A20, A26. Rapaport presents no basis to disturb that determination here.

## II.   THE DISTRICT COURT PROPERLY DISMISSED THE DEFAMATION, IIED, AND INJURIOUS FALSEHOOD CLAIMS AGAINST PROFESSOR EPSTEIN AS UNTIMELY

### A.   The District Court Properly Applied the Statute of Limitations *Sua Sponte* to the Claims against Professor Epstein

Rapaport's objection that the District Court, in evaluating the relation-back arguments presented by Defendant-Appellees Garrett and Iyer, improperly applied the relation-back principle to dismiss the defamation, IIED, and injurious falsehood claims[5] against Professor Epstein predicated on overlapping facts is groundless.

It is well-established that "district courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where 'the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.'" *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (citing cases). *Sua sponte* dismissals

---

[5] The District Court also dismissed Rapaport's injurious falsehood claim as duplicative to his defamation claim. *See* A42. It is separately defective, as argued below, because he did not plead injury to the quality of his legal services, actual malice, nor special damages. A166-A167; *see Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP*, 910 N.Y.S.2d 765 (Sup. Ct. N.Y. Cnty. May 28, 2010); *Diario El Pais, S.L. v. Nielsen Co. (U.S.), LLC*, 2008 WL 4833012, at *7 (S.D.N.Y. Nov. 6, 2008); *Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, 2003 WL 22410623, at *7 (S.D.N.Y. Oct. 21, 2003). His failure to oppose the lower court ruling on appeal constitutes waiver.

28

are also appropriate where, as here, a plaintiff fails to identify a John Doe defendant in the limitations period. *See Rochester v. Cnty. of Nassau*, 2019 WL 955032, at \*3 (E.D.N.Y. Feb. 27, 2019). The Second Circuit regularly affirms *sua sponte* dismissals based on the expiry of statutes of limitations, even against *pro se* plaintiffs, where "the facts supporting the statute of limitations defense are set forth in the papers [a] plaintiff himself submitted." *See*, *e.g.*, *Reches v. Morgan Stanley & Co. Inc.*, 687 F. App'x 49, 51 (2d Cir. 2017) (summary order) (affirming *sua sponte* dismissal on statute of limitations grounds even where defendant's motion to dismiss did not raise argument); *see also Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015); *Pino v. Ryan*, 49 F.3d 51, 53–54 (2d Cir. 1995).

Accordingly, the District Court properly concluded *sua sponte* that Rapaport's defamation, IIED, and injurious falsehood claims against Professor Epstein were untimely. A31.[6]

---

[6] This Court may consider the relation-back argument as applied to Professor Epstein, notwithstanding that Professor Epstein did not affirmatively raise it in his moving papers. "The rules of forfeiture and waiver are 'prudential, not jurisdictional, and [this Court] ha[s] discretion to consider waived arguments.'" *Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 2025 WL 1949968, at \*4 (2d Cir. July 16, 2025) (summary order) (quoting *Dean v. Blumenthal*, 577 F.3d 60, 67 n.6 (2d

## B. The District Court Properly Found the Defamation, IIED, and Injurious Falsehood Claims against Professor Epstein Did Not "Relate Back" to the Original Complaint

The District Court correctly concluded, in evaluating overlapping arguments by Student Appellees, that Rapaport's claims against Professor Epstein for defamation, IIED, injurious falsehood, and conspiracy were also subject to final dismissal as untimely because the original John Doe complaint did not identify Professor Epstein, and the FAC, filed after the one-year statute of limitations had expired, did not "relate back."A30-A38.[7]

---

Cir. 2009)). Here, the District Court, based on briefing from Defendant-Appellees Iyer and Garrett, A231-A234, Plaintiff-Appellant Rapaport, A271-A273, and the face of the pleadings, found the relation-back principle did not apply to certain claims, including claims against Professor Epstein. Professor Epstein adopted Defendant-Appellees' arguments in his reply brief below, A213, and Rapaport extensively argues relation-back as to Professor Epstein in his appellate briefing. Br. at 48-52. Since "[t]he district court resolved the suit on this exact ground, and the parties have briefed the question on appeal to this court," this Court need not ignore arguments that the "district court squarely addressed." *Aurelius Cap. Master, Ltd.*, 2025 WL 1949968, at *4 (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l,* 790 F.3d 411, 421 (2d Cir. 2015)).

[7] New York applies a one-year statute of limitations period to claims for defamation, IIED, and injurious falsehood. *See Conte v. Cnty. of Nassau*, 596 F. App'x 1, 4–5 (2d Cir. 2014) (summary order).

"Relation back is only permitted where [the] plaintiff named the wrong party in the original complaint…." *Simmons v. Mason*, 2019 WL 4525613, at *8 (S.D.N.Y. Sept. 18, 2019). But "lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity' and cannot justify the application of the relation back doctrine." *McLaughlin v. Chong*, 2016 WL 1276470, at *4 (S.D.N.Y. Mar. 29, 2016). Accordingly, "'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). John Doe substitutions therefore "may only be accomplished when all of the specifications of Fed. R. Civ. P. 15(c) are met." *Id.*

Here, following a thorough, well-reasoned analysis considering Student-Appellees' briefing and Rapaport's opposition, the District Court held that Rapaport could not meet Rule 15's requirements for relation-back as to his defamation, injurious falsehood, and IIED claims against Professor Epstein. A30-A38. That decision should be affirmed.

1.    **The District Court Correctly Concluded that the FAC's Claims Against Professor Epstein Do Not Relate Back to the Original Complaint under Rule 15(c)(1)(C)**

Under Rule 15(c)(1)(C), relation-back is permitted where an amended complaint adds a new party if (1) the claim arose out of conduct set out in the original pleading; (2) the party to be added has received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that *but for a mistake of identity,* the original action would have been brought against it; and (4) the second and third criteria are fulfilled within 120 days of the filing of the original complaint, which itself was filed within the limitations period. *See Hogan*, 738 F.3d at 517. Critically, it is not enough "that a defendant knew that the action would have been brought against it. Rather, the defendant must have known that the action would have been brought against him *but for a mistake concerning the proper party's identity*." *Vasconcellos v. City of New York*, 2014 WL 4961441, at *7 (S.D.N.Y. Oct. 2, 2014) (emphasis added).

