# No. 25-841

## United States Court of Appeals
## for the Second Circuit

GIDEON RAPAPORT,

*Plaintiff-Appellant,*

v.

AJAY SRINIVASAN IYER, ZACHARY GEORGE GARRETT,
RICHARD ALLEN EPSTEIN,

*Defendants-Appellees,*

JOHN DOE #1, a Reddit.com user, JOHN DOE #2,
a Top-Law-Schools.com user, JOHN DOE #3, a current or former
NYU Law student, Individually, MITCHELL KEVALLA PALLAKI,

*Defendants.*

On Appeal from the United States District Court
for the Southern District of New York
No.1:23-CV-06709-JGLC, Hon. Jessica G.L. Clarke

### BRIEF FOR DEFENDANTS-APPELLEES
### AJAY IYER AND ZACHARY GARRETT

Brian J. Field
Justin A. Miller
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
bfield@schaerr-jaffe.com
jmiller@schaerr- jaffe.com

*Counsel for Defendants-Appellees*
*Ajay Iyer and Zachary Garrett*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ii

INTRODUCTION ............................................................................ 1

JURISDICTIONAL STATEMENT ..................................................3

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................4

STATEMENT OF THE CASE ..........................................................5

   A.   Factual background ..............................................................5

   B.   Procedural background ........................................................8

SUMMARY OF ARGUMENT .........................................................11

ARGUMENT .................................................................................13

   I.   The District Court Correctly Dismissed Rapaport's Defamation Claim as Untimely and for Failure to State a Claim. ..............................................................................15

      A.   Rapaport's defamation claim is untimely. ......................15

         1.   Rapaport's defamation claim is untimely under Rule 15(c)(1)(A). ............................................17

         2.   Rapaport's defamation claim is untimely under Rule 15(c)(1)(B). ............................................20

         3.   Rapaport's complaint is fully time barred. ............22

      B.   Rapaport fails to state a claim of defamation.................25

   II.   Rapaport's Other Claims Fail. .................................................29

   III.   The Dismissal Order was Procedurally Correct. ....................37

   IV.   The Motion to Disqualify was Meritless. .................................40

CONCLUSION .............................................................................43

CERTIFICATE OF COMPLIANCE .................................................45

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*ACEquip Ltd. v. Am. Eng'g Corp.*,
   315 F.3d 151 (2d Cir. 2003).................................................................22

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
   671 F.3d 140 (2d Cir. 2011)..............................................................14

*Anthony v. City of N.Y.*,
   339 F.3d 129 (2d Cir. 2003).............................................................42

*Arvanitakis v. Lester*,
   44 N.Y.S.3d 71 (App. Div. 2016) .....................................................29

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................13

*Aslanidis v. U.S. Lines, Inc.*,
   7 F.3d 1067 (2d Cir. 1993)...............................................................24

*Baiqiao Tang v. Wengui Guo*,
   No. 17-cv-9031 (JFK), 2019 WL 6169940
   (S.D.N.Y. Nov. 20, 2019) .................................................................37

*Baram v. Doe*,
   No. 1:23-cv-1758 (ER), 2024 WL 232319
   (S.D.N.Y. Jan. 22, 2024)..................................................................23

*Barrow v. Wethersfield Police Dep't*,
   66 F.3d 466 (2d Cir. 1995)...............................................................24

*Bd. of Educ. of City of N.Y. v. Nyquist*,
   590 F.2d 1241 (2d Cir. 1979)...........................................................41

*Bender v. City of New York*,
   78 F.3d 787 (2d Cir. 1996)..........................................................31, 32

*Bumpus v. N.Y.C. Transit Auth.*,
   883 N.Y.S.2d 99 (App. Div. 2009) ...............................................18, 19

*Buran v. Coupal*,
   87 N.Y.2d 173 (1995).......................................................................18

ii

*Catalanello v. Kramer,*
  18 F. Supp. 3d 504 (S.D.N.Y. 2014) ............................................... 34, 35

*Chau v. Lewis,*
  771 F.3d 118 (2d Cir. 2014)........................................................... 25, 34

*Chord Assocs., LLC v. Protech 2003-D, LLC,*
  No. 07-cv-5138, 2010 WL 3780380
  (E.D.N.Y. Sept. 21, 2010) ................................................................ 37

*Condit v. Dunne,*
  317 F. Supp. 2d 344 (S.D.N.Y. 2004) ................................................ 34

*Conte v. County of Nassau,*
  596 F. App'x 1 (2d Cir. 2014)........................................................... 22

*Curley v. AMR Corp.,*
  153 F.3d 5 (2d Cir. 1998)................................................................. 34

*Evans v. Artek Sys. Corp.,*
  715 F.2d 788 (2d Cir. 1983) ............................................................. 41

*Fashion Boutique v. Fendi USA, Inc.,*
  314 F.3d 48 (2d Cir. 2002) ............................................................... 33

*Frederique v. County of Nassau,*
  No. 11-cv-1746 (WDW), 2014 WL 12841638
  (E.D.N.Y. May 22, 2014) ................................................................. 24

*Freeman v. Johnston,*
  601 N.Y.S.2d 606 (App. Div. 1993) .................................................. 33

*Gov't of India v. Cook Indus., Inc.,*
  569 F.2d 737 (2d Cir. 1978).............................................................. 41

*Grayson v. Ressler & Ressler,*
  271 F. Supp. 3d 501 (S.D.N.Y. 2017) ................................................ 32

*GSI Com. Sols., Inc. v. BabyCenter, L.L.C.,*
  618 F.3d 204 (2d Cir. 2010).............................................................. 14

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream,*
  409 F.3d 127 (2d Cir. 2005).............................................................. 40

iii

*Hogan v. Fischer*,
738 F.3d 509 (2d Cir. 2013) ........................................... 16, 19

*Jennings-Purnell v. Jennings*,
968 N.Y.S.2d 27 (App. Div. 2013) ...................................... 18

*Johnson v. Celotex Corp.*,
899 F.2d 1281 (2d Cir. 1990) ......................................... 14, 38

*KatiRoll Co. v. Kati Junction, Inc.*,
33 F. Supp. 3d 359 (S.D.N.Y. 2014) .................................... 27

*Kinsey v. N.Y. Times Co.*,
991 F.3d 171 (2d Cir. 2021) ........................................... 34

*Kirkendall v. Halliburton*,
707 F.3d 173 (2d Cir. 2013) ........................................... 27

*LoSacco v. City of Middletown*,
71 F.3d 88 (2d Cir. 1995) ............................................. 30

*Malament v. Vasap Constr. Corp.*,
728 N.Y.S.2d 381 (App. Div. 2001) .................................... 18

*Matter of Abrams*,
465 N.E.2d 1 (N.Y. 1984) .............................................. 41

*Mazzei v. The Money Store*,
62 F.4th 88 (2d Cir. 2023) ............................................ 14

*McSpedon v. Levine*,
72 N.Y.S.3d 97 (App. Div. 2018) ...................................... 30

