# No. 25-841

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆ ◆

GIDEON RAPAPORT, an individual,

*Plaintiff-Appellant,*

—against—

AJAY SRINIVASAN IYER, ZACHARY GEORGE

GARRETT, RICHARD ALLEN EPSTEIN, individuals,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
Case No. 1:23-cv-06709-JGLC, Hon. Jessica G. L. Clarke

## REPLY BRIEF OF PLAINTIFF-APPELLANT

GIDEON RAPAPORT, *pro se*
#627 1078 Summit Avenue
Jersey City, New Jersey 07307
Telephone: (862) 213-0895

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT**……………………………………………….3

**PROCEDURAL BACKGROUND**…………………………………………..6
The Proposed Second Amended Complaint Represents Plaintiff's Only
Opportunity To Amend Pleadings Responsively…………………………………...6
Defendant Epstein Did Not Raise The Statute Of Limitations……………………..9
Other Related Actions……………………………………………………………10

**FACTUAL ISSUES ARISING FROM APPELLEE BRIEFS**………………...12
The District Opinion Cannot Be Salvaged Due To Its Fundamental Ignoring And
Contradiction Of The Most Basic Allegations Of The Pleadings…………………12
Defendants Iyer and Garrett's Fabrication of New Defamations and Ignoring of the
Pleadings In Their Brief………………………………………………………...12
Defendant Epstein's Fabrications and Ignoring of the Pleadings In His Brief …...13

**LEGAL ARGUMENT**………………………………………………………...15

**Relation Back As To Defendants Iyer and Garrett**……………………………15

**Relation Back As To Defendant Epstein**……………………………………..20
Sua Sponte Dismissal With Prejudice Due To The Statute Of Limitations Was Not
Proper……………………………………………………………………………20
Defendant Epstein Could Take Notice From The Original Complaint……...……21
Relation Back Per FRCP 15(c)(1)(A) and CPLR 1024……………………...…23
Relation Back per FRCP 15(c)(1)(C)………………………………...………23

**Defendant Epstein's Other Defenses**…………………………………………24
Section 230………………………………………………………………………24
Common Interest Privilege………………………………………………………25

**Civil Conspiracy Joins These Defendants**…………………………………...26

**NJ Law Applies To The False Light Invasion Of Privacy Claims**……………28

**CONCLUSION**…………………………...…………………………………...31

## PRELIMINARY STATEMENT

The defendants-appellees do not even attempt to rescue the fundamentally and irredeemably flawed opinion below and instead continue to ignore the pleadings and exhibits, all while pleading alternative facts in their briefs as in their law memoranda below so as to respond to allegations of their own imagination[1] instead of those actually brought. In so doing, they expect to achieve the same result before this Court that they achieved in the District, and obtain an opinion that contradicts the pleadings to a similar extent such as by finding that the Original Complaint did not address oral statements when it did A76, or that the Original Complaint only addressed the posting of defamatory materials online rather than allege that the Doe defendants "forwarding" those materials to the James Kent program of the Federalist Society A75.

---

1   This is even as they falsely accuse the plaintiff of representing in his brief that his claims either in the FAC or SAC require "imagination" on the part of the District to prevail as a part of solicitude given to *pro se* parties. The plaintiff disclaimed any need for such solicitude Rapaport Brief at 60, and merely remarked that after not finding sufficient allegations to survive a 12(b)(6) motion, a district court must decide whether to grant a dismissal with or without prejudice. This latter determination inevitably involves some use of imagination because the District must decide the prejudice question based on the possibility of allegations that are not present in the dismissed complaint. To illustrate this, the District made a peculiar error that the plaintiff *could* (in the District's imagination) return with the defamation claims against defendants Iyer and Garrett (even though all claims against them were dismissed with prejudice and they were terminated from the action) regarding the online posts, if he specified which one of them created them. In fact the plaintiff *did* twice specify that defendant Iyer had done so in the FAC A53,57, and extensively discussed this in his motion to disqualify counsel A331-342. The issue in this appeal is that the District ignored and contradicted the pleadings.

Understandably, it is highly inconvenient to these defendants that they were identified as the Does in response to a subpoena issued to a third-party, that defendant Garrett identified defendant Iyer as the source of the second defamatory forgery while forwarding it in an exhibited email A3-5, or that defendant Epstein admitted in writing on August 9, 202**2** (though he now uses '[]' to contradict every pleading and brief filed by the plaintiff to decide that it was on August 9, 2023, after the statute of limitations would apply) to forwarding the defamatory materials to Lee Otis, the supervisor of the James Kent program of the Federalist Society himself A63. Defendant Epstein is not entitled to move the date of an email by one year to benefit his cause.