Rapaport's superficial argument that his failure to name Professor Epstein as a defendant in the original complaint was the product of "mistake," because he did not believe Professor Epstein because he was

"almost eighty at the time," Br. at 49-50, cannot cure the untimeliness of his FAC. As the District Court held, a purported "lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity' and cannot justify the application of the relation back doctrine." *McLaughlin*, 2016 WL 1276470, at *4; *see also* A33. Moreover, the amendment does not relate-back under Rule 15(c)(1)(C) because it replaced the John Doe defendant with Professor Epstein "after the applicable statute of limitations has expired." A33; *see also Chinese Am. Citizens All. Greater New York v. New York City Dep't of Educ.*, 2024 WL 1795390, at *5 (S.D.N.Y. Apr. 25, 2024).

Finally, Rapaport's claim that his cursory description of materials being "forwarded" by undescribed and unnamed persons was intended to cover and provide notice of Professor Epstein's conduct, Br. at 47, is belied by his Brief, which admits that the original allegations regarding "'forwarding' of those defamations to the James Kent Academy program of the Federalist Society" pertained to Defendant-Appellee Garrett. Br. at 36-37.

## 2. The FAC's Claims Against Professor Epstein Do Not Relate Back to the Original Complaint under Rule 15(c)(1)(A)

The District Court also correctly found that the relation-back doctrine is inapplicable to Rapaport's defamation, IIED, and injurious falsehood claims against Professor Epstein under Rule 15(c)(1)(A). Rule 15(c)(1)(A) permits "relation back" when the "law that provides the applicable statute of limitations allows." Since the underlying torts derive their statute of limitations from state law, the court looks to CPLR 1024, which provides that "A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known." CPLR 1024 (McKinney). And under CPLR 203, "relation back" is allowed only if "the new party knew or should have known that, but for an *excusable mistake* by plaintiff as to the identity of the proper parties, the action would have been brought against him as well."

Rapaport cannot succeed on either front. In the first instance, there is no mistake of identity as required by CPLR 203—which utilizes the same principles as Rule 15(c)(1)(C)—where a plaintiff identifies a John

Doe "defendant." *See, e.g.*, *Colson v. Haber*, 2016 WL 236220, at *5 (E.D.N.Y. Jan. 20, 2016) ("not knowing the identity of the John Doe [defendants] does not constitute a 'mistake' under C.P.L.R. § 203"); A34.

Nor can Rapaport succeed under CPLR 1024. For CPLR 1024 to allow relation-back on a John Doe complaint; the plaintiff's original pleading "must describe the John Doe party in such form as will fairly apprise the party that [he] is the intended defendant." *Harlow v. Heard*, 2019 WL 6073445, at *5 (N.D.N.Y. Nov. 15, 2019); A36-A37.[8] But as noted in § I.A, *supra*, the original complaint's oblique reference to the "forwarding of the anonymous internet posts," A75, by unspecified individuals to unspecified individuals via unpled means and at an unpled time, is not such a description of Professor Epstein that he would be

---

[8] Although Rapaport does not directly raise Rule 15(c)(1)(B) as to Professor Epstein, that rule likewise does not permit relation-back. Under Rule 15(c)(1)(B), amended claims only relate back to those "claim[s] or defense[s] that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Rapaport's original complaint focused primarily on anonymous internet posts, an allegedly false Title IX report, and slander. *See* A74-A76. Nor does the oblique reference to "forwarding" suffice, A75, where the original complaint alleged that the James Kent Academy's leadership learned about Rapaport's sexual harassment from anonymous internet posts and Rapaport has now explained that that was meant to refer to Defendant-Appellee Garrett. A73.

"fairly" apprised that he was a defendant. *See* A36-A37 (holding claims pertaining to internet posts described with particularity related back but defamation claims based upon other alleged defamatory statements not mentioned in the complaint did not). That conclusion is undeniable where the original complaint described *all* of the unnamed defendants as being "enrolled at New York University School of Law," A75, and as a Reddit.com user, a Top-Law-Schools.com user, and a current or former NYU Law student, A72—which Professor Epstein was certainly not.[9]

Because Rapaport's defamation, IIED, and injurious falsehood claims against Professor Epstein were untimely on the face of his pleadings, this Court should affirm the district court's s*ua sponte* dismissal.

---

[9] Moreover, Rapaport did not exercise the requisite "due diligence" as to Professor Epstein. He avers that Professor Epstein informed him on August 9, 2023, 11 days after Rapaport filed the original complaint, that he was the one who had "sent the compiled materials to Otis." A63. That Rapaport then waited eight months to amend to add Professor Epstein refutes any hope Rapaport may have had of showing due diligence. *See, e.g.*, *Gizewski v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2016 WL 3661434, *18 (N.D.N.Y. July 5, 2016) (plaintiff could not demonstrate due diligence necessary to establish good cause when he failed waited five months after learning the relevant and information to file for leave to amend.).

36

## III.  SECTION 230 BARS RAPAPORT'S DEFAMATION, FALSE LIGHT, IIED, AND INJURIOUS FALSEHOOD CLAIMS

Even if this Court determines the relation-back principle does not render Rapaport's defamation, IIED, and injurious falsehood claims against Professor Epstein untimely, this Court may still affirm their dismissal on the alternative ground that they are barred by Section 230. *See* A152-A154

Section 230 bars these claims against Professor Epstein to the extent they are premised on his alleged forwarding of defamatory statements provided by Iyer and Garrett to others via email. *Id.* Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), and "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," *id.* § 230(e)(3). Together, these provisions ensure that interactive computer service providers and users are immune from liability for allegedly unlawful or harmful material created by third parties.[10] Importantly,

---

[10] "[C]ourts that have addressed these issues have generally interpreted Section 230 immunity broadly." *Universal Commc'n Sys., Inc. v. Lycos,*

37

Section 230 grants "*immunity from suit* rather than a mere defense to liability." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009) (citation omitted). Courts routinely apply Section 230 on dismissal motions—because immunity would be "effectively lost" if defendants were subject to burdensome and costly discovery and litigation. *Id.*[11]

Section 230 bars suit where (1) the defendant is a user or provider of an interactive computer service; (2) the information at issue was provided by another information content provider; and (3) the claim seeks to treat the defendant as a publisher or speaker of that third-party content. *Gibson*, 2009 WL 1704355, at *3. All three elements are met here. Email is without question an "interactive computer service," and the original authors of the email and materials that Professor Epstein allegedly forwarded are "information content providers" because they allegedly created the content and published it to Professor Epstein via

---

*Inc.*, 478 F.3d 413, 418 (1st Cir. 2007); *see also*, *e.g.*, *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997).