*Murphy-Higgs v. Yum Yum Tree, Inc.*,
112 F. App'x 796 (2d Cir. 2004) ....................................... 32

*Murray v. Metro. Life Ins. Co.*,
583 F.3d 173 (2d Cir. 2009) ........................................... 41

*Nolan v. New York*,
69 N.Y.S.3d 277 (App. Div. 2018) ..................................... 25

*Perez v. Violence Intervention Program*,
984 N.Y.S.2d 348 (App. Div. 2014) .................................... 31

iv

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
  53 F. Supp. 3d 705 (S.D.N.Y. 2014) .................................... 32

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
  42 N.Y.2d 369 (1977) ............................................................ 25

*Romaine v. Kallinger*,
  537 A.2d 284 (N.J. 1988) ...................................................... 36

*S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*,
  508 N.E.2d 647 (N.Y. 1987) .................................................. 41

*Sacerdote v. N.Y. Univ.*,
  9 F.4th 95 (2d Cir. 2021) ...................................................... 13

*Slayton v. American Express Co.*,
  460 F.3d 215 (2d Cir. 2016) .................................................. 11

*Stuto v. Fleishman*,
  164 F.3d 820 (2d Cir. 1999) .................................................. 32

*Swan v. Boardwalk Regency Corp.*,
  969 A.2d 1145 (N.J. Super. Ct. App. Div. 2009) .................. 23

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
  864 F.3d 236 (2d Cir. 2017) ............................................ 26, 27

*Tolbert v. Queens Coll.*,
  242 F.3d 58 (2d Cir. 2001) .............................................. 39, 40

*United States v. Curcio*,
  680 F.2d 881 (2d Cir. 1982) .................................................. 42

*Unlimited Cellular, Inc. v. Red Points Sols. SL*,
  677 F. Supp. 3d 186 (S.D.N.Y. 2023) .................................. 28

*Whitfield v. Johnson*,
  763 F. App'x 106 (2d Cir. 2019) .......................................... 11

*Williams v. Meachum*,
  948 F.2d 863 (2d Cir. 1991) .................................................. 42

*Williams v. Williams*,
  53 N.Y.S.3d 152 (2d Dep't 2017) .......................................... 29

**Statutes**

28 U.S.C. § 1291 ................................................................4

28 U.S.C. § 1332 ................................................................3

**Rules**

CPLR § 203 ...............................................................17, 18

CPLR § 1024 ........................................................17, 19, 20

CPLR § 3016 ...............................................................26

Fed. R. Civ. P. 8 .............................................................26

Fed. R. Civ. P. 15 ............................... 15, 16, 17, 20, 24

Fed. R. Civ. P. 42 ............................................................38

## INTRODUCTION

Plaintiff Gideon Rapaport recently graduated from New York University School of Law ("NYU Law"). While at NYU Law, Rapaport became enamored with Professor Richard Epstein, and Rapaport believed that Professor Epstein would be his key to obtaining a judicial clerkship. When that did not happen, Rapaport began to blame others around him for his shortcomings.

Rapaport even convinced himself that he did not receive a clerkship because he thought fellow NYU Law students Ajay Iyer and Zachary Garrett ("Student Defendants") devised a scheme to turn Professor Epstein against him. As part of this scheme, the Student Defendants allegedly forged a photograph showing that Rapaport was barred from entering the New York offices of Kirkland & Ellis, where Rapaport had been a summer associate. And the Student Defendants allegedly furthered their scheme by stating that Rapaport was fired for sexual harassment and posting pseudonymously about it on various websites.

Rapaport responded by resorting to the judicial system to file various tort claims against the Student Defendants. However, because Rapaport did not know their identity, he named various John Doe

Defendants. Then, rather than diligently pursuing his claims, he waited months before attempting to discern the John Does' identities. Once Rapaport amended his complaint to name the Student Defendants, his claims were far outside the statute of limitations period and all untimely.

As to Rapaport's defamation claim, the district court correctly dismissed it as largely untimely. For the narrow defamation claim that the district court concluded was timely, the district court correctly dismissed it for failure to state a claim. Indeed, as the district court noted, Rapaport's entire theory of defamation fell apart when he attached the allegedly defamatory online posts to his amended complaint, and those posts never mentioned Rapaport or included the allegedly faked photograph.

With the defamation claim dismissed, the district court correctly dismissed the remaining tort claims, which each suffered from numerous fatal flaws. The district court also correctly denied Rapaport's motion to disqualify counsel, recognizing that the Student Defendants had waived any conflicts of interest at the outset of representation.

At each turn, the district court faithfully and thoroughly applied binding precedent, and Rapaport fails to identify any reason to reverse

the district court's decision dismissing his claims. Accordingly, the Court should affirm the district court.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1332. On March 31, 2025, the district court entered an interlocutory decision dismissing several of Rapaport's claims with prejudice and others without prejudice. A20–50.[1] For those claims dismissed without prejudice, the district court directed Rapaport to file an amended complaint in a docket that was newly consolidated with another case Rapaport had filed against the Student Defendants and others. *Id.* Rapaport instead filed a premature Notice of Appeal. A330. In response, the district court noted that Rapaport's appeal was defective because it did not appeal a final order. SA176–78. The district court thus stated that, if Rapaport did not file a consolidated amended complaint in the applicable timeframe, final judgment would be entered in Defendants' favor. SA178. Rapaport responded with a letter declaring that he would not file a consolidated amended complaint. SA179. The district court thus

---

[1] Citations to "A#" refer to the appendix Rapaport filed with his brief. "SA#" refers to the Defendants' jointly filed supplemental appendix.

entered final judgment in Defendants' favor on June 11, 2025, SA180–81, and this Court thus has jurisdiction over that final decision, *see* 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred in dismissing Rapaport's defamation claim as untimely and for failure to state a claim.

2. Whether the district court erred in dismissing Rapaport's conspiracy claim for lack of an adequately pled underlying tort claim.

3. Whether the district court erred in dismissing Rapaport's claims of injurious falsehood and intentional infliction of emotional distress as duplicative of his defamation claim.

4. Whether the district court erred by applying New York Law and dismissing Rapaport's invasion of privacy claim.

5. Whether the district court erred in ordering Rapaport to file any amended complaint in a newly consolidated docket.

6. Whether the district court erred in denying Rapaport's motion to disqualify counsel.

4

## STATEMENT OF THE CASE

### A.    Factual background

Plaintiff Gideon Rapaport is a recent graduate of NYU Law. On July 28, 2023, he filed a *pro se* complaint, A72–88, alleging that three John Doe Defendants created an "internet hoax" accusing him of having been fired from his summer associate position at Kirkland & Ellis for sexual harassment, A73 ¶¶ 6–8. Those alleged events took place one year earlier—in late July and early August 2022. A73–74 ¶¶ 6, 10, 15.

After he filed his initial complaint, Rapaport waited four months before taking any steps to learn the identities of the John Does, when, in November 2023, he sought discovery to obtain information about their identities. SA1–3, SA4–10. After six more months passed, in May 2024, Rapaport filed his first amended complaint, A51–71, replacing the John Doe Defendants with the current Defendants, including Defendants Iyer and Garrett, who were fellow students at NYU Law, and also naming Professor Richard Epstein, A51–52 ¶¶ 2–8.