Because 'plausibility' is not a sufficiently amorphous and flexible concept to shield their malfeasance, they now turn to 'common sense'. To them the latter requires ignoring all beneficial inferences in favor of the plaintiff, including those flowing from exhibits that clearly demonstrate the culpability of these defendants, while considering an alternative theories from outside the pleadings. Clearly this is not appropriate while reviewing a Rule 12(b)(6) 'failure to state a claim' decision. Common sense is not the standard for a 12(b)(6) motion, but any use of it clearly demonstrates the culpability of the allegations and their sufficiency to prevail against such a motion.

Defendant Epstein in particular, against whom defamation and other counts were dismissed with prejudice due to the statute of limitations, never even raised the statute of limitations, while the District for its part, never conducted the necessary relating back analysis because it refused to recognize (and indeed affirmatively declared the absence of) the factual allegations in the Original Complaint that would give rise to such relating back analysis.

As to theme, the defendants continue to attempt to make this case about the plaintiffs 'failed ambitions' to be a Supreme Court Clerk. Rather, the tortious conduct in this case stems from defendants Iyer and Garrett's failed ambitions to obtain such a position, which is what motivated their forgeries and defamations after they came to believe that defendant Epstein would place the plaintiff and not one of them in such a position. As to defendant Epstein, it is his sense of entitlement to recommend (or practically place) many candidates into clerkship positions, including his four slots at the Supreme Court he has boasted about, that motivated him to recklessly defame and intentionally defraud, interfere and retaliate against the plaintiff. Defendant Epstein has repeatedly tried to allege that the plaintiff cynically pursued him for a clerkship when the opposite is true. Though appreciative of defendant Epstein's interest in supporting his career, the plaintiff wrote to defendant Epstein in early April 2022 of his intentions to divide

his final year of law school between an exchange term and a term visiting at law school in a different region of the United States, and pursue a different career path than the one defendant Epstein envisioned. The plaintiff hoped that defendant Epstein would not place him in any such (evidently dangerous) position.

Rather, it was defendant Epstein that pursued the plaintiff with promises of both an appellate and Supreme Court clerkship, the position of Senior Article Editor at his journal and to teach property in the Fall 2022 term. The plaintiff changed his plans due to defendant Epstein's enthusiasm and sentimental reasons stemming from the real possibility of that upcoming term being defendant Epstein's last, depending on the outcome of a life-saving experimental medical procedure that had already been scheduled for early 2023.

## PROCEDURAL BACKGROUND

<u>The Proposed Second Amended Complaint Represents Plaintiff's Only Opportunity To Amend Pleadings Responsively</u>

When these defendants refer to facts as not being pleaded, they consistently ignore the proposed Second Amended Complaint A89-137, which was the only opportunity that the plaintiff had to amend his complaint in response to any motion to dismiss. This is because the Original Complaint was brought entirely against

6

Does, the single amendment as a matter of course provided by FRCP 15(a)(1) was used to name the defendants in the First Amended Complaint rather than respond.

It would be arbitrary and prejudicial to deprive a plaintiff of the opportunity to improve his pleading in response to a motion to dismiss with prejudice merely because the defendants succeeded to hide as Does until the time of filing of the action. For this reason the Second Amended Complaint should be fully considered when evaluating the opinion below and the sufficiency of the 12(b)(6) motions brought against the plaintiff's action. Of particular concern, is the lack of opportunity for the plaintiff to contend with the dismissal with prejudice of defendant Epstein by reason of the statute of limitations, which defendant Epstein did not raise, though the plaintiff did include vital allegations with respect to that issue in the proposed SAC that also apply to him.

The District did not consider the proposed Second Amended Complaint whatsoever with respect to defendants Iyer and Garrett, though it did consider that there were facts proposed warranting a dismissal without prejudice of the tortious interference and fraud with respect to defendant Epstein.

It appears that defendants Iyer and Garrett managed to secure this result for themselves by corruptly and maliciously misrepresenting even the most fundamental aspects of the proposed SAC. For example, they declared in their

7

combined and generally incoherent 30-page opposition/reply that the plaintiff had proposed to plead in his SAC that multiple women accused him of sexual harassment without providing any citation or quotation for this, and in fact the SAC did not contain any such proposed self-accusation. In repeatedly layering many fabrications and confabulations, they apparently succeeded in preventing the District from considering the SAC with respect to them. Defendants Iyer and Garrett also have a particular fascination with the word "cabal" present in the proposed SAC. The plaintiff did not choose the term, which does not have a specific legal meaning, to describe them (and putative defendant Pallaki) but merely truthfully reported it in the SAC as part of his diligent investigation into the identities of the Does A125-129. From August, 2022 to July 2023 the plaintiff made inquiries regarding the tortious conduct at issue to law students and junior lawyers generally involved in the FedSoc, and some of those peers described a malignant "NYU cabal" that they believed perpetrated these defamations against the plaintiff rather than progressive critics of the FedSoc as the initial defamatory online posts were disguised to appear A56,74. Those peers could not identify the specific individuals involved or provide additional evidence at that time, thus necessitating the discovery of the true names of the Doe defendants by service of a subpoena upon the Federalist Society, which identified the Does.