[11] *See also*, *e.g.*, *Gibson v. Craigslist, Inc.*, 2009 WL 1704355 (S.D.N.Y. June 15, 2009).

email. 47 U.S.C. § 230(f)(2) & (3). Therefore, Professor Epstein, as the user of an interactive computer service, cannot be "treated as the publisher or speaker of any information provided by another information content provider." *Id.* 230(c)(1).

The many courts interpreting Section 230 in the context of email forwarding have held that Section 230's immunity from suit applies to this precise situation. *See, e.g., Monge v. Univ. of Pa.*, 2023 WL 2471181, at *2 (E.D. Pa. Mar. 10, 2023) (dismissing defamation, false light, and aiding and abetting claims based on email forwarding on Section 230 grounds; "Courts analyzing and applying the CDA have consistently held that distributing, sharing, and forwarding content created and/or developed by a third party is conduct immunized by the CDA."); *Novins v. Cannon*, 2010 WL 1688695, at *2-3 (D.N.J. Apr. 27, 2010) (granting dismissal motion holding Section 230 immunity extends to individuals who republish via the Internet alleged defamatory statements originally made by others in email and internet postings); *Peters v. LifeLock Inc.*, 2014 WL 12544495, at *3 (D. Ariz. Sept. 19, 2014) (dismissing defamation claim at pleadings stage because individual cannot be liable for defamation based on forwarding defamatory email because of Section

39

230's liability shield); *Mitan v. A. Neumann & Assocs.*, 2010 WL 4782771 (D.N.J. Nov. 17, 2010) (defamation claim, premised on forwarding newsletter containing defamatory information barred by Section 230); *Phan v. Pham*, 182 Cal. App. 4th 323, 328 (2010) (forwarding defamatory email—and even adding commentary to it—was immune from liability under Section 230); *Barrett v. Rosenthal*, 40 Cal. 4th 33, 62-63 (2006) (Section 230 immunity bars defamation claim based on email forwarding); *cf. Banaian v. Bascom*, 175 N.H. 151, 158 (2022) ("That individual users are immunized [under Section 230] from claims of defamation for retweeting content that they did not create is evident from the statutory language.").

Just like the defendants in these myriad cases, Professor Epstein is immune from liability for defamation, false light, IIED, and injurious falsehood to the extent these claims are premised on his having allegedly forwarded an email received from others. *See* A60, A63. These claims fail as a matter of law, and their dismissal should be accordingly affirmed.

## IV.  RAPAPORT HAS NOT STATED A DEFAMATION CLAIM AGAINST PROFESSOR EPSTEIN

The Court may likewise affirm dismissal of the defamation claim on the alternative ground advanced below that Rapaport fails to plead

40

defamation against Professor Epstein. A154-A160. To state a defamation claim, Rapaport must allege "(1) a written … defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 169-70 (S.D.N.Y. 2021) (citation omitted). He has not and cannot satisfy these elements.

In addition to the grounds for dismissal discussed *supra*, (1) the FAC fails to identify the allegedly defamatory statements by Professor Epstein, and (2) the FAC not only fails to allege facts that, if true, could establish the statements were made with actual malice, it affirmatively pleads facts precluding that finding.

## A. Rapaport Has Not Pled Any Allegedly Defamatory Statements Made by Professor Epstein

Dismissal of the defamation claim may also be affirmed because, as Professor Epstein argued below, Rapaport has wholly failed to plead the content of the allegedly defamatory statements. *See* A155-A156. Federal courts "require that the alleged defamatory statements be pleaded with sufficient specificity to put the defendants on notice." *Berwick v. New World Network Int'l, Ltd.*, 2007 WL 949767, at *11 (S.D.N.Y. Mar. 28,

41

2007). As this Court has held, "Vagueness as to the complained-of conduct is particularly inappropriate when pleading a defamation claim," and "the complaint [must] afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 251 (2d Cir. 2017) (citation omitted). To satisfy such notice, plaintiff must "provide a detailed description of the defamatory statements." *Leung v. New York Univ.*, 2010 WL 1372541, at *8 (S.D.N.Y. Mar. 29, 2010), *aff'd in part on relevant grounds*, 580 F. App'x 38 (2d Cir. 2014). A defamation claim is too conclusory to survive where "the complaint does not even identify the statements." *Sawyer v. Musumeci*, 1997 WL 381798, at *2 (S.D.N.Y. July 9, 1997), *aff'd*, 165 F.3d 14 (2d Cir. 1998).

The FAC offers only vague allegations that Professor Epstein "forwarded the defamatory statements based upon the fake photographs [sic] and in the email to Lee Otis," A60, and that he "sent the compiled materials to Otis," A63. These threadbare allegations—devoid of specific details identifying *what* allegedly defamatory statements Professor Epstein sent, what these "compiled materials" contained, how they were defamatory, or when he sent them are not enough to put Professor

42

Epstein on notice of the alleged statements at issue. *See*, *e.g.*, *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 763 (2d Cir. 1990) (affirming dismissal of defamation claim where plaintiff failed to "plead adequately the actual words spoken").

*ADYB Engineered for Life, Inc. v. Edan Admin. Servs. Ltd.* is instructive. There, the district court rejected similarly bare pleadings where the plaintiff alleged the defendant sent an email "falsely accusing [plaintiff] of fraudulent behavior, lying, and dishonesty" but offered no "specific details regarding such accusations." 2021 WL 1177532, at *25 (S.D.N.Y. Mar. 29, 2021). The court concluded that these barebones allegations were "not sufficiently particularized to sustain a claim for libel." *Id.*; *see also Dayter v. Ploof*, 2022 WL 18399473, at *3 (N.D.N.Y. Dec. 19, 2022) (dismissing libel claim where plaintiff "has not alleged a specific statement made by Defendant").[12] The FAC's allegations are even

---

[12] To the extent Rapaport claims that his defamation claim is based on Professor Epstein allegedly telling "others" that "plaintiff was frequently absent from his classes," A63, this claim fails on two additional grounds. *First*, the very next sentence of that paragraph acknowledges the truth of this statement. *Id.* (admitting Rapaport was "occasionally absent" from Professor Epstein's class); *see Printers II, Inc. v. Pros. Publ'g, Inc.*, 784 F.2d 141, 146 (2d Cir. 1986) ("substantial truth" – not literal truth – is all that is required to defeat defamation claim). *Second*, Rapaport fails to identify with specificity to *whom* this statement was made, rendering it

*less* illuminating than the flawed allegations in *ADYB*, claiming only that Professor Epstein "forwarded the defamatory statements" and "sent the compiled materials" to Otis without setting forth what Professor Epstein actually said or when he said it. A60, A63. Because the FAC has failed to plead the content of Professor Epstein's allegedly defamatory statements with any specificity, the dismissal of the defamation claim should be affirmed.