In this amended complaint, which was filed by counsel, Rapaport removed many allegations from his original *pro se* complaint, and he now claimed defamation, injurious falsehood, intentional infliction of emotional distress, false light and invasion of privacy, and civil

5

conspiracy. A64–68 ¶¶ 90–127. These allegations were again based on events that allegedly occurred in July and August 2022. A55–63 ¶¶ 31, 35, 40, 42, 47, 52, 54, 58, 65, 70.

At its core, the amended complaint arises out of Rapaport's feeling that he did not receive the elite clerkship he thought he deserved, and he blames Defendants for his falling short. As Rapaport sees it, the Student Defendants were jealous that Professor Epstein was allegedly going to provide Rapaport with a clerkship that Student Defendants wanted. A55 ¶ 33. Rapaport thus alleges that the Student Defendants concocted an elaborate conspiracy to prevent Rapaport from obtaining a clerkship.

As one part of that alleged conspiracy, the Student Defendants allegedly created a fake photograph purporting to show that Rapaport was barred from entering the offices of Kirkland & Ellis, where Rapaport had been working for the summer. A56 ¶ 35. Rapaport also alleges that the Student Defendants posted the photograph online and stated that Rapaport had been fired for sexual harassment. A56–57 ¶¶ 37, 42, 45. Additionally, according to Rapaport, these internet posts described Rapaport's "habit of dressing relatively formally in the workplace," his "occasional wearing of button suspenders," his enthusiastic

6

"participat[ion] in class discussions at law school, his "political views,"
"his invitations as a formal escort" in New York City's "debutante ball
circuit," and "his acceptance into exclusive social circles and private
social clubs in Manhattan[.]" A74 ¶ 16.

Next, according to Rapaport, the Student Defendants presented
these materials to representatives of the Federalist Society in advance of
Rapaport's participation in the Federalist Society's James Kent
Academy. A56–57 ¶¶ 34, 42. Rapaport was nonetheless able to
participate in the James Kent Academy. A61 ¶ 70.

However, according to Rapaport, the Student Defendants'
statements allegedly led Professor Epstein to state that Rapaport's
career "was destroyed," that Rapaport would be removed from his
forthcoming journal editorial position, and that Professor Epstein would
no longer associate with Rapaport in order to protect his own reputation.
A61 ¶ 71.

Yet Rapaport confirms that any potential harms he experienced
were self-inflicted. For instance, Rapaport acknowledges that he has
passed the New York bar, but he chose not to seek admission to the bar.
A53 ¶ 14. Additionally, Rapaport fails to allege that he ever applied for a

clerkship, confirming that any lack of a clerkship is likely due to his own failure to take the steps required to obtain one.

## B.    Procedural background

In response to Rapaport's amended complaint, Professor Epstein and the Student Defendants filed motions to dismiss. A138–74, A224–51. Before Rapaport responded to those motions, Rapaport's counsel withdrew, and Rapaport proceeded again as a *pro se* litigant. SA172–73. Rapaport then opposed the motions to dismiss, A175–207, A252–84, and sought leave to file a second amended complaint, SA174–75. Rapaport also responded to the motions to dismiss by filing a motion to disqualify counsel for Student Defendants, arguing that the Student Defendants have irreconcilable conflicts of interest in this case, and thus they cannot be represented by the same counsel. A331–42.[2]

---

[2] Around this same time, Rapaport filed a second action against Professor Epstein, the Student Defendants, and various other former NYU Law students, repackaging his claims from this case as civil RICO and unlawful monopoly claims. *See* Complaint, *Rapaport v. Epstein, et al.,* No. 1:24-CV-07439-JGLC (S.D.N.Y. Sept. 27, 2024), ECF No. 1. There, Rapaport alleges that Professor Epstein runs an "[o]rganized [l]aw" racket through which he personally controls various federal judicial clerkship placements as his "private property," *id.* ¶¶ 36, 44, including "up to four slots in the Supreme Court of the United States … and approximately one hundred slots in the federal trial and appellate

The district court subsequently granted the Student Defendants' motion to dismiss. A20–50. As to Rapaport's defamation claim, the district court dismissed it as untimely, except as related to allegations that the Student Defendants faked photographs of Rapaport and published those photographs online. For those remaining allegations, the district court dismissed the defamation claim for failure to state a claim. A32–41. Because Rapaport failed to state a defamation claim, the district court also dismissed Rapaport's associated conspiracy claim. A41–42.

For Rapaport's invasion of privacy claim, the district court applied New York law and dismissed that claim, which is not recognized under New York law. A30. For the intentional infliction of emotion distress and injurious falsehood claims, the district court dismissed them as duplicative of the defamation claims. A41–42. Finally, the district court denied Rapaport's motion to disqualify counsel, explaining that the court "need not address the underlying substance of Plaintiff's assertions because any conflict that may exist between Defendants Garrett and Iyer

---

courts." *Id.* ¶ 37. Student Defendants allegedly participated in that enterprise. Rapaport's claims in that case are still pending and subject to motions to dismiss.

9

are waived, given both have consented to be represented by Schaerr Jaffe." A47.

As to Rapaport's motion for leave to file a second amended complaint, the district court recognized that "a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [he] has a valid claim." A47 (alteration in original) (quotation marks omitted). The district court thus provided Rapaport with an opportunity to amend his complaint again, allowing him "an opportunity to cure the deficiencies of which he is now on notice." A48. The district court also consolidated the underlying case with Rapaport's other pending case against the Student Defendants "given the overlapping parties, issues, and claims[.]" A49.

Rapaport refused to file such an amended complaint and opted instead to initiate this appeal. A330. However, because Rapaport was appealing a non-final order, the district court held that his appeal was improper and ordered Rapaport to comply with the order to file an amended complaint in the newly consolidated case. SA177–78. Otherwise, the district court explained, it would enter final judgment for Defendants. SA178. After Rapaport informed the district court that he

would not file a consolidated complaint, SA179, the district court entered final judgment in favor of the Defendants, SA180–81.

Rapaport's appeal then became proper, as this Court "treat[s] a premature appeal from a judgment granting leave to amend as an appeal from a final judgment if the deadline for amendment has passed." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting *Slayton v. American Express Co.,* 460 F.3d 215, 224 n.7 (2d Cir. 2016)).

## SUMMARY OF ARGUMENT

As to Rapaport's defamation claim, it was untimely and properly dismissed. The district court correctly concluded that this claim was time barred to the extent based on allegations unrelated to the online posting and circulating of an allegedly faked image of Rapaport. Rapaport's original complaint did not put the Student Defendants on notice of a defamation claim related to events outside the online posts, and thus his amended complaint—which was filed outside the limitations period—does not relate back for such a defamation claim.