8

The abusive pattern of behavior before the court below by defendants Iyer and Garrett may also be what resulted in the District's failure to consider even the most fundamental contents of the Original and First Amended Complaint, such as by finding that the plaintiff had never alleged an oral component to defamation nor that the defendants had packaged and forwarded the defamatory materials rather than just post them online when in fact the Original Complaint did in fact allege so, or that the First Amended Complaint did not specifically identify defendant Iyer as the creator of the defamatory online posts twice A56 as discussed in Rapaport Brief 36-39.

Defendant Epstein Did Not Raise The Statute Of Limitations

Because defendant Epstein did not raise the statute of limitations as a defense, even though defendants Iyer and Garrett did, the plaintiff has never had the opportunity to specifically address the relation back of the original complaint with respect to him either by specifically addressing the issue in briefing the case or having notice of a need to plead facts.

By the precedent of this Circuit, a plaintiff does not have a duty to plead in anticipation of an affirmative defense such as the statute of limitations. In *Michael Grecco Productions, Inc. v. RADesign, Inc.*, 113 F.4th 384 (2d Cir. 2024) it was stated: "Importantly, '[t]he pleading requirements of the Federal Rules of Civil

9

Procedure do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses.' *Clark v. Hanley*, 89 F.4th 78, 93–94 (2d Cir. 2023) (internal quotation marks and citation omitted). In fact, '[p]laintiffs are under no obligation to plead facts supporting or negating an affirmative defense in the complaint.' *In Re: Nine West LBO Sec. Litig.*, 87 F.4th 130, 144 (2d Cir. 2023)."

Now defendant Epstein goes even further than the position rejected in those precedents, and demands the plaintiff to plead in an anticipatory fashion to an affirmative defense he himself did not raise, and that the district raised *sua sponte* while refusing to conduct relation-back analysis as with other defendants because it ignored the fact that the pleadings also related to the forwarding of the defamatory material as well as oral slander.

Other Related Actions

The defendants reference a related action Rapaport v. Epstein et al. 24-cv-7439(JGLC) involving claims against them (and others) arising under federal law, particularly the Racketeer Influence and Corrupt Organizations Act and the Clayton and Sherman Antitrust Acts. The motions to dismiss brought against that action have not even been fully briefed, and are clearly premature for appellate review. Defendant Epstein willfully and strategically defaulted in that action even

as he was actively represented in this case, and served via ECF with documents referencing the related action. He later only appeared and moved to have his default vacated after a motion was brought to authorize pre-conference discovery to aid in determining the correct measure of damages for his separate default judgment. Apparently defendant Epstein seeks to prevent the plaintiff from pleading any facts in response to the motion to dismiss once again, because the plaintiff used up his one amendment as of right per FRCP 15(a)(1) in response to other motions of defendants who did not default.

It should be noted that the plaintiff wished to include those claims as a part of this action, but the defendants and the District insisted upon a briefing schedule for his leave to amend motion (though the Second Amended Complaint would really have been the first opportunity to amend in relation to the defendants' motions) so lengthy that it would have necessarily caused the statute of limitations to take effect on some of the plaintiff's RICO and antitrust injuries. To avoid that outcome, the plaintiff had no choice but to file a separate action relating to those federal claims to preserve his rights.

## FACTUAL ISSUES ARISING FROM APPELLEE BRIEFS

The District Opinion Cannot Be Salvaged Due To Its Fundamental Ignoring And Contradiction Of The Most Basic Allegations Of The Pleadings

The opinion below ignored the most basic aspects of the plaintiff's pleadings and directly contradicted them. The appellee-defendants tacitly concede this by having to go outside the record, ignore the pleadings and improperly plead alternative facts, as opposed to making meritorious legal arguments relevant to a 12(b)(6) motion. The District's ignoring and contradiction of the pleadings was primarily addressed in Rapaport Brief at 36-41.