## B. The FAC Failed to Plead Professor Epstein Acted with Actual Malice

Dismissal of the defamation claim may separately be affirmed on another ground argued but not addressed by the District Court, *i.e.*, that Rapaport has not pled facts that if true could demonstrate that Professor Epstein acted with actual malice, *i.e.*, "with knowledge of its falsity or with reckless disregard of whether it was false." N.Y. Civ. Rights Law § 76-a(2); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *see also* A157-A160. Rapaport is subject to the actual malice standard both because the alleged communications pertained to an issue of public

---

defective. *See Neal v. Asta Funding, Inc.*, 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014) ("complaint must at least identify … the third parties to whom the [defamatory] statements were published") (citation omitted).

44

interest under New York's Anti-SLAPP Law and because the communications themselves are subject to the common interest privilege.[13] Once applied, it is clear that the FAC fell far short of meeting this high burden.

### 1. The Actual Malice Standard of Fault Applies to the Defamation Claim Against Professor Epstein

Initially, there is no question that the actual malice standard applies here. *See* A157-A158. ***First,*** Rapaport's defamation claims are subject to New York's Anti-SLAPP law, N.Y. Civil Rights Law § 76-a, which requires the application of the actual malice standard to cases arising from "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest." N.Y. Civ. Rights Law § 76-a(1)(a)(2); *see Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 25 (S.D.N.Y. 2020) (federal court sitting in diversity must apply Section 76-a because it is substantive rather than procedural). The term "public interest" under the Anti-SLAPP Law is "construed broadly, and shall mean any subject other than a purely

---

[13] The District Court's opinion did not evaluate whether the anti-SLAPP law or the common interest privilege applied to Professor Epstein's defamation claim. A43.

private matter." N.Y. Civ. Rights Law § 76-a(1)(d). Sexual harassment accusations—like those allegedly forwarded to Otis concerning Rapaport's alleged conduct at K&E—are classic matters of public interest. *See Shuman v. N.Y. Mag.*, 211 A.D.3d 558, 558-59 (1st Dep't 2022); *Goldman v. Reddington*, 2021 WL 4099462, at *3-4 (E.D.N.Y. Sept. 9, 2021); *Coleman v. Grand*, 523 F. Supp. 3d 244, 259 (E.D.N.Y. 2021); *Travis v. Daily Mail*, 78 Misc. 3d 1218(A), at *3 (Civ. Ct. N.Y. Cty. 2023).

**Second,** the actual malice standard also applies because Professor Epstein's unspecified statements to Otis, a fellow member of the Federalist Society, are subject to the common interest privilege. The common interest privilege "arises when a person makes a good-faith, bona fide communication upon a subject in which he or she has an interest, or a legal, moral or societal interest to speak, and the communication is made to a person with a corresponding interest." *Hoyt v. Kaplan*, 263 A.D.2d 918, 919 (3d Dep't 1999). It is a qualified privilege that requires only that the parties "have such a relation to each other as would support a reasonable ground for supposing an innocent motive for imparting the information." *Anas v. Brown*, 269 A.D.2d 761, 762 (4th

46

Dep't 2000). The privilege may be overcome if the plaintiff can show defendant acted with actual or common law malice. *See Hoyt*, 263 A.D.2d at 919.[14]

The privilege shields Professor Epstein's forwarding of the "compiled materials" and allegedly "defamatory statements" to Otis. Both Professor Epstein and Otis, as Federalist Society members, shared a concern about misconduct allegations against its Fellowship recipient, particularly since Professor Epstein had recommended Rapaport for the program. *See*, *e.g.*, *Hodges*, 2023 WL 3362836, at *3 (common interest privilege applied on Rule 12(b)(6) motion to disclosure of sexual misconduct allegations to other members of educational organization ahead of student program); *Hoyt*, 263 A.D.2d at 919 (common interest privilege applies to statements made to membership of professional organization).[15] Thus, to avoid dismissal, both the Anti-SLAPP Law and

---

[14] The privilege may also be overcome by a showing of "excessive publication" – *i.e.*, "to persons with an insufficient interest in it for it to warrant protection." *Hodges v. Lutwin*, 2023 WL 3362836, at *2 (2d Cir. May 11, 2023). Here, there is no allegation of "excessive publication" as Professor Epstein is alleged to have only forwarded the alleged communications to Otis.

[15] The privilege is routinely applied on pre-discovery motions to dismiss. *See*, *e.g.*, *Azzarmi v. Neubauer*, 2024 WL 4275589, at *12 (S.D.N.Y. Sept. 24, 2024) (granting 12(b)(6) motion on common interest privilege

common interest privilege require Rapaport to plausibly allege Professor Epstein acted with actual malice. He has not and cannot do so.

### 2. Rapaport Has Failed to Plausibly Plead Actual Malice

As argued below, Rapaport fails to plead facts that could establish Professor Epstein made any allegedly defamatory statements with the requisite "actual malice." A158-A160. The U.S. Supreme Court has defined actual malice as publication with "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 280. In turn, it has clarified that "reckless disregard" means that the defendant in fact had a "high degree of awareness of…probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). Importantly, actual malice is not measured "by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant v. Thompson*, 390 U.S. 727, 730-31 (1968). Instead, "[t]here must be sufficient evidence to permit the

---

grounds); *Editor's Pick Luxury LLC v. Red Points Solutions SL*, 2023 WL 6385993, at *2-3 (S.D.N.Y. Sept. 29, 2023) (same) *Bondalapati v. Columbia University*, 170 A.D.3d 489, 490 (1st Dep't 2019) (granting dismissal on common interest privilege grounds where allegations of malice were little more than "surmise and conjecture").

conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id*. at 731 (emphasis added).

To allege actual malice, a plaintiff "must plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' actual malice." *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015). Allegations of actual malice that are no more than "pure speculation" and are "supported not by facts but by only conclusory statements" are insufficient grounds to infer actual malice. *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020); *see also BYD Co. v. VICE Media LLC*, 2022 WL 598973, at *3 (2d Cir. Mar. 1, 2022) ("naked assertions" or "conclusory statements" of actual malice are insufficient to survive a Rule 12(b)(6) motion). Rapaport's conclusory and contradictory allegations do not meet this high threshold.