As to the remaining defamation claim—related to allegations about online posts—Student Defendants maintain that it was also time barred because the amended complaint was filed outside the limitations period,

and it does not relate back to the original John Doe complaint. While the district court did not dismiss the defamation claim on that basis, it did correctly conclude that Rapaport failed to state a claim for defamation because his allegations were contradicted by the exhibits he attached to his amended complaint. The online posts that Rapaport claimed were defamatory did not include the allegedly faked photograph and did not even mention Rapaport. Rapaport's theory of defamation was thus implausible, and he failed to state a claim.

Once the defamation claim was dismissed, the district court properly dismissed the civil conspiracy claim for lack of an underlying tort. Additionally, the district court properly dismissed various other tort claims as duplicative of the dismissed defamation claim. The district court also correctly applied New York law and dismissed Rapaport's invasion of privacy claim, which is not recognized under New York law.

Although the district court would have been justified in dismissing each of these claims with prejudice, the district court recognized Rapaport's *pro se* status and exercised its discretion to afford Rapaport another chance to properly plead his claims. In doing so, the district court correctly concluded that it would be more efficient for Rapaport to file any

amended complaint in a docket that was consolidated with his other lawsuit against the Student Defendants.

Finally, the district court properly rejected Rapaport's speculation that Student Defendants would encounter conflicts of interest in this case. Rather, because the Student Defendants had expressly waived any potential conflicts, the district court correctly denied Rapaport's motion to disqualify counsel.

For each of these reasons, the Court should affirm the district court's decision.

## ARGUMENT[3]

The district court correctly dismissed Rapaport's claims, as his amended complaint did not come close to satisfying his burden to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When reviewing a dismissal under Rule 12(b)(6), this Court undertakes *de novo* review, accepting all factual allegations in the complaint as true, *see*

---

[3] Student Defendants adopt and incorporate, as applicable, the arguments made by Defendant Richard Epstein in this matter.

13

*Mazzei v. The Money Store*, 62 F.4th 88, 92 (2d Cir. 2023), but disregarding allegations that are contradicted by documents plaintiff attaches to the complaint, *see Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011).

Additionally, the Court reviews decisions to consolidate a case and to deny a motion to disqualify counsel for abuse of discretion. *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284–85 (2d Cir. 1990); *GSI Com. Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010).

Applying these standards, this Court should affirm the district court's dismissal of Rapaport's claims. *First*, the district court correctly dismissed Rapaport's defamation claim as untimely and for failing to state a claim. *Second*, the district court correctly dismissed Rapaport's other tort claims because Rapaport failed to state a claim, asserted tort claims that were duplicative of his dismissed defamation claim, and relied on claims that are not recognized under New York law. *Third*, in doing so, the district court did not abuse its discretion when ordering that Rapaport file any amended complaint in a newly consolidated docket. *Fourth*, the district court properly denied Rapaport's motion to disqualify

14

counsel, recognizing that the Student Defendants had waived any potential conflicts of interest.

## I. The District Court Correctly Dismissed Rapaport's Defamation Claim as Untimely and for Failure to State a Claim.

The district court correctly dismissed Rapaport's defamation claim, concluding first that it was untimely to the extent it relied on events beyond those involving the online posting of the allegedly faked photographs. For that remaining defamation claim, the district court correctly concluded that Rapaport failed to state a claim.

### A. Rapaport's defamation claim is untimely.

As to timeliness, Rapaport complains about events that allegedly occurred in July and August 2022. A55–63 ¶¶ 31, 35, 40, 42, 47, 52, 54, 58, 65, 70. But Rapaport did not file his amended complaint naming the Student Defendants until May 24, 2024, far outside the applicable one-year statute of limitations that ended no later than September 1, 2023. The fact that his original complaint was filed within the limitations period does not save his claims, because that complaint was filed only against various John Does. *See* A72. Thus, Rapaport's defamation claim only survives if it relates back under Federal Rule of Civil Procedure 15. It does not.

15

Under Rule 15, there are three ways that Rapaport's claims could relate back to his original complaint and be deemed timely. *See* Fed. R. Civ. P. 15(c)(1)(A)–(C). The Court may first put Rule 15(c)(1)(C) to the side, as Rapaport does not contest the district court's holding that this provision is unavailable to him because his not knowing the John Doe Defendants' names was not a "mistake of identity." *See* A33 (citing *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013)). That leaves only Rules 15(c)(1)(A) and 15(c)(1)(B).

Under Rule 15(c)(1)(A), claims in an amended complaint relate back if "the law that provides the applicable statute of limitations," here New York law, "allows relation back." And, under Rule 15(c)(1)(B), claims relate back if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Neither Rule 15(c)(1)(A) nor Rule 15(c)(1)(B) applies to save Rapaport's defamation claim. Additionally, as explained below, Student Defendants maintain that the district court could have properly dismissed Rapaport's entire amended complaint as untimely.

16

### 1. Rapaport's defamation claim is untimely under Rule 15(c)(1)(A).

Under Rule 15(c)(1)(A), the court looks to state law. The district court thus considered the timeliness of Rapaport's defamation claim under Sections 203(f) and 1024 of the New York Civil Practice Law and Rules ("CPLR"). A33.

1. Section 203(f) provides that a claim in an amended complaint will be deemed "to have been interposed at the time the claims in the original pleading were interposed, *unless* the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences[.]" (emphasis added). The district court correctly explained that § 203(f) "closely tracks" Federal Rule of Civil Procedure 15(c)(1)(C). A34. As noted, Rapaport does not contest the district court's conclusion that he cannot satisfy Rule 15(c)(1)(C), which is thus fatal to his reliance on § 203(f).

On this, the district court followed New York courts' application of § 203(f), where those courts recognize that a plaintiff cannot add a new defendant under § 203(f) *unless* "the new party knew or should have known that, but for an *excusable mistake* by plaintiff as to the identity of the proper parties, the action would have been brought against him as

17

well." *Malament v. Vasap Constr. Corp.,* 728 N.Y.S.2d 381, 381 (App. Div. 2001) (emphasis added) (quoting *Buran v. Coupal,* 87 N.Y.2d 173, 178 (1995)); *accord Bumpus v. N.Y.C. Transit Auth.,* 883 N.Y.S.2d 99, 107–08 (App. Div. 2009). Rapaport's failure to identify Iyer and Garrett was not an excusable mistake; it was due to his lack of knowledge.

Rapaport has no answer for this, and he instead asks this Court to significantly expand the types of claims that relate back under § 203(f), relying on *Jennings-Purnell v. Jennings*, 968 N.Y.S.2d 27 (App. Div. 2013). *See* Rapaport Br. 42. But Rapaport misreads *Jennings*, which did not address an amended complaint adding a new party. *Jennings*, 968 N.Y.S.2d at 28. Rather, *Jennings* merely held that, although amended claims may include new causes of action, they must still arise from the same "transaction and occurrence" as the allegations in the original complaint. *Id.* That does nothing to change the fact that, under § 203(f), a claim against a new defendant does not relate back unless that plaintiff can show a "mistake" in naming the original parties. *See Malament*, 728 N.Y.S.2d at 381. Rapaport cannot show any such mistake, and his defamation claim thus cannot related back under § 203(f).