Defendants Iyer and Garrett's Fabrication of New Defamations and Ignoring of the Pleadings In Their Brief

Defendants Iyer and Garrett go outside of the record and the pleadings to defame the plaintiff again in their brief to declare that the plaintiff was fired mid-employment for serious misconduct (of some kind presumably of a different nature than the topic of their previous forgeries and defamations). The exhibits in the record A3-19, as well as the allegations accepted as true, clearly demonstrate that their creation of the forgeries and dissemination of the defamation beginning at the earliest on Friday, July 29, 2022, which was the nominal last day of the summer associate term at K&E, though practically not a work day. Furthermore, if what

they suggest is really true, they would not have had to go to the significant effort of creating two forgeries, nor take the risk of attributing the taking of the second digitally manipulated forgery to themselves (after the first version posted online was not sufficiently persuasive), as well inventing the defamations in the first place. Defendant Iyer is the only person who has ever claimed to see the purported "Do Not Admit" notice physically displayed (which was never physically displayed or issued by K&E according the Steven Goldblatt, to the best knowledge of the firm director of human resources), and defendant Garrett has identified him as the source of the second forgery in writing "I do know that Gideon was fired and banned from entering the building. Please see the attached photo ("Security Desk Photo") **taken by Ajay Iyer** at Kirkland & Ellis's New York location at 601 Lexington Avenue on Thursday, [July] 28th, where Ajay worked with Gideon this summer." (emphasis added) A8. Common sense would be squarely against their alternative theory that is extraneous to both the record, the pleadings and the truth.

Defendant Epstein's Fabrications and Ignoring of the Pleadings In His Brief

Defendant Epstein refuses to acknowledge that it was alleged that he *lied* when asked by the plaintiff if defendants Iyer and Garrett disseminated the defamatory materials by denying it. He may repeat the phrase "did not disclose"

Epstein Brief at 9 or "omitted" *Id.* at 16 as many times as he likes, but it is fraud by commission not omission that he is accused of in the pleadings per the FAC "defendant Epstein specifically lied about not knowing which members of the New York University Federalist Society Chapter sent the defamatory statements and fakes to the Federalist Society." A62. Defendant Epstein has repeatedly attempted to recast the ordinary fraud claims brought against him into fiduciary fraud claims. The plaintiff has never asserted that defendant Epstein owed him a fiduciary duty to inform the plaintiff of who had perpetrated the torts against him, but rather that in choosing to answer, defendant Epstein committed fraud by denying what he knew to be true, and stating that defendants Iyer and Garrett were not involved, when in fact they were, and he knew that they were. From defendant Garrett's exhibited email: "[Defendant Epstein is] understandably very upset by the news and feels that Lee Otis should be made aware" A8.

Defendant Epstein also chose to change the date of the plaintiff's email Epstein Brief at 10. The plaintiff asked defendant Epstein again by email on August 9, 202**2** after the phone call that same day "On August 9, 2022, plaintiff pressed defendant Epstein again by email" A63. It is unclear why defendant Epstein believes he is entitled to change the date of the email exchange that followed the phone call using "[]" to "202[3]" thus moving the event by an entire

14

year to outside of the period of the statute of limitations during which inquiries must take place.

Defendant Epstein also outrageously alleges in his brief that the plaintiff "threatened" him by telling him that he was involved in the action when providing him with the Original Complaint to read Epstein Brief 10. The plaintiff told defendant Epstein that he was already involved as a witness to the damages suffered by the plaintiff in his career. There is nothing threatening about that, because defendant Epstein can best testify to the injury to the plaintiff and his career because he is the one who decided to punish the innocent plaintiff by canceling his clerkship, law journal position and Bradley fellowship, even if he were just a witness and not also a proper defendant as demonstrated by exhibits.

## LEGAL ARGUMENT

### Relation Back As To Defendants Iyer and Garrett

Defendants Iyer and Garrett knew from the start that they could not benefit from the statute of limitations due to CPLR 1024 as invoked by FRCP 15(c)(1)(A). This is demonstrated by the contents of their motion to dismiss A232 where they solely relied upon a single magistrate judge order involving a *federal* 42 U.S.C § 1983 claim as their "authority" to argue that the amended complaint does not relate back to the timely filing of the Original Complaint under FRCP 15 *Frederique v.*

*Cnty. of Nassau*, No. 11-cv-1746 (WDW), 2014 WL 12841638 (E.D.N.Y. May 22, 2014). That 2014 magistrate judge order did not discuss FRCP 15(c)(1)(A) because Congress did not enact any "law that provides the applicable statute of limitations" for federal § 1983 actions[2]. Instead that magistrate judge order only discussed FRCP 15(c)(1)(C) "mistake" relating back, which this Circuit has held does not apply to situations where a plaintiff lacks knowledge or is ignorant.