Initially, far from pleading that Professor Epstein knew or was reckless as to the falsity of the statements, the FAC pleads that Professor Epstein was "convinced" "into *believing* the authenticity of the faked images and veracity of the defamatory claims" against Rapaport. A53 (emphasis added). Elsewhere, the FAC describes Professor Epstein as an

49

"*unwitting* instrument of their [Iyer's and Garrett's] civil conspiracy." A58 (emphasis added). These allegations doom Rapaport's bid to plead actual malice or defamation. *See McCollum v. Baldwin*, 688 F. Supp. 3d 117, 130 (S.D.N.Y. 2023) (finding no actual malice because allegations "suggest[ed] that [defendant] posted what he believed was true").

Even putting aside the FAC's allegations that specifically preclude a finding of actual malice, the FAC makes only two deficient attempts at pleading actual malice. ***First***, Rapaport peppers his FAC with actual malice "buzzwords" that parrot the applicable legal standard and allege in conclusory fashion that Defendant-Appellees were "willful," "malicious," and "knew" statements to be false without any corresponding facts. *See* A64, A66, A68. Because these allegations are threadbare recitals of the elements of a cause of action, they cannot satisfy his burden to plead actual malice. *See BYD*, 2022 WL 598973, at *3. ***Second***, the FAC alleges, in essence, that Professor Epstein failed to investigate, *i.e.*, he did not contact Rapaport or K&E to check whether the allegations were true. A60. But the law is well-settled that actual malice is not "measured by whether a reasonably prudent man … would have investigated before publishing." *St. Amant*, 390 U.S. at 731; *Gertz v.*

*Robert Welch, Inc.*, 418 U.S. 323, 332 (1974) ("mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth"). And relatedly, "failure to verify statements with the plaintiff" before publication "do[es] not amount to [actual malice]." *Loeb v. New Times Commc'ns Corp.*, 497 F. Supp. 85, 93 (S.D.N.Y. 1980). The District Court's dismissal of the defamation claim can therefore be upheld because Rapaport did not plead any non-conclusory facts that, if true, could establish Professor Epstein acted with actual malice.[16]

---

[16] Nor has Rapaport made more than "conclusory allegations" or "suspicions" to plead common law malice, *i.e.*, "spite or ill will" that could overcome the common interest privilege. *Hodges v. Lutwin*, 595 F. Supp. 3d 12, 20 (S.D.N.Y. 2022) (citations omitted), *aff'd*, 2023 WL 3362836. Common law malice can defeat the common interest privilege "only if it was the one and only cause for the publication." *Id.* (citation omitted). Rapaport's sole allegation of common law malice is "Defendants either knew, or had reason to know, that many of the allegations of and concerning plaintiff were false, but published them anyway, with constitutional and common-law malice." A64. These allegations are conclusory, unspecific to any defendant, and contradict other allegations of the FAC. Rapaport makes no allegations that Professor Epstein was motivated by ill will, let alone *solely* by ill-will. Instead, he pleads Professor Epstein was motivated by "protect[ing] his reputation." A61. This precludes a finding of common law malice.

## V.    RAPAPORT'S IIED CLAIM WAS PROPERLY DISMISSED

### A.    The District Court Properly Dismissed Rapaport's IIED Claim as Duplicative of His Defamation Claim

As the District Court opinion explains, Rapaport's IIED claim against Professor Epstein impermissibly duplicated his failed defamation claims because both claims "rely on the same allegations and conduct." A42; *see also* A161-A162. Rapaport, however, argues that his IIED claim should not have been dismissed because it did not suffer from the "defects" like lack of notice that prevented application of relation-back for his defamation claim. Br. at 52-53. In the same breath, however, Rapaport affirms that his IIED claim was based on the *same exact facts* as his infirm defamation claim, *i.e.,* "defendants caus[ing] the plaintiff extreme emotional distress" by "fabricating and virally spreading the defamatory statements and forgeries that the plaintiff was fired for sexual harassment, invading his privacy and portraying in the defamatory forgeries." *Id.* at 53.

Given that even Rapaport recognizes that there is no daylight between the facts underlying his defamation claims and his IIED claim, the District Court's dismissal of the redundant IIED claim should not be disturbed. "New York law considers claims sounding in tort to be

52

defamation claims…where those causes of action seek damages only for injury to reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his reputation." *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012); *see also Anyanwu v. Columbia Broad. Sys., Inc.*, 887 F. Supp. 690, 693-94 (S.D.N.Y. 1995) ("When additional tort claims are aimed at controlling the same speech that is the basis of a libel claim, courts should not entertain the additional claims under less stringent standards."). And, indeed, district courts regularly dismiss IIED claims alongside defamation claims when a plaintiff fails to offer "allegations unique to an IIED cause of action" and "the claim 'fall[s] entirely within the ambit of the defamation claim.'" *Bendit v. Canva, Inc.*, 2023 WL 5391413, at *10 (S.D.N.Y. Aug. 22, 2023) (dismissing defamation claim alongside IIED claim); *McCollum v. Baldwin*, 688 F. Supp. 3d 117, 133 (S.D.N.Y. 2023) (dismissing defamation claims and IIED claim because IIED claim relied "on the same underlying facts."); *Jacob v. Lorenz*, 2023 WL 4106298, at *15 (S.D.N.Y. June 21, 2023) (dismissing IIED claim as "variation of Plaintiffs' defamation allegations."). The District Court properly dismissed the IIED claim as redundant.

53

## B.    Rapaport Failed to Plead His IIED Claim

Even if this Court were to independently evaluate the IIED claim, its dismissal should still be affirmed on alternative grounds argued in Professor Epstein's lower court briefing. A162-A164. Alleging IIED requires showing "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Y.D. v. New York City Dep't of Educ.*, 2016 WL 698139, at *8 (S.D.N.Y. Feb. 19, 2016). As the Second Circuit has held, "The standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous, and difficult to satisfy.'" *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (citation omitted). Rapaport's IIED claim separately falls short of this rigorous bar for three reasons: (1) it is barred by the First Amendment; (2) relaying accusations of sexual harassment or other misconduct to higher-ups within an organization (even if the accusations prove false) does not constitute "extreme and outrageous" conduct; and (3) Rapaport has not pled that Professor Epstein intended to cause him or that he in fact suffered severe emotional distress.