18

2.    Turning to CPLR § 1024, this Court has recognized that it permits relation back only if a plaintiff has "exercise[d] due diligence, prior to the running of the statute of limitations, to identify the defendant by name." *Hogan*, 738 F.3d at 519 (quoting *Bumpus*, 883 N.Y.S.2d at 104). To meet this requirement, the plaintiff must not only "exercise due diligence," but must also "describe the John Doe party 'in such form as will fairly apprise the party that [he] is the intended defendant.'" *Id.* (quoting *Bumpus*, 883 N.Y.S.2d at 104). Additionally, the plaintiff must effect service within 120 days from filing the action, unless the deadline is extended. *Bumpus*, 883 N.Y.S.2d at 105.

As to the first element, Rapaport failed to exercise due diligence, where he waited months after filing his original complaint before taking steps to learn the John Does' identities. And the district court should not have countenanced Rapaport's statement—raised for the first time in his reply in support of his motion for leave to amend—that he had also made a handful of other "inquiries" about the John Does' identities. A35. But Student Defendants understand that the district court nonetheless applied a generous read of Rapaport's filings due to his *pro se* status and opted not to hold this procedural failure against Rapaport.

19

Instead, the district court focused on § 1024's second element—whether the original complaint "fairly apprised" the Student Defendants of the claims asserted against them in the amended complaint. A36. Applying that standard, the district court correctly held that the "Student Defendants could not have been fairly apprised as to" any "alleged defamatory statements," other than those involving "the forged document and internet posts," because such other statements "were not mentioned in the original complaint." *Id.* (citing A53 ¶¶ 13–14, 16).

Rapaport responds by arguing that his original complaint did, in fact, put the Student Defendants on notice of other aspects of his defamation claim. But he is mistaken, as Student Defendants demonstrate below in the context of Rule 15(c)(1)(B).

## 2. Rapaport's defamation claim is untimely under Rule 15(c)(1)(B).

Rapaport also argues (at 42–43) that the district court erred in failing to address Rule 15(c)(1)(B). While it is true that the district court did not address this Rule, that does not change the district court's conclusion. Under Rule 15(c)(1)(B), new claims only relate back to those "claim[s] or defense[s] that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

As noted, Rapaport's original complaint focused primarily on anonymous internet posts, *see* A74–76 ¶¶ 17–21, 23, 27, and what the district court called "a myriad of allegations about the John Doe defendants," A36, including an allegedly false Title IX report, *see* A75–76 ¶¶ 23–26, and alleged oral slander, *see* A76 ¶¶ 29–30.

Rapaport argues (at 37) that his original complaint thus apprised the Student Defendants that his defamation claim was based on more than just allegedly faked photographs. But those additional allegations regarding other statements do not appear in the amended complaint. *Compare* A76 ¶¶ 29–30, *with* A51–A71. And, since they were absent from the amended complaint, they could not relate back. Moreover, as the district court correctly explained, the failure to include these allegations clearly "calls into question whether Student Defendants could have been reasonably apprised they were the intended targets." A36–37.

Rapaport also argues that his original complaint would have apprised the Student Defendants regarding the forwarding of the alleged defamatory materials to the James Kent Academy program's leadership. Rapaport Br. 37–38. But that allegation was not included in the original complaint; Rapaport included it for the first time in the amended

21

complaint. Rather, the original complaint alleged that the James Kent Academy's leadership learned about Rapaport's sexual harassment from anonymous internet posts. A73 ¶¶ 10, 13.

Accordingly, Rapaport's defamation claim against the Student Defendants relates back—at most—to allegations "related to the faked photographs and online posts." A36.

### 3.    Rapaport's complaint is fully time barred.

Although the district court concluded that only portions of Rapaport's defamation claim were untimely, the Student Defendants maintain that Rapaport's entire complaint should have been dismissed as untimely.[4] A245–46.

Each of Plaintiff's claims is subject to a one-year statute of limitations. *See Conte v. County of Nassau*, 596 F. App'x 1, 4–5 (2d Cir. 2014) (explaining that defamation, injurious falsehood, and intentional infliction of emotional distress all have a one-year statute of limitations); *Swan v. Boardwalk Regency Corp.*, 969 A.2d 1145, 1155 (N.J. Super. Ct.

---

[4] This Court "may, of course, affirm the district court's judgment on any ground appearing in the record, even if the ground is different from the one relied on by the district court." *ACEquip Ltd. v. Am. Eng'g Corp.*, 315 F.3d 151, 155 (2d Cir. 2003).

App. Div. 2009) (explaining that a false light claim based on defamatory comments has a one-year statute of limitations); *Baram v. Doe*, No. 1:23-cv-1758 (ER), 2024 WL 232319, at *10 (S.D.N.Y. Jan. 22, 2024) (explaining that civil conspiracy is not a standalone tort and thus "a cause of action alleging conspiracy to commit a tort stands or falls with the underlying tort." (citation omitted)). And Rapaport complains of events that allegedly took place in July and August 2022. A55–63 ¶¶ 31, 35, 40, 42, 47, 52, 54, 58, 65, 70. Thus, the statute of limitations expired around the time of Rapaport's filing the original complaint.

At that time, Rapaport claimed that he "was completely ignorant of the identities of the defendants[.]" A62 ¶ 81. It was only months later that Rapaport claimed to have "learn[ed] the identities of the John Does who had been the original defendants[.]" A63 ¶ 85. Rapaport then waited until May 2024 to file his amended complaint naming the Student Defendants.

That delay is fatal to Rapaport's claims, as "[']John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued." *Frederique v. County of Nassau*, No. 11-cv-1746 (WDW), 2014 WL

23

12841638, at *4 (E.D.N.Y. May 22, 2014) (citing *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993)). Thus, a plaintiff may only substitute John Doe defendants with new parties outside the limitations period if the amended complaint meets "all of the specifications of [Rule 15(c)]." *Id.* Rapaport did not do so.

One such specification is that the later-added party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). The Second Circuit has interpreted this rule "to preclude relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the *plaintiff did not know their identities*." *Frederique*, 2014 WL 12841638, at *4 (emphasis added) (citing *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995), *modified*, 74 F.3d 1366 (2d Cir. 1996) (per curiam)). That is because not knowing the identities of the defendants "cannot be characterized as a mistake." *Barrow*, 66 F.3d at 470.

As Rapaport concedes, he "had no idea who was responsible" when he filed his original complaint, and he thus relied on John Does. A62 ¶ 81. Under *Barrow*, Rapaport's replacing the John Does with Defendants'

24

names nearly two years after the underlying events allegedly occurred cannot be characterized as a mistake, and therefore the amended complaint cannot relate back to the original complaint.