The defendants' initial refusal to address FRCP(c)(1)(A) and CPLR 1024 did not repeal them or make them disappear. Because this is an action involved state law claims heard in diversity jurisdiction, the FRCP(c)(1)(A) "law that provides the applicable statute of limitations" is the New York CPLR. When confronted with the existence of FRCP(c)(1)(A) and CPLR 1024, they then turned to the "due diligence" requirement which is a creation state common law, but not part of the statute. Due diligence has been met by plaintiffs conducting just a few internet searches prior to filing their Doe actions *DeMarzo v. Cuba Hill Elementary Sch.*, 220 A.D.3d 917, 919-20 (2d Dep't 2023), consulting reference publications to ascertain what industrial machine manufacturer's product caused a workplace

---

2  This Circuit and some others found that federal 1983 claims should 'borrow' the statute of limitations from analogous state law torts, for example matching claims arising from excessive force by police with assault. Otherwise, 1983 claims would have no limitations period. The next step after that was to also 'borrow' limitations placed upon the statute of limitations from state law such as NY CPLR 1024. In federal 1983 cases, this borrowing does not occur through FRCP 15(c)(1)(A) but rather through federal equitable tolling, as an inherent power.

injury *Luckern v. Lyonsdale Energy Ltd. Partnership*, 229 A.D.2d 249, 654 N.Y.S.2d 543, writing a letter requesting the identity of an arresting officer sent to an Inspector General of a law enforcement agency *Ceara v. Deacon*, 2014, 68 F.Supp.3d 402 or making two non-subpoena requests for foster care records from an agency *A.S. v. Erie County* (4 Dept. 2023) 219 A.D.3d 1694, 196 N.Y.S.3d 825. In *Ceara* the court also specifically found that inquiries do not need to have the compulsory force of law such as being made through subpoenas in order to be diligent. The only requirement placed upon the attempts is that they occur prior to the statute of limitations taking effect.

The plaintiff easily meets the due diligence requirement due to the diligent and thorough investigation he conducted to identify to the true identities of the John Does prior to filing *pro se* the Original Complaint on July 28, 2023. The plaintiff asked defendant Epstein if he knew the identities of the Doe defendants by phone and email on August 9, 2022, at least another four times in person in September and early October 2022, and once again on July 28, 2023 when he provided defendant Epstein with the Original Complaint to read immediately prior to filing it. Defendant Epstein committed fraud to obstruct the investigation of the plaintiff by specifically denying that defendants Iyer and Garrett, or anyone else from the NYU Federalist Society chapter was involved both by phone and email on

17

August 9, 2022, and thus significantly added to the "complexity" of the investigation, which justifies extra-leniency per *Luckern v. Lyonsdale Energy Ltd. Partnership*, 229 A.D.2d 249 at 254. The plaintiff also asked Peter Redpath and Lee Otis of the Federalist Society in August 2022 and November 2022 respectively. All of these inquiries were well targeted, because all of these individuals could have identified the Doe defendants. The plaintiff also traveled to Federalist Society meetings and conferences from August 2022 to July 2023 A128 where he made inquiries as to the defamations, which were notorious, of students and young attorneys. None of these peers were able to provide specific information as to the Does, but they did express a suspicion that they were members of the NYU FedSoc and referred to that group as the "NYU cabal", rather than ideological opponents of the organization as the online posts were disguised A56. The Doe defendants were eventually identified on March 15, 2024, in response to a subpoena served upon the Federalist Society issued by the District, through the email and attachments exhibited A3-8.

Defendants Iyer and Garrett could take proper notice that they were both Reddit.com and Top-Law-Schools.com users by virtue of defendant Iyer creating the posts and defendant Garrett collecting and packaging them for further forwarding. They were also both NYU students. They could also take proper notice

18

by their conduct, because defendant Iyer created the forgeries and the online posts described in the Original Complaint and defendant Garrett forwarded them as described therein. They were also both involved in starting the oral slander campaign by falsely stating that the plaintiff had been fired from his summer associate position at K&E for sexual harassment, with defendant Iyer falsely stating so to Lee Otis by phone on or about August 2, 2022 A101 and defendant Garrett falsely stating so to Peter Redpath and Kate Alcantara of the Federalist Society while he was at the Student Leadership Conference for incoming chapter presidents A56 as he referenced his discussions with Peter Redpath and Kate Alcantara in the exhibited email "as I told you over the weekend" A8.

To summarize, the District was correct in finding that FRCP 15(c)(1)(A) allowed relation back with respect to defendants Iyer and Garrett, but still reached its incorrect (and internally inconsistent) results of still dismissing the defamation claims brought against them with prejudice because the District erroneously found that the Original Complaint did not cover oral statements, which in fact it did at A73 and 76 or the forwarding of the defamatory allegations, which in fact it did at A75. Instead the District incorrectly found that the Original Complaint only pertained to the initial online publication of the defamatory materials. It is also unclear why the District stated in one part of the opinion that the plaintiff could

19

return with the defamation counts with respect to the online posts, but then also dismissed with prejudice all claims against defendants Iyer and Garrett with prejudice.