54

***First***, the U.S. Supreme Court has affirmed that the First Amendment serves as a defense against tort suits "including suits for intentional infliction of emotional distress," which are based on speech that addresses a "matter of public concern" where no viable defamation claim exists. *See Snyder v. Phelps*, 562 U.S. 443, 451-53 (2011). The Court has broadly defined such speech to be "fairly considered as relating to any matter of political, social, or other concern to the community," or "is a subject of general interest and of value and concern to the public." *Id.* at 453 (citations omitted). The Court has precluded such claims because determining if speech is "outrageous" necessarily requires a subjective value judgment as to its content. *Id.* at 458. As noted above, an accusation of sexual harassment at the prestigious law firm K&E, A56, is a matter of public concern, and thus the IIED claim against Professor Epstein can properly be deemed barred.

***Second***, dismissal of the IIED claim can also be upheld because Rapaport did not plead "conduct [that] has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Cruz v. HSBC Bank USA*, N.A., 586 F. App'x 723,

55

725 (2d Cir. 2014) (summary order).

As Rapaport concedes, his IIED claim is premised on "defamatory statements" and "defamatory forgeries." Br. at 53. But "defamatory statements are generally not sufficiently extreme and outrageous to support an IIED claim." *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 372-73 (W.D.N.Y. 2010). "[A] false charge of sexual harassment does not rise to the level of outrage required to recover on an intentional infliction of emotional distress claim under New York law." *James v. DeGrandis*, 138 F. Supp. 2d 402, 421 (W.D.N.Y. 2001); *see also Carlson*, 679 F. Supp. 2d at 372-73 (accusation that teacher had sex with students was not sufficiently extreme and outrageous to support IIED claim). *James* is on point. There, the court dismissed an IIED claim because a false accusation that a college soccer coach had improper sexual relationships with students as part of a scheme to have the coach fired and rendered unemployable was insufficiently outrageous. 138 F. Supp. 2d at 421. Here, as in *James* and others, passing on an allegedly false sexual harassment accusation is simply not "extreme or outrageous."

**Third**, the FAC fails to make any non-conclusory allegations that Professor Epstein intended for Rapaport to and that Rapaport did suffer

56

severe emotional distress. At most, Rapaport's speculative allegations that "defendants' action … demonstrate their intent to cause … severe emotional distress to the plaintiff," A16, and that he suffered "emotional distress" and "anxiety," *id.*, are "formulaic recitation[s] of the elements of the claim" and wholly insufficient. *Ortiz v. Ardolino*, 2021 WL 2075714, at *2 (E.D.N.Y. May 21, 2021).

Since the FAC offers no non-conclusory allegations that Professor Epstein intended to harm Rapaport or that he suffered the necessary severe emotional harm, his IIED claim is fatally defective. *See Nova v. Smith*, 2019 WL 2636817, at *5 (N.D.N.Y. June 27, 2019) (dismissing IIED claim where allegations did not show intention to cause plaintiff harm); *Morin v. Fordham Univ.*, 2022 WL 4586042, at *7 (S.D.N.Y. Sept. 28, 2022) (dismissing IIED claim where plaintiff presented only conclusory allegations and did not establish that he "suffered a level of emotional distress 'so severe that no reasonable [person] could be expected to endure it'") (citation omitted); *Johnson El. v. Chambers,* 2021 WL 4484929, at *3 (2d Cir. Oct. 1, 2021) (affirming dismissal where "complaint does not describe what, if any, emotional distress" plaintiff-appellant suffered).

The District Court's dismissal of Rapaport's IIED claims can be affirmed on these grounds too.

## VI. NEW YORK LAW APPLIES TO RAPAPORT'S DEFECTIVE FALSE LIGHT CLAIM

The lower court correctly determined that New York—not New Jersey—law applied to Rapaport's false light claim as the state with the most "significant relationship to the issues or the parties." *Rapaport*, 2025 WL 966275, at *5. Rapaport now claims that the District Court improperly relied on the injuries he suffered at his "New York school and work" and should have instead considered his "perfect solitude and seclusion" and "peace of mind" in New Jersey. Br. at 56.[17] But Rapaport's pleadings, which focus almost exclusively on New York, make clear that his attempt to apply New Jersey law to his false light claim—and solely his false light claim—is a clumsy bit of gamesmanship to avoid the

---

[17] Professor Epstein does not dispute that dépeçage can, in some cases, permit the application of two different state laws in a single matter. But here, the District Court properly concluded that Rapaport's allegations, which focus wholly on New York, simply do not support its application. A30.

58

inconvenient fact that New York does not recognize this claim. *See Berwick*, 2007 WL 949767, at *7-8.[18]

In conducting a choice of law analysis, New York courts apply the law of the state with the "most significant interest" to a claim. *See Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021). To determine which state has the greatest interest in a false light action, courts weigh "where the statements emanated and were broadcast," "where the activities to which the allegedly defamatory statements refer took place," "where plaintiff suffered the greatest injury," and "the policy interests of the states whose law might apply." *DeIuliis v. Engel*, 2021 WL 4443145, at *9 (S.D.N.Y. Sept. 27, 2021).

As the District Court correctly determined, New York has the "strongest interest" in the resolution of Rapaport's false light claim given his ample allegations situating the claim in New York: A29. Professor Epstein was a New York resident and professor at NYU Law, the Student

---

[18] *See also Pedraglio Loli v. Citibank, Inc.*, 173 F.3d 845, 845 (2d Cir. 1999) (summary order) ("[D]istrict court properly dismissed [plaintiff's] 'false light' invasion of privacy claim as not cognizable under New York law."); *Baiqiao Tang v. Wengui Guo*, 2019 WL 6169940, at *6 (S.D.N.Y. Nov. 20, 2019) ("Allegations that a defendant portrayed a plaintiff in a false light, however, are not actionable under New York law.").