### B. Rapaport fails to state a claim of defamation.

As to the defamation claim based on the alleged online posting of the fake photograph, the district court correctly concluded that it was implausible. To state a claim for defamation, a plaintiff must allege facts showing "(1) a written defamatory factual statement concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or *per se* actionability." *Chau v. Lewis*, 771 F.3d 118, 126–27 (2d Cir. 2014). Defamation *per se* is a statement that "tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons[.]" *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 379 (1977) (quotation marks omitted). It includes "(1) statements charging the plaintiff with a serious crime; (2) statements that tend to injure the plaintiff in her trade, business or profession; [and] (3) statements that impute to the plaintiff a 'loathsome disease.'" *Nolan v. New York,* 69 N.Y.S.3d 277, 284 (App. Div. 2018).

This Court has also recognized the "importance of giving defendants notice of why any alleged statements were defamatory" as shown by "the strictness of New York's law" requiring "'the *particular* words complained of.'" *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 251 n.10 (2d Cir. 2017) (quoting CPLR § 3016(a)). As this Court has explained, "attaching [an] internet article to [a] complaint does not substitute for making a specific allegation" that "put[s] the court and the defendant on notice of the particular claims asserted." *Id.* at 251 (citing Fed. R. Civ. P. 8(a)). Rapaport's remaining defamation claim falls short of satisfying this standard.

To start, Rapaport's amended complaint pointed to its Exhibit 3 as evidence of the allegedly defamatory online post. But Exhibit 3 confirms that the posts Rapaport identifies did not even contain the allegedly faked photograph or even mention Rapaport's name. A38; A9–19. Rapaport's only response is to contend that he cannot be required to know everything that was on the internet a few years ago. *See, e.g.*, Rapaport Br. 9–10, 24. But as the district court correctly explained, "[a]llegations in the complaint that are 'contradicted by more specific allegations or documentary evidence' are not entitled to a presumption of truthfulness."

26

*KatiRoll Co. v. Kati Junction, Inc.,* 33 F. Supp. 3d 359, 365 (S.D.N.Y. 2014) (quoting *Kirkendall v. Halliburton*, 707 F.3d 173, 175 n.1 (2d Cir. 2013)).

Further, Rapaport's blindly pointing to the whole of the internet fails to "giv[e] defendants notice of why any alleged statements were defamatory." *Tannerite Sports*, 864 F.3d at 251 n.10. And he fails to "set forth" "the *particular* words complained of[.]" *Id.*

Additionally, with respect to the online posts in Exhibit 3 (*see* A9–19), the district court correctly concluded that Rapaport failed to plausibly allege that one of the Student Defendants made any of the specific anonymous statements. A40–41. Putting aside that Rapaport failed to provide any such allegations linking Student Defendants to the online posts in Exhibit 3, nothing in that exhibit even *implies* that Student Defendants had any role in the posts. The posts do not imply that they were written by one of the Student Defendants, and none of the other comments on the posts points to the Student Defendants (either directly or indirectly). Additionally, nothing in the exhibit suggests that one person (a Student Defendant or someone else) created multiple accounts to post multiple statements.

In response, Rapaport argues that the amended complaint "clearly and specifically identified" Iyer as "the creator and publisher of the defamatory internet posts and forgeries[.]" Rapaport Br. 38–39 (citing A54, A57); *see* A56 ¶ 37. Here again, however, those statements are not supported by the exhibits Rapaport provided. *See, e.g.*, A3–19, A53, A56.

And Rapaport's allegation that Exhibit 3 includes a letter compiling information from Iyer's "pseudonymous online posts" and sent to national leadership at the Federalist Society fares no better. *See* A53 ¶ 16, A57 ¶ 42. That allegation falls short of satisfying Rapaport's obligation to "plead the defamatory statements with some particularity," including specifically "identify[ing] the allegedly defamatory statements" and "who made" them. *Unlimited Cellular, Inc. v. Red Points Sols. SL*, 677 F. Supp. 3d 186, 196–97 (S.D.N.Y. 2023) (cleaned up).

Rapaport's reliance on Exhibits 1 and 2 to his amended complaint is equally misplaced. In those exhibits, A3–6, Rapaport provides what he contends to be the allegedly faked images, A53 ¶ 15. However, the exhibits do not show that those images were ever posted—let alone that one of the Student Defendants posted them. *See* A39.

28

Rapaport's defamation claim thus contradicts the exhibits he incorporated into his complaint, and his pleadings do not show that Iyer or Garrett posted the photos or made any allegedly defamatory statements. The district court was correct to dismiss Rapaport's defamation claim.

## II. Rapaport's Other Claims Fail.

In addition to his defamation claim, the district court correctly dismissed Rapaport's claims for injurious falsehood, intentional infliction of emotional distress ("IIED"), false light and invasion of privacy, and civil conspiracy. Rapaport cannot show why that decision should be reversed.

1.    Rapaport's civil conspiracy claim falls with his defamation claim because without an underlying tort, there can be no conspiracy. *Williams v. Williams*, 53 N.Y.S.3d 152, 153 (2d Dep't 2017). Under New York law, a "cause of action alleging conspiracy to commit a tort stands or falls with the underlying tort." *Arvanitakis v. Lester*, 44 N.Y.S.3d 71, 73 (App. Div. 2016). Because the underlying defamation claim is dismissed, the conspiracy claim must also be dismissed. Rapaport largely concedes this point, where the only authority he addresses on this issue

29

dooms his claim by recognizing that a civil conspiracy claim requires "an actionable, underlying tort[.]" Rapaport Br. 46–47 (quoting *McSpedon v. Levine*, 72 N.Y.S.3d 97, 101 (App. Div. 2018)).

2.    Rapaport's IIED and injurious falsehood claims were also properly dismissed because they were duplicative of the defamation claim.[5] A42. Indeed, those claims relied on the same allegations and conduct as the defamation claim, *i.e.*, the "fake photographs and statements." *Id.* (citing A65 ¶ 102).

Under New York law, "claims of injurious falsehood … and intentional infliction of emotional distress should [be] dismissed as duplicative of [a] defamation claim," if "they allege no new facts and seek no distinct damages from the defamation claim." *Perez v. Violence*

---

[5] As to Rapaport's claim of injurious falsehood, the district court correctly dismissed it as duplicative of Rapaport's defamation claim. On appeal, Rapaport fails to challenge this aspect of the district court's decision, thereby abandoning any such challenge on appeal. *See* Rapaport Br. 50–52 (addressing only the district court's conclusion that the IIED claim was duplicative); *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995) (a party "abandoned" an issue when "he did not raise this issue in his appellate brief"). To the extent Rapaport attempts to revive this issue in his reply brief, Student Defendants nonetheless explain herein the various reasons why the injurious falsehood claim was properly dismissed.

*Intervention Program*, 984 N.Y.S.2d 348, 349 (App. Div. 2014). That is the case here.

Resisting that authority, Rapaport argues (at 52) that these claims should not have been dismissed as duplicative of his defamation claim since the district court dismissed that claim. That argument misunderstands New York law. Rapaport relies on no legal authority for his argument, and his argument contradicts *Perez*, where the court affirmed the dismissal of a defamation claim because the plaintiff had failed to show actual malice, then held that the IIED claim should have been "dismissed as duplicative of the defamation claim[.]" 984 N.Y.S.2d at 349. The district court's dismissal of Rapaport's defamation claim here does not revive his duplicative claims.