**Relation Back As To Defendant Epstein**

Sua Sponte Dismissal With Prejudice Due To The Statute Of Limitations Was Not Proper

The District's *sua sponte* raising and subsequent dismissal with prejudice of claims against defendant Epstein was not proper because for such a dismissal to be proper it must, as the District itself admitted, involve an analysis of whether claims can relate back. The District did not even begin to perform such analysis with respect to defendant Epstein because it ignored and directly contradicted the parts of the Original Complaint that would prompt such analysis, and found that none of the conduct alleged in the Original Complaint was alleged against defendant Epstein in the Amended Complaint. The allegations of the Does "forwarding" the defamatory online materials was specifically alleged in the Original Complaint, as was the oral component of the character assassination campaign waged in which defendant Epstein joined defendants Iyer and Garrett A73,75. Defendant Epstein, as clearly demonstrated by his close collaboration that defendant Garrett referred to

20

A8, and his subsequent fraud, also shared a "unity of interest" with defendants Iyer and Garrett *DaCosta v. City of New York,* 2017, 296 F.Supp.3d 569.

Now, in trying to avoid relation back under either FRCP 15(c)(1)(A) invoking CPLR 1024 or FRCP 15(c)(1)(C) defendant Epstein expects this Court to accept two entirely contradictory statements. With regard to the former, he expects the Court to accept that the plaintiff *knew* that defendant Epstein was a proper defendant rather than being "ignorant, in whole or in part" per CPLR 1024. With regard to the latter, he simultaneously expects the Court to accept that the plaintiff was *ignorant* as to the identity of defendant Epstein as a proper defendant, resulting in the plaintiff's failure to name defendant Epstein as a defendant in the Original Complaint as not being remediable as a "mistake" per FRCP 15(c)(1)(C). If the plaintiff was "ignorant in whole or in part" then CPLR 1024 through FRCP 15(c)(1)(A) applies, and if he was not, then the plaintiff made a mistake in understanding the knowledge he did have and so FRCP(c)(1)(C) does.

Defendant Epstein Could Take Notice From The Original Complaint

Defendant Epstein's representation that FRCP 15(c)(1)(A) or FRCP 15(c)(1)(C) do not apply to him because he was unable to take notice from the Original Complaint is ridiculous. The July 28, 2023 Original Complaint referred to John Does #1 and #2 as users of Top-Law-Schools.com and Reddit.com respectively

21

and defendant Epstein knew to tell the plaintiff on August 9, 2022 that he had found the defamatory online posts himself on the Top-Law-Schools.com forum and on Reddit.com so as to deflect culpability away from others (though in fact, he became a user after he was sent there by defendants Iyer and Garrett). Defendant Epstein identified himself as a user of both sites to the plaintiff almost a year before the Original Complaint was filed, and so he could clearly take notice, even though he was not an NYU student like proposed Doe #3 "NYU Law Student".

Defendant Epstein also claims that the Original Complaint only references the Does "forwarding" the defamatory materials to "unspecified persons" (in fact, the allegation was that they were sent to the James Kent Academy program) yet he knew to admit on August 9, 2022 as a half-truth meant to deflect culpability from others, that he himself sent the compiled defamatory materials to Lee Otis, the administrator of the James Kent Academy and Director of the Faculty Division. Defendant Epstein's own statements meant to deceive the plaintiff (and which actually did successfully deceive the plaintiff in part) clearly demonstrate that he could easily take notice that he was a proper defendant. Defendant Epstein is also a law professor, and the author of a renowned casebook on tort law, *See example* Richard A. Epstein, *Cases and Materials on Torts* (11th ed., Aspen Casebooks 2016), thus making him uniquely competent to take notice of his culpability. It is

22

appropriate to consider the occupation of a person when considering their ability to take notice in relation to a complaint *Olmsted v. Pizza Hut of America, Inc.* (3 Dept. 2006) 28 A.D.3d 855, 813 N.Y.S.2d 241.

Relation Back Per FRCP 15(c)(1)(A) and CPLR 1024

The plaintiff satisfied the diligent inquiry requirement also with respect to defendant Epstein as described *supra* 15-20, which extended to multiple inquiries of defendant Epstein himself from August 9, 2022 until July 28, 2023 as well as providing him with the original complaint itself.

Defendant Epstein could take notice from the original complaint as a Reddit.com and Top-Law-Schools.com user (sent there by defendants Iyer and Garrett), as well has his conduct in "forwarding" the defamatory materials as described in the original complaint A75.

Relation Back per FRCP 15(c)(1)(C)

Defendant Epstein has not shown, nor is there anything in the record to indicate so, that he did not have proper notice of the action, and thus awareness of a potential FRCP15(c)(1)(C) mistake. In fact, the plaintiff met with defendant Epstein on July 28, 2023 to show defendant Epstein the Original Complaint, which defendant Epstein read in its entirety. Defendant Epstein refused to offer any factual information, though he did state, with an apparent expression of amusement

and relief, that the action would be dismissed after 120 days for failure of service because it was impossible to serve Does. Defendant Epstein has not been prejudiced in any way, and could have identified himself as a proper defendant if he wanted to defend the action absent any prejudice on July 28, 2023 or any time afterward. Instead he preferred to hide and hope that the plaintiff would not discover that he was a proper defendant.