Appellees were NYU Law students, his reputation was allegedly conspired to be ruined at K&E's New York office, and defamatory messages were distributed to members of NYU FedSoc and online. *Id.*; *see also* A54, A59, A55-A58.[19]

Notwithstanding Rapaport's citation to *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81(1992), which merely defines false light under New Jersey law, he cannot avoid that the District Court correctly concluded that his FAC failed to specifically plead any connection between his false light claim and his New Jersey residence. While he now invokes the vague "peace of mind" and "perfect solitude and seclusion" he experienced in New Jersey prior to the alleged defamations being published on the internet, not only would those allegations be insufficient, they are not even pled in his FAC. Instead, his only claim to injury is broadly contending that he was presented "under a false light to the world, including neighbors and members of his local community in

---

[19] In addition to the bases raised by the district court, as discussed in Professor Epstein's moving papers, A168-A169, Rapaport also premised his injuries on allegations of the loss of his relationship with Professor Epstein, A61, the loss of his accepted position at the Manhattan Institute, A70, his removal as Senior Articles editor from his NYU law journal, A61, and the loss of the "opportunity" to be a member of the New York Bar, A53—all of which center on New York.

the State of New Jersey." A67. But these unadorned and unpled claims that merely parrot New Jersey's definition of false light are not enough to overcome the overwhelming conclusion that New York law applies to his false light claims too.

Indeed, Rapaport repeats the same error as the *Berwick* plaintiff. There, the court found that although Pennsylvania plaintiffs alleged internet publication, their "conclusory allegations that their reputations were harmed in their home state" without "identifying any person or entity in Pennsylvania who heard or read disparaging remarks about the plaintiffs" were not enough to show detrimental effects in Pennsylvania, especially since all "relevant business dealings were in New York." *Berwick*, 2007 WL 949767, at *7 (applying New York law to dismiss false light claim as unrecognized).

Rapaport's failure to adduce a single specific allegation of injury in New Jersey when contrasted with the breadth of allegations focusing on New York confirms that New York has the most significant interest in this claim, and therefore its law applies. Because New York does not recognize false light, this claim was properly dismissed.[20]

---

[20] Even if the Court decides that his false light claim is governed by New

## VII. THE DISTRICT COURT PROPERLY DISMISSED THE FRAUD CLAIM AGAINST PROFESSOR EPSTEIN

Without offering a single supporting legal citation, Rapaport perfunctorily argues that the District Court incorrectly concluded that he could not state "pecuniary loss" as required for his fraud claim based on allegations that Professor Epstein had "delay[ed] [his] identification of the proper defendants." Br. at 58. He also objects to the District Court's conclusion that only pecuniary damages can be recovered under fraud. *Id.* He is plainly wrong.[21]

---

Jersey law, it still fails because his defamation claim fails. *See G.D. v. Kenny*, 205 N.J. 275, 307-08 (2011)("Because G.D.'s arguments in support of his false-light claim are essentially the same as those he advances on his defamation claim, the result can be no different."); *Williams v. MLB Network, Inc.*, A-5586-16T21, 2019 WL 1222954, *30 (N.J. Super. Ct. App. Div. Mar. 14, 2019) (where there is no actionable defamation, a claim for false light based upon the same conduct cannot stand). Further, his claim would nevertheless fail under New Jersey law because actual malice is an essential element of the claim, and as discussed in Section IV.B.2 *supra*, the FAC did not plead actual malice. *See Marino v. Westfield Bd. of Educ.*, 2017 WL 216691, at *9 (D.N.J. Jan. 18, 2017); *see also Time, Inc. v. Hill*, 385 U.S. 374, 387 (1967) (holding that plaintiff alleging the tort of false light must show actual malice).

[21] In any event, Rapaport does not appeal the District Court's determination that his fraud claim also failed because Professor Epstein owed him no fiduciary duty to disclose information and because the FAC only contained "conclusory assertions" of an intent to defraud. A46; *see also* A170-A171. "An omission or concealment can constitute fraud, but ***only*** where the defendant had a duty to disclose the material fact alleged

Under Rule 9(b), a fraud claim must be pled with exacting particularity. *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986). "Damages are an essential element of a fraud claim." *Cole v. John Wiley & Sons, Inc.*, 2012 WL 3133520, at *16 (S.D.N.Y. Aug. 1, 2012). As such, a plaintiff "must allege pecuniary losses that are the direct, immediate, and proximate result of the misrepresentation." *Id.* As this Court has long held, "New York law awards only 'out-of-pocket' expenses in fraud cases, entitling plaintiffs to damages solely for their actual pecuniary losses." *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir.1993). In this action, the District Court properly found that Rapaport could not satisfy that requirement because Professor Epstein's refusal to disclose the Student Appellees' identities "left Plaintiff in the exact same situation as he began" and did not "prevent Plaintiff from proceeding as he eventually did by filing subpoenas." A46.

---

to be omitted or concealed." *Sutton v. Hafner Valuation Grp., Inc.*, 115 A.D.3d 1039, 1041 (3d Dep't 2014) (emphasis added). This duty of disclosure only exists if there is a "confidential or fiduciary relationship." *Bd. of Managers of Chelsea 19 Condo. v. Chelsea 19 Assocs.*, 73 A.D.3d 581, 582 (1st Dep't 2010). The Second Circuit has held that educators *do not* owe a fiduciary duty to their students. *Knelman v. Middlebury Coll.*, 570 F. App'x 66, 68 (2d Cir. 2014) (summary order). As Professor Epstein owed Rapaport no duty to disclose, his fraud claim falls for this reason, too.

In his Brief, Rapaport not only acknowledges that pecuniary losses "must be pleaded as a matter of state pleading rules" but affirms that he only attempted to meet this requirement by claiming "pecuniary loss" stemming from "delaying the plaintiff's identification of the proper defendants necessitating expedited discovery subpoenas." Br. at 58. His conclusory allegations cannot satisfy his high pleading burden. "[U]nder New York law, '[d]amages attributable solely to the existence of litigation are clearly insufficient to sustain the necessary element of damages' in a fraud claim." *Morse/Diesel, Inc. v. Fid. & Deposit Co. of Maryland*, 763 F. Supp. 28, 33 (S.D.N.Y.), *opinion modified on reargument*, 768 F. Supp. 115 (S.D.N.Y. 1991). He does not—and cannot—allege the loss of a single dollar as a result of litigation (which would be insufficient). Nor does he allege any other attributable loss. If that were not enough, the FAC disclaims damages caused by any so-called delay, admitting that Rapaport was able to uncover the "proper defendants" after enforcing subpoenas. A69. The District Court correctly determined that Rapaport had failed to plead injury, pecuniary or otherwise, and properly dismissed his fraud claim. A45-A47.