Additionally, dismissal of these claims was proper because Rapaport failed to state a claim for IIED or injurious falsehood. For IIED, Rapaport failed to allege facts showing "extreme and outrageous conduct." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). The "threshold for conduct that is 'extreme and outrageous'" is high, and "New York courts have found liability for intentional infliction of emotional distress 'only where the conduct has been so outrageous in character, and

31

so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 729 (S.D.N.Y. 2014) (first quoting *Bender*, 78 F.3d at 790, then *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)). Rapaport's allegations do not come close to satisfying this standard, and "defamatory statements generally cannot constitute the extreme and outrageous behavior required for an intentional infliction of emotional distress claim." *Id.* (collecting cases).

The IIED claim also failed because Rapaport did not plausibly allege that the Student Defendants possessed any "intent to cause severe emotional distress," let alone that Rapaport suffered any emotional distress. *Id.* (citing *Bender*, 78 F.3d at 790).

For his injurious falsehood claim, it failed because Rapaport did not plausibly allege the required "special damages." *Murphy-Higgs v. Yum Yum Tree, Inc.*, 112 F. App'x 796, 797 (2d Cir. 2004); *accord Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 518–19 (S.D.N.Y. 2017). This must be pleaded "with specificity." *Grayson*, 271 F. Supp. 3d at 519

(citing *Fashion Boutique v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002)). Rapaport did not do so.

3.    As to Rapaport's false light and invasion of privacy claim, the district court correctly concluded that New York law applied—rather than New Jersey law—and therefore dismissed this claim because New York does not recognize such privacy claims. Rapaport agrees that New York law applies to all his claims except one—which happens to be a claim for false light and invasion of privacy that New York does not recognize. *See Freeman v. Johnston*, 601 N.Y.S.2d 606, 607 (App. Div. 1993), *aff'd,* 637 N.E.2d 268 (N.Y. 1994). He argues that this claim is different because he lived in New Jersey at the time. A67–68 ¶¶ 114–21. But the district court correctly rejected Rapaport's argument, applied New York law, and dismissed the unrecognized false light and invasion of privacy claim. A30.

Here, New York has the "strongest interest" in resolving this matter, because it involves NYU Law students, an NYU Law professor, and an alleged conspiracy to ruin Rapaport's reputation regarding his employment in New York through defamatory statements. A29.

This Court has held that "a federal court sit[ting] in diversity …
applies the choice of law rules of the forum state." *Chau*, 771 F.3d at 126.
In New York, a choice of law analysis is required if "the applicable law
from each jurisdiction provides different substantive rules." *Curley v.
AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998). No one disputes that a conflict
exists between New York and New Jersey law on this claim, so the
district court conducted a choice of law analysis.

This Court has held that in multistate defamatory statement cases,
the "presumptive rule that the law of [the] plaintiff's domicile applies …
does not hold true" where "some other state has a more significant
relationship to the issue or the parties." *Kinsey v. N.Y. Times Co.*, 991
F.3d 171, 177 (2d Cir. 2021) (quoting *Catalanello v. Kramer,* 18
F. Supp. 3d 504, 512 (S.D.N.Y. 2014)). The most significant relationship
is determined by a multi-factor balancing test, including (1) the place of
greatest injury, (2) the place the statements emanated from and were
broadcast, (3) the place the activities discussed took place, and (4) the
"policy interests of the states whose law might apply." *Id.* (citing and
quoting *Condit v. Dunne,* 317 F. Supp. 2d 344, 353–54 (S.D.N.Y. 2004)).
Here, the district court correctly found it "clear that [Rapaport] merely

wishes to avail himself of a cause of action that New York does not recognize" and applied New York law to all claims. A29.

Rapaport's responses are unpersuasive. For instance, Rapaport places misguided weight on *Catalanello v. Kramer*, 18 F. Supp. 3d 504 (S.D.N.Y. 2014). *See* Rapaport Br. 54. There, the Southern District found the application of New Jersey law a "close call" where the statements at issue were published in Missouri and Massachusetts and nationally disseminated online, no party was domiciled in New York, and the only New York connection was that the alleged defamation discussed events in New York and the defendant suffered some reputational harm there. *Catalanello*, 18 F. Supp. 3d at 512–13. Those facts are not like this case, and New York has the "strongest interest" in resolving this dispute between former NYU Law students and an NYU Law professor. A29.

Rapaport largely admits as much, alleging that the injuries to his reputation and inability to be admitted to the New York bar are happening in New York, as that is where Rapaport intends to practice law. A53 ¶ 14. Indeed, in the original complaint, Rapaport extensively discusses his social life in New York. A74 ¶ 16. The sole New Jersey connection is that Rapaport happened to live in New Jersey while

35

attending NYU Law. In arguing that New Jersey has a unique interest in false light and invasion of privacy, Rapaport mischaracterizes defamation as being "global" and false light and invasion of privacy being "purely local." Rapaport Br. 55 (citing *Romaine v. Kallinger*, 537 A.2d 284 (N.J. 1988)). No such language appears in *Romaine*, and while *Catalanello* may have involved a "close call," this case does not.

Rapaport also insists (at 30) that the district court should have treated this one claim differently and applied dépeçage. That is wrong for a host of reasons. For instance, Rapaport's allegations undermine his attempt to apply New York law to some claims and New Jersey law to others. His alleged damages arise from not joining the New York bar, and all of the parties have connections to New York. The case's undeniable connection to New York makes the doctrine of dépeçage irrelevant.

The district court thus correctly rejected that approach and declined to apply New Jersey law because it found that Rapaport's case "does not involve, for instance, multiple overlapping issues and parties from multiple jurisdictions," "the conduct at issue almost exclusively occurred in New York," and Rapaport "does not cite any authority requiring a different result[.]" A30.

36

Finally, even if the district court had applied New Jersey law and permitted Rapaport to proceed with his false-light claim, that claim would still have failed because it is completely duplicative of his defamation claim. New York courts routinely dismiss privacy-related claims that just repackage a defamation claim. *See Chord Assocs., LLC v. Protech 2003-D, LLC*, No. 07-cv-5138, 2010 WL 3780380, at *4 (E.D.N.Y. Sept. 21, 2010). So too for false-light claims under another state's law. *See Baiqiao Tang v. Wengui Guo*, No. 17-cv-9031 (JFK), 2019 WL 6169940, at *7 (S.D.N.Y. Nov. 20, 2019) (dismissing California false-light claim because it was duplicative of New York defamation claim). Whether this claim is duplicative or barred by New York law, the result is the same. The district court did not err in applying New Jersey law and dismissing Rapaport's false light claim.

## III.  The Dismissal Order was Procedurally Correct.

Despite these various shortcomings, the district court gave Rapaport every conceivable opportunity to salvage his claims, but Rapaport rejected those offers. His self-inflicted injuries do not amount to procedural errors, as he alleges, and the district court did not err in

37

permitting Rapaport to file an amended complaint in a consolidated docket. His procedural complaints should thus be rejected.