Because defendant Epstein had defrauded and deceived the plaintiff with a mixture of lies and truth, the plaintiff was either left ignorant as to defendant Epstein's identity as a proper defendant thus allowing FRCP 15(c)(1)(A) and CPLR 1024 to apply, or mistaken in utilizing the information he did have, thus allowing FRCP 15(c)(1)(C) to apply if the plaintiff is deemed non-ignorant.

## **Defendant Epstein's Other Defenses**

Section 230

With regard to Section 230 of the Communications Decency Act, defendant Epstein claims that this immunity applies to him in a way that has not been accepted by any federal appellate court. The gist of it is that as long as defendant Epstein received the defamatory materials digitally, and forwarded them digitally, that he has a federal immunity from liability as a "speaker".

24

Defendant Epstein would also not benefit from Section 230 even if his argument was accepted, because he is not only liable if treated as a "speaker", which is the sole category of immunity available under Section 230, but also as a conspirator joined in liability through civil conspiracy.

The plaintiff respectfully directs the Court to the arguments raised on this issue below A189-194.

Common Interest Privilege

Defendant Epstein's assertion of this privilege was premature, but even still it cannot be sustained because it is not a defense to reckless conduct *Liberman v. Gelstein*, 80 N.Y.2d 429 (N.Y. 1992) recently applied to a law professor in *Ryan v Collica-Cox*, 2023 NY Slip Op 04148. Lee Otis checked with the plaintiff and inquired of Kirkland & Ellis with regard to the defamatory allegations, while on the other hand, defendant Epstein did not know or care to know whether the defamations were true. Defendant Epstein even stated as much to the plaintiff in a phone call on August 9, 2022, after he had discovered that defendants Iyer and Garrett had created and disseminated them.

Defendant Epstein has shown himself to be a paradigmatic reckless tortfeasor because his conduct did not change either in the short period of a few days in which he did not know whether the defamatory allegations were true or

25

false, and he consistently worked to distance himself from the plaintiff and injure the plaintiff's career even after knowing that the defamatory allegations were false and fabricated by his own students. Defendant Epstein also joined the conspiracy of the original defamers, chose to protect them by committing fraud on their behalf, and further retaliated by tortious interference against the plaintiff with the hope that he would give up his investigation and thus not uncover the culpability of defendant Epstein has his former students, whom he had placed in prestigious clerkships.

The plaintiff respectfully directs the Court to the arguments on this issue raised below A194-196.

## <u>Civil Conspiracy Joins These Defendants</u>

As a matter of New York state law, a plaintiff may plead the existence of a civil conspiracy in order to connect the individual defendants' actions with at least one actionable, underlying tort and establish that those actions were part of a common scheme. Even though civil conspiracy is not an independent tort it may still be used a device to connect the actions of separate defendants to a tort *Cohen Brothers Realty Corp. v. Mapes*, 181 A.D.3d 401, 119 N.Y.S.3d 478 (1st Dep't 2020).

The four elements of civil conspiracy are common purpose, intent to injure, an overt act and resulting damages *Perez v. Lopez*, 97 A.D.3d 558, 560, 948 N.Y.S.2d 312. Defendants Iyer and Garrett formed the common purpose of preventing the plaintiff from being recommended to a Supreme Court Clerkship by defendant Epstein, intended to injure the plaintiff through defamation by forging evidence and fabricating allegations that he had been fired from his summer associate position at Kirkland & Ellis for sexual harassment. The over acts included the creation, posting, forwarding and verbally repeating the defamatory allegations, and the injuries include a wide range of damages to the plaintiff and his career as well as of pain suffering. The damages also include *per se* damages because they falsely accuse the plaintiff of a crime and tend to injure him in his trade or profession.

Per *Bedard v. Labier*, 20 Misc.2d 614, 194 N.Y.S.2d 216 "Conspiracy need not be established by direct evidence of the acts charged against defendants. It is sufficient if the minds of the parties meet understandingly so as to bring about an intelligent and deliberate agreement to do the acts charged, although such agreement be not manifested by any formal words." The facts alleged in the original, first amended and proposed second amended complaints may create a

reasonable inference of civil conspiracy, beginning with defendants Iyer and Garrett and later involving defendant Epstein.

Such a civil conspiracy may connect different actions in liability together. "Although an independent cause of action for civil conspiracy is not recognized in this State, a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme" *Faulkner v. Yonkers*, 105 A.D.3d 899, 963 N.Y.S.2d 340.