## VIII. RAPAPORT CANNOT USE "CIVIL CONSPIRACY" TO SALVAGE HIS MERITLESS DEFAMATION CLAIM

Arrogantly accusing the District Court of "put[ting] the cart before the horse," Rapaport contends that the District Court was required to accept his claims of civil conspiracy regardless of whether he had adequately stated an underlying claim for defamation. Br. at 46. In a one-sentence afterthought, he contends that Professor Epstein is liable for all the torts by Iyer and Garrett alleged in the original Complaint by virtue of joining their "conspiracy." Br. at 46.[22] Rapaport's argument is simply wrong.

As the District Court correctly concluded, an essential element of a conspiracy claim is a valid underlying tort. Rapaport failed to plead defamation, and "without an underlying tort, there can be no conspiracy claim." A41. Rapaport's argument on appeal is entirely circular. He

---

[22] Rapaport reaffirms that defamation is the tort underlying his injury. Br. at 46 ("Defamation is an actionable tort"). But not only did the District Court correctly find that Plaintiff failed to plead defamation, New York law does not recognize "conspiracy to libel" as a cognizable cause of action. *McGill v. Parker*, 179 A.D.2d 98, 105-06 (1st Dep't 1992); *Pravda v. Cnty. of Saratoga*, 224 A.D.2d 764, 766 (3d Dep't 1996); *see also* A171-A172. Since Rapaport acknowledges his civil conspiracy claim is predicated on defamation, his conspiracy claim must fail as a matter of law.

claims he can "plead" conspiracy "to connect the necessary actions across different defendants" to his defamation claim. Br. at 46. He likewise argues that he can use this "conspiracy" to impose joint and several liability to state his defamation claims. Br. 45-46. But to use civil conspiracy to connect different defendants' actions, Rapaport must *first* plead conspiracy, which itself requires first "pleading the primary tort" (here, defamation). *Kesner*, 515 F. Supp. 3d at 191. Put another way, he cannot plead the requisite elements of defamation by relying on an alleged conspiracy to defame. *See supra* n.20. Because Rapaport has "not alleged that defendants participated in a separate, actionable tort," he cannot then use civil conspiracy to salvage an underlying claim he has not even pled. *In re Houbigant, Inc.*, 182 B.R. 958, 977 (Bankr. S.D.N.Y. 1995); *see also Idema v. Wager*, 120 F. Supp. 2d 361, 370 (S.D.N.Y. 2000) ("a defective libel action 'may not be pleaded as prima facie tort or conspiracy.'"), *aff'd*, 29 F. App'x 676 (2d Cir. 2002).

To the extent Rapaport contends that he must merely "*prove*" an independent tort at some later point, but that there is "no authority that suggests that it need be *alleged* independently as to fault or anything else," Br. at 46, this brash contention is refuted by the very case he cites,

*McSpedon v. Levine*. In dismissing a civil conspiracy claim, the *McSpedon* court noted that to properly plead civil conspiracy, "the plaintiff must *allege* a cognizable tort...." 158 A.D.3d 618, 621 (2d Dep't 2018).

Not only can Rapaport not plead defamation by way of conspiracy as a matter of law, his FAC, on its face, fails to plead the existence of a conspiracy or Professor Epstein's participation therein. The FAC does not allege any agreement between Professor Epstein and the alleged co-conspirators, Defendant-Appellees Iyer and Garrett. *See Chen Gang v. Zhao Zhizhen*, 799 F. App'x 16, 19 (2d Cir. 2020) (summary order) (allegation that agreement existed required to allege civil conspiracy). Instead, Rapaport claims "Epstein had chosen to join with defendants Iyer and Garrett," A59, and the Defendant-Appellees, including Professor Epstein, "agreed to use their influence with numerous contacts in the community to destroy the Plaintiff's reputation and future employability." A68. Such threadbare allegations are not enough. Rapaport alleges no action by Professor Epstein that suggests an agreement or "meeting of the minds" with Garrett or Iyer. Indeed, he pleads the opposite, that Professor Epstein was "an unwitting instrument of [Iyer's and Garrett's] civil conspiracy." A58. Because a "meeting of the

67

minds" is implausible in the pled circumstances, the civil conspiracy claim fails. *See Strujan v. Teachers Coll. Columbia Univ.*, 2010 WL 3466251, at *4 (S.D.N.Y. Sept. 3, 2010) (dismissing civil conspiracy claim where plaintiff failed to offer "some factual basis supporting a meeting of the minds"). And because Rapaport has failed to adequately plead civil conspiracy, he cannot render Professor Epstein liable for any alleged torts committed by Iyer and Garrett in service of that nonexistent endeavor.

## IX.  THE PROCEEDINGS BELOW SATSIFIED ALL DUE PROCES REQUIREMENTS

Finally, Rapaport cannot vacate the lower court's well-reasoned decision by claiming the Court denied him due process by ruling against him. Br. at 61. Due process requires "the right to be heard and or the opportunity to present his case in a meaningful way." *Greene v. WCI Holdings Corp.*, 136 F.3d 313, 316 (2d Cir. 1998). Rapaport received that amply.

While Rapaport broadly argues that he was denied an opportunity to be heard because he believes the District Court "ignored fundamental parts of his pleadings" or applied a different set of standards, Br. at 61, the right to be *heard* does not require that the District Court *agree*. The

68

record demonstrates that Rapaport had ample opportunity to be heard and present his case: he was afforded extensive pre-action discovery, filed both an initial *pro se* complaint as well as an amended complaint with assistance of counsel and "filed extensive written arguments with the district court, which allowed him to address the specific issues of law with which the district court was concerned." *Greene*, 136 F.3d at 316 (denying claim for due process violation); *see, e.g.,* A51, A72, A175, A252. At bottom, Rapaport's unhappiness with the District Court decision is "not dramatically transformed into a constitutional due process claim simply because he suffered adverse rulings." *DiNapoli v. DiNapoli*, 1995 WL 604607, at *2 (S.D.N.Y. Sept. 22, 1995). His frivolous due process argument must be rejected.

## CONCLUSION

For all the foregoing reasons, the District Court's decision dismissing Plaintiff-Appellant Rapaport's claims against Defendant-Appellee Professor Epstein should be affirmed in its entirety.

Dated: August 8, 2025          Respectfully submitted,

_/s/ Jeremy Chase_
Jeremy Chase
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas,
21st Fl.
New York, NY 10020-1104
Phone:   (212) 489-8230
Fax:       (212) 489-8340
jeremychase@dwt.com

*Attorneys for Richard A. Epstein*

70

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 13,963 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Century Schoolbook.

*/s/ Jeremy Chase*
Jeremy Chase