1.     Although not abundantly clear, Rapaport appears to complain about the way the district court disposed of his claims. For instance, Rapaport appears to complain about the district court's decision to dismiss certain of his claims for defects that he believes were cured in his proposed second amended complaint. *See* Rapaport Br. 54–55, 59. But there was nothing improper about the district court's decision not to grant Rapaport leave to file his proposed second amended complaint, but instead order Rapaport to file a new amended complaint that incorporates the district court's decision and consolidates Rapaport's various claims against the Student Defendants and others.

Federal Rule of Civil Procedure 42 permits a court to consolidate cases that "involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2). And this Court has held that district courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases. *See Johnson*, 899 F.2d at 1284.

Here, the district court did not abuse its discretion in ordering Rapaport to file a new consolidated complaint instead of allowing him to

file his proposed second amended complaint. A new complaint was needed because Rapaport's proposed second amended complaint included claims that the district court had dismissed with prejudice. For instance, Rapaport's proposed second amended complaint included additional defamation claims, an injurious falsehood claim, an intentional infliction of emotional distress claim, and a false light and invasion of privacy claim. A130–33 ¶¶ 209–40.

Instead of filing an amended complaint with only the claims allowed by the district court, Rapaport chose to appeal and refused the opportunity to file an amended complaint. That choice is a self-inflicted injury (if any injury at all).

2. Equally unavailing is Rapaport's passing argument (at 61–62) that the district court's order violated his due process rights. This Court routinely deems such arguments raised in a "perfunctory manner, unaccompanied by some effort at developed argumentation," to be forfeited. *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001). In *Tolbert*, this Court rejected an argument that relied on a "single perfunctory sentence" and case citation, but otherwise "contain[ed] no

analysis or discussion of the issue." *Id.* at 76. Here, Rapaport presents two sentences and no legal support. Such an argument is forfeited. *Id.*

In any event, Rapaport is wrong to suggest (at 61) that the district court "ignore[ed] … his pleadings" or applied improper standards "by making inferences against him." As thoroughly demonstrated above, the district court properly evaluated and dismissed Rapaport's claims.

## IV.    The Motion to Disqualify was Meritless.

In addition to raising meritless claims, Rapaport filed a misguided effort to strip the Student Defendants of counsel. The district court properly rejected that motion because the Student Defendants had waived any conflicts.

On appeal, Rapaport advances only two arguments: *first*, the Student Defendants cannot waive a perceived conflict; and *second*, the district court should have *sua sponte* disqualified counsel for also representing other NYU Law students in Rapaport's separate action. Rapaport Br. 58–60.

This Court recognizes that a party's "right freely to choose his counsel" in a civil action is well settled. *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream,* 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Gov't of India*

40

*v. Cook Indus., Inc.,* 569 F.2d 737, 739 (2d Cir. 1978)). New York also recognizes that a party's right to choose counsel "is a valued right and any restrictions" on that right "must be carefully scrutinized." *S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 508 N.E.2d 647, 650 (N.Y. 1987) (citing *Matter of Abrams,* 465 N.E.2d 1, 7–8 (N.Y. 1984)). Thus, this Court "require[es] a high standard of proof" to disqualify counsel. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983).

This Court is thus "considerabl[y] reluctan[t] to disqualify attorneys" because "disqualification has an immediate adverse effect on the client by separating him from counsel of his choice," and "disqualification motions are often interposed for tactical reasons." *Bd. of Educ. of City of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). Rapaport "bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur, and that the likelihood of prejudice occurring ... is substantial." *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009).

Rapaport cannot carry this burden because the Student Defendants expressly waived any conflicts before counsel began representing them. *See* A358 ¶ 6, A361 ¶ 6. As this Court has held, a waiver is "knowing and

41

intelligent when a defendant shows that he is 'aware of and understands the various risks and pitfalls'" of proceeding despite counsel's potential conflict. *Williams v. Meachum*, 948 F.2d 863, 866–67 (2d Cir. 1991) (quoting *United States v. Curcio*, 680 F.2d 881, 888 (2d Cir. 1982)). Upon a defendant's "knowing and intelligent" waiver of a conflict, the court may accept the waiver. *Id.* Here, the district court correctly recognized that the Student Defendants' waiver was dispositive and thus denied Rapaport's motion. A47; *see also* A358 ¶ 6, A361 ¶ 6.

Rapaport responds by arguing (at 59), without any supporting authority, that the conflicts he imagines cannot be waived. Such unsupported arguments may be set aside. Similarly doomed is Rapaport's new argument (at 60), that a conflict has arisen because he "could refile part of his defamation claims against" the other NYU Law students that counsel represents in the other lawsuit Rapaport has waged against Student Defendants. But Rapaport never presented this argument to the district court, so it is waived. *Anthony v. City of N.Y.*, 339 F.3d 129, 136 n.3 (2d Cir. 2003).

In any event, Rapaport fails to explain how his theoretical new claims against the other NYU Law students would overcome the one-year

42

statute of limitations that already sank his present claims. Nor does he provide any basis for claiming that counsel argued in this case that the other NYU Law students "were the culpable Does and not … Iyer and Garrett." Rapaport Br. 60. That is an argument of Rapaport's own creation, and it is due no credit.

Beyond that bald argument, Rapaport offers abstract hypotheticals that defy the facts in the case and makes unfounded assumptions about the Student Defendants' arguments. He speculates, for instance, that because Garrett identified Iyer as being the source of a photo, Iyer will claim that Garrett was lying. Rapaport Br. 59 (citing A8). Rapaport's rampant speculation about what arguments the Student Defendants might advance does not make them fact. Rapaport thus fails to meet the high standard of proof required to meet his substantial burden as to these purported conflicts. His motion to disqualify was properly denied.

## CONCLUSION

This appeal is the next chapter in a saga where Rapaport seeks vindication for hurt feelings. His decision to file spurious claims against his former classmates puts an unnecessary tax on the resources of the courts and the Student Defendants. In a thorough and well-reasoned

43

decision, the district court sought to put an end to Rapaport's use of the judicial system to air his grievances. But Rapaport has nonetheless chosen to continue his attacks on his former classmates and former professor.

As demonstrated above, Rapaport's claims are hopelessly doomed at every turn. For those reasons, the Court should affirm the district court's order dismissing Rapaport's claim.

August 8, 2025                    Respectfully submitted,

                                 */s/ Brian J. Field*
                                 Brian J. Field
                                 Justin A. Miller
                                 SCHAERR | JAFFE LLP
                                 1717 K Street NW, Suite 900
                                 Washington, DC 20006
                                 Telephone: (202) 787-1060
                                 bfield@schaerr-jaffe.com

                                 *Counsel for Defendants-Appellees*
                                 *Ajay Iyer and Zachary Garrett*

## CERTIFICATE OF COMPLIANCE

This brief contains 8,553 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f), and complies with the type volume limitation of Local Rule 32.1(a)(4)(A).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Office 365 in 14-point Century Schoolbook font.

Dated: August 8, 2025                    */s/ Brian J. Field*
                                         Brian J. Field