Defendant Epstein later joined the civil conspiracy of defendants Iyer and Garrett by committing the overt act of fraud against the plaintiff, to prevent the plaintiff from discovering who had defamed him or being able to repair the damage done to his reputation and career by bringing a defamation action to clear his name.

The plaintiff respectfully directs the Court to the briefing of A205-206 and A277-279 relating to the civil conspiracy of this action.

## NJ State Law Applies To The False Light And Invasion Of Privacy Claims

Defendants argue that the New Jersey plaintiff cannot bring false light invasion of privacy claims under New Jersey law by listing some aspects of the factual allegations made that are connected to New York. For example, the plaintiff's school, work and ambition to join the New York bar. The fatal flaw in

this approach is that while those connections may be relevant for the purposes of analyzing choice of law for defamation, they are completely irrelevant for doing so with respect to the false light invasion of privacy claims because of the substance of the respective torts. The plaintiff cannot recover for the injuries to his education, employment and professional reputation listed by the defendants through false light invasion of privacy anyway because those are defamation injuries rather than false light invasion of privacy injuries, and are thus a separate issue.

Applying the interest balancing approach of New York to the tort of false light invasion of privacy as defined by the New Jersey Supreme Court, it is clear that New York has little to no interest in the injury giving rise to the plaintiff's false light invasion of privacy claims because they are entirely confined to the territory of New Jersey. Defendant Epstein's position would require the Court to find that New York has a greater interest in the plaintiff's local community within the territory of New Jersey than New Jersey itself, as well as the privacy and mental tranquility enjoyed by the New Jersey plaintiff therein, thereby depriving the state of being able to protect its residents.

Defendant Epstein makes only a token mention of the doctrine of dépeçage as a feature New York law in a footnote, but does not even attempt to explain why it should not apply here. Instead he hopes that the District court's error in lumping

together all causes of action to apply under a single 'overall' interest balancing approach will be repeated. Doing so directly contradicts the cause by cause and issue by issue analysis required by New York choice of law which applies dépeçage "There is no reason why all issues arising out of a tort claim must be resolved by reference to the law of the same jurisdiction" *Babcock v. Jackson*, 12 N.Y.2d 473 at 482 (N.Y. 1963). In that case, the New York Court of Appeals determined that New York plaintiffs benefited from the protection of New York law for their bodily injuries in a car accident which occurred in Ontario, Canada, even though there was no connection between the location of the accident and New York other than the domicile of the New York victims, and Ontario law applied to other consequences of the accident. *Campney v. Hatch*, 2024 WL 3278842 (N.Y. App. Div. 3d Dep't 2024) recently applied the same reasoning.

Defendant Epstein also claims that because in *Romaine v. Kallinger*, 537 A.2d 284 (NJ 1988), which highlighted the differences between defamation and false light invasion of privacy for the purposes of choice of law analysis, the New Jersey Supreme Court found that New Jersey law did not apply there, that this should cause the same result here. Following this would be a direct contradiction of *Klaxon Company v. Stentor Electric Manufacturing Company*, 313 U.S. 487 (1941), which requires that federal district courts apply the choice of law rules of

the states in which they sit, making New York and not New Jersey choice of law rules apply. *Romaine* should properly be taken as a vital state supreme court precedent to delineate the substance of false light invasion of privacy claims as a matter of New Jersey law compared with defamation.

This Circuit has already endorsed the view that New York choice of law rules require the application of New Jersey law to false light invasion of privacy claims brought by New Jersey victims in *Kinsey v. New York Times Co.*, 991 F.3d 171, 175 (2d. Cir. 2021) n.21 endorsing *Catalanello v. Kramer*, 18 F. Supp. 3d 504, 512 (S.D.N.Y. 2014). The plaintiff again emphasizes that by not alleging his other claims under New Jersey law he has conceded nothing, because there is no conflict of law with respect to the other counts anyway, and even if there was, every issue must be analyzed individually as a matter of New York choice of law as required by *Babcock v. Jackson* applied through *Klaxon*.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff-Appellant respectfully requests that the Court reverse the district court's decision dismissing his defamation, injurious falsehood, intentional infliction of emotional distress, false light and invasion of privacy and civil conspiracy claims brought against all defendants and the fraud and tortious interference with economic advantage claims brought solely against

defendant Epstein, remand this case to the district court with such instructions to reinstate these claims and ensure that the parties continue to full discovery.

## CERTIFICATE OF COMPLIANCE

This brief or other document complies with type-volume limits of Fed. R. App. P. R. 32 and Local Rule 32.1 because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments) this brief contains 6,853 words.

This brief or other document complies with the typeface and type style requirements because: this brief or other document has been prepared in a proportionally spaced typeface using LibreOffice Writer in 14-point Times New Roman font.

/s/ Gideon Rapaport, *pro se*

Dated: September 22, 